the Act and have been duly authorized by proceedings of the Authority; and

WHEREAS, the Authority has found and declares that the issuance of the Series 1993 Certificates and the use of the proceeds thereof to finance the acquisition of the Medical Center and to finance or refinance the costs of the Project will promote the public health needs of the community served by the Authority and will be in furtherance of the public purposes for which the Authority was created and activated; and

WHEREAS, the Trustee has accepted the trusts created by this Indenture and in evidence thereof has joined in the execution hereof;

NOW THEREFORE, THIS INDENTURE WITNESSETH:

GRANTING CLAUSES

That in order to secure the payment of the principal of, redemption premium, if any, and the interest on the Series 1993 Certificates issued and to be issued or secured under this Indenture, according to their tenor and effect, and the performance and observance of each and every one of the covenants and conditions herein and in the Series 1993 Certificates contained, and for and in consideration of the premises and of the acceptance by the Trustee of the trusts hereby created, and of the purchase or acceptance of the Series 1993 Certificates by the respective owners thereof, and also for and in consideration of the sum of $1.00 to it duly paid by the Trustee at or before the execution and delivery of this Indenture, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the Series 1993 Certificates are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, the Authority has pledged, assigned and set over, and by these presents does pledge, assign and set over all to the extent and upon the conditions herein set forth, unto the Trustee and its successors in trust and assigns forever, to have and to hold, all of the Authority's right, title and interests in, to and under the following described property, rights and interests (hereinafter sometimes referred to collectively as the "Trust Estate"), to wit:

I.

All right, title and interest of the Authority in and to the Agreement, except for the Authority's rights to payment of fees and expenses and to indemnification pursuant to Sections 4.03 and 8.04 of the Agreement.

## II.

All right, title and interest of the Authority in and to the Promissory Note, including the payments to be made thereunder.

## III.

All moneys and securities held by the Trustee in any and all of the funds and accounts established under this Indenture.

## IV.

Any and all other property from time to time hereafter by delivery or by writing conveyed, mortgaged, pledged, assigned or transferred as and for additional security hereunder by the Authority or by anyone on its behalf or with its written consent to the Trustee, which is hereby authorized to receive any and all such property at any and all times and to hold and apply the same subject to the terms hereof.

TO HAVE AND TO HOLD, all and singular, the Trust Estate unto the Trustee and its successors and assigns forever.

BUT IN TRUST NEVERTHELESS for the equal and proportionate benefit and security of the Series 1993 Certificates issued hereunder and secured by this Indenture, without preference, priority or distinction as to participation in the lien, benefit and protection hereof of any one certificate over any other or from the others by reason of priority in the issue or negotiation thereof or by reason of the date or the date of maturity thereof, or for any other reason whatsoever (except as expressly provided in this Indenture), so that each and all such Series 1993 Certificates shall have the same right, lien and privilege under this Indenture and shall be equally secured hereby, with the same effect as if the same had all been made, issued and negotiated simultaneously with the delivery hereof.

PROVIDED, FURTHER, HOWEVER, and these presents are upon the condition that, if the Authority or the Institution shall pay, cause to be paid or provide for the payment to the owners of the Series 1993 Certificates the principal, interest and premium (if any) to become due in respect thereof at the times and in the man- ner stipulated therein and herein and shall keep, perform and observe all and singular the covenants and agreements in such certificates and in this Indenture expressed to be kept, performed and observed by or on the part of the Authority or the Institu- tion, then this Indenture and the rights hereby granted shall cease, determine and be discharged, but shall otherwise be and remain in full force and effect.

AND IT IS HEREBY COVENANTED AND AGREED by and among the Authority, the Trustee and the purchasers and owners from time to time of the Series 1993 Certificates, that the terms and conditions upon which such certificates are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become the owners thereof, and the trusts and conditions upon which the Trust Estate is to be held and disposed of, which said trusts and conditions the Trustee hereby accepts, are as follows:

ARTICLE I

DEFINITIONS

Section 101. Certain Definitions. Whenever the following terms are used in this Indenture, such terms, unless the context or use clearly indicates another or different meaning or intent, shall have the meanings as follows:

"Act" shall mean the Hospital Authorities Law of the State of Georgia (O.C.G.A. Section 31-7-70, et seq.), as amended.

"Affiliate" shall mean, with respect to a specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For purposes of this definition, (i) "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the power to appoint and remove its directors, the ownership of voting securities, by contract, membership or otherwise; and (ii) the terms "controlling" or "controlled" have meanings correlative to the foregoing.

"Agreement" shall mean the Loan Agreement, dated as of November 1, 1993, between the Institution and the Authority, as supplemented or amended.

"Authenticating Agent" shall mean the Trustee or the bank or trust company meeting the qualifications of an Authenticating Agent under this Indenture and which accepts the responsibilities and duties of the Authenticating Agent hereunder pursuant to a written agreement among the Trustee, the Authority, the Institution and the bank or trust company agreeing to serve as Authenticating Agent.

"Authority Board" shall mean the then current governing board of the Authority.

"Authorized Authority Representative" shall mean the Chairman or Vice Chairman or any other individual designated to the Trustee by a certificate signed by an authorized officer of the Authority to represent the Authority, which certificate shall set forth the specimen signature of such person or persons.

"Authorized Institution Representative" shall mean the person or persons at the time designated in writing to the Trustee and the Authority by a certificate signed by an authorized officer of the Institution to represent the Institution, which certificate shall set forth the specimen signature of such person or persons.

"Authorized Newspaper" shall mean a newspaper printed in English and customarily published at least once a day at least five (5) days a week and generally circulated in East Point, Georgia.

"Bond Counsel" shall mean an attorney or firm of attorneys of national recognition experienced in the field of municipal bonds whose opinions are generally accepted by purchasers of municipal bonds and who is selected or employed by the Institution and not unacceptable to the Trustee or the Authority.

"Business Day" shall mean any day excluding Saturday, Sunday or any day which shall be in the City of Atlanta, Georgia, or the City of New York, New York, as specified, a legal holiday or a day on which banking institutions or dealers who are members of the National Association of Securities Dealers, Inc., are authorized or obligated by law or administrative order to close.

"Certificate Year" shall mean the period commencing on July 2 of each year and ending on July 1 of the following calendar year.

"Certificateholder" or "holder of Series 1993 Certificates" or "holders" or "registered owners" shall mean the Person(s) in whose name(s) any Series 1993 Certificate or Series 1993 Certificates are registered in accordance with this Indenture.

"Certified Resolution of the Authority" shall mean a copy of a resolution certified by the Secretary or Assistant Secretary of the Authority, under its corporate seal, to have been duly adopted by the Authority Board and to be in full force and effect on the date of such certification.

"Code" shall mean the Internal Revenue Code of 1986, as amended, and any temporary, final or proposed Treasury Regulations relating thereto.

"Construction Fund" shall mean the fund of that name created under Section 402 hereof.

"Cost" or "Costs" in connection with the Project, shall mean all expenses which are properly chargeable thereto under Generally Accepted Accounting Principles or which are incidental to the financing, acquisition, construction and installation of the Project, or which are otherwise financeable under the Act, including, without limiting the generality of the foregoing:

(a)  amounts payable to contractors and costs incident to the award and performance of contracts;

(b)   cost of labor, materials, facilities and services furnished by the Institution or the Authority, and their employees or others, materials and supplies purchased by the Institution or any Affiliate thereof or the Authority or others, and permits and licenses obtained by the Institution, the Authority or others;

(c)   engineering, architectural, legal, accounting and other professional and advisory fees, as well as the fees and expenses of the Trustee;

(d)   printing, engraving, placement fees and costs, underwriting discount and other expenses of financing and issuing the Series 1993 Certificates, including any fees or other expenses charged by the Authority;

(e)   costs, fees and expenses in connection with the acquisition of real and personal property or rights therein, including premiums for title insurance;

(f)   costs of equipment purchased by the Institution;

(g)   amounts required to repay temporary loans or advances of the Institution's funds made to finance Costs of the Project;

(h)   costs of prior site improvements, including demolition, performed by the Institution in anticipation of the Project; and

(i)   amounts necessary to fund the Funds and Accounts created under this Indenture, including but not limited to the Debt Service Reserve Fund and the Sinking Fund.

In the case of a refunding or redemption of any obligations, "Cost" or "Costs" includes, without limiting the generality of the foregoing, the items listed in (c) and (d) above, advertising and other expenses related to the redemption of such obligations.

"Counsel" shall mean an attorney-at-law or firm thereof (who or which may be counsel for the Institution or the Authority), not unsatisfactory to the Trustee.

"County" shall mean Fulton County, Georgia.

"Cushion Ratio" shall mean the ratio determined by dividing (a) the sum of all cash and liquid investment accounts, whether classified as current or non-current assets (including board-designated funds) held by the Combined Group (as defined in the Master Indenture) for their various purposes (excluding amounts held under this Indenture) by (b) the Maximum Annual Debt Service.

(a) Government Obligations;

(b)  bonds, debentures, notes or other evidence of
indebtedness issued or guaranteed by any of the following
federal agencies and provided such obligations are backed by
the full faith and credit of the United States of America
(stripped securities are only permitted if they have been
stripped by the agency itself):

    1.  <u>U.S. Export-Import Bank</u> (Eximbank)
Direct obligations or fully guaranteed certificates of
beneficial ownership

    2.  <u>Farmers Home Administration</u> (FHA)
Certificates of beneficial ownership

    3.  <u>Federal Financing Bank</u>

    4.  <u>Federal Housing Administration Debentures</u> (FHA)

    5.  <u>General Services Administration</u>
Participation certificates

    6.  <u>Government National Mortgage Association</u> (GNMA
or "Ginnie Mae")
GNMA - guaranteed mortgage-backed bonds
GNMA - guaranteed pass-through obligations

    7.  <u>U.S. Maritime Administration</u>
Guaranteed Title XI financing

    8.  <u>U.S. Department of Housing and Urban
Development</u> (HUD)
Project Notes
Local Authority Bonds
New Communities Debentures - U.S. government guaranteed
  debentures
U.S. Public Housing Notes and Bonds - U.S. government
guaranteed public housing notes and bonds

(c)  bonds, debentures, notes or other evidence of
indebtedness issued or guaranteed by any of the following
non-full faith and credit U.S. government agencies (stripped
securities are only permitted if they have been stripped by
the agency itself):

    1.  <u>Federal Home Loan Bank System</u>
Senior debt obligations

    2.  <u>Federal Home Loan Mortgage Corporation</u> (FHLMC
or "Freddie Mac")
Participation Certificates
Senior debt obligations

3.   <u>Federal National Mortgage Association</u> (FNMA or
"Fannie Mae)
Mortgage-backed securities and senior debt obligations

4.   <u>Student Loan Marketing Association</u> (SLMA or
"Sallie Mae")
Senior debt obligations

5.   <u>Resolution Funding Corp.</u> (REFCORP) obligations

(d)   money market funds registered under the Federal
Investment Company Act of 1940, whose shares are registered
under the Federal Securities Act of 1933, and having a rating
by Standard & Poor's Corporation ("S&P") of AAAm-G; AAAm; or
AAm.

(e)   certificates of deposit secured at all times by
collateral described in (a) or (b) above, issued by
commercial banks, savings and loan associations or mutual
savings banks, provided that the collateral must be held by a
third party and the Trustee must have a perfected first
security interest in the collateral.

(f)   certificates of deposit, savings accounts, deposit
accounts or money market deposits which are fully insured by
the FDIC or FSLIC.

(g)   investment agreements with entities which are rated
by Moody's Investors Service, Inc. ("Moody's") and S&P in one
of the two highest rating categories (excluding any numerical
or other modifiers within a rating category) assigned by such
agencies .

(h)   commercial paper rated, at the time of purchase,
"Prime-1" by Moody's and "A-1" or better by S&P.

(i)   bonds or notes issued by any state or municipality
which are rated by Moody's and S&P in one of the two highest
rating categories (excluding any numerical or other modifiers
within a rating category) assigned by such agencies.

(j)   federal funds or bankers acceptances with a maximum
term of one year of any bank which has an unsecured,
uninsured and unguaranteed obligation rating of "Prime-1" or
"A3" or better by Moody's and "A-1" or "A" or better by S&P.

(k)   repurchase agreements (a "Repo") providing for the
transfer of securities from a dealer bank or securities firm
(seller/borrower) to the Trustee (buyer/lender), and the
transfer of cash from the Trustee to the dealer bank or
securities firm with an agreement that the dealer bank or
securities firm will repay the cash plus a yield to the
Trustee in exchange for the securities at a specified date
provided that:

1.   Repos must be between the Trustee and a dealer bank or securities firm which is either (a) a primary dealer on the Federal Reserve reporting dealer list which is rated "A" or better by S&P and Moody's, or (b) a bank rated "A" or above by S&P and Moody's;

2.   The repo must be in writing and must include the following:  (a) securities which are acceptable for transfer are:  (1)  direct U.S. governments, or (2) federal agencies backed by the full faith and credit of the U.S. government (and FNMA and FHLMC); (b) the term of the repo may not exceed 30 days; (c) the collateral must be delivered to the Trustee (if such trustee is not supplying the collateral) or third party acting as agent for the Trustee (if such trustee is supplying the collateral) before or simultaneously with payment; and (d) the securities must be valued weekly, marked-to-market at current market price plus accrued interest and the value of collateral must be equal to 104% of the amount of cash transferred by the Trustee to the dealer bank or security firm under the repo plus accrued interest.  If the value of securities held as collateral is below 104% of the value of the cash transferred by the Trustee, then additional cash or acceptable securities must be transferred.  If, however, the securities used as collateral are FNMA or FHLMC, then the value of collateral must equal 105%; and

3.   The Trustee receives a legal opinion to the effect that such Repo meets guidelines under state law for legal investment of public funds.

"Loan" shall mean the loan made by the Authority to the Institution pursuant to the Agreement.

"Loan Default" shall mean a Loan Default as defined in Section 8.01 of the Agreement.

"Loan Obligation" shall mean the Institution's obligation to repay the Loan as evidenced by the Promissory Note.

"Loan Payment" shall mean a payment by the Institution pursuant to the Promissory Note of amounts which correspond to interest, or principal and interest, on account of debt service on the Series 1993 Certificates, plus related fees and expenses, all in accordance with the terms of Article V of the Agreement and the Promissory Note.

"Loan Payment Date" shall mean the periodic dates set forth in the Promissory Note for the payment of Loan Payments.

"Master Indenture" shall mean the Master Trust Indenture, dated as of November 1, 1993, between and among the Initial Obligated Group and the Master Trustee, as the same may be supplemented from time to time.

"Master Trustee" shall mean Bank South, N.A., Atlanta, Georgia, and its successors and assigns.

"Medical Center" shall mean the medical facilities to be acquired by the Institution from the Authority which are located in East Point, Georgia, and known as "South Fulton Medical Center".

"Optional Prepayment Price" shall mean the amount which the Institution may pay the Trustee in order to prepay in whole or in part its Loan.

"Outstanding" in connection with any Series 1993 Certificates, shall mean as of the time in question, all Series 1993 Certificates which have been authenticated and delivered hereunder, except:

(a)  Series 1993 Certificates theretofore cancelled or required to be cancelled pursuant to Article II hereof;

(b)  Series 1993 Certificates deemed to have been paid in accordance with Article XI hereof; and

(c)  Series 1993 Certificates in substitution for which other Certificates have been authenticated and delivered pursuant to Article II hereof.

In determining whether the registered owners of a requisite aggregate principal amount of Series 1993 Certificates outstanding have concurred in any request, demand, authorization, direction, notice, consent or waiver under the provisions of this Indenture, Series 1993 Certificates which are held by or on behalf of the Institution or any Affiliate thereof shall be disregarded for the purposes of any such determination unless all such Series 1993 Certificates are so owned.

"Paying Agent" shall mean (i) any bank or trust company meeting the qualifications of the Paying Agent under this Indenture and which accepts the responsibilities and duties of the Paying Agent hereunder pursuant to a written agreement among the Trustee, the Authority, the Institution and the bank or trust company agreeing to serve as the Paying Agent or (ii) the Trustee.

"Person" shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, a trust, an unincorporated organization, a governmental unit or an agency, political subdivision or instrumentality thereof or any other group or organization of individuals.

"Plans and Specifications" shall mean description of the Project attached as Exhibit A to the Agreement, as amended from time to time.

"Principal Account" shall mean the account of such name established in the Sinking Fund pursuant to Article V hereof.

"Principal and Interest Requirements on Outstanding Series 1993 Certificates" shall mean, for any Certificate Year, the amount required to pay the principal of (whether pursuant to a maturing principal installment or mandatory sinking fund payment requirements applicable thereto) and interest on the Outstanding Series 1993 Certificates becoming due in such Certificate Year.

"Principal Office" when referring to the Trustee, means the office where the Trustee maintains its principal corporate trust office, which office at the date hereof is located at 55 Marietta Street, in Atlanta, Georgia 30303, and when referring to any other Person, means the office thereof designated in writing to the Trustee, the Authority and the Institution, or such other address as may be provided by the Trustee.

"Project" shall mean the acquisition, construction, renovation and installation by the Institution of the improvements to the Medical Center as described in Exhibit "A" to the Agreement.

"Promissory Note" shall mean the promissory note of the Institution, denominated its "1993 Master Note," in the form attached to the First Supplemental Master Indenture, evidencing the Institution's obligation to repay the Loan.

"Purchase Contract" shall mean the Purchase Contract, dated December 1, 1993, among the Authority, the Institution, South Atlanta Diagnostic Cardiology, Inc., South Fulton Medical Center Foundation, Inc., South Fulton Medical Arts Center, Inc., South Fulton Health Care Center, Inc., Georgia International Health Alliance, Inc. and Dean Witter Reynolds Inc., as underwriter of the Series 1993 Certificates.

"Rating Agency" shall mean Standard & Poor's Corporation, Moody's Investors Service, Inc., or Fitch's Investors Service, or any combination thereof, whichever has provided and is maintaining a rating for the Series 1993 Certificates, and shall include their successors and assigns. If any such corporation which has provided a rating for the Series 1993 Certificates shall no longer perform the functions of a securities rating service, such corporation shall thereafter be deemed to refer to any other nationally recognized rating service which provides a rating for the Series 1993 Certificates, as shall be designated by the Institution, upon notice to the Trustee and the Authority.

"Record Date" shall mean the fifteenth (15th) day (whether or not a Business Day) of the calendar month next preceding any interest payment date, Redemption Date or maturity date.

-14-

"Redemption Account" shall mean the account established in the Sinking Fund pursuant to Article V hereof.

"Redemption Date" shall mean each date on which Series 1993 Certificates are to be redeemed pursuant to Article III.

"Redemption Price" with respect to a Series 1993 Certificate, shall mean the principal amount of such Series 1993 Certificate plus the applicable premium, if any, payable upon redemption thereof under Article III of this Indenture.

"Regulatory Body" shall mean and include (a) the United States of America and any department of or corporation, agency or instrumentality heretofore or hereafter created, designated or established by the United States of America, (b) the State, any political subdivision thereof, and any department of or corporation, agency or instrumentality heretofore or hereafter created, designated or established by the State, and (c) any other public or private body (other than the Authority), having or exercising regulatory jurisdiction and authority over the Institution or the Medical Center.

"Reserve Fund" shall mean the fund of such name established pursuant to Article V of this Indenture.

"Reserve Fund Letter of Credit" shall mean an irrevocable letter of credit, line of credit, insurance policy, guaranty or other agreement constituting a credit enhancement which is issued by a bank, trust company, savings and loan association or other institutional lender, insurance company or surety company, in favor of the Trustee as provided in Section 506, and whose obligations are rated not less than the two highest rating categories (excluding any numerical or other modifiers within a rating category) by Moody's Investors Service, Inc. or Standard & Poor's Corporation on the date of issuance of such Reserve Fund Letter of Credit.

"Reserve Requirement" shall mean the least of (A) ten percent (10%) of the aggregate principal amount of the Series 1993 Certificates then Outstanding; (B) one hundred twenty-five percent (125%) of the average annual Principal and Interest Requirements on Outstanding Series 1993 Certificates; or (C) the maximum annual Principal and Interest Requirements on Outstanding Series 1993 Certificates.

"Responsible Officer" shall mean, with respect to the Institution or the Authority, any Person duly appointed as such pursuant to a resolution or other instrument filed with the Trustee.

"State" shall mean the State of Georgia.

"Supplemental Indenture" shall mean any indenture amending or supplementing this Indenture which may be entered into in accordance with the provisions of this Indenture.

"Trustee" shall mean Bank South, N.A., Atlanta, Georgia, a national banking association, and any successor trustee or trustees under this Indenture.

"Trust Estate" shall mean the Trust Estate as defined in the granting clauses of this Indenture.

"Value" shall mean, for the purposes of determining the value of any investment:

(a)  as to investments the bid and asked prices of which are published on a regular basis in The Wall Street Journal (or, if not there, then in The New York Times): the lesser of the cost of such investments or the average of the bid and asked prices for such investments so published on or most recently prior to such time of determination;

(b)  as to investments the bid and asked prices of which are not published on a regular basis in The Wall Street Journal or The New York Times:  the lesser of the cost of such investments or the average bid price at such time of determination for such investments by any two nationally recognized government securities dealers (selected by the Trustee in its absolute discretion) at the time making a market in such investments or the bid price published by a nationally recognized pricing service;

(c)  as to certificates of deposit and bankers acceptances:  the face amount thereof, plus accrued interest; and

(d)  as to any investment not specified above:  the value thereof established by prior agreement between the Institution and the Trustee.

Section 102.  Certain Rules of Interpretation.  Reference to an Article number (e.g. Article IV) or a Section number (e.g. Section 202) shall be construed to be a reference to the designated Article number or Section number hereof unless the context or use clearly indicates another or different meaning or intent.

Except where the context otherwise requires, words importing the singular number shall include the plural number and vice versa, and the masculine, the feminine and the neuter shall include all genders.

Except where the context otherwise requires, any capitalized term used herein and not defined in Section 101 hereof, and defined in Section 1.1 of the Master Indenture, shall have the meaning specified in Section 1.1 of the Master Indenture.

## ARTICLE II

### TERMS, EXECUTION, DELIVERY AND
### REGISTRATION OF SERIES 1993 CERTIFICATES

Section 201.  <u>Designation of Series 1993 Certificates</u>.  The Series 1993 Certificates authorized and issued hereunder shall be designated as the "Tri-City Hospital Authority Revenue Certificates, Series 1993", in the aggregate principal amount of $39,140,000.  The Series 1993 Certificates shall be in substantially the form set forth in Section 203, with such changes, insertions or omissions as may be approved by an officer of the authority prior to the issuance thereof, which approval shall be evidenced by the execution of the Series 1993 Certificates by manual or facsimile signature of such officer as provided herein.  The amount of Series 1993 Certificates that may be issued and outstanding under this Indenture is expressly limited to $39,140,000.  The Series 1993 Certificates issued under this Indenture shall be equally and ratably secured hereunder.

The Series 1993 Certificates are limited obligations of the Authority as provided in Section 701.

Section 202.  <u>Terms of Series 1993 Certificates</u>.  The Series 1993 Certificates shall be issuable in fully registered form in the denomination of $5,000 or any integral multiple thereof.  Each of the Series 1993 Certificates shall be lettered and numbered from R-1 upwards in order of issuance according to the records maintained by the Trustee and may have such other legends or identifying marks as the Trustee or the Authority deem advisable.  The Series 1993 Certificates shall be dated as of November 1, 1993 and shall also bear the date of authentication.  Every Series 1993 Certificate issued in exchange for or upon registration of transfer of a Series 1993 Certificate as originally issued shall bear its date of authentication.

The principal and interest and redemption premium (if any) on the Series 1993 Certificates shall be payable in any coin or currency of the United States of America which at the time of payment is legal tender for payment of public and private debts.  The principal of and redemption premium (if any) on the Series 1993 Certificates are payable only upon presentation and surrender thereof at the Principal Office of the Trustee.  The Series 1993 Certificates shall bear interest (computed on the basis of a 360-day year composed of twelve 30-day months), payable on each interest payment date commencing July 1, 1994, from the interest payment date next preceding the date of authentication of such Series 1993 Certificate to which interest has been paid or provided for, unless the date of authentication of such Series 1993 Certificate is an interest payment date to which interest has been paid or provided for, then from the date of authentication thereof, or unless no interest has been paid on such Series 1993 Certificate, in which case from November 1, 1993

or unless such authentication date shall be after any Record Date and before the next succeeding interest payment date in which case interest shall be paid from the next succeeding interest payment date.

Interest on each Series 1993 Certificate shall be payable on each interest payment date by check or draft mailed on the date on which due to the person in whose name such Series 1993 Certificate is registered on the registration books of the Authority maintained by the Trustee at the close of business on the Record Date, except that any interest not so timely paid or duly provided for shall cease to be payable to the person who is the registered owner of such Series 1993 Certificate (or one or more predecessor Series 1993 Certificates) as of the Record Date, and shall be pay-able to the person who is the registered owner of such Series 1993 Certificate (or of one or more predecessor Series 1993 Certificates) at the close of business on a special record date for the payment of such defaulted interest. Such special record date shall be fixed by the Trustee whenever moneys become avail-able for the payment of such defaulted interest, and notice of the special record date shall be given by first class mail by the Trustee or by or on behalf of the Authority to the owner thereof not less than fifty (50) days prior thereto. Such interest shall be mailed to the registered owner at his address as shown on the bond register maintained by the Trustee on the Record Date. Notwithstanding anything herein to the contrary, in the event that any owner of Series 1993 Certificates in an aggregate principal amount of at least $1,000,000 shall provide the Trustee on or prior to any Record Date with written wire transfer instructions, interest on subsequent interest payment dates shall be paid in accordance with such instructions, until revoked in writing.

The Series 1993 Certificates shall mature on July 1 in each of the years and in the principal amounts set forth below and shall bear interest at the rates per annum as follows:

| Year of Maturity | Principal Amount Maturing | Interest Rate |
|---|---|---|
| 1994 | $   505,000 | 3.40% |
| 1995 | 935,000 | 4.20 |
| 1996 | 975,000 | 4.60 |
| 1997 | 1,020,000 | 4.90 |
| 1998 | 1,070,000 | 5.10 |
| 1999 | 1,125,000 | 5.25 |
| 2000 | 1,185,000 | 5.25 |
| 2001 | 1,245,000 | 5.50 |
| 2002 | 1,315,000 | 5.50 |
| 2003 | 1,385,000 | 5.75 |
| 2016 | 28,380,000 | 6.375 |

Section 203.  Form of Series 1993 Certificates.  (a) The Series 1993 Certificates, the certificate of authentication, the form of assignment and the certificate of validation to be endorsed upon the Series 1993 Certificates, shall be substantially in the following form, with such variations, omissions and insertions as are required to distinguish between the Series 1993 Certificates or otherwise as are required or permitted by this Indenture:

No. R-_____                                                    $_____

UNITED STATES OF AMERICA
STATE OF GEORGIA

TRI-CITY HOSPITAL AUTHORITY
REVENUE CERTIFICATE
SERIES 1993

INTEREST RATE:          MATURITY DATE:              CUSIP:


     FOR VALUE RECEIVED, TRI-CITY HOSPITAL AUTHORITY (the
"Authority"), a public body corporate and politic, created and
existing under the Hospital Authorities Law of the State of
Georgia, O.C.G.A., Section 31-7-70 to 31-7-96, as amended (the
"Act"), hereby promises to pay solely from the sources hereinafter
described to


, or registered assigns, the principal sum of

                                                        DOLLARS

in lawful money of the United States of America, on the date
specified above, upon presentation and surrender of this
certificate at the principal corporate trust office in the City of
Atlanta, Georgia, of Bank South, N.A., Atlanta, Georgia, as
trustee, registrar and paying agent (the "Trustee"), and to pay
interest on said principal sum (computed on the basis of a 360-day
year of twelve 30-day months) at the interest rate per annum
specified above, payable semiannually on the first days of January
and July of each year (each such date an "interest payment date"),
commencing July 1, 1994, from the interest payment date next
preceding the date of authentication of this certificate to which
interest has been paid or provided for, unless the date of
authentication of this certificate is an interest payment date to
which interest has been paid or provided for, in which case from
the date hereof or unless no interest has been paid hereon in
which case from November 1, 1993 or unless such authentication
date shall be after any record date (hereinafter defined) and
before the next succeeding interest payment date in which case
interest shall be paid from the next succeeding interest payment
date.

     The interest payable on any interest payment date will be
paid by first class mail, postage prepaid, mailed on the date on
which due to the person in whose name this certificate is
registered at the close of business on the fifteenth day of the
calendar month next preceding such interest payment date (each
such date, a "Record Date") at the address shown on the
certificate register maintained by the Trustee on such Record Date
except that any interest not so timely paid or duly provided for
shall cease to be payable to the person who is the registered

-21-

owner of this certificate as of the Record Date, and shall be payable to the person who is the registered owner of this certificate at the close of business on a special record date for the payment of such defaulted interest.  Such special record date shall be fixed by the Trustee whenever moneys become available for the payment of such defaulted interest, and notice of the special record date shall be given by first class mail by the Trustee or by or on behalf of the Authority to the owner hereof not less than fifty (50) days prior thereto.  Notwithstanding anything in this paragraph to the contrary, in the case of any owner of certificates of this series in an aggregate principal amount of at least $1,000,000 who shall, on or before any Record Date, supply the Trustee with written wire transfer instructions, interest on such interest payment date and on subsequent interest payment dates shall be paid by wire transfer in accordance with such instructions until such instructions are revoked.

The principal of this certificate is payable only upon presentation and surrender of this certificate at the principal corporate trust office of the Trustee, in Atlanta, Georgia, or its successor or successors, in any coin or currency of the United States of America which at the time of such payment is legal tender for public and private debts.

The terms and provisions of this certificate and definitions of certain terms used herein are continued on the reverse side hereof and such continued terms and provisions and definitions shall for all purposes have the same effect as though fully set forth at this place.

This certificate shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until this certificate shall have been authenticated and registered upon the registration books kept by the Trustee for that purpose, which authentication shall be evidenced by the manual execution of the certificate hereon by the Trustee.

It is hereby recited and certified that all acts, conditions and things required by the Constitution and laws of the State of Georgia to happen, exist and be performed precedent to and in the issuance of this certificate, the execution of the Indenture and Agreement, and the adoption of the Resolution by the Authority have happened, do exist and have been performed as so required. This certificate is issued with the intent that the laws of the State of Georgia shall govern its enforcement and construction.

IN WITNESS WHEREOF, Tri-City Hospital Authority has caused this certificate to be executed by the facsimile signature of its Chairman and a facsimile of its official seal to be imprinted hereon and attested by the facsimile signature of its Secretary.

(SEAL)

TRI-CITY HOSPITAL
AUTHORITY

By:_____
       Chairman

Attest:

_____
Secretary

CERTIFICATE OF AUTHENTICATION

Date of Authentication:

This certificate is one of the Series 1993 Certificates described in the within mentioned Indenture.

Bank South, N.A.
as Trustee

By:_____
     Authorized Signatory

* * * * *

-23-

VALIDATION CERTIFICATE

STATE OF GEORGIA

COUNTY OF FULTON

The undersigned Clerk of the Superior Court of Fulton County, State of Georgia, DOES HEREBY CERTIFY that this certificate was validated and confirmed by judgment of the Superior Court of Fulton County, Georgia, Civil Action File Number _____, on the ____ day of December, 1993, and that no intervention or objection was filed in the proceedings validating the same and that no appeal from said judgment of validation has been taken.

Witness my facsimile signature and seal of the Superior Court of Fulton County, Georgia.

Clerk, Superior Court, Fulton County, Georgia

(S E A L)

*  *  *  *  *

[THE FOLLOWING SHALL BE PRINTED ON THE BACK OF
EACH SERIES 1993 CERTIFICATE]

This certificate is one of a duly authorized series of
revenue anticipation certificates in the aggregate principal
amount of $39,140,000, all of like tenor, except as to authentica-
tion dates, numbers, denominations, interest rates and maturities
(the "Series 1993 Certificates"), issued pursuant to the Act and a
resolution of the Authority duly adopted on November 30, 1993 (the
"Resolution"), for the purpose of providing funds to (i) finance
the cost of the acquisition by South Fulton Medical Center, Inc.,
a Georgia nonprofit corporation (the "Institution"), of certain
medical facilities from the Authority located in the City of East
Point, Georgia and known as "South Fulton Medical Center" (the
"Medical Center"), (ii) finance the cost of making certain capital
improvements to the Medical Center and to reimburse the
Institution for the cost of previously made improvements to the
Medical Center, (iii) fund the Debt Service Reserve Fund created
pursuant to the Indenture in an amount equal to the Reserve
Requirement (as defined in the Indenture), and (iv) pay all or a
portion of the cost of issuance of the Series 1993 Certificates.

In order to finance the acquisition of the Project, finance
or reimburse the Institution for the cost of the acquisition,
construction and installation of the Project, fund the Debt
Service Reserve Fund and pay all or a portion of the costs of
issuing the Series 1993 Certificates, the Authority and the
Institution have entered into a Loan Agreement, dated as of
November 1, 1993 (the "Agreement"), under which the Authority has
loaned the proceeds of the sale of the Series 1993 Certificates to
the Institution and the Institution has delivered to the Authority
its 1993 Master Note, dated the date of issuance of the
Series 1993 Certificates (the "Promissory Note"), which is issued
and secured under the Master Trust Indenture, dated as of
November 1, 1993 (the "Master Indenture"), as supplemented,
between and among the Institution, South Fulton Medical Center
Foundation, Inc., South Fulton Medical Arts Center, Inc., South
Atlanta Diagnostic Cardiology, Inc., South Fulton Health Care
Center, Inc., Georgia International Health Alliance, Inc. and Bank
South, N.A., as trustee (the "Master Trustee"), under which the
Institution has agreed to pay to the Authority such amounts as
will be fully sufficient to pay the principal, redemption premium
(if any) and interest on the Series 1993 Certificates as the same
become due and payable.

As security for the payment of the Series 1993 Certificates,
all right, title and interest of the Authority in (i) the Agree-
ment (except for certain rights reserved by the Authority under
the terms of the Indenture), (ii) the Promissory Note, and
(iii) all amounts on deposit from time to time in the funds and
accounts established under the Indenture (collectively, the "Trust
Estate"), have been assigned to the Trustee under the Indenture
and pledged to the payment of the principal, redemption premium
(if any) and interest on the Series 1993 Certificates.  The

-25-

Series 1993 Certificates are not secured by a lien on the Medical Center.

THIS CERTIFICATE DOES NOT CONSTITUTE AN INDEBTEDNESS OR OBLIGATION OF THE STATE OF GEORGIA OR ANY COUNTY, MUNICIPAL CORPORATION OR POLITICAL SUBDIVISION THEREOF, INCLUDING FULTON COUNTY, GEORGIA AND THE CITIES OF EAST POINT, HAPEVILLE AND COLLEGE PARK.  THIS CERTIFICATE IS PAYABLE BY THE AUTHORITY SOLELY FROM THE TRUST ESTATE PLEDGED TO THE PAYMENT THEREOF UNDER THE INDENTURE.  NO OWNER OF THIS CERTIFICATE SHALL EVER HAVE THE RIGHT TO COMPEL THE EXERCISE OF THE TAXING POWER OF THE STATE OF GEORGIA OR ANY POLITICAL SUBDIVISION THEREOF, INCLUDING FULTON COUNTY, GEORGIA AND THE CITIES OF EAST POINT, HAPEVILLE AND COLLEGE PARK, TO PAY THIS CERTIFICATE OR THE INTEREST HEREON OR ANY OTHER COST RELATING HERETO OR TO ENFORCE PAYMENT HEREOF AGAINST ANY PROPERTY OF THE STATE OF GEORGIA OR ANY POLITICAL SUBDIVISION THEREOF.  NO RECOURSE SHALL BE HAD FOR THE PAYMENT OF THE PRINCIPAL OF OR INTEREST ON THIS CERTIFICATE AGAINST ANY OFFICER, DIRECTOR OR MEMBER OF THE AUTHORITY.

Reference is hereby made to the Indenture and the Master Indenture for a description of the moneys pledged and assigned to the payment of the Promissory Note and the Series 1993 Certificates, the provisions, among others, with respect to the nature and extent of the security for the Series 1993 Certificates, the rights, duties and obligations of the Authority, the Trustee and the owners of the Series 1993 Certificates, and the terms under which the Indenture, the Master Indenture, the Agreement and the Promissory Note may be supplemented or amended.

The person in whose name this certificate is registered on the registration books kept by the Trustee shall be deemed to be the owner of this certificate for all purposes.  This certificate may be registered as transferred only upon the registration books kept for that purpose at the principal corporate trust office of the Trustee by the registered owner hereof in person, or by his attorney duly authorized in writing, upon presentation and sur- render to the Trustee of this certificate duly endorsed for registration of transfer or accompanied by an assignment duly executed by the registered owner or his attorney duly authorized in writing, and thereupon a new registered certificate, of the same series, in the same aggregate principal amount and of the same maturity shall be issued to the transferee in exchange therefor.

The Series 1993 Certificates are issuable in the form of fully registered certificates in the denomination of $5,000 or any integral multiple thereof and may be exchanged by the registered owner hereof or his duly authorized attorney upon presentation at the principal corporate trust office of the Trustee for an equal aggregate principal amount of Series 1993 Certificates of the same maturity and series and in any authorized denominations in the manner, subject to the conditions and upon payment of charges, if any, provided in the Indenture.

The Series 1993 Certificates are subject to extraordinary optional redemption (i) in whole at any time or in part on any interest payment date in the event of damage to, or destruction or condemnation of, any part of the Medical Center, to the extent that the proceeds of any insurance or condemnation awards relating thereto are not applied to the repair, reconstruction or restoration of the Medical Center and the Institution elects to use such unapplied proceeds to redeem Series 1993 Certificates, or (ii) in part on any interest payment date to the extent that moneys remain in the Construction Fund established under the Indenture after payment of all costs of acquisition, construction, installation and equipping of the Project, in any such case at a redemption price equal to the principal amount of the Series 1993 Certificates to be redeemed plus accrued interest thereon to the redemption date.

The Series 1993 Certificates maturing on or after July 1, 2004 may be redeemed prior to their respective maturities at the option of the Institution, either in whole at any time or in part on any interest payment date not earlier than July 1, 2003, in the manner and subject to the provisions of the Indenture, at the respective redemption prices (expressed as percentages of the principal amount) set forth below, together with accrued interest to the redemption date:

| Redemption Dates (both dates inclusive) | Redemption Price |
|---|---|
| July 1, 2003 to June 30, 2004 | 102% |
| July 1, 2004 to June 30, 2005 | 101 |
| July 1, 2005 and thereafter | 100 |

The Series 1993 Certificates maturing on July 1, 2016, are subject to mandatory sinking fund redemption prior to maturity, in accordance with the Indenture, in part (the actual Series 1993 Certificates of such maturity or portions thereof to be redeemed to be selected by lot in such manner as may be designated by the Trustee) at a redemption price equal to the principal amount thereof, plus accrued interest to the redemption date, in the following principal amounts and on the dates set forth below (the 2016 amount to be paid rather than redeemed):

| July 1 of the Year | Principal Amount |
|---|---|
| 2004 | $ 1,470,000 |
| 2005 | 1,560,000 |
| 2006 | 1,660,000 |
| 2007 | 1,765,000 |
| 2008 | 1,880,000 |
| 2009 | 2,000,000 |
| 2010 | 2,125,000 |
| 2011 | 2,260,000 |
| 2012 | 2,405,000 |
| 2013 | 2,555,000 |
| 2014 | 2,725,000 |
| 2015 | 2,895,000 |
| 2016 | 3,080,000 |

The Indenture permits the Institution to acquire and deliver to the Trustee Series 1993 Certificates of the appropriate maturities to satisfy such mandatory redemption requirements.

Except in the case of mandatory sinking fund redemption, any partial redemption of the Series 1993 Certificates shall be made in the order of maturity as selected by the Institution.  If less than all of the Series 1993 Certificates of one maturity shall be called for redemption, the particular certificates of such maturity or portions thereof in the case of certificates in principal amounts greater than $5,000 to be redeemed shall be selected by lot in such manner as may be designated by the Trustee.  Any such redemption, either in whole or in part, shall be made following notice to the owners of the affected Series 1993 Certificates mailed not less than thirty (30) and not more than sixty (60) days prior to the redemption date and otherwise in the manner and upon the terms and conditions provided in the Indenture.  If this certificate or any portion hereof shall be called for redemption, interest shall cease to accrue on this certificate or such portion hereof from and after the date fixed for redemption unless default shall be made in payment of the redemption price hereof upon presentation and surrender hereof; and, except as otherwise provided in the Indenture, the owner of this certificate shall not be entitled to any rights under the Indenture except the right to receive payment, and this certificate or the portion hereof so called shall not be considered to be outstanding.  Upon partial redemption of this certificate, the Trustee shall authenticate and deliver to the owner hereof, at the expense of the Authority, a new certificate or certificates of authorized denominations in the aggregate principal amount equal to the unredeemed portion of this certificate and of the same maturity.

*    *    *    *

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto_____

please print or typewrite name and address

_____
(including postal zip code) and social security or tax identification number of assignee

the within certificate and all rights thereunder, hereby constituting and appointing_____

_____
attorney to transfer this certificate on the certificate registration book kept for such purpose by the Trustee, with full power of substitution in the premises.

Dated_____          _____

Signature Guaranteed          Notice:  The signature to this assignment must correspond with the name as it appears upon the face of the within certificate in every particular, without alteration or enlargement or any change whatever.

_____

[End of Form of Series 1993 Certificate]

Section 204.  <u>Execution of Series 1993 Certificates</u>.  The Series 1993 Certificates may be executed by the manual or facsimile signature of the Chairman or Vice Chairman of the Authority and the official seal of the Authority shall be impressed or imprinted thereon and attested by the manual or facsimile signature of the Secretary or Assistant Secretary of the Authority.  The validation certificate to be printed on the Series 1993 Certificates shall be executed by the manual or facsimile signature of the Clerk or Deputy Clerk of the Superior Court of Fulton County and the official seal of said Court shall be impressed or imprinted thereon.  In case any officer who shall have signed or sealed any of the Series 1993 Certificates shall cease to be such officer before the Series 1993 Certificates so executed and sealed actually have been authenticated and delivered by the Trustee, such Series 1993 Certificates shall nevertheless be authenticated and delivered as herein provided and may be issued as though the person who executed or sealed such Series 1993 Certificates had not ceased to be such officer.  Any Series 1993 Certificates may be executed and sealed on behalf of the Authority by such persons as at the actual time of the execution of such Series 1993 Certificates, shall be the proper officers of the Authority, although at the date of such Series 1993 Certificates, such persons may not have been officers of the Authority.

Section 205.  <u>Authentication of Series 1993 Certificates</u>.  Only those Series 1993 Certificates which have endorsed thereon a certificate of authentication substantially in the form hereinbefore set forth, duly executed by an authorized officer or employee of the Trustee, shall be entitled to any right or benefit under this Indenture.  No Series 1993 Certificate shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been manually executed by an authorized officer or employee of the Trustee, and such certificate of authentication upon any Series 1993 Certificate shall be conclusive evidence that the Series 1993 Certificate so authenticated has been duly issued under this Indenture and that the owner thereof is entitled to the benefits of this Indenture.

Before the Trustee authenticates any of the Series 1993 Certificates, there shall be delivered to the Trustee the following:

(1)  a written request by the Chairman or Vice Chairman of the Authority requesting the Trustee to authenticate and deliver such certificates upon the receipt by the Trustee for the account of the Authority of a specified sum; and directing the Trustee to apply such sum in accordance with the provisions of Section 401 of this Indenture;

(2)  a copy, certified by the Secretary of the Authority, of the resolution adopted by the Authority authorizing the issuance and delivery of the Series 1993 Certificates and the execution, delivery and performance of this Indenture and the Agreement;

(3)  executed counterparts of this Indenture and the Agreement and the original Promissory Note;

(4)  copies, certified by the Secretary or Assistant Secretary of the Institution, of the Master Indenture and the First Supplemental Master Indenture;

(5)  a certificate of the Clerk or Deputy Clerk of the Superior Court of Fulton County certifying that the judgment of validation has been entered with respect to the Series 1993 Certificates;

(6)  the opinion of King & Spalding, Atlanta, Georgia, bond counsel, to the effect that the Series 1993 Certificates are valid and binding obligations of Authority and the interest thereon is not includable in gross income for federal tax purposes;

(7)  an executed counterpart of the Non-Arbitrage Certificate of the Authority; and

(8)  the opinion of Alston & Bird, counsel to the Institution and the Initial Obligated Group, to the effect that (i) the Note, the Agreement, the Original Master Indenture and the First Supplemental Master Indenture are valid and binding obligations of the Institution or the Initial Obligated Group, as the case may be, and (ii) the title to the Medical Center, all licenses with respect thereto and all contracts heretofore entered into by the Authority with respect thereto have been transferred or assigned to the Institution.

Section 206.  Mutilated, Lost, Stolen or Destroyed Certificates.  If any Series 1993 Certificate shall become mutilated, the Trustee, in its discretion and at the expense of the owner of such Series 1993 Certificate, shall authenticate and deliver a new Series 1993 Certificate of like tenor in exchange and substitution for such mutilated Series 1993 Certificate.  If any Series 1993 Certificate shall be lost, stolen or destroyed, evidence of such loss, theft or destruction may be submitted to the Authority and the Trustee, and if such evidence shall be satisfactory to both and indemnity of a character and in an amount satisfactory to them, respectively, is given, the Authority, at the expense of the owner, shall cause a new Series 1993 Certificate of like tenor registered in the name of such owner to be executed by the Authority and authenticated and delivered to the registered owner by the Trustee.  Any Series 1993 Certificate issued to replace a lost, stolen or destroyed Series 1993 Certificate may, in the discretion of the Authority, bear a legend showing that such Series 1993 Certificate was issued to replace a lost, stolen or destroyed Series 1993 Certificate.

Section 207. <u>Registration</u>. The Trustee shall keep a registration book for and on behalf of the Authority to record the registration and registration of transfer of the Series 1993 Certificates of each series. Such registration and registration of transfer shall be accomplished by the procedure and with the effect provided in Section 208.

Section 208. <u>Ownership, Transfer and Exchange of Certificates</u>. The Authority and the Trustee may deem and treat the person in whose name each Series 1993 Certificate is registered as shown on the registration books kept by the Trustee as the absolute owner of such Series 1993 Certificate for all purposes hereunder. Upon surrender for registration of transfer of any Series 1993 Certificate at the Principal Office of the Trustee, the Trustee shall authenticate and deliver to the transferee or transferees a new Series 1993 Certificate or Series 1993 Certificates for a like aggregate principal amount of Series 1993 Certificates of the same series and of the same maturity and interest rate. Series 1993 Certificates may be exchanged at the principal office of the Trustee for a like aggregate principal amount of Series 1993 Certificates of authorized denominations of the same series and of like interest rate and maturity. Every Series 1993 Certificate presented or surrendered for registration of transfer or exchange shall be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Trustee duly executed by the registered owner thereof or his attorney duly authorized in writing. No charge shall be made to any Series 1993 Certificate owner for the privilege of registration of transfer or exchange, but any Series 1993 Certificate owner requesting any such exchange or registration of transfer shall pay any tax or other governmental charge required to be paid with respect thereto.

ARTICLE III

REDEMPTION OF SERIES 1993 CERTIFICATES BEFORE MATURITY

Section 301.  Optional Redemption of Series 1993 Certificates.  The Series 1993 Certificates maturing on and prior to July 1, 2003 are not subject to redemption prior to maturity except as provided in Section 302.  The Series 1993 Certificates maturing on and after July 1, 2004 may be redeemed at the option of the Institution, in whole at any time or in part on any interest payment date, in any year not earlier than July 1, 2003, from any moneys which may be made available for such purpose upon payment of the respective redemption prices (expressed as percentages of the principal amount of the Series 1993 Certificates to be redeemed) set forth below, together with accrued interest to the Redemption Date:

| Period During Which Redeemed (both dates inclusive) | Redemption Price |
|---|---|
| July 1, 2003 to June 30, 2004 | 102% |
| July 1, 2004 to June 30, 2005 | 101 |
| July 1, 2005 and thereafter | 100 |

Section 302.  Extraordinary Redemption.  The Series 1993 Certificates (or portions of any such certificates) are subject to optional redemption (i) in whole at any time or in part on any interest payment date in the event of any damage to, or destruction or condemnation of, any part of the Medical Center to the extent that the proceeds of any insurance or condemnation award relating thereto are not applied to the repair, reconstruction or restoration of the Medical Center and the Institution elects to use such unapplied proceeds for an optional redemption pursuant to this Section 302(i), or (ii) in part on any interest payment date from moneys remaining in the Construction Fund after the completion of the Project and the payment of all Costs relating thereto.  Any amounts deposited in the Redemption Account in the Sinking Fund representing proceeds of insurance or condemnation awards or moneys transferred from the Construction Fund shall be used by the Trustee at the written direction of the Institution to redeem Series 1993 Certificates on the earliest possible date after giving the required notice of redemption.  If called for redemption prior to maturity in accordance with this Section 302, the Series 1993 Certificates may be redeemed in whole or in part (and if in part in inverse order of maturity) at a redemption price equal to the principal amount of each such Series 1993 Certificate to be redeemed plus accrued interest thereon to the Redemption Date.

Section 303.  Mandatory Sinking Fund Redemption.  The Series 1993 Certificates maturing on July 1, 2016, are subject to mandatory sinking fund redemption prior to maturity, in part, at a redemption price equal to the principal amount thereof, plus

accrued interest to the Redemption Date, in the following
principal amounts and on the dates set forth below (the 2016
amount to be paid rather than redeemed):

| July 1 of the Year | Principal Amount |
|---|---|
| 2004 | $ 1,470,000 |
| 2005 | 1,560,000 |
| 2006 | 1,660,000 |
| 2007 | 1,765,000 |
| 2008 | 1,880,000 |
| 2009 | 2,000,000 |
| 2010 | 2,125,000 |
| 2011 | 2,260,000 |
| 2012 | 2,405,000 |
| 2013 | 2,555,000 |
| 2014 | 2,725,000 |
| 2015 | 2,895,000 |
| 2016 | 3,080,000 |

At its option, to be exercised on or before the forty-fifth
day next preceding any sinking fund Redemption Date, the Institu-
tion may (a) deliver to the Trustee for cancellation Series 1993
Certificates of the appropriate series and maturity in any
aggregate principal amount desired or (b) receive a credit in
respect of its sinking fund redemption obligation for any
Series 1993 Certificates of the appropriate series and maturity
which prior to said date have been redeemed (otherwise than
through the operation of this Section) and cancelled by the
Trustee and not theretofore applied as a credit against any prior
mandatory sinking fund redemption obligation.  Each Series 1993
Certificate so delivered or previously redeemed shall be credited
by the Trustee at 100% of the principal amount thereof on the
obligation of the Institution on such sinking fund Redemption Date
and any excess shall be credited on future sinking fund redemption
obligations in chronological order, and the principal amount of
such Series 1993 Certificates to be redeemed by operation of the
sinking fund shall be accordingly reduced.

Section 304.  Selection of Certificates to be Redeemed.  If
less than all of the Series 1993 Certificates of a particular
series are to be redeemed (except pursuant to Sections 302 and
303), the particular Series 1993 Certificates to be redeemed shall
be selected in inverse order of maturity.  If less than all of the
Series 1993 Certificates of a single maturity of a series are to
be redeemed, any Series 1993 Certificate of such maturity and
series outstanding in a denomination of greater than $5,000 may be
called for partial redemption in the principal amount of $5,000 or
any integral multiple thereof, and for the purpose of determining
the Series 1993 Certificates of each series to be redeemed or the
amount of any such certificate in a principal amount in excess of
$5,000 to be partially redeemed, the Trustee shall treat the
entire principal amount of the Series 1993 Certificates of such

maturity and series then outstanding as if the same were separate
Series 1993 Certificates of $5,000 each and shall assign separate
numbers to each for the purpose of determining the particular
Series 1993 Certificates or the principal amount of any such
certificate in a denomination greater than $5,000 to be redeemed
by lot.

Section 305.  <u>Partially Redeemed Series 1993 Certificates</u>.
In case any Series 1993 Certificate shall be redeemed in part
only, upon the surrender of such certificate for partial redemp-
tion, the Trustee shall authenticate and shall deliver or cause to
be delivered to or upon the written order of the owner thereof a
Series 1993 Certificate or Certificates of the same series and
maturity, in any authorized denominations, for the unredeemed por-
tion of such partially-redeemed certificate.  Any Series 1993
Certificate, a portion of which has been redeemed as contemplated
by this Section, shall be considered to be outstanding only in an
amount reduced by the portion thereof so redeemed whether or not
it has been surrendered as aforesaid.

Section 306.  <u>Notice of Redemption</u>.  Notice of redemption
(unless waived) shall be given by first class mail, postage
prepaid, mailed not less than 30 nor more than 60 days prior to
the Redemption Date to the owners of Series 1993 Certificates to
be redeemed at the addresses appearing in the registration books
maintained by the Trustee.  The Institution and the Trustee may
agree as to any additional or other means of giving notices of
redemption with respect to the Series 1993 Certificates.  Provided
that notice is mailed as provided in this Section, neither failure
of any owner of a Series 1993 Certificate to receive such notice,
nor any defect therein, shall affect the validity of the proceed-
ings to redeem any Series 1993 Certificate as to which proper
notice was mailed.

Section 307.  <u>Effect of Redemption Call</u>.  Notice having been
given in the manner and under the conditions hereinabove provided,
and moneys for the payment of the Redemption Price being held by
the Trustee, all as provided in this Indenture, the Series 1993
Certificates so called for redemption shall, on the Redemption
Date designated in such notice, become and be due and payable at
the Redemption Price provided for redemption of such certificates
on such date, interest on the Series 1993 Certificates so called
for redemption shall cease to accrue, such Series 1993
Certificates shall cease to be entitled to any lien, benefit or
security under this Indenture, and the owners of such Series 1993
Certificates shall have no rights in respect thereof except to
receive payment of the Redemption Price thereof.

Section 308.  <u>Cancellation and Destruction of Series 1993 Certificates</u>.  All Series 1993 Certificates paid, redeemed or purchased, either at or before maturity, when such payment, redemption or purchase is made, shall thereupon be cancelled by the Trustee and shall not be reissued but shall thereupon be destroyed by the Trustee and a record thereof furnished periodically to the Authority and the Institution.

ARTICLE IV

CUSTODY, INVESTMENT AND APPLICATION
OF PROCEEDS OF SERIES 1993 CERTIFICATES;
CONSTRUCTION FUND

Section 401. <u>Application of Proceeds of Series 1993 Certificates</u>. The proceeds of the sale of the Series 1993 Certificates, including accrued interest thereon from date thereof to date of delivery, shall be applied as follows:

(a)   the sum of $333,876.81 as directed by the Institution in a letter of instructions or by the Authority in the Authentication Order required by Section 205(1) equal to accrued interest on the Series 1993 Certificates shall be deposited into the Interest Account of the Sinking Fund and applied to the payment of a portion of the interest due on the Series 1993 Certificates on July 1, 1994;

(b)   the sum of $3,279,625.00 equal to the Reserve Requirement on the Series 1993 Certificates shall be deposited in the Debt Service Reserve Fund;

(c)   the sum of $17,541,608.28 shall be paid to the Authority as the purchase price for the Medical Center; and

(d)   the remaining moneys shall be deposited into the 1993 General Account of the Construction Fund as shall be directed by the Institution in a letter of instructions or by the Authority in the Authentication Order required by Section 205(1).

Section 402. <u>Construction Fund</u>. (a) A special trust fund is hereby created and established with the Trustee and designated as the "Tri-City Hospital Authority-South Fulton Medical Center Construction Fund". There is hereby established within the Construction Fund one account which shall be designated as the "1993 General Account". The Trustee, at the direction of the Authority or the Institution, may establish other accounts or sub-accounts in the Construction Fund from time to time. The Trustee shall deposit into the Construction Fund (and into the appropriate accounts in the Construction Fund) the amounts designated as provided in Section 401(d). All moneys on deposit in the Construction Fund shall be subject to a first and prior lien in favor of the owners of the Series 1993 Certificates until disbursed as provided in this Indenture for Costs of the Project or for interest on the Series 1993 Certificates during the period of construction of the Project.

(b)  All disbursements from the Construction Fund (other than with respect to capitalized interest on the Project or disbursements made as provided in Sections 402(d) or 402(e)) shall be made by the Trustee, but before it shall make any such disbursements, there shall be filed with the Trustee:

(1)   A requisition for such disbursement in the form attached hereto as Exhibit "A", stating each amount to be paid, the account from which such payment is to be made and the name of the person, firm or corporation to whom payment thereof is due (or in the case of reimbursement of the Institution for Costs paid by the Institution, that such amount is due to the Institution), and whether or not payment is being requested for an item relating to work performed on the Project or for materials or equipment relating thereto; and

(2)   A Certificate executed by the Authorized Institution Representative attached to the requisition and certifying:

(i)  that an obligation in the stated amount has been incurred by the Institution, and that the same is a proper charge against the Construction Fund and has not been the subject of a previous requisition from the Construction Fund, specifying the purpose and circumstances of such obligation in reasonable detail and to whom such obligation is owed, and that a bill or statement of account for such obligation, or a copy thereof, is on file with the Institution;

(ii)   that the Institution has no notice of any vendors', mechanics', materialman's or other liens or rights to liens, chattel mortgages, conditional sales contracts or any security interest (other than Permitted Liens as defined in the Master Indenture), which should be satisfied or discharged before such payment is made;

(iii)   that such requisition contains no item representing payment on account or any retained percentages which the Institution is, at the date of such certificate, entitled to retain, or on account of any portion of the Project for which a Certificate of Need or other similar approval of a Regulatory Body is required and not yet obtained;

(iv)   to the extent that the item on account of which payment is requested relates to work performed on the Project or material, supplies or equipment relating thereto, a certificate of the Authorized Institution Representative that insofar as such obligation was incurred for work, materials, supplies or equipment in connection with the Project, such work was actually performed, or such materials, supplies or equipment were actually installed in or about the Medical Center or delivered at the Medical Center for that purpose; and

(v)  to the extent such requisition requests payment of (or reimbursement of the Institution for) costs of issuance of the Series 1993 Certificates, the amount so requested, together with all amounts previously requisitioned for such purpose and the underwriters' discount on the Series 1993 Certificates, does not exceed 2% of the proceeds of the Series 1993 Certificates.

(c)  The Trustee is authorized to transfer from the Construction Fund to the Interest Account in the Sinking Fund (or reimburse the Institution for amounts paid pursuant to the Promissory Note and deposited in such account in the Sinking Fund) amounts sufficient to pay (or to reimburse the Institution for) interest on the portion of the Series 1993 Certificates issued to finance Costs of the Project upon receipt of instructions or a schedule of such disbursements from an Authorized Institution Representative, together with a certificate of such Authorized Institution Representative to the effect that the amounts requested in such instructions or schedule do not exceed interest on the portion of the Series 1993 Certificates issued to finance Costs of the Project.

(d)  Upon the occurrence of an Event of Default and the acceleration of the Series 1993 Certificates as provided in Section 801, the Trustee shall transfer all moneys on deposit in the Construction Fund (including all accounts therein) to the Sinking Fund.

Section 403.  Establishment of Completion Date.  Promptly upon completion of the Project, the Institution shall deliver to the Trustee a certificate signed by the Authorized Institution Representative certifying the following:

(i)  the date on which the acquisition, construction, renovation, installation and equipping of such Project was completed substantially in accordance with the Plans and Specifications therefor;

(ii)  that no claim or claims exist out of which a lien based on furnishing labor or materials exists or might exist, except for which moneys are on deposit in the Construction Fund or are available to the Institution sufficient to make payment of the full amount which might in any event be payable in order to satisfy such claim or claims; and

(iii)  the amount (if any) which should be retained in the Construction Fund to pay Costs of the Project not yet due and payable or determinable (the "Retained Amount").

Simultaneously with the filing of the foregoing certifications, there shall be transferred by the Trustee from the Construction Fund to the Redemption Account of the Sinking Fund all moneys then on deposit in the Construction Fund less the Retained Amount, which moneys shall be used to redeem the Series 1993 Certificates as provided in Section 302 hereof after giving the required notice of redemption.

Section 404.  <u>Availability of Requisitions and Certificates</u>. All requisitions submitted to the Trustee pursuant to this Article shall be retained by the Trustee, subject at all times to inspection by any officer of the Authority, any owner of a Series 1993 Certificate, or the Institution, upon reasonable request.

Section 405.  <u>Investment of Construction Fund Moneys</u>.  Moneys in the Construction Fund may be invested, pending their disbursement or use, as provided in Article VI hereof.

## ARTICLE V

## CREATION OF CERTAIN FUNDS

Section 501. <u>Sinking Fund</u>. There is hereby created and established with the Trustee a special trust fund for the benefit of the owners of the Series 1993 Certificates which is designated the "Tri-City Hospital Authority-South Fulton Medical Center Sinking Fund" (the "Sinking Fund"), which shall be held in trust by the Trustee separate and apart from all other deposits or funds. There are hereby created within the Sinking Fund three (3) accounts to be designated as follows: the "Interest Account," the "Principal Account" and the "Redemption Account." The Authority may establish from time to time additional accounts or sub-accounts in the Sinking Fund.

There shall be deposited into the Interest Account in the Sinking Fund amounts paid by the Institution pursuant to the Promissory Note with respect to interest on the Series 1993 Certificates. There shall be deposited into the Principal Account in the Sinking Fund amounts paid by the Institution pursuant to the Promissory Note with respect to the payment of the principal of the Series 1993 Certificates on any maturity date. There shall be deposited into the Redemption Account in the Sinking Fund amounts paid by the Institution pursuant to the Promissory Note with respect to any redemption of the Series 1993 Certificates, together with any amounts transferred from the Construction Fund as provided in Article IV hereof for redemption of Series 1993 Certificates. There shall also be deposited with the Trustee in the Sinking Fund moneys from the Construction Fund as provided in Article IV and from the Debt Service Reserve Fund as provided in this Article V.

Section 502. <u>Arrangements for Payment</u>. The Trustee shall, from time to time, on or prior to each date on which principal, redemption premium (if any) or interest on the Series 1993 Certificates becomes due, withdraw from the appropriate accounts in the Sinking Fund and deposit in trust with itself, as Paying Agent, or with any other paying agents which may be appointed hereunder, sufficient moneys for paying the principal of, redemption premium (if any) and interest on the Series 1993 Certificates as the same become due. All moneys which the Trustee shall have withdrawn from the Sinking Fund and deposited with any Paying Agent shall be held in trust for the owners of the Series 1993 Certificates. The Trustee shall make such payment arrangements as will assure, to the extent moneys are available to the Trustee, prompt payment of the principal of, redemption premium (if any) and interest on the Series 1993 Certificates.

Section 503.  Nonpresentment of Series 1993 Certificates.  In the event any Series 1993 Certificate shall not be presented for payment when the principal thereof becomes due, either at maturity, or at the date fixed for redemption thereof, or otherwise, if moneys sufficient to pay any such Series 1993 Certificate shall have been made available to the Trustee for the benefit of the owner thereof, all liability of the Authority to the owner thereof for the payment of such Series 1993 Certificate shall forthwith cease, determine and be completely discharged, and thereupon it shall be the duty of the Trustee to hold such funds, without liability for interest thereon, for the benefit of the owner of such Series 1993 Certificate who shall thereafter be restricted exclusively to such funds for any claim of whatever nature on his part under this Indenture with respect to such Series 1993 Certificates.  Such funds need not be invested, but if invested, shall be invested only in obligations of the United States Treasury with maturities of 30 days or less.

Any moneys so deposited with and held by the Trustee not so applied to the payment of Series 1993 Certificates within two years after the date on which the same shall have become due shall be repaid by the Trustee to the Institution, and thereafter owners of Series 1993 Certificates shall be entitled to look only to the Institution for payment, and then to the extent of the amount so repaid, and all liability of the Trustee with respect to such money shall thereupon cease, and the Institution shall not be liable for any interest thereon and shall not be regarded as a trustee of such money.

Section 504.  Repayment to the Institution from Certain Funds.  Any amounts remaining in the Sinking Fund, the Construction Fund, the Debt Service Reserve Fund or any other fund or account created hereunder after payment in full of the principal of, premium, if any, and interest on the Series 1993 Certificates, the fees, charges and expenses of the Trustee and all other amounts required to be paid hereunder, shall be paid upon written direction of the Authorized Institution Representative as soon as practicable to the Institution.

Section 505.  Debt Service Reserve Fund.

(a)  There is hereby created and established with the Trustee a special trust fund for the benefit of the owners of the Series 1993 Certificates which is designated as the "Tri-City Hospital Authority - South Fulton Medical Center Debt Service Reserve Fund" (the "Debt Service Reserve Fund"), which shall be held in trust by the Trustee separate and apart from all other deposits or funds.  On the date of issuance of the Series 1993 Certificates, the Trustee shall deposit into the Debt Service Reserve Fund an amount equal to the Reserve Requirement as provided in Section 401(b) hereof.  The Trustee shall deposit into the Debt Service Reserve Fund amounts paid to the Trustee pursuant to Section 5.05 of the Agreement. Moneys in the Debt Service Reserve Fund shall only be applied to the payment of principal of,

redemption premium (if any) and interest on the Series 1993
Certificates, except as otherwise described in this Section.  If,
on any date on which payment of the principal, redemption premium
(if any) or interest on the Series 1993 Certificates is due,
whether at maturity, upon redemption prior to maturity, upon
acceleration, or otherwise, and the amount on deposit in the
Sinking Fund is insufficient to make such payment, the Trustee
shall transfer without any further instruction or direction from
the Debt Service Reserve Fund to the Sinking Fund amounts
sufficient to pay any such deficiency.

(b)  Moneys in the Debt Service Reserve Fund may be invested
as provided in Section 602.  Any earnings or other income from the
investment of moneys in the Debt Service Reserve Fund shall be
deposited in the Debt Service Reserve Fund, unless such deposit
shall cause the moneys and the Value of investments in the Debt
Service Reserve Fund to exceed the Reserve Requirement, in which
case such interest or other income shall be deposited in the
Interest Account of the Sinking Fund; provided, however, that
prior to the Completion Date, income or other earnings on moneys
in the Debt Service Reserve Fund, to the extent not required to be
retained therein in order to maintain the money and Value of
investments in such Debt Service Reserve Fund in an amount equal
to the Reserve Requirement, shall be deposited to the credit of
the 1993 General Account of the Construction Fund.  In addition,
the Trustee shall determine annually the Value of any investments
held in the Debt Service Reserve Fund not less than ten days and
not prior to fifteen days prior to each July 1.  If, after any
such valuation, the Value of such investments, together with any
other moneys in the Debt Service Reserve Fund aggregates less than
the Reserve Requirement, then not less than ten days prior to the
next succeeding interest payment date, the Trustee shall notify
the Institution of such deficiency.  In the event that the moneys
and the Value of investments in the Debt Service Reserve Fund
shall exceed the Reserve Requirement, then on the next succeeding
interest payment date, the Trustee shall transfer to the Interest
Account of the Sinking Fund or to the Institution, as the
Institution shall direct, the amount of any such excess.  In
addition, in connection with any redemption or defeasance, in
whole or in part, of the Series 1993 Certificates, if, on the date
of such redemption or defeasance, the moneys and Value of
investments in the Debt Service Reserve Fund exceeds the Reserve
Requirement (taking into account such redemption or defeasance),
such excess shall be transferred on the date of such redemption or
defeasance at the direction of the Institution for any purpose for
which the Institution has delivered to the Trustee an opinion of
Bond Counsel to the effect that such use of the excess moneys is
authorized or permitted under the terms of the Act and will not,
by itself, result in the interest on the Series 1993 Certificates
becoming includable in gross income for federal income tax
purposes.  Upon an acceleration of the Series 1993 Certificates,
the Trustee is hereby authorized and directed to transfer all
moneys in the Debt Service Reserve Fund first to the Interest
Account of the Sinking Fund to the extent required to pay interest

then due and unpaid on the Series 1993 Certificates, then to the Principal Account of the Sinking Fund.  The Trustee is hereby authorized, without any further direction or instruction from the Institution, to liquidate investments in the Debt Service Reserve Fund to the extent required to make disbursements therefrom as provided in this Section.

Section 506.  <u>Substitution of Reserve Fund Letter of Credit</u>. In lieu of depositing moneys in the Debt Service Reserve Fund, or in substitution for moneys previously deposited in the Debt Service Reserve Fund, the Institution may provide the Trustee with a Reserve Fund Letter of Credit.  Any Reserve Fund Letter of Credit and the terms of reimbursement of the issuer thereof shall conform to the following requirements:

(a)  Any Reserve Fund Letter of Credit shall be in an amount equal to the Reserve Requirement and shall be payable in one or more draws upon presentation by the Trustee of a site draft accompanied by its certificate that it then holds insufficient funds to make a required payment of principal or interest on the Series 1993 Certificates.  The draws shall be payable within two days of presentation of such site draft.

(b)  Any Reserve Fund Letter of Credit shall have a term not less than five years from its date of issuance.  The Institution shall, at least 6 months prior to the expiration of such Reserve Fund Letter of Credit, deposit in the Debt Service Reserve Fund an amount sufficient to cause the Value of cash and investments on deposit in the Debt Service Reserve Fund to equal the Reserve Requirement, or shall deposit in the Debt Service Reserve Fund another Reserve Fund Letter of Credit meeting the requirements of this Indenture. Any Reserve Fund Letter of Credit shall permit a draw in full not less than two weeks prior to the expiration or termination thereof if such Reserve Fund Letter of Credit has not been replaced or renewed.  The Trustee is hereby directed to make such draw, if applicable, in accordance with the terms of any such Reserve Fund Letter of Credit.

(c)  The obligation to reimburse the issuer of a Reserve Fund Letter of Credit for any fees, expenses, claims or draws upon such Reserve Fund Letter of Credit shall be subordinate to the payment of debt service on the Series 1993 Certificates.  If the rating of the issuer of a Reserve Fund Letter of Credit falls below Standard & Poor's "A", the Institution shall be required to replace such Reserve Fund Letter of Credit with another Reserve Fund Letter of Credit meeting the requirements hereof, or fund the Debt Service Reserve Fund in an amount such that the Value of cash and investments on deposit therein equals the Reserve Requirement.

(d)   In connection with furnishing any Reserve Fund
Letter of Credit to the Trustee, at the time of furnishing
such Reserve Fund Letter of Credit to the Trustee, the
Institution shall also furnish to the Trustee (i) an opinion
of counsel to the issuer of such Reserve Fund Letter of
Credit, satisfactory to the Trustee, to the effect that such
Reserve Fund Letter of Credit is a valid and binding
obligation of the issuer thereof, enforceable in accordance
with its terms, subject to usual bankruptcy exceptions,
(ii) if such Reserve Fund Letter of Credit is issued by a
banking institution other than a domestic commercial bank, an
opinion of counsel to the issuer of such Reserve Fund Letter
of Credit to the effect that no registration of such Reserve
Fund Letter of Credit is required under the Securities Act of
1933, as amended, and (iii) an opinion of counsel to the
Authority that the issuer of the Reserve Fund Letter of
Credit does not have a lien on the Trust Estate hereunder or
under the Master Indenture which ranks prior or superior to
the lien securing the payment of amounts due with respect to
the Series 1993 Certificates.  Upon receipt of such Reserve
Fund Letter of Credit and the other items required by this
Section 506, the Trustee shall, to the extent that moneys had
previously been deposited with the Trustee in the Debt
Service Reserve Fund, transfer such moneys (or any
investments held therein) to or upon the order of the
Institution, as the Institution shall direct.

ARTICLE VI

SECURITY FOR DEPOSITS; INVESTMENTS

Section 601.  Security for Deposits.  Any and all moneys received by the Authority under the provisions of this Indenture, the Agreement or the Promissory Note shall be deposited as received by the Authority with the Trustee and shall be trust funds under the terms hereof and shall not be subject to any lien or attachment by any creditor of the Authority or the Institution; provided, however, that the foregoing shall not be deemed to prohibit the Authority from receiving and retaining any amounts paid to it pursuant to the provisions of the Agreement with respect to payments of fees and expenses and indemnification payments.

Section 602.  Investments.  Subject to the provisions of any law then in effect to the contrary, the Trustee shall invest to the extent reasonably possible all moneys on deposit in the funds and accounts created and established hereby and held by it in Investment Securities specified from time to time by oral (promptly confirmed in writing) or written direction from an Authorized Institution Representative; provided, however, that moneys in the Debt Service Reserve Fund shall be invested in Investment Securities maturing not more than five (5) years after the date of such investment.  Such investments shall be made so as to mature or be subject to redemption (without penalty) at the option of the owner thereof on or prior to the date or dates that the Institution anticipates that moneys therefrom will be required.  The Trustee may trade with itself or its affiliates in the purchase and sale of such Investment Securities and the Trustee shall not be liable or responsible for any loss resulting from any such investment.  Such Investment Securities shall be registered in the name of the Trustee except as may be otherwise contemplated by any other provision of this Indenture.  The Trustee may invest in Investment Securities through its own trust department or bond department and moneys may be deposited in time deposits of, or certificates of deposit issued by, the Trustee or its affiliates if such deposits or certificates of deposit otherwise qualify as Investment Securities.  The Trustee shall not be responsible for any loss on any investment of moneys pursuant to this Indenture.

The Trustee shall, without further direction from the Institution, sell such Investment Securities as and when required to make any payment for the purpose for which such investments are held.  Each investment shall be credited to the fund or account for which it is held, subject to any other provision of this Indenture directing some other credit or disposition thereof, and the income, profits and revenues on such Investment Securities shall be credited to the fund or account for which such investment was made unless otherwise provided in this Indenture.

-46-

ARTICLE VII

PARTICULAR COVENANTS

Section 701. <u>Payment of Principal, Interest and Premium</u>.
The Authority covenants that it will promptly pay, or cause to be
paid, the principal of and the interest on the Series 1993
Certificates at the places, on the dates and in the manner
provided herein and in the Series 1993 Certificates, according to
the true intent and meaning thereof, but only from the Trust
Estate.   The Authority further covenants that it will faithfully
perform at all times all of its covenants, undertakings and agree-
ments contained in this Indenture, the Agreement, in the
Series 1993 Certificates or in any proceedings of the Authority
pertaining thereto.   The Authority represents and warrants that it
is duly authorized under the Constitution and laws of the State of
Georgia, particularly the Act, to issue the Series 1993
Certificates authorized hereby and to enter into this Indenture
and the Agreement and to pledge the Trust Estate in the manner and
to the extent herein set forth; that all action on its part for
the issuance of the Series 1993 Certificates initially issued
hereunder and the adoption of this Indenture has been duly and
effectively taken; and that the Series 1993 Certificates in the
hands of the registered owners thereof are and will be valid and
enforceable limited obligations of the Authority according to
their terms.

Neither the State of Georgia nor any political subdivision
thereof shall in any event be liable for the payment of the
principal of or interest on the Series 1993 Certificates, or for
the performance of any pledge, mortgage, obligation or agreement
of any kind whatsoever that may be undertaken by the Authority,
and none of the Series 1993 Certificates shall be construed to
constitute a debt or a pledge of the faith and credit of the State
of Georgia or any political subdivision thereof, including Fulton
County, within the meaning of any constitutional or statutory
provision whatsoever, and shall not directly, indirectly or
contingently obligate the State of Georgia or any of its political
subdivisions to levy or to pledge any form of taxation whatever
therefor or to make any appropriation for the payment thereof; nor
shall any breach of any such pledge, mortgage, obligation or
agreement impose any pecuniary liability upon any member, officer,
employee or agent of the Authority, or any charge upon the general
credit of the Authority, or any pecuniary liability upon the
Authority payable from any moneys, revenues, payments, and
proceeds other than the Trust Estate.

Section 702. <u>Institution Covenants</u>.  Pursuant to the Agree-
ment, the Institution has entered into certain covenants with
respect to the operation and maintenance relating to the Medical
Center and other matters and is required to provide the Trustee
and the Authority with certain certificates, opinions and reports
from time to time.  The Trustee and the Authority are entitled to

rely on such opinions, reports and certificates with respect to the matters covered thereby without further investigation. Reference is hereby made to the Agreement and to the Master Indenture for a detailed statement of the covenants and obligations of the Institution thereunder. The Authority agrees that the Trustee, in its name or in the name of the Authority, may enforce all rights of the Authority and all covenants and obligations of the Institution under and pursuant to the Agreement (other than the rights of the Authority to payment of its fees and expenses, including those of its counsel, and to indemnification) and the Master Indenture for and on behalf of the owners of the Series 1993 Certificates, whether or not the Authority is in default thereunder.

Section 703. <u>Covenant Against Encumbrances</u>. The Authority covenants that it will not voluntarily create any lien, encumbrance or charge upon the Agreement or the Promissory Note or the payments made pursuant thereto, except the pledge, lien and charge for the security of the Series 1993 Certificates hereby created.

Section 704. <u>Recording and Filing</u>. The Authority covenants that upon reasonable written notice at the specific request of the Institution or the Trustee, provided sufficient funds are provided by the Institution or the Trustee to pay all costs and expenses, if any, reasonably incurred by the Authority in connection therewith, it will cause any financing statements furnished by the Institution or the Trustee to be kept recorded and filed by the Trustee in such manner and in such places as the Institution or the Trustee shall direct in order fully to preserve and protect the security of the owners of the Series 1993 Certificates and the rights of the Trustee hereunder.

Section 705. <u>Further Instruments and Actions</u>. The Authority covenants that, at the request of the Institution or the Trustee and provided sufficient funds are provided by the Institution or the Trustee to pay all costs and expenses (if any) reasonably incurred by the Authority in connection therewith, it will execute and deliver such further instruments or take such further actions as may be required to carry out the purposes of this Indenture and the Agreement.

Section 706. <u>Arbitrage Covenant</u>. In reliance upon the covenant of the Institution in Section 4.02 of the Agreement, the Authority agrees that it shall not take or cause, or fail to take or cause, any action which may cause interest on the Series 1993 Certificates to become includable in gross income for federal income tax purposes or which would render the interest on any of the Series 1993 Certificates subject to Georgia income taxation. Without limiting the generality of the foregoing, the Authority agrees that it will take all actions reasonably requested by the Institution to comply with the provisions of Section 148 of the Code, including particularly Section 148(f) of the Code; provided, however, that the Institution and not the Authority or the Trustee shall be responsible for the computation of all amounts required

-48-

to be paid pursuant to Section 148 of the Code and for directing the Trustee to pay such amounts as and when the same are due and payable.

Section 707.   [Intentionally Omitted].

## ARTICLE VIII

### EVENTS OF DEFAULT AND REMEDIES

Section 801.   Events of Default; Acceleration of Maturity.
Any one or more of the following events shall be an "event of
default" under this Indenture:

(a)  failure to make payment of the principal or Redemp-
tion Price of any Series 1993 Certificate when the same shall
become due and payable, either at maturity or by proceedings
for redemption or otherwise;

(b)  failure to make payment of any installment of
interest on any Series 1993 Certificate when same shall
become due and payable;

(c)  the occurrence of a Loan Default;

(d)  failure of the Authority to duly and punctually
perform any other of the covenants, conditions, agreements
and provisions on its part contained in the Series 1993
Certificates or in this Indenture, which failure shall
continue for 60 days after written notice specifying such
default and requiring the same to be remedied has been given
to the Authority and the Institution by the Trustee;
provided, however, if the failure stated in such notice can-
not be corrected within the applicable period, the Trustee
will not unreasonably withhold its consent to an extension of
such time if it is possible to correct such failure and cor-
rective action is instituted by the Authority within the ap-
plicable period and is diligently pursued until such failure
is corrected; or

(e)  an "Event of Default" shall occur under Section 7.1
of the Master Indenture.

If such an event of default shall occur, then in each and every
such case the Trustee may, and (i) upon the written request of the
owners of 25% of the outstanding principal amount of Series 1993
Certificates affected by each event of default, or (ii) upon the
occurrence of an event of default described in Section 801(e), the
Trustee shall, upon receiving indemnity or security satisfactory
to it, proceed to protect and enforce its rights and the rights of
the owners of the Series 1993 Certificates by a suit, action or
special proceeding in equity or at law, by mandamus or otherwise,
either for the specific performance of any covenant or agreement
contained herein or in aid or execution of any power herein
granted or for any enforcement of any proper legal or equitable
remedy as the Trustee, being advised by Counsel, shall deem most
effectual to protect and enforce the rights aforesaid.

Upon the happening of an event of default, then and in every such case, the Trustee may (subject to the next sentence), and (i) upon written request of the owners of at least 25% of the outstanding principal amount of the Series 1993 Certificates or (ii) upon the occurrence of an event of default described in Section 801(e), the Trustee shall (subject to the next sentence), by notice in writing delivered to the Authority and the Institution, declare the principal of all Series 1993 Certificates then outstanding and the interest accrued thereon to be immediately due and payable.  The Trustee shall give notice of any such declaration as soon as practicable to the Master Trustee by telephone or telecopy, promptly confirmed in writing.

The right of the Trustee or the owners of not less than 25% of the Series 1993 Certificates to make any such declaration as aforesaid, however, is subject to the condition that if, at any time after such declaration, but before the Series 1993 Certificates shall have been paid in full, all overdue installments of interest upon such certificates, together with interest on such overdue installments of interest to the extent permitted by law, and the reasonable and proper charges, expenses and liabilities of the Trustee, and all other sums then payable by the Authority under the Indenture (except the principal of, and interest accrued since the next preceding interest date on, the Series 1993 Certificates due and payable solely by virtue of such declaration) shall either be paid by or for the account of the Authority or provision satisfactory to the Trustee shall be made for such payment, all defaults under the Series 1993 Certificates or under this Indenture (other than the payment of principal and interest due and payable solely by reason of such declaration) shall be made good or be secured to the satisfaction of the Trustee or provision deemed by the Trustee to be adequate shall be made therefor, then and in every such case the owners of 25% of the outstanding principal amount of the Series 1993 Certificates, by written notice to the Authority, the Institution and the Trustee, may rescind such declaration and annul such default in its entirety or, if the Trustee shall have acted upon direction of the owners of not less than 25% of the outstanding principal amount of the Series 1993 Certificates, unless there shall have been delivered to the Trustee written direction to the contrary by the owners of 25% of the outstanding principal amount of the Series 1993 Certificates, the Trustee may rescind such declaration and annul such default in its entirety, but no such rescission or annulment shall extend to or affect any subsequent default or impair or exhaust any right or power consequent thereon.  The Trustee shall give notice of any such rescission to the Master Trustee.

Upon any such acceleration, all moneys in the Debt Service Reserve Fund and the Construction Fund shall be transferred first to the Interest Account of the Sinking Fund, to the extent required to pay interest on the Series 1993 Certificates then due and unpaid, then to the Principal Account of the Sinking Fund.  In lieu of or in addition to a declaration of acceleration, the

Trustee may also exercise any other right or remedy available to it at law or in equity, including the appointment of a receiver to the extent permitted by law or any other right or remedy available under the Act or the Uniform Commercial Code of the State of Georgia.

Section 802. <u>Notice of Default</u>. The Trustee shall, immediately upon an event of default described in Section 801(a) or (b) hereof, and within 30 days after the occurrence of any other event of default, mail to the owners of the Series 1993 Certificates and the Master Trustee notice of all events of default known to the Trustee unless such defaults shall have been cured before the giving of such notice; provided that except in the case of default in the payment of principal of (or premium, if any) or interest on any of the Series 1993 Certificates, the Trustee shall be protected in withholding such notice from the owners of the Series 1993 Certificates if and so long as the board of directors, the executive committee or a trust committee of directors or responsible officers of the Trustee in good faith determines that the withholding of such notice is in the best interests of the owners of the Series 1993 Certificates.

Section 803. <u>Termination of Proceedings by Trustee</u>. In case any proceedings taken by the Trustee on account of any default shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee, then and in every case the Authority, the Trustee, the Institution and the owners of the Series 1993 Certificates shall be restored to their former positions and rights hereunder, and all rights, remedies and powers of the Trustee shall continue as though no such proceeding had been taken.

Section 804. <u>Right of Certificate Owners to Control Proceedings</u>. Anything in this Indenture to the contrary notwithstanding, but subject to the last paragraph of Section 801, the owners of a majority of the outstanding principal amount of the Series 1993 Certificates shall have the right, by an instrument in writing executed and delivered to the Trustee, to direct the method and place of conducting all remedial proceedings to be taken by the Trustee hereunder in respect of the Series 1993 Certificates; provided that such direction shall not be otherwise than in accordance with law and the Trustee shall be indemnified to its satisfaction against the costs, expenses and liabilities which may be incurred therein or thereby.

Section 805. <u>Right of Certificate Owners to Institute Suit</u>. No owner of any of the Series 1993 Certificates shall have any right to institute any suit, action or proceeding in equity or at law for the execution of any trust hereunder, or for any other remedy hereunder or on the Series 1993 Certificates unless (a) such owner previously shall have given to the Trustee written notice of an event of default as hereinabove provided, (b) the owner, or owners, of 25% of the outstanding principal amount of the Series 1993 Certificates shall have made written request of

-52-

the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinabove granted, or to institute such action, suit, or proceeding in its name; (c) there shall have been offered to the Trustee security and indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby; and (d) the Trustee shall have refused or neglected to comply with such request within a reasonable period of time; and such notification, request, offer of indemnity and refusal or neglect are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Indenture or for any other remedy hereunder. The parties hereto intend that no one or more owners of the Series 1993 Certificates shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all owners of the outstanding Series 1993 Certificates.

Nothing in this Article contained shall, however, affect or impair the right of any owner of a Series 1993 Certificate, which is absolute and unconditional, to enforce the payment of the principal of and interest on such owner's Series 1993 Certificates out of the moneys provided for such payment, or the obligation of the Authority to pay the same out of the sources pledged hereto, at the time and place expressed herein.

Section 806. <u>Suits by Trustee</u>. All rights of action under this Indenture, or under any of the Series 1993 Certificates, enforceable by the Trustee, may be enforced by it without the possession of any of the Series 1993 Certificates, or the production thereof on the trial or other proceeding relative thereto, and any such suit, or proceeding, instituted by the Trustee shall be brought in its name for the ratable benefit of the owners of the Series 1993 Certificates affected by such suit or proceeding, subject to the provisions of this Indenture.

Section 807. <u>Remedies Cumulative</u>. No remedy herein conferred upon or reserved to the Trustee or to the owners of the of the Series 1993 Certificates is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

Section 808. <u>Waiver of Default</u>. No delay or omission of the Trustee or of any of the owners of any Series 1993 Certificate to exercise any right or power shall be construed to be a waiver of any such default, or an acquiescence therein; and every power and remedy granted by this Article to the Trustee and the owners of

Case 1:02-cv-01244-JOF   Document 1-1   Filed 05/08/02   Page 51 of 69

the Series 1993 Certificates, respectively, may be exercised from time to time, and as often as may be deemed expedient.

Section 809. <u>Application of Moneys After Default</u>. The Authority covenants that if an event of default shall happen and shall not have been remedied, the Trustee shall apply all moneys, securities and funds received by the Trustee pursuant to any right given or action taken under the provisions of this Article as follows and in the following order:

(i) Expenses of Trustee -- to the payment of the reasonable and proper fees, charges, expenses and liabilities of the Trustee (including collection fees);

(ii) Principal or Redemption Price and Interest -- to the payment of the interest and principal or Redemption Price then due on the Series 1993 Certificates, as follows:

(a) Unless the principal of all Series 1993 Certificates shall have become due and payable, all such moneys shall be applied

<u>first</u>: to the payment to the persons entitled thereto of all installments of interest then due, in the order of the maturity of such installments, and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference;

<u>second</u>: to the payment to the persons entitled thereto of the unpaid principal of any of the Series 1993 Certificates which shall have become due (other than Series 1993 Certificates called for redemption for the payment of which moneys are held pursuant to the provisions of this Indenture), in the order of their due dates, with interest on such Series 1993 Certificates from the respective dates upon which they became due, and, if the amount available shall not be sufficient to pay in full Series 1993 Certificates due on any particular date, together with such interest, then to the payment first of such interest, ratably according to the amount of such interest due on such date, and then to the payment of such principal, ratably according to the amount of such principal due on such date, to the persons entitled thereto without any discrimination or preference; and

<u>third</u>: to the payment of the redemption premium on and the principal of any Series 1993 Certificates called for redemption pursuant to the provisions of this Indenture.

-54-

(b)  If the principal of all the Series 1993
Certificates shall have become due and payable, all such
moneys shall be applied to the payment of the principal
and interest then due and unpaid upon the Series 1993
Certificates, with interest thereon as aforesaid,
without preference or priority of principal over inter-
est or of interest over principal, or of any installment
of interest over any other installment of interest, or
of any Series 1993 Certificate over any other
Series 1993 Certificate, ratably, according to the
amounts due respectively for principal and interest, to
the persons entitled thereto without any discrimination
or preference.

Whenever moneys are to be applied by the Trustee pursuant to
the provisions of this Section, such moneys shall be applied by
the Trustee at such times, and from time to time, as the Trustee
in its sole discretion shall determine, having due regard to the
amount of such moneys available for application and the likelihood
of additional moneys becoming available for such application in
the future.  The setting aside of such moneys in trust for the
proper purpose shall constitute proper application by the Trustee;
and the Trustee shall incur no liability whatsoever to the Author-
ity, to the Institution, to any owner of a Series 1993 Certificate
or to any other person for any delay in applying any such funds,
so long as the Trustee acts with reasonable diligence, having due
regard to the circumstances, and ultimately applies the same in
accordance with such provisions of this Indenture as may be ap-
plicable at the time of application by the Trustee.  Whenever the
Trustee shall exercise such discretion in applying such funds, it
shall fix the date (which shall be an interest payment date unless
the Trustee shall deem another date more suitable) upon which such
application is to be made and upon such date interest on the
amounts of principal paid on such date shall cease to accrue.  The
Trustee shall give such notice as it may deem appropriate of the
fixing of any such date and of the endorsement to be entered on
each Series 1993 Certificate on which payment shall be made, and
shall not be required to make payment to the owner of any
Series 1993 Certificate until such Series 1993 Certificate shall
be presented to the Trustee for appropriate endorsement, or some
other procedure deemed satisfactory by the Trustee.

## ARTICLE IX

### CONCERNING THE TRUSTEE

Section 901. <u>Acceptance by Trustee</u>.  The Trustee accepts the trusts hereby created, but only upon the terms and conditions set forth in this Article and no implied covenants or obligations shall be read into this Indenture or the Agreement against the Trustee.

Section 902. <u>Performance of Duties</u>.  The Trustee shall, prior to an event of default, and after the curing of all such events of default which may have occurred, perform such duties and only such duties as are specifically set forth in this Indenture, using such care as a corporate trustee ordinarily would use in performing trusts under a corporate indenture under which no default has occurred.  The Trustee shall, during the existence of any such event of default which has not been cured, exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that

(a)  prior to an event of default hereunder and after the curing of all such events of default which may have occurred:

(1)  the duties and obligations of the Trustee shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(2)  In the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinion expressed therein, upon any certificate or opinion furnished to the Trustee conforming to the requirements of this Indenture; but in the case of any such certificate or opinion which by any provision hereof is specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not it conforms to the requirements of this Indenture;

(b)  at all times, regardless of whether or not any such event of default shall exist:

(1)  the Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers of the Trustee unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

(2)  the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the owners of not less than a majority (or such larger percentage as is otherwise specifically required by the terms hereof) in aggregate principal amount of all the Series 1993 Certificates at the time outstanding;

(c)  none of the provisions contained in this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur individual financial liability in the performance of any of its duties or in the exercise of any of its rights or powers;

(d)  the permissive right of the Trustee to do things enumerated in this Indenture shall not be construed as a duty and the Trustee shall not be answerable for other than its negligence or willful default;

(e)  the Trustee shall not be required to take notice or be deemed to have notice of any default hereunder, except failure by the Institution to cause to be made any of the payments to the Trustee required to be made under the Promissory Note, unless a trust officer located at the principal office of the Trustee shall be specifically notified in writing of such default by the Authority, the Institution or by the owners of at least 25% in aggregate principal amount of all Series 1993 Certificates then outstanding, and in the absence of such notice so delivered, the Trustee may conclusively assume there is no default except as aforesaid.  All notices or other instruments required by this Indenture to be delivered to the Trustee, must, in order to be effective, be delivered at the principal corporate trust office of the Trustee;

(f)  the Trustee shall not be required to give any certificate or surety in respect to the execution of the said trusts and powers or otherwise in respect of the premises;

(g)  notwithstanding anything elsewhere in this Indenture or the Agreement contained, the Trustee shall have the right, but shall not be required, to demand, in respect of the authentication of any Series 1993 Certificates, the withdrawal of any cash, the release of any property, or any action whatsoever within the purview of this Indenture, any

showings, certificates, opinions, appraisals or other information or corporate action or evidence thereof, in addition to that by the terms hereof required as a condition of such action by the Trustee, deemed desirable for the purpose of establishing the right of the Authority to the authentication of any Series 1993 Certificates, the withdrawals of any cash, the release of any property or the taking of any other action by the Trustee;

(h)  before taking any action hereunder, the Trustee may require that a satisfactory indemnity certificate or other security satisfactory to it be furnished for the reimbursement of all expenses to which it may be put and to protect it against all liability, except liability which is adjudicated to have resulted from the negligence or willful default of the Trustee in connection with any action so taken;

(i)  all moneys received by the Trustee shall, until used or applied or invested as herein provided, be held in trust for the purposes for which they were received.  The Trustee shall not be under any liability for interest on any moneys received hereunder except such as may be agreed upon;

(j)  the Trustee shall furnish to the Institution at least annually a report, in such form as shall be agreed upon by the Institution and the Trustee, setting forth a list of each investment purchased or sold by the Trustee in accordance with the provisions of this Indenture during the period covered by the report, the date on which each such transaction took place, the purchase or sales price, as the case may be, of the investment, the rate of interest borne by the investment the fund and account for which such investment was made and such other information and data as the Institution may reasonably request;

(k)  the Trustee may execute any of the trusts or powers hereof and perform any of its duties by or through attorneys, agents, receivers or employees, but shall not be answerable for the conduct of the same unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts, and shall be entitled to conclusively rely on the advice of counsel concerning all matters of trusts hereof and the duties hereunder, and in all cases shall be reimbursed hereunder for compensation paid to all such attorneys, agents, receivers and employees as may be employed in connection with the trusts hereof.  The Trustee may act upon the opinion or advice of any attorney (who may be the attorney or attorneys for the Authority or the Institution) and shall not be responsible for any loss or damage resulting from any action or non-action in good faith in reliance upon such opinion or advice; and

(1)  prior to the occurrence of an Event of Default hereunder, the Trustee is authorized to respond in writing to all written inquiries from Holders and persons identifying themselves as prospective Holders for information concerning the status of funds and accounts held under this Indenture and for other information concerning the Authority and the Certificates and similar matters otherwise within the knowledge of the Trustee, and the Trustee shall not be liable to any Holder or the Authority by reason of its disclosures of such information to only those requesting it.

Section 903.  <u>Instruments Upon Which Trustee May Rely</u>. Except as otherwise provided in Section 902,

(a)  the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, certificate or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)  any notice, request, direction, election, order or demand of the Authority or the Institution mentioned herein shall be sufficiently evidenced by an instrument signed in the name of the Authority or the Institution by an Authorized Authority Representative or Authorized Institution Representative (unless other evidence in respect thereof by herein specifically prescribed);

(c)  the Trustee may consult with counsel (who may, but need not, be counsel for the Authority or the Institution) and the opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance with the opinion of such counsel; and

(d)  whenever in the administration of the trusts under this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof by herein specifically prescribed) may, in the absence of negligence or willful misconduct on the part of the Trustee, be deemed to be conclusively proved and established by a certificate of the Authority or the Institution, as appropriate; and such certificate of the Authority or the Institution, as appropriate, shall, in the absence of negligence or willful misconduct on the part of the Trustee, be full warranty to the Trustee for any action taken or suffered by it under the provisions of this Indenture upon the faith thereof.

Section 904.  Trustee not Responsible for Recitals and Other
Matters.   The Trustee shall not be responsible in any manner
whatsoever for the correctness of the recitals herein or in the
Series 1993 Certificates (except the Trustee's certificate of
authentication thereon); and the Trustee shall not be responsible
or accountable in any manner whatsoever for or with respect to the
validity or execution or sufficiency of this Indenture or the
Agreement, or of any indenture or loan agreement supplemental
thereto, or of the Series 1993 Certificates, or for the value of
the Trust Estate, or any part thereof, or for the title of the
Authority thereto, or for the security afforded hereby or for the
validity of any securities at any time held hereunder, and the
Trustee makes no representation with respect thereto.  The Trustee
shall not be accountable for the use or application by the Author-
ity or the Institution of any Series 1993 Certificates
authenticated and delivered hereunder or of the proceeds of such
certificates, or for the use or application of any moneys paid
over by the Trustee in accordance with any provision of this
Indenture.

Section 905.  Trustee May Acquire Series 1993 Certificates.
The Trustee and its officers and directors may acquire and own, or
become the pledgee of, Series 1993 Certificates and may otherwise
deal with the Authority in the manner and to the same extent and
with like effect as though it were not Trustee hereunder.

Section 906.  Intervention by Trustee.  In any judicial
proceeding to which the Authority is a party and which in the
opinion of the Trustee and its counsel has a substantial bearing
on the interests of owners of the Series 1993 Certificates, the
Trustee may intervene on behalf of the owners of the Series 1993
Certificates and, subject to the provisions of Section 902(h),
shall do so if requested in writing by the owners of at least 25%
of the outstanding principal amount of the Series 1993
Certificates.  The rights and obligations of the Trustee to
intervene in any such judicial proceeding under this Section are
subject to the approval of a court of competent jurisdiction if
approval of such intervention is otherwise required by law.

Section 907.  Compensation of Trustee.  The Institution has
covenanted in the Agreement to pay the Trustee from time to time,
and the Trustee shall be entitled to, reasonable compensation for
all services rendered by it in the execution of the trusts hereby
created and in the exercise and performance of any of the powers
and duties hereunder of the Trustee, which compensation shall not
be limited by any provision of law in regard to the compensation
of a trustee of an express trust, and the Institution has
covenanted to pay or reimburse the Trustee upon its request for
all expenses, disbursements and advances incurred or made by the
Trustee in accordance with any of the provisions of this
Indenture, including the reasonable compensation and the expenses
and disbursements of its counsel and of all persons not regularly
in its employ, except any such expense, disbursement or advance as
may arise from its negligence or willful misconduct.  The Trustee,

if and to the extent authorized by a receivership, bankruptcy or
other court of competent jurisdiction, shall be entitled (but not
obligated) to make advances for the purpose of preserving property
of the Institution or the Authority.  The Institution has also
covenanted to indemnify the Trustee for, and to hold it harmless
against, any loss, liability, expense or advance incurred or made
without negligence or willful misconduct on administration of this
trust, including fees for legal, engineering and other
professional services deemed advisable by the Trustee and all
costs and expenses of defending itself against any claim of
liability in the premises.  The obligations of the Institution to
compensate the Trustee for services and to pay or reimburse the
Trustee for expenses, disbursements, liabilities and advances
shall constitute additional indebtedness hereunder.  In default of
the payment of such additional indebtedness, the Trustee shall
have a lien therefor on any moneys held by the Trustee hereunder
prior to any rights in such moneys of the owners of the
Series 1993 Certificates except funds held in trust by the Trustee
for the benefit of the owners of particular Series 1993
Certificates.

   Section 908.  <u>Qualification of Trustee</u>.  There shall at all
times be a trustee hereunder which shall be a corporation organ-
ized and doing business under the laws of the United States of
America or any state thereof, authorized under such laws to
exercise corporate trust powers, having, together with its af-
filiates (hereinafter defined) a combined capital, surplus and
undivided profits of at least $75,000,000, and subject to supervi-
sions or examination by federal or state authority.  Any such
Trustee except for a successor Trustee appointed under
Section 909(c) shall have its principal office and place of
business in the State of Georgia; provided, however, if there be
no such corporation qualified under this Indenture and willing to
so act as Trustee, any such Trustee shall then meet the
requirements of a successor Trustee set forth in Section 909(c).
If such corporation publishes reports of condition at least
annually, pursuant to law or to the requirements of any
supervising or examining authority above referred to, then for the
purposes of this Section the combined capital, surplus and
undivided profits of such corporation shall be deemed to be its
combined capital, surplus and undivided profits as set forth in
its most recent report of condition so published.  In case at any
time the Trustee shall cease to be eligible in accordance with the
provisions of this Section, the Trustee shall resign immediately
in the manner and with the effect specified in Section 909.  For
purposes of this Section, the term "affiliate" of the Trustee
shall mean any corporation or other person which, directly or
indirectly, controls or is controlled by or is under common
control with the Trustee.  For the purposes of this definition,
"control" (including the correlative meanings of the terms
"controlled by" and "under common control with"), as used with
respect to any person, shall mean the possession, directly or
indirectly, or the power to direct or cause the direction of the

management and policies of such person, whether through the
ownership of voting securities or by contract or otherwise.

Section 909. <u>Resignation of Trustee and Appointment of Suc-</u>
<u>cessor</u>. (a) The Trustee may at any time resign by giving written
notice to the Authority and the Institution and by giving to the
owners of the Series 1993 Certificates and the Master Trustee
notice by first class mail. Upon receiving such notice of
resignation, the Institution, with the approval of the Authority,
shall promptly appoint a successor Trustee by an instrument in
writing. If no successor Trustee shall have been so appointed and
have accepted such appointment within 30 days after the mailing of
such notice to the owners of the Series 1993 Certificates, the
resigning Trustee may petition any court of competent jurisdiction
for the appointment of a successor Trustee, or any owner of the
Series 1993 Certificates who has been a bona fide owner of a
Series 1993 Certificate or Series 1993 Certificates for at least
six months may, on behalf of himself and all others similarly
situated, petition any such court for the appointment of a succes-
sor Trustee. Such court may thereupon, after such notice, if any,
as it may deem proper and prescribe, appoint a successor Trustee.

(b) In the event that in case either of the following shall
occur:

(1) the Trustee shall cease to be eligible in ac-
cordance with the provisions of Section 908 and shall fail to
resign after written request therefor by the Authority or by
any owner of a Series 1993 Certificate who has been a bona
fide owner of a Series 1993 Certificate or Series 1993
Certificates for at least six months, or

(2) the Trustee shall become incapable of acting, or
shall be adjudged a bankrupt or insolvent, or a receiver of
the Trustee or of its property shall be appointed, or any
public officer shall take charge or control of the Trustee or
of its property or affairs for the purpose of rehabilitation,
conservation or liquidation,

then, in any such case, the Institution, with the approval of the
Authority, may remove the Trustee and appoint a successor Trustee
by an instrument in writing, or any owner of a Series 1993
Certificate may, on behalf of himself and all others similarly
situated, petition any court of competent jurisdiction for the
removal of the Trustee and the appointment of a successor Trustee.
Such court may thereupon, after such notice, if any, as it may
deem proper and prescribe, remove the Trustee and appoint a
successor Trustee.

(c) The owners of a majority of the outstanding principal
amount of the Series 1993 Certificates may at any time remove the
Trustee and appoint a successor Trustee by an instrument or
concurrent instruments in writing signed by such certificate
owners. Such successor Trustee shall be a corporation authorized

under applicable laws to exercise corporate trust powers and may
be incorporated under the laws of the United States of America or
of any state thereof and need not have its principal office or
place of business in the State of Georgia.  Such successor Trustee
shall satisfy the minimum combined capital, surplus and undivided
profits requirement set forth in Section 908.

(d)  The Institution, subject to the approval of the
Authority and the owners of a majority of the Series 1993
Certificates, may at any time remove the Trustee and appoint a
successor Trustee by an instrument in writing signed by the
Institution and accompanied by an instrument or concurrent
instruments in writing signed by such certificate owners approving
such removal and appointment.

(e)  Any resignation or removal of the Trustee and ap-
pointment of a successor trustee pursuant to any of the provisions
of this Section 909 shall become effective upon acceptance of
appointment by the successor Trustee as provided in Section 910.
The Trustee agrees that simultaneously with the appointment and
acceptance of a successor Trustee, it will take such action as may
be required under the Master Indenture to transfer the Promissory
Note to such successor Trustee.

(f)  Notwithstanding any other provision of this Indenture,
no removal or resignation of the Trustee (or any other Paying
Agent) shall take effect until a successor, shall be appointed.

Section 910.  <u>Concerning the Successor Trustee</u>.  Any succes-
sor Trustee appointed as provided in Section 909 shall execute,
acknowledge and deliver to the Authority and to its predecessor
Trustee an instrument accepting such appointment hereunder, and
thereupon the resignation or removal of the predecessor Trustee
shall become effective and such successor Trustee, without any
further act, deed or conveyance, shall become vested with all the
rights, powers, trusts, duties and obligations of its predecessor
in the trusts hereunder, with like effect as if originally named
as Trustee herein; but nevertheless, the Trustee ceasing to act
shall cause the Promissory Note to be registered to such Trustee
and, on the written request of the Authority or the Institution or
the request of the successor Trustee, the Trustee ceasing to act
shall execute and deliver an instrument transferring to such suc-
cessor Trustee, upon the trusts herein expressed, all the rights,
powers and trusts of the Trustee so ceasing to act.  Upon request
of any such successor Trustee, the Authority shall execute any and
all instruments in writing more fully and certainly vesting in and
confirming to such successor Trustee all such rights, powers and
duties.  Any Trustee ceasing to act shall, nevertheless, retain a
lien upon funds held or collected by such Trustee to secure the
amounts due it as compensation, reimbursement, expenses and
indemnity afforded to it by Section 907.

No successor Trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor Trustee shall be eligible under the provisions hereof.

Upon the acceptance of appointment by a successor Trustee as provided in this Section, the Authority (at the expense of the Institution) shall give notice of the succession of such Trustee to the trusts hereunder by first class mail to all certificate owners and the Master Trustee. If the Authority fails to mail such notice within 10 days after acceptance of appointment by the successor Trustee, the successor Trustee shall cause such notice to be mailed at the expense of the Institution.

Section 911.  <u>Merger or Consolidation of Trustee</u>.  Any corporation into which the Trustee may be merged or with which it may be consolidated, or any corporation resulting from any merger or consolidation to which the Trustee shall be a party, or any corporation succeeding to the business of the Trustee, shall be the successor of the Trustee hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding, provided that such successor Trustee shall be eligible under the provisions of Section 909 or Section 910(c). If the Trustee is not the successor corporation in any such merger or consolidation, the Trustee shall give notice of such event to the Master Trustee and take such action as may be required to effect a transfer of the Promissory Note to such successor corporation.

Section 912.  <u>Retention of Financial Statements</u>.  The Trustee shall retain all financial statements furnished to it by the Institution for at least a period of seven years after the receipt thereof.

Section 913.  <u>Trustee May Act Through Agents</u>.  The Trustee may execute any of the trusts or powers hereof and perform any duty hereunder either directly or by or through its agents or attorneys.

ARTICLE X

MANNER OF EVIDENCING OWNERSHIP
OF CERTIFICATES; MEETINGS OF CERTIFICATE OWNERS

Section 1001.  <u>Ownership</u>.  Any request, direction or other instrument required by this Indenture to be signed or executed by certificate owners may be in any number of concurrent writings of similar tenor and may be signed or executed by such certificate owners in person or by agent appointed in writing.  Proof of the execution of any such request, direction or other instruments, or of the writing appointing such agent and of the ownership of Series 1993 Certificates, if made in the following manner, shall be sufficient for any purpose of this Indenture and shall be conclusive in favor of the Trustee with regard to any action taken by it under such request:

     (a)  the fact and date of the execution by any person of any such writing may be proved by the certificate of any officer in any jurisdiction, who, by the laws thereof, has power to take acknowledgments within said jurisdiction, to the effect that the person signing such writing acknowledged before him the execution thereof, or by an affidavit of a witness to such execution;

     (b)  the ownership of Series 1993 Certificates shall be proved by the registration book maintained by the Trustee.

Section 1002.  <u>Purposes for which Certificate Owners' Meetings may be Called</u>.  A meeting of owners of Series 1993 Certificates may be called at any time and from time to time pursuant to this Article for any of the following purposes:

     (1)  to give any notice to the Authority, the Institution or the Trustee, or to give any directions to the Trustee, or to consent to the waiving of any default under this Indenture and its consequences, or to take any other action authorized to be taken by such owners pursuant to this Article X hereof;

     (2)  to remove the Trustee pursuant to Article IX hereof;

     (3)  to consent to the execution of a supplemental indenture pursuant to Section 1202 hereof, or to consent to the execution of an amendment, change, modification or supplementation of the Agreement pursuant to Section 1205 hereof or to the execution of an amendment, change, modification or supplementation of the Master Indenture pursuant to Section 1206; or

(4)  to take any other action authorized to be taken by or on behalf of the owners of any specified aggregate principal amount of the Series 1993 Certificates under any other provision of this Indenture or under applicable law.

Section 1003.  <u>Place of Meetings of Certificate Owners</u>. Meetings of owners may be held at such place or places as the Trustee or, in case of its failure to act, the Owners of Series 1993 Certificates calling the meeting shall from time to time determine.

Section 1004.  <u>Call and Notice of Owners of Series 1993 Certificates' Meetings</u>.  (a) The Trustee may at any time call a meeting of Owners of Series 1993 Certificates to be held at such time and at such place as the Trustee shall determine.  Notice of every meeting of Owners of Series 1993 Certificates, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given by first class mail not less than twenty (20) nor more than one hundred eighty (180) days prior to the date fixed for such meeting.

(b)  In case at any time the Owners of Series 1993 Certificates of at least 25% in aggregate principal amount of the Outstanding Certificates shall have requested the Trustee to call a meeting of the Owners of Series 1993 Certificates by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have made the first giving of the notice of such meeting within twenty (20) days after receipt of such request, then such owners may determine the time and the place for such meeting and may call such meeting to take any action authorized in Section 1002 hereof by giving notice thereof as provided in subsection (a) of this Section 1004.

Section 1005.  <u>Determination of Voting Rights; Conduct and Adjournment of Meetings</u>.  (a) Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Owners of Series 1993 Certificates in regard to proof of the ownership of certificates and of the appointment of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.  Except as otherwise permitted or required by any such regulations, the ownership of Series 1993 Certificates shall be proved in the manner specified in Section 1001 hereof and the appointment of any proxy shall be proved in the manner specified therein or by having the signature of the person executing the proxy witnessed or guaranteed by any bank, banker or trust company authorized by Section 1001 hereof to certify to the ownership of Series 1993 Certificates.  Such regulations may provide that written instruments appointing proxies, regular on their face, may be presumed valid and genuine without the proof specified in Section 1001 hereof or other proof.

(b)  The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by owners of Series 1993 Certificates as provided in subsection (b) of Section 1104 hereof, in which case the owners of Series 1993 Certificates calling the meeting, shall in like manner appoint a temporary chairman.  A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the owners of Series 1993 Certificates of a majority in aggregate principal amount of the Certificates represented at the meeting and entitled to vote.

(c)  At any meeting each Certificate owner or proxy shall be entitled to one vote for each $5,000 principal amount of Certificates Outstanding held or represented by him; provided, however, that no vote shall be cast or counted at any meeting in respect of any certificate challenged as not Outstanding and ruled by the chairman of the meeting to be not Outstanding.  The chairman of the meeting shall have no right to vote, except as a Certificate owner or proxy.

(d)  At any meeting of owners of Series 1993 Certificates, the presence of persons holding or representing certificates in an aggregate principal amount sufficient under the appropriate provision of this Indenture to take action upon the business for the transaction of which such meeting was called shall constitute a quorum.  Any meeting of owners of Series 1993 Certificates duly called pursuant to Section 1004 hereof may be adjourned from time to time by vote of the owners) of a majority in aggregate principal amount of the Certificates represented at the meeting and entitled to vote, whether or not a quorum shall be present; and the meeting may be held as so adjourned without further notice.

Section 1006.  <u>Counting Votes and Recording Action of Meetings</u>.  The vote upon any resolution submitted to any meeting of owners of Series 1993 Certificates shall be by written ballots on which shall be subscribed the signatures of such owners or of their representatives by proxy and the number or numbers of the Certificates outstanding held or represented by them.  The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in triplicate of all votes cast at the meeting.  A record, at least in triplicate, of the proceedings of each meeting of owners of Series 1993 Certificates shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was published or mailed as provided in Section 1004.  Each copy shall be signed and verified by the affidavits of the permanent chairman and secretary of the meeting and one such copy shall be delivered

to the Authority, another to the Institution and another to the Trustee to be preserved by the Trustee, which copy shall have attached thereto the ballots voted at the meeting. Any record so signed and verified shall be conclusive evidence of the matters therein stated.

Section 1007. <u>Revocation by Certificate Owners</u>. At any time prior to (but not after) the evidencing to the Trustee, in the manner provided in Section 1005 hereof, of the taking of any action by the owners of Series 1993 Certificates of the percentage in aggregate principal amount of the Series 1993 Certificates specified in this Indenture in connection with such action, any owner of a Series 1993 Certificate the number of which is included in the Series 1993 Certificates the owners of which have consented to such action may, by filing written notice with the Trustee at its principal office and upon proof of ownership as provided in Section 1001 hereof, revoke such consent so far as concerns such certificate. Except as aforesaid, any such consent given by the owner of any Series 1993 Certificate shall be conclusive and binding upon such owner and upon all future owners of such certificate and of any certificate issued in exchange therefor or in lieu thereof, irrespective of whether or not any notation in regard thereto is made upon such certificate. Any action permitted to be taken by the owners hereunder shall be conclusively binding upon the Authority, the Institution, the Trustee, the registered owners of all the Series 1993 Certificates and anyone whatsoever when such action is taken by the owners of the percentage in aggregate principal amount of Series 1993 Certificates specified herein for such action.

ARTICLE XI

DEFEASANCE; UNCLAIMED MONEYS

Section 1101.  <u>Discharge of Indebtedness</u>.  (a) If (1) the
Authority or the Institution, shall pay or cause to be paid to the
owners of the Series 1993 Certificates the principal, redemption,
premium (if any) and interest to become due thereon at the times
and in the manner stipulated therein and herein, (2) all fees and
expenses of the Trustee then due and owing or accrued and all fees
and expenses to accrue until the payment in full of the
Series 1993 Certificates shall have been paid or provided for to
the satisfaction of the Trustee, and (3) the Authority and the
Institution shall keep, perform and observe all and singular the
covenants and promises in the Series 1993 Certificates and in this
Indenture expressed as to be kept, performed and observed by it or
on its part, then these presents and the rights hereby granted
shall cease, determine and be discharged, and thereupon the
Trustee shall cancel and discharge this Indenture and execute and
deliver to the Authority and the Institution such instruments in
writing as shall be requisite to evidence such cancellation and
discharge.  If the Authority or the Institution shall pay or cause
to be paid to the owners of all outstanding Series 1993
Certificates of a particular maturity or series, the principal,
premium, if any, and interest to become due thereon at the times
and in the manner stipulated therein and herein, such Series 1993
Certificates shall cease to be entitled to any lien, benefit or
security under this Indenture, and all covenants, agreements and
obligations of the Authority to the owners of such Series 1993
Certificates shall thereupon cease, terminate and become
discharged and satisfied.

(b)  Series 1993 Certificates for the payment or redemption
of which sufficient moneys or sufficient Permitted Defeasance
Investments (hereinafter defined) shall have been deposited with
the Trustee (whether upon or prior to the maturity or the Redemp-
tion Date of such certificates) shall be deemed to be paid within
the meaning of this Article and no longer outstanding under this
Indenture; provided, however, that if such Series 1993
Certificates are to be redeemed prior to the maturity thereof,
notice of such redemption shall have been duly given as provided
in Article III of this Indenture or irrevocable arrangements
satisfactory to the Trustee shall have been made for the giving
thereof.  Permitted Defeasance Investments will be considered suf-
ficient if (i) such investments are Government Obligations which,
with interest, mature and bear interest in such amounts and at
such times as will assure sufficient cash to pay currently matur-
ing interest and to pay principal and redemption premiums (if any)
when due on the Series 1993 Certificates (or such portion thereof
with respect to which such deposit is made), and (ii) the Trustee
shall receive an opinion of nationally recognized bond counsel
satisfactory to it to the effect that the pledge of such Govern-
ment Obligations to the payment of the Series 1993 Certificates

-69-

will not, by itself, result in the interest on any Series 1993 Certificates becoming includable in gross income for federal income tax purposes under the Code.

The Institution may at any time surrender to the Trustee for cancellation by it any Series 1993 Certificates previously authenticated and delivered hereunder which the Institution may have acquired in any manner whatsoever, and such Series 1993 Certificates, upon such surrender and cancellation, shall be deemed to be paid and retired.

Section 1102.  <u>Termination of Authority's Liability</u>.  Upon the cancellation and discharge of this Indenture under Section 1101, or upon the deposit with the Trustee of sufficient money and Permitted Defeasance Investments (such sufficiency being determined as provided in Section 1101(b) for the retirement of any particular Series 1993 Certificates or Certificates), all liability of the Authority in respect of such certificate or certificates shall cease, determine and be completely discharged and the owners thereof shall thereafter be entitled only to payment out of the moneys and the proceeds of the Permitted Defeasance Investments deposited with the Trustee as aforesaid for their payment; subject, however, to the provisions of Section 1103.  All moneys on deposit in any funds or accounts created hereunder remaining after payment in full of all outstanding Series 1993 Certificates as provided in Section 1101 shall be remitted to the Institution.

Section 1103.  <u>Unclaimed Moneys</u>.  Upon the cancellation and discharge of this Indenture, but notwithstanding such cancellation and discharge, the Trustee shall continue to hold in trust all moneys held by it for the payment of principal of and interest and redemption premiums on the Series 1993 Certificates until said certificates shall have been presented for payment.  If, after the expiration of the pertinent statute of limitations (as to which the Trustee may rely upon counsel of its own choosing), any moneys remain unclaimed, the Trustee shall pay said moneys over to the Institution or shall pay such money as otherwise provided by law.

ARTICLE XII

SUPPLEMENTAL INDENTURES; LOAN AGREEMENTS

Section 1201.  Supplemental Indentures Not Requiring Consent of Certificate Owners.  The Authority and the Trustee from time to time and at any time, subject to the conditions and restrictions in this Indenture contained and to the written consent of the Institution, may enter into an indenture or indentures supplemental hereto, which indenture or indentures thereafter shall form a part hereof, for any one or more or all of the following purposes:

    (a)  to add to the covenants and agreements of the Authority in this Indenture contained, other covenants and agreements thereafter to be observed or to surrender, restrict or limit any right or power herein reserved to or conferred upon the Authority;

    (b)  to make such provisions for the purpose of curing any ambiguity, or curing, correcting or supplementing any defective provision, contained in this Indenture as may be requested or required by any nationally recognized rating agency, or in regard to matters or questions arising under this Indenture, as the Authority may deem necessary or desirable and not inconsistent with this Indenture;

    (c)  to modify, amend or supplement this Indenture or any indenture supplemental hereto in such manner as to permit the qualification hereof and thereof under the Trust Indenture Act of 1939 or any similar federal statute hereafter in effect or any state securities or trust indenture law and, if they so determine, to add to this Indenture, or any indenture supplemental hereto, such other terms, conditions and provisions as may be permitted by said Trust Indenture Act of 1939 or similar federal statute or such state securities or trust indenture law;

    (d)  to grant additional rights and powers to the Trustee;

    (e)  to create such accounts or subaccounts within the funds and accounts created hereunder as the Institution shall deem necessary or desirable to enable the Institution to account for expenditures of Series 1993 Certificate proceeds or as otherwise shall be requested by the Institution;

    (f)  to provide for, or modify existing provisions to, a book-entry system of registration for the Series 1993 Certificates; or

    (g)  to obtain or maintain a rating on the Series 1993 Certificates from any Rating Agency.

-71-

Any Supplemental Indenture authorized by the provisions of this
Section may be executed by the Authority and the Trustee without
the consent or notice to the owners of any of the Series 1993
Certificates at the time outstanding, notwithstanding any of the
provisions of Section 1202.

Section 1202.  <u>Supplemental Indentures Requiring Consent of
Certificate Owners</u>.  With the consent (evidenced as provided in
Article X) of the owners of not less than two-thirds of the
outstanding principal amount of the Series 1993 Certificates and
the written consent of the Institution, the Authority and the
Trustee may from time to time and at any time enter into an
indenture or indentures supplemental hereto for the purpose of
adding any provisions to or changing in any manner or eliminating
any of the provisions of this Indenture or of any Supplemental
Indenture; provided, however, that no such Supplemental Indenture
shall (1) extend the fixed maturity of any certificate or reduce
the rate of interest thereon or extend the time for payment of
interest, or reduce the amount of the principal thereof, or reduce
or extend the time for payment of any premium payable on the
redemption thereof, without the consent of the owners of each
certificate so affected, or (2) reduce the aforesaid percentage of
owners of certificates required to approve any such Supplemental
Indenture, or (3) deprive the owners of the Series 1993
Certificates (except as aforesaid) of the lien created by this
Indenture, without the consent of the owners of all the
Series 1993 Certificates then outstanding.

Section 1203.  <u>Notice</u>.  Prior to the execution and delivery
of any Supplemental Indenture as provided in Section 1202, the
Trustee shall mail to the Authority and the registered Owners of
the Series 1993 Certificates, at least thirty (30) days prior to
the proposed effective date of such Supplemental Indenture a
notice of such proposed Supplemental Indenture.  Such notice (and
the consents of the Owners of the Series 1993 Certificates) need
not set forth such Supplemental Indenture in full but shall
contain a summary of the provisions thereof.  Such notice shall
set forth a time and procedure for consenting to such proposed
Supplemental Indenture.

Promptly after the execution by the Authority and the Trustee
of any Supplemental Indenture pursuant to the provisions of
Section 1202, a notice, setting forth in general terms the
substance of such Supplemental Indenture, shall be given by the
Authority by first-class postage prepaid, mailed to each owner of
certificates at the address appearing in the registration book
maintained by the Trustee.  Any failure of the Authority to give
such notice, or any defect therein, shall not, however, in any way
impair or affect the validity of any such Supplemental Indenture.