Section 1204.  <u>Supplemental Indenture to Modify This</u>
<u>Indenture</u>.  Upon the execution of any Supplemental Indenture
pursuant to the provisions of this Article, this Indenture shall
be modified and amended in accordance therewith and the respective
rights, duties and obligations under this Indenture of the Author-
ity, the Trustee and all owners of Series 1993 Certificates
outstanding thereunder shall thereafter be determined, exercised
and enforced hereunder subject in all respects to such modifica-
tion and amendments, and all the terms and conditions of any such
Supplemental Indenture shall be and be deemed to be part of the
terms and conditions of this Indenture for any and all purposes.

Section 1205.  <u>Supplemental Loan Agreement</u>.  The Authority
and the Institution may from time to time and at any time, with
the consent of the Trustee, enter into a supplemental loan agree-
ment for any one or more of the following purposes:

(a)  to add to the covenants and agreements of the
Institution contained therein, other covenants and agreements
thereafter to be observed or to surrender, restrict or limit
any right or power herein reserved to or conferred upon the
Institution;

(b)  to make such provisions for the purpose of curing
any ambiguity, or curing, correcting or supplementing any
defective provision, contained in the Agreement, or in regard
to matters or questions arising under the Agreement, as the
Authority and the Institution may deem necessary or desirable
and not inconsistent therewith and which shall not adversely
affect the interest of the registered owners of the
Series 1993 Certificates;

(c)  to make any changes in the Agreement required in
connection with a supplemental indenture authorized under
Section 1201 or 1202 or a supplement to the Master Indenture
authorized pursuant to Section 1206; or

(d)  to grant additional rights and powers to the
Trustee or the Authority.

Any supplemental loan agreement authorized by the foregoing provi-
sions of this Section may be executed by the Authority and the
Trustee and the Institution without the consent or notice to the
owners of any of the Series 1993 Certificates at the time
outstanding, notwithstanding any other provision hereof.  All
other supplemental loan agreements shall be subject to the same
notice and approval requirements required for Supplemental
Indentures in Section 1202 and 1203.

Section 1206.  <u>Supplements to the Master Indenture</u>.  The
Trustee, as the registered owner of the Promissory Note, shall be
authorized to consent to any supplement to the Master Indenture as
provided in Section 9.2 of the Master Indenture only upon the
consent (evidenced as provided in Article X) of the owners of not

less than two-thirds of the outstanding principal amount of Series 1993 Certificates which consent shall be obtained in the same manner as obtaining consents to Supplemental Indentures; provided, however, that no such supplement to the Master Indenture shall extend the maturity of the Promissory Note or reduce the rate of interest thereon or extend the time for payment thereof or reduce the amount payable thereon unless corresponding changes are being made to the provisions of the Series 1993 Certificates pursuant to a Supplemental Indenture authorized pursuant to Section 1202 hereof.

Section 1207. <u>Trustee Consent to Amendments</u>. The Trustee may enter into any supplement hereto or consent to enter into any supplement or amendment to the Agreement or the Master Indenture, but shall not be required to do so unless it shall have received an opinion of Counsel, which is addressed to the Trustee and in form and substance satisfactory to the Trustee, that such supplement, amendment or consent is authorized or permitted by this Article and that all conditions precedent have been complied with. The Trustee may, but shall not be required to, execute any supplement to this Indenture or consent to or enter into any supplement, amendment or consent to the Agreement or the Master Indenture if any such supplement, amendment or consent, in the opinion of the Trustee, might expose it to additional liability, impose upon it additional obligations, or adversely affect its rights, remedies, protections, privileges or immunities hereunder or under the Agreement or the Master Indenture.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 1301.  <u>Benefit of Indenture</u>.  Except as herein expressly otherwise provided, nothing in this Indenture expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto and the owners of the Series 1993 Certificates issued under and secured by this Indenture, any right, remedy or claim, legal or equitable, under or by reason of this Indenture or any covenant, condition or stipulation hereof, this Indenture and all its covenants, conditions and stipulations being intended to be and being for the sole and exclusive benefit of the parties hereto and the owners of the Series 1993 Certificates.

Section 1302.  <u>Severability</u>.  In case any one or more of the provisions of this Indenture or of the Series 1993 Certificates shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Indenture or of the Series 1993 Certificates, but this Indenture and the Series 1993 Certificates shall be construed and enforced as if such illegal or invalid provision had not been contained therein.  In case any covenant, stipulation, obligation or agreement contained in the certificates or in the Indenture shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent that the power to incur such obligation or to make such covenant, stipulation or agreement might have been conferred on the Authority by law.

Section 1303.  <u>Certificates Payable Solely from Revenues Pledged, not Binding on Individuals</u>.  The Series 1993 Certificates do not constitute a debt of the State of Georgia or of Fulton County or any other political subdivision in said State, and the Series 1993 Certificates shall not directly, indirectly or contingently obligate the State of Georgia or any political subdivision of said State including Fulton County to levy or to pledge any form of taxation whatever therefor or to make any appropriation for their payment.

No covenants, stipulations, obligations or agreements of any member, officer, agent, attorney or employee of the Authority shall be deemed to be covenants, stipulations, obligations or agreements of any such member or officer in his individual capacity.  No recourse shall be had for the payment of the Series 1993 Certificates or any claim thereon against any member, officer, agent, attorney or employee of the Authority, past, present or future.

Section 1304.  <u>Notices</u>.  Except as otherwise provided herein, all notices, requests, demands and other communications required or permitted under this Indenture shall be deemed to have been duly given if delivered or mailed, first-class, postage prepaid, as follows:

(a)   If to the Authority:    Tri-City Hospital Authority
                              c/o South Fulton Medical Center
                              1170 Cleveland Avenue
                              East Point, Georgia  30344
                              Attention:  Chairman

(b)   If to the Trustee:      Bank South, N.A.
                              55 Marietta Street
                              Atlanta, Georgia  30303
                              Attention:  Corporate Trust
                                Department, MC47

(c)   If to the Master
      Trustee:                Bank South, N.A.
                              55 Marietta Street
                              Atlanta, Georgia  30303
                              Attention:  Corporate Trust
                                Department, MC47

(d)   If to the
      Institution:            South Fulton Medical Center
                              1170 Cleveland Avenue
                              East Point, Georgia  30344
                              Attention:  President and
                                Chief Executive Officer


Section 1305.  [INTENTIONALLY OMITTED]

Section 1306.  <u>Payments Due on Saturdays, Sundays, Holidays, etc</u>.  Whenever a date upon which a payment is to be made under this Indenture falls on a Saturday, Sunday, a legal holiday or any other day on which banking institutions are authorized to be closed in the State in which the payment is to be made, such payment may be made on the next succeeding secular day without interest for the intervening period.

Section 1307.  <u>Applicable Law</u>.  This Indenture shall be enforced and construed under and governed by the laws of the State of Georgia.

Section 1308.  <u>Counterparts</u>.  This Indenture may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original; and such counterparts shall constitute but one and the same instrument.

Section 1309.  <u>Headings and Captions</u>.  The headings and captions of the Articles and Sections of this Indenture have been inserted for convenience and reference purposes only and shall not be deemed to constitute a part hereof.

IN WITNESS WHEREOF, TRI-CITY HOSPITAL AUTHORITY has caused this Indenture to be executed by its Chairman, and its official seal to be impressed hereon and attested by its Secretary, and Bank South, N.A., has caused this Indenture to be executed, sealed and attested on its behalf by its duly authorized officers, all as of the day and year first above written.

TRI-CITY HOSPITAL AUTHORITY

By: _____
                    Chairman

Attest:

_____
Secretary

(SEAL)

BANK SOUTH, N.A., as Trustee

By: _____
         Title: **VICE PRESIDENT**

Attest:

_____
Title: **ASSISTANT VICE PRESIDENT**

(SEAL)

## Exhibit "A"

### REQUISITION FOR CONSTRUCTION FUND

Requisition No. _____

Bank South, N.A.
Corporate Trust Department, MC47
55 Marietta Street
Atlanta, Georgia  30303

     Re:  $39,140,000 Tri-City Hospital Authority Revenue
          Certificates, Series 1993

     Pursuant to Section 402(b) of that certain Trust Indenture,
dated as of December 1, 1993 (the "Indenture"), by and between the
Tri-City Hospital Authority and Bank South, N.A., as Trustee, I,
as an Authorized Institution Representative, hereby submit this
Requisition for payment from the Construction Fund, and, in
connection therewith, I HEREBY CERTIFY as follows:

     (i)  That an obligation in the amount of $_____
has been incurred by the Institution, and that the same was
incurred for costs relating to the Project and is a proper
charge against the Construction Fund and has not been the
subject of a previous Requisition from the Construction Fund.
Such obligation was incurred by the Institution for the
following:

_____
_____
_____
_____.

Payment should be made to:

_____
_____
_____.

The statement of account for such obligation or a copy
thereof is on file with the Institution.

     (ii)  The Institution has no notice of any vendors',
mechanics', materialman's or other liens or rights to liens,
chattel mortgages, conditional sales contracts or any
security interest, which should be satisfied or discharged
before payment hereof is made.

(iii)  This Requisition contains no item representing payment on account of any retained percentage which the Institution is on the date hereof entitled to retain.

(iv)  To the extent that the item on account of which payment is requested by this Requisition relates to work performed on the Project or material, supplies or equipment relating thereto, such work was actually performed, or such materials, supplies or equipment were actually installed in or about the Medical Center or delivered at the Medical Center for such purpose.

Terms used herein and not otherwise defined shall have the meanings given them in the Indenture.


Date: _____          Name: _____

                                               Authorized Institution
                                               Representative

89

## CERTIFICATE DESIGNATING AUTHORIZED
## AUTHORITY REPRESENTATIVE


The undersigned, on behalf of the Tri-City Hospital Authority, a public body corporate and politic (the "Authority"), and a party to that certain Trust Indenture, dated as of November 1, 1993 (the "Indenture"), by and between the Authority and Bank South, N.A., hereby designates C.C. Martin, Chairman, as Authorized Authority Representative and C.L. Ratterree, Secretary, as Alternate Authorized Authority Representative, each of whose signature appears below, and authorizes either of them to take all actions and to do all things as Authorized Authority Representative required or permitted under the terms of the Indenture.


Specimen Signature: _____

Authorized Authority
Representative


Specimen Signature: _____

Alternate Authorized Authority
Representative


GIVEN this 22nd day of December, 1993.

TRI-CITY HOSPITAL AUTHORITY

By:_____
Chairman



# EXHIBIT / ATTACHMENT

## 2

(To be scanned in place of tab)



EXHIBIT 2

---

## MASTER TRUST INDENTURE

### Between

SOUTH FULTON MEDICAL CENTER, INC.,

SOUTH FULTON MEDICAL CENTER FOUNDATION, INC.,

SOUTH FULTON MEDICAL ARTS CENTER, INC.,

SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC.,

SOUTH FULTON HEALTH CARE CENTER, INC.

GEORGIA INTERNATIONAL HEALTH ALLIANCE, INC.

The persons becoming Obligated Issuers

### And

BANK SOUTH, N.A.

as Master Trustee

Dated as of November 1, 1993

---

This instrument was prepared by:

King & Spalding
191 Peachtree Street
Atlanta, Georgia 30303-1763

# TABLE OF CONTENTS

**Page**

RECITALS ............................................... 1

GRANTING CLAUSES ...................................... 1

ARTICLE I -   DEFINITIONS OF TERMS, CONSTRUCTION
              AND CERTAIN GENERAL PROVISIONS............ 4

    Section 1.1.   Definitions of Terms................... 4
    Section 1.2.   Rules of Construction ................26
    Section 1.3.   Separability Clause...................26
    Section 1.4.   Accounting Principles.................26
    Section 1.5.   Officer's Certificates...............27

ARTICLE II -   MASTER INDENTURE OBLIGATIONS..............28

    Section 2.1.   Issuance of Obligations; Form and
                              Terms Thereof.........................28
    Section 2.2.   Payment of Obligations................28
    Section 2.3.   Cross-Guaranties......................28
    Section 2.4.   Execution and Authentication of
                              Obligations...........................31
    Section 2.5.   Registration, Transfer and Exchange...32
    Section 2.6.   Mutilated, Destroyed, Lost or
                              Stolen Obligations....................33
    Section 2.7.   Establishment of Funds and
                              Investment of Fund Money..............34
    Section 2.8.   Supplemental Indenture Creating
                              an Obligation.........................35
    Section 2.9.   Conditions to Issuance of
                              Obligations Hereunder.................35

ARTICLE III -   MEMBERSHIP IN AND WITHDRAWAL FROM
                THE OBLIGATED GROUP; DESIGNATION AND
                RELEASE OF RESTRICTED AFFILIATES...........37

    Section 3.1.   Conditions for Membership.............37
    Section 3.2.   Withdrawal From the Obligated Group...38
    Section 3.3.   Conditions for Designation of
                              Restricted Affiliates.................40
    Section 3.4.   Release of Restricted Affiliates......41

ARTICLE IV -   LIMITATIONS ON INCURRENCE OF ADDITIONAL
               INDEBTEDNESS..............................43

    Section 4.1.   Short-Term Indebtedness...............43
    Section 4.2.   Long-Term Indebtedness...............43
    Section 4.3.   Guaranties; Limited Obligors..........46

**Page**

Section 4.4.   Debt Service on Balloon Indebtedness
               and Variable Rate Indebtedness........47

ARTICLE V  –   INSURANCE; DAMAGE TO OR DESTRUCTION
               OR TAKING OF PROPERTY.....................49

Section 5.1.   Required Insurance Coverage..........49
Section 5.2.   Self-Insurance.........................49
Section 5.3.   Recovery of Insurance Proceeds........50
Section 5.4.   Use of Net Proceeds...................50
Section 5.5.   Balance of Net Proceeds..............50
Section 5.6.   Eminent Domain........................50

ARTICLE VI  –   GENERAL COVENANTS OF EACH OBLIGATED
                ISSUER................................52

Section 6.1.   Covenants as to Corporate Existence,
               Maintenance of Properties, Etc........52
Section 6.2.   Limitations on Creation of Liens......53
Section 6.3.   Sale, Lease or Other Disposition
               of Property...........................53
Section 6.4.   Consolidation, Merger, Sale or
               Conveyance............................54
Section 6.5.   Disposition of Restricted Affiliates..56
Section 6.6.   Filing of Financial Statements,
               Certificate of No Default, Other
               Information...........................57
Section 6.7.   Rates and Charges.....................58
Section 6.8.   Validity of Instruments...............60

ARTICLE VII  –   REMEDIES OF THE MASTER TRUSTEE AND
                 HOLDERS IN EVENT OF DEFAULT.............61

Section 7.1.   Events of Default......................61
Section 7.2.   Payment of Obligations on Default.....64
Section 7.3.   Suit for Moneys Due...................64
Section 7.4.   Proceedings in Bankruptcy.............65
Section 7.5.   Suit by Master Trustee................65
Section 7.6.   Application of Moneys Collected.......66
Section 7.7.   Actions by Holders....................66
Section 7.8.   Direction of Proceedings by Holders...67
Section 7.9.   Delay or Omission of Master Trustee...68
Section 7.10.  Remedies Cumulative...................68
Section 7.11.  Notice of Default.....................68

ARTICLE VIII – CONCERNING THE MASTER TRUSTEE.............70

Section 8.1.   Duties and Liabilities of Master
               Trustee...............................70
Section 8.2.   Reliance on Documents, Etc............71
Section 8.3.   Responsibility for Recitals, Validity
               of Indenture, Proceeds of Notes.......72

Page

Section 8.4.     Master Trustee May Own Notes..........72
Section 8.5.     Compensation and Expenses of Master
                 Trustee..............................72
Section 8.6.     Officer's Certificate as Evidence,
                 Etc..................................73
Section 8.7.     Resignation, Removal and Succession
                 of Master Trustee....................74
Section 8.8.     Acceptance by Successor Master
                 Trustee..............................75
Section 8.9.     Qualifications of Successor Master
                 Trustee..............................75
Section 8.10.    Successor by Merger..................76
Section 8.11.    Co-Master Trustees...................76

ARTICLE IX -     SUPPLEMENTS AND AMENDMENTS.................78

Section 9.1.     Supplemental Indentures without
                 Consent of Holders...................78
Section 9.2.     Modification of Indenture with
                 Consent of Holders...................81
Section 9.3.     Effect of Supplemental Indenture......81
Section 9.4.     Obligations May Bear Notation of
                 Changes..............................82

ARTICLE X -      IMMUNITY OF INCORPORATORS, MEMBERS,
                 OFFICERS AND MEMBERS OF GOVERNING BODY.....83

Section 10.1.    Incorporators, Members, Officers and
                 Members of the Governing Body Exempt
                 from Individual Liability............83

ARTICLE XI -     SATISFACTION AND DISCHARGE OF INDENTURE;
                 RELEASE OF OBLIGATED ISSUERS; UNCLAIMED
                 MONEYS...................................84

Section 11.1.    Satisfaction and Discharge of
                 Indenture............................84
Section 11.2.    Application of Funds Deposited for
                 Payment of Obligations...............84
Section 11.3.    Repayment of Moneys Held by Master
                 Trustee..............................85

ARTICLE XII -    MISCELLANEOUS PROVISIONS...................86

Section 12.1.    Successors and Assigns of Obligated
                 Issuers Bound by Indenture...........86
Section 12.2.    Official Acts by Successor
                 Corporation..........................86
Section 12.3.    Notice or Demand Served by Mail.......86
Section 12.4.    Governing Law........................87
Section 12.5.    Legal Holidays.......................87
Section 12.6.    Benefits of Provisions of Indenture
                 and Obligations......................87

Page

Section 12.7.   Execution in Counterparts............87
Section 12.8.   Effective Date.....................87
Section 12.9.   Headings for Convenience Only........87
Section 12.10   Obligated Group Agent................87
Section 12.11   Notice to Rating Agencies............88

THIS MASTER TRUST INDENTURE (herein, together with all amendments and supplements hereto, the "Indenture"), dated as of November 1, 1993, between SOUTH FULTON MEDICAL CENTER, INC., a Georgia non-profit corporation, an initial member of the Obligated Group described herein (together with any legal successor thereto, the "Institution"), SOUTH FULTON MEDICAL CENTER FOUNDATION, INC., a Georgia non-profit corporation, SOUTH FULTON MEDICAL ARTS CENTER, INC., a Georgia non-profit corporation, SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC., a Georgia non-profit corporation, SOUTH FULTON HEALTH CARE CENTER, INC., a Georgia non-profit corporation, GEORGIA INTERNATIONAL HEALTH ALLIANCE, INC., a Georgia non-profit corporation, all as initial members of the Obligated Group (the "Initial Obligated Group") described herein, and BANK SOUTH, N.A., Atlanta, Georgia (together with any legal successor thereto or assignee thereof, the "Master Trustee"), a national banking association with its present principal corporate trust office in Atlanta, Georgia;

## W I T N E S S E T H:

WHEREAS, the members of the Initial Obligated Group are authorized by law and deem it desirable to enter into this Indenture for the purpose of providing for the issuance from time to time of Notes, Indentures, Guaranties and other Obligations (as such terms, together with certain other capitalized terms used herein, are defined in Section 1.1 hereof) in connection with the lawful and proper corporate purposes of the members of the Initial Obligated Group; and

WHEREAS, all acts and things necessary to constitute this Indenture a valid indenture and agreement according to its terms have been done and performed by the Initial Obligated Group; and

WHEREAS, at the time Obligations are issued in ac-cordance with the provisions of this Indenture, all acts and things necessary to authorize such Obligations and to constitute such Obligations the legal, valid and binding obligations of the Initial Obligated Group and all other Obligated Issuers will have been done and performed;

NOW, THEREFORE, THIS INDENTURE FURTHER WITNESSETH:

### GRANTING CLAUSES

That the Obligated Issuers, in consideration of the premises and the acceptance by the Master Trustee of the trusts hereby created, and of One Dollar ($1.00) to them duly paid by the Master Trustee, at or before the execution and delivery of these presents, and for other good and valuable consideration, the receipt whereof is hereby acknowledged and in order to secure the payment of and performance under all Outstanding Obligations, the

Obligated Issuers have granted, bargained, sold, warranted,
aliened, demised, released, conveyed, assigned, transferred,
mortgaged, pledged, set over and confirmed, and do by these
presents hereby grant, bargain, sell, warrant, alien, demise,
release, convey, assign, transfer, mortgage, pledge, set over and
confirm, unto the Master Trustee and to its successors in the
trusts hereby created, and to it and its assigns forever, all of
the Obligated Issuers' estate, right, title and interest in, to
and under the following described property, rights and interests
(herein sometimes referred to as the "trust estate" or "Trust
Estate"), to wit:

I.

All Gross Revenues and Pledged Shares (as hereinafter
defined).

II.

All moneys and securities held by the Master Trustee or
any other depositaries in any and all of the funds and accounts
established under this Indenture.

III.

All property which is by the express provisions of this
Indenture required to be subject to the lien hereof and any ad-
ditional property that may, from time to time hereafter, by
delivery or by writing of any kind, be subjected to the lien
hereof, by the Obligated Issuers or by anyone in their behalf, and
the Master Trustee is hereby authorized to receive the same at any
time as additional security hereunder.

TO HAVE AND TO HOLD, all and singular, the trust estate,
including all additional property which by the terms hereof has or
may become subject to the encumbrance of this Indenture, unto the
Master Trustee and its successors and assigns forever.

IN TRUST, NEVERTHELESS, upon the terms and trusts herein
set forth, for the equal and proportionate benefit and security of
the Holders from time to time of all Obligations issued and
Outstanding hereunder, without preference, priority or distinction
as to lien or otherwise of any one of said Obligations over any
other or others of said Obligations to the end that each Holder of
such Obligations has the same rights, privileges and lien under
and by virtue of this Indenture; and conditioned, however, that if
the Obligated Issuers shall well and truly pay or cause to be paid
fully and promptly when due all indebtedness, liabilities, obliga-
tions and sums at any time secured hereby, including interest and
attorneys' fees, and shall promptly, faithfully and strictly keep,
perform and observe or cause to be kept, performed and observed
all of its covenants, warranties and agreements contained herein,
then and in such event this Indenture shall be and become void and

-2-

of no further force and effect, otherwise the same shall remain in full force and effect, and upon the trust and subject to the covenants and conditions hereinafter set forth.

THIS INDENTURE FURTHER WITNESSETH, and it is expressly declared, that all Obligations issued and secured hereunder are to be issued, authenticated and delivered and all the said property and the rents, revenues and receipts hereby assigned and pledged, are to be dealt with and disposed of under, upon and subject to the terms, conditions, stipulations, covenants, agreements, trusts, uses and purposes as hereinafter expressed, and the Obligated Issuers and the Master Trustee have agreed and covenanted, and do hereby agree and covenant with the respective Holders from time to time of the Obligations, as follows:

# ARTICLE I

## DEFINITIONS OF TERMS, CONSTRUCTION
## AND CERTAIN GENERAL PROVISIONS

Section 1.1. <u>Definitions of Terms</u>. Unless the context shall otherwise require, the following words and terms when used in this Indenture shall have the meanings specified in this Section:

"Accountant" shall mean any Person who or which is appointed (i) by any member of the Combined Group for the purpose of examining and reporting on or passing on questions relating to the financial statements of such member or (ii) by the Obligated Group Agent for the purpose of examining and reporting on or passing on questions relating to the financial statements of two or more members of the Combined Group or the entire Combined Group, has all certifications necessary for the performance of such services, and, in the good faith opinion of the person making the appointment, has a favorable reputation for skill and experience in performing similar services in respect of entities of a comparable size and nature. If any Accountant's report or opinion is required to be given with respect to matters partly within and partly without the expertise of such Accountant, such Accountant may rely upon the report or opinion of another Accountant, which other Accountant shall be reasonably satisfactory to the relying Accountant and the Obligated Group Agent. The parties hereto agree that Ernst & Young shall be an acceptable Accountant.

"Additional Indebtedness" shall mean any Indebtedness (including all Obligations, other than the Initial Obligations) incurred by any Obligated Issuer subsequent to its becoming an Obligated Issuer.

"Affiliate" of any specified Person shall mean any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For purposes of this definition, (i) "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the power to appoint and remove its directors, the ownership of voting securities, by contract, membership or otherwise; and (ii) the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Architect" shall mean a Person who or which is appointed by any member of the Combined Group for the purpose of passing on questions relating to the design or construction of Facilities, has all licenses and certifications necessary for the performance of such services, and, in the good faith opinion of the member making the appointment, has a favorable reputation for skill and experience in performing similar services in respect of Facilities of a comparable size and nature.

-4-

"Balloon Indebtedness" shall mean:

(a)  Long-Term Indebtedness as to which, when issued, 25% or more of the debt service thereon is due in a single year, or

(b)  Long-Term Indebtedness as to which, when issued, 25% or more of the original principal amount thereof may, at the option of the holder or registered owner thereof, be redeemed or repurchased at one time, which portion of the principal is not required by the documents pursuant to which such Indebtedness is issued to be amortized by redemption prior to such date, or

(c)  Any Guaranty of Long-Term Indebtedness that is Balloon Indebtedness.

"Bond Index" shall mean (i) in respect of any Outstanding Indebtedness, the average interest rate on such Indebtedness for the twelve (12) months immediately preceding the month prior to such calculation, or if such Indebtedness shall have had a variable rate for less than a twelve (12) month period, the average interest rate on such Indebtedness for such lesser period; and (ii) in respect of any proposed Indebtedness, the 30 Revenue Bond Buyer Index or, if such index is no longer published, such other index which is certified to be comparable and appropriate by the Obligated Group Agent in an Officer's Certificate delivered to the Master Trustee.

"Book Value", when used in connection with property of any member of the Combined Group, shall mean the cost of such property, net of accumulated depreciation, calculated in conformity with generally accepted accounting principles, and when used in connection with property of the Combined Group, means the aggregate of the values so determined with respect to such property of all members of the Combined Group determined in such a manner that no portion of such value of property of any member of the Combined Group is included more than once.

"Capitalization" shall mean the principal amount of all outstanding Long-Term Indebtedness of the Combined Group, plus the equity accounts of the Combined Group (i.e., unrestricted fund balances, including any shareholder equity or partnership equity).

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time (and any successor thereto) and any applicable regulations.

"Combined Group" shall mean the Obligated Group and all Restricted Affiliates.

"Commitment Indebtedness" means the obligation of any Person to repay amounts disbursed pursuant to a Credit Facility issued to pay when due such Person's obligations under Indebtedness incurred in accordance with the provisions of this Indenture.

"Completion Indebtedness" shall mean any Long-Term Indebtedness (i) incurred by any Person for the purpose of financing the completion of constructing or equipping property with respect to which Long-Term Indebtedness was theretofore incurred in accordance with the provisions hereof, and (ii) in a principal amount not in excess of the amount required (a) to provide a completed and equipped property of substantially the type and scope contemplated at the time such prior Long-Term Indebtedness was incurred, (b) to provide for capitalized interest during the period of construction, (c) to capitalize a reserve with respect to such Completion Indebtedness and (d) to pay the costs and expenses of issuing such Completion Indebtedness.

"Construction Index" shall mean the health care component of the implicit price deflator for the gross national product as most recently reported prior to the date in question by the United States Department of Commerce or its successor agency, or, if such index is no longer published, such other index which is certified to be comparable and appropriate by the Obligated Group Agent in an Officer's Certificate delivered to the Master Trustee.

"Consultant" shall mean a Person who or which is appointed by the Obligated Group Agent for the purpose of passing on questions relating to the financial affairs, management or operations of one or more members of the Combined Group or the entire Combined Group and, in the good faith opinion of the Obligated Group Agent, has a favorable reputation for skill and experience in performing similar services in respect of entities engaged in reasonably comparable endeavors.  If any Consultant's report or opinion is required to be given with respect to matters partly within and partly without the expertise of such Consultant, such Consultant may rely upon the report or opinion of another Consultant, which other Consultant shall be reasonably satisfactory to the relying Consultant and the Obligated Group Agent.

"Counsel" shall mean a lawyer duly admitted to practice law before the highest court of any state in the United States of America or the District of Columbia, or any law firm, who or which, as the case may be, is not unsatisfactory to any recipient of the opinion required to be rendered by such Counsel.

"Credit Facility" means any letter of credit, line of credit, insurance policy, guaranty or other agreement constituting a credit enhancement or liquidity facility which is issued by a bank, trust company, savings and loan association or other institutional lender, insurance company or surety company for the benefit of the holder of any Indebtedness in order to provide a

-6-

source of funds for the payment of all or any portion of an Obligated Issuer's payment obligations under such Indebtedness.

"Cross Guarantee" shall mean the obligations of each Obligated Issuer pursuant to Section 2.3 hereof.

"Debt Service Requirement" of any Person shall mean, for any period of time, the amounts payable or the payments required to be made by such Person in respect of principal and interest on Outstanding Long-Term Indebtedness during such period (calculated in such a manner that no portion of Long-Term Indebtedness is included more than once), taking into account for purposes of calculating any projected debt service requirements (i) that any Indebtedness represented by a Guaranty shall be deemed payable on the dates and in the amounts contemplated in Section 4.3 (concerning the assumptions to be used in including debt service requirements of the guaranteed obligation), (ii) that any payments to be made in respect of Balloon Indebtedness and Variable Rate Indebtedness shall be calculated in accordance with the provisions of Section 4.4, (iii) that, with respect to Indebtedness refunded or refinanced during such period, only an amount of principal and interest equal to the principal and interest not payable from the proceeds of Indebtedness shall be taken into account during such period, and (iv) any amounts payable from funds available under an Escrow Deposit (other than amounts so payable solely by reason of the obligor's failure to make payments from other sources), or funded from the proceeds of such Long-Term Indebtedness (i.e., accrued and capitalized interest), shall be excluded from the determination of the Debt Service Requirement.

"Depositary" means the commercial bank or banks from time to time designated by the Institution to act as a depositary for the Revenue Fund in accordance with the provisions hereof and of the Depository Agreement.

"Depository Agreement" means the Depository Agreement, dated as of November 1, 1993, among the Master Trustee, the Obligated Issuers and the Depositary, as amended, supplemented or modified from time to time.

"Escrow Deposit" shall mean a segregated escrow fund or other similar fund, account or deposit in trust, of cash in an amount (or Investment Securities the principal of and interest on which will be in an amount), and under terms, sufficient, without further reinvestment, to pay all or a portion of the principal of, and premium, if any, and interest on, the indebtedness secured by such escrow fund or other similar fund, account or deposit as the same shall become due or payable upon redemption.

"Event of Default" shall mean any event of default under this Indenture as defined in Article VII hereof.

"Facilities" shall mean all land, leasehold interests and buildings and all fixtures and equipment of a Person.

-7-

"Fair Value Net Worth" of a Person as of any date shall mean:

(i) the fair value or fair saleable value (as the case may be, determined in accordance with applicable federal and state laws affecting creditors' rights and governing determinations of insolvency of debtors) of such Person's assets (including such Person's rights to contribution and subrogation under Sections 2.3(d) and (f) hereof or in respect of any other guarantee) as of such date, _minus_

(ii) the amount of all liabilities of such Person (determined in accordance with such laws) as of such date, excluding (x) such Person's Cross Guarantee and (y) any liabilities subordinated in right of payment to such Cross Guarantee, _minus_

(iii)  $1.00.

"Financial Advisor" shall mean an investment banking or financial advisory firm, commercial bank or any other Person who or which is appointed by the Obligated Group Agent for the purpose of passing on questions relating to the availability and terms of specified types of Indebtedness for any member of the Combined Group and is actively engaged in and, in the good faith opinion of the Obligated Group Agent, has a favorable reputation for skill and experience in underwriting or providing financial advisory services in respect of similar types of Indebtedness incurred by entities engaged in reasonably comparable endeavors.

"First Supplemental Indenture" shall mean the First Supplemental Master Indenture, dated as of November 1, 1993, between the Initial Obligated Group and the Master Trustee, supplementing and amending the terms and provisions hereof.

"Fiscal Year" shall mean a period of twelve consecutive months ending on June 30 or on such other date as may be specified in an Officer's Certificate of the Obligated Group Agent executed and delivered to the Master Trustee.

"Governing Body" shall mean, when used with respect to any Person, its board of directors, board of trustees, or other board, committee or group of individuals in which the powers of a board of directors or board of trustees is vested generally or for the specific matters under consideration.

"Government Issuer" shall mean any federal, state or municipal corporation or political subdivision thereof or any instrumentality of any of the foregoing empowered to issue obliga- tions on behalf thereof including, without limitation, the Tri-City Hospital Authority.

-8-

"Government Obligations" shall mean direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America, including evidences of a direct ownership interest in future interest or principal payments on obligations issued or guaranteed by the United States of America, which obligations are held in a custody account by a custodian pursuant to the terms of a custody agreement.

"Gross Revenues" means all revenues, income, receipts, accounts receivable and money derived from the operation of the Property or from the performance of management services, regardless of where such management services are performed, received in any period by the Institution (on account of the Obligated Issuers) or the Obligated Issuers, including, but without limiting the generality of the foregoing, (a) proceeds derived from (i) insurance, except to the extent the use thereof is otherwise specifically required by any agreement or indenture, (ii) accounts receivable, (iii) securities and other investments, (iv) inventory and other tangible and intangible property, (v) hospital expense reimbursement or medical expense reimbursement for hospital functions or insurance programs or agreements, (vi) condemnation awards except to the extent that the use thereof is otherwise specifically required by any agreement or indenture, (vii) contract and other rights and assets now or hereafter owned or held or possessed by or on behalf of any Obligated Issuer; (b) amounts earned on amounts deposited into the funds and accounts created under the Depository Agreement and (c) the revenues of any surviving, resulting or transferee entity provided for in this Indenture; provided, however, there shall not be included in Gross Revenues (A) the proceeds of borrowing and interest earned thereon if and to the extent such interest is required to be excluded by the terms of the borrowing, (B) revenues, income, receipts and money received by the Institution (on account of the Obligated Issuers) or the Obligated Issuers as agent for and on behalf of someone other than the Institution (on account of the Obligated Issuers) or the Obligated Issuers and (C) donor restricted gifts, grants, bequests, donations or contributions to the Institution (on account of the Obligated Issuers) or the Obligated Issuers for use in connection with the Property to the extent restricted by the donor thereof.

"Guaranty" shall mean any obligation of a Combined Group member guaranteeing any obligation of any other Person other than a Combined Group member, whether or not issued hereunder as an Indenture Guaranty, which obligation would, if such other Person were a member of the Combined Group, constitute Indebtedness hereunder.

"Historical Debt Service Coverage Ratio" shall mean, for any period of time, the ratio determined by dividing Total Income Available For Debt Service for such period by the Debt Service Requirement of the Combined Group for such period.

-9-

"Historical Pro Forma Debt Service Coverage Ratio" shall mean for any period of time, the ratio determined by dividing Total Income Available for Debt Service for such period by the Maximum Annual Debt Service of the Combined Group for all Long-Term Indebtedness then Outstanding and the Long-Term Indebtedness then proposed to be issued.

"Holder" shall mean, as the context requires, the registered owner of any Note, the beneficiary of any Indenture Guaranty in whose name an Indenture Guaranty is issued or the holder or beneficiary of any other type of Obligation.  In the case of an Obligation issued to a trustee or other fiduciary act-ing on behalf of the holders of any bonds, notes or other similar obligations which are secured by such Obligation, including any registered securities depositary then in the business of holding (for the benefit of beneficial owners whose interests may be evidenced by book-entry registration) substantial amounts of obligations of types comprising the Obligations, the term Holder shall mean the trustee or other fiduciary or, if so provided in the Related Financing Documents, the holders of the Related Bonds in proportion to their respective interests therein, including any registered securities depositary then in the business of holding (for the benefit of beneficial owners whose interests may be evidenced by book-entry registration) substantial amounts of obligations of types comprising the Obligations.

"Income Available For Debt Service" of a Person shall mean, with respect to any period of time, the excess of revenues which constitute Gross Revenues over expenses related thereto, or, in the case of for-profit entities, net income after tax, as determined in accordance with generally accepted accounting principles, to which shall be added, in either case, (i) depreciation, (ii) amortization, (iii) interest expense on Indebtedness (other than accrued or capitalized interest funded from the proceeds of Long-Term Indebtedness which is excluded from the determination of Debt Service Requirement), and from which shall be excluded any extraordinary items, any gain or loss resulting from either the extinguishment of indebtedness or the sale, exchange or other disposition of assets not made in the ordinary course of business and any revenues or expenses of any Person (other than a Limited Obligor) which is not a member of the Combined Group.

"Indebtedness" of a Person shall mean (i) all Notes and Guaranties, (ii) all liabilities (exclusive of reserves) recorded as indebtedness on the audited financial statements of such Person as of the end of the most recent Fiscal Year for which financial statements reported upon by an Accountant are available, and (iii) all other obligations for borrowed money; provided that Indebted-ness shall not include (1) Interest Rate Swap Obligations, (2) any other Indebtedness of any member of the Combined Group to any other member of the Combined Group, (3) rentals payable under leases which are not properly capitalized under generally accepted accounting principles or (4) any other obligation which does not

-10-

constitute indebtedness under generally accepted accounting principles.

"Indenture" shall mean this Master Trust Indenture, as supplemented by the First Supplemental Indenture, and any further supplements or amendments hereto.

"Indenture Guaranty" shall mean any Guaranty issued hereunder by an Obligated Issuer.

"Initial Obligation" shall mean the 1993 Master Note.

"Insurance Consultant" shall mean a Person who or which is appointed by any member of the Combined Group for the purpose of reviewing and recommending insurance coverages for the Facilities and operations of one or more members of the Combined Group or the entire Combined Group, is recognized as being skilled and experienced in performing such services in respect of Facilities and operations of a comparable size and nature, and, in the good faith opinion of the member making the appointment, has a favorable reputation for skill and experience in performing such services in respect of Facilities and operations of a comparable size and nature.  If any Insurance Consultant's report or opinion is required to be given with respect to matters partly within and partly without the expertise of such Insurance Consultant, such Insurance Consultant may rely upon the report or opinion of another Insurance Consultant or other expert, which other Insurance Consultant or other expert shall be reasonably satisfactory to the relying Insurance Consultant and the Obligated Group Agent.

"Interest Rate Swap Obligations" shall mean obligations of any Person pursuant to any arrangement with any other Person whereby, directly or indirectly, such Person is entitled to receive from time-to-time periodic payments calculated by applying either a floating or a fixed rate of interest on a stated principal amount in exchange for periodic payments made by such other Person calculated by applying a fixed or a floating rate of interest on the same amount.

"Investment Securities" shall mean and include the following:

(a)   Government Obligations;

(b)   bonds, debentures, notes or other evidence of indebtedness issued or guaranteed by any of the following federal agencies and provided such obligations are backed by the full faith and credit of the United States of America (stripped securities are only permitted if they have been stripped by the agency itself):

-11-

1.   <u>U.S. Export-Import Bank</u> (Eximbank)
Direct obligations or fully guaranteed certificates of
beneficial ownership

2.   <u>Farmers Home Administration</u> (FHA)
Certificates of beneficial ownership

3.   <u>Federal Financing Bank</u>

4.   <u>Federal Housing Administration Debentures</u> (FHA)

5.   <u>General Services Administration</u>
Participation certificates

6.   <u>Government National Mortgage Association</u> (GNMA
or "Ginnie Mae")
GNMA - guaranteed mortgage-backed bonds
GNMA - guaranteed pass-through obligations

7.   <u>U.S. Maritime Administration</u>
Guaranteed Title XI financing

8.   <u>U.S. Department of Housing and Urban
Development</u> (HUD)
Project Notes
Local Authority Bonds
New Communities Debentures - U.S. government guaranteed
   debentures
U.S. Public Housing Notes and Bonds - U.S. government
guaranteed public housing notes and bonds

(c)  bonds, debentures, notes or other evidence of
indebtedness issued or guaranteed by any of the following
non-full faith and credit U.S. government agencies (stripped
securities are only permitted if they have been stripped by
the agency itself):

1.   <u>Federal Home Loan Bank System</u>
Senior debt obligations

2.   <u>Federal Home Loan Mortgage Corporation</u> (FHLMC
or "Freddie Mac")
Participation Certificates
Senior debt obligations

3.   <u>Federal National Mortgage Association</u> (FNMA or
"Fannie Mae)
Mortgage-backed securities and senior debt obligations

4.   <u>Student Loan Marketing Association</u> (SLMA or
"Sallie Mae")
Senior debt obligations

5.   Resolution Funding Corp. (REFCORP) obligations

(d)   money market funds registered under the Federal Investment Company Act of 1940, whose shares are registered under the Federal Securities Act of 1933, and having a rating by Standard & Poor's Corporation ("S&P") of AAAm-G; AAAm; or AAm.

(e)   certificates of deposit secured at all times by collateral described in (a) or (b) above, issued by commercial banks, savings and loan associations or mutual savings banks, provided that the collateral must be held by a third party and the Master Trustee must have a perfected first security interest in the collateral.

(f)   certificates of deposit, savings accounts, deposit accounts or money market deposits which are fully insured by the FDIC.

(g)   investment agreements, including GIC's, with entities which are rated by Moody's Investors Service, Inc. ("Moody's") and S&P in one of the two highest rating categories (excluding any numerical or other modifiers within a rating category) assigned by such agencies.

(h)   commercial paper rated, at the time of purchase, "Prime-1" by Moody's and "A-1" or better by S&P.

(i)   bonds or notes issued by any state or municipality which are rated by Moody's and S&P in one of the two highest rating categories (excluding any numerical or other modifiers within a rating category) assigned by such agencies.

(j)   federal funds or bankers acceptances with a maximum term of one year of any bank which has an unsecured, uninsured and unguaranteed obligation rating of "Prime-1" or "A3" or better by Moody's and "A-1" or "A" or better by S&P.

(k)   repurchase agreements (a "Repo") providing for the transfer of securities from a dealer bank or securities firm (seller/borrower) to the Master Trustee or member of the Combined Group, as the case may be (buyer/lender), and the transfer of cash from the Master Trustee or member of the Combined Group, as the case may be, to the dealer bank or securities firm with an agreement that the dealer bank or securities firm will repay the cash plus a yield to the Master Trustee or member of the Combined Group, as the case may be, in exchange for the securities at a specified date provided that:

1.   Repos must be between the Master Trustee or member of the Combined Group, as the case may be, and a dealer bank or securities firm which is either (a) a primary dealer on the Federal Reserve reporting dealer

-13-



list which is rated "A" or better by S&P and Moody's, or
(b) a bank rated "A" or above by S&P and Moody's; and

2.  The repo must be in writing and must include
the following:  (a) securities which are acceptable for
transfer are:  (1)  direct U.S. governments, or (2)
federal agencies backed by the full faith and credit of
the U.S. government (and FNMA and FHLMC); (b) the term
of the repo may not exceed 30 days; (c) the collateral
must be delivered to the member of the Combined Group,
the Master Trustee (if such trustee is not supplying the
collateral) or third party acting as agent for the
Master Trustee (if such trustee is supplying the
collateral) before or simultaneously with payment; and
(d) the securities must be valued weekly, marked-to-
market at current market price plus accrued interest and
the value of collateral must be equal to 104% of the
amount of cash transferred by the Master Trustee or
member of the Combined Group, as the case may be, to the
dealer bank or security firm under the repo plus accrued
interest.  If the value of securities held as collateral
is below 104% of the value of the cash transferred by
the Master Trustee or member of the Combined Group, as
the case may be, plus accrued interest then additional
cash or acceptable securities must be transferred.  If,
however, the securities used as collateral are FNMA or
FHLMC, then the value of collateral must equal 105%.

"Lien" shall mean any mortgage or pledge of, security
interest in or lien or encumbrance on any Property of any member
of the Combined Group in favor of, or which secures any Indebted-
ness or any other obligation of any member of the Combined Group
to any Person other than another member of the Combined Group, but
excluding any mortgage, pledge, security interest, lien or
encumbrance securing Subordinated Indebtedness and subordination
arrangements among creditors.

"Limited Obligor" shall mean any Person, other than a
member of the Combined Group, on whose account any Obligated Is-
suer has issued a Guaranty as consideration for such Person's
execution and delivery to such Obligated Issuer of a Pledged Note.

"Long-Term Indebtedness" shall mean (i) all Indebtedness
which, at the time of incurrence or issuance, has a final maturity
or term greater than one year or which is renewable at the option
of the obligor thereof for a term greater than one year from the
date of original incurrence or issuance; and (ii) Short-Term
Indebtedness which is incurred as interim financing and which is
intended to be repaid out of the proceeds of other Long-Term
Indebtedness, provided that any one of the applicable conditions
described in Section 4.2 are met with respect to such Short-Term
Indebtedness on the date of incurrence, assuming for purposes of
compliance therewith that such Short-Term Indebtedness is Long-
Term Indebtedness characterized as Balloon Indebtedness for

purposes of meeting any of the applicable conditions in Section
4.2; provided, however, that Long-Term Indebtedness shall not
include (a) Non-Recourse Indebtedness or Subordinated Indebted-
ness; (b) current obligations payable out of current revenues,
including current payments for the funding of pension plans and
contributions to self insurance programs; (c) obligations under
contracts for supplies, services or pensions, allocated to the
current operating expenses of future years in which the supplies
are to be furnished, the services rendered or the pensions paid;
and (d) rentals payable under leases which are not properly
categorized as capital leases under generally accepted accounting
principles.

"Maximum Annual Debt Service" of the Combined Group
shall mean the highest annual Debt Service Requirement of the
Combined Group for the current or any succeeding Fiscal Year dur-
ing the remaining term of all Outstanding Obligations.

"Maximum Guaranty Liability" of a person as of any date
shall mean the greater of either (i) or (ii) below:

(i)   the greater of (A) or (B) as of such date:

(A)   the outstanding amount of all Obligations is-
sued by such person, or

(B)   the fair market value of all property
acquired, in whole or part, with the proceeds of such
Obligations by such person; or

(ii)   the greatest of the Fair Value Net Worth of such
person as of the latest of the fiscal year-end of such
person, each fiscal quarter-end of such person thereafter
occurring on or prior to the date of the determination of
Maximum Guaranty Liability, the date on which enforcement of
the pertinent Cross Guarantee is sought, and the date on
which a case under the United States Bankruptcy Code is com-
menced with respect to any Obligated Issuer.

"Net Operating Revenues" of a Person shall mean, with
respect to any period of time, operating revenues constituting
Gross Revenues less contractual allowances, free care, discounts
and allowances for bad debts, all determined in accordance with
generally accepted accounting principles.

"1993 Master Note" shall mean the 1993 Master Note in
the original principal amount of $39,140,000 being issued pursuant
to this Indenture, as supplemented by the First Supplemental
Indenture.

"Non-Recourse Indebtedness" shall mean any Indebtedness
secured by a Lien on all or any portion of the Facilities of any
Obligated Issuer, liability for which is effectively limited to

-15-

such Facilities subject to such Lien, with no recourse, directly or indirectly, to any other Facilities of any Obligated Issuer.

"Note" shall mean any note issued hereunder by an Obligated Issuer to evidence Long-Term Indebtedness or Short-Term Indebtedness incurred pursuant to the terms hereof.

"Obligated Group" shall mean all Obligated Issuers.

"Obligated Group Agent" shall have the meaning set forth in Section 12.10 hereof.

"Obligated Issuer" shall mean (i) the Institution, South Fulton Medical Center Foundation, Inc., South Fulton Medical Arts Center, Inc., South Atlanta Diagnostic Cardiology, Inc., South Fulton Health Care Center, Inc., Georgia International Health Alliance, Inc. and each other Person which becomes an Obligated Issuer in accordance with the provisions of Article III hereof, whether or not such Person has issued any obligations hereunder, and which has not withdrawn from the Obligated Group pursuant to Article III hereof, and (ii) when used in respect of any particular Obligation or other Indebtedness, shall mean the obligor thereunder.

"Obligations" shall mean all Notes and Indenture Guaranties issued hereunder, any lease, contractual agreement to pay money or other obligations of any Obligated Group member issued hereunder and any additional forms of Obligations created pursuant to Section 9.1 hereof.

"Officer's Certificate" shall mean a certificate (i) signed, in the case of a corporation, by the Chairman, Vice Chairman, President or Vice President-Finance or, in the case of a certificate delivered by any other Person, the chief executive or chief financial officer of such Person, in either case whose authority to execute such certificate shall be evidenced to the satisfaction of the Master Trustee, and (ii) signed, in the case of the Institution, by the President or Vice President-Finance of the Institution. When an Officer's Certificate is required hereunder to set forth matters relating to one or more Obligated Issuers, such Officer's Certificate may be given in reliance upon another certificate, or other certificates, and supporting materials, if any, provided by any duly authorized officer of the applicable Obligated Issuer.

"Opinion of Bond Counsel" shall mean an opinion in writing signed by an attorney or firm of attorneys experienced in the field of municipal bonds whose opinions are generally accepted by purchasers of municipal bonds.

"Outstanding" (a) when used with reference to Notes, shall mean, as of any date of determination, all Notes theretofore issued or incurred and not paid and discharged other than (i) Notes theretofore cancelled by the Master Trustee or delivered to

-16-

the Master Trustee for cancellation, (ii) Notes deemed paid and no
longer Outstanding as provided in Article XI hereof or for which
an Escrow Deposit has been established, (iii) Notes in lieu of
which other Notes have been authenticated and delivered or have
been paid pursuant to the provisions of the Supplemental Indenture
regarding mutilated, destroyed, lost or stolen Notes unless proof
satisfactory to the Master Trustee has been received that any such
Note is held by a bona fide purchaser for value without notice,
and (iv) any Note held by any Obligated Issuer; or, (b) when
referring to Indenture Guaranties, shall mean all Indenture
Guaranties unless the Master Trustee has received from the Holder
thereof a written release of all claims thereof against the
Obligated Issuer thereunder and all other Obligated Issuers; or,
(c) when referring to Indebtedness other than Notes and Indenture
Guaranties, shall mean, as of any date of determination, all
Indebtedness theretofore issued or incurred other than (i)
Indebtedness which has been paid, (ii) Indebtedness for which an
opinion of Counsel stating that such Indebtedness has been
discharged has been provided to the Master Trustee, (iii) evidence
of Indebtedness for which new evidence has been substituted in a
manner analogous to clause (a)(iii) above and (iv) any evidence of
Indebtedness held by any Obligated Issuer, provided that Obliga-
tions or evidences of Indebtedness held by any Obligated Issuer
may be deemed by such Obligated Issuer to be continuously
Outstanding if such Obligations or evidences of Indebtedness were
acquired with an intent that they only be held temporarily in con-
nection with an effort to remarket them to Persons other than the
Obligated Issuer.

"Permitted Liens" shall mean this Indenture, all Related
Financing Documents and, as of any particular time:

(i)  Any lien from any member of the Combined Group
to any other member of the Combined Group;

(ii)  Any judgment lien or notice of pending action
against any member of the Combined Group so long as such
judgment or pending action is being contested and execution
thereon has been stayed or the period for responsive pleading
or appeal has not lapsed, and neither the pledge and security
interest of this Indenture nor any Property of any member of
the Combined Group will be materially impaired or subject to
material loss or forfeiture;

(iii)  (A) Rights reserved to or vested in any
municipality or public authority by the terms of any right,
power, franchise, grant, license, permit or provision of law
affecting any Property, to (1) terminate such right, power,
franchise, grant, license or permit, provided that the
exercise of such right would not, in the opinion of the
Obligated Group Agent, materially impair the use of such
Property or materially and adversely affect the value
thereof, or (2) purchase, condemn, appropriate or recapture,
or designate a purchaser of, such Property; (B) any liens (or

-17-

deposits to obtain the release of such liens) on any Property for taxes, assessments, levies, fees, water and sewer charges, and other governmental and similar charges and any liens of mechanics, materialmen, laborers, suppliers or vendors for work or services performed or materials furnished in connection with such Property, which in the opinion of the Obligated Group Agent, are not material in amount or which are not due and payable or which are not delinquent or which, the amount or validity of which, are being contested and execution thereon is stayed; (C) easements, rights-of-way, servitudes, restrictions and other minor defects, encumbrances, and irregularities in the title to any Property which do not, in the opinion of the Obligated Group Agent, materially impair the use of such Property or materially and adversely affect the value thereof; (D) rights reserved to or vested in any municipality or public authority to control or regulate any Property or to use such Property in any manner, which rights do not, in the opinion of the Obligated Group Agent, materially impair the use of such Property or materially and adversely affect the value thereof; and (E) to the extent that it affects title to any Property, this Indenture or any Supplemental Indenture hereto;

(iv)  Any lease which relates to Property of the Combined Group which is of a type that is customarily the subject of such leases, including but not limited to any leasehold interest required under any Related Financing Documents, leases with respect to office space for physicians and educational institutions, food service facilities, gift shops and radiology or other hospital-based specialty services, pharmacy and similar departments and statutory landlord's liens with respect to such leases;

(v)  Any Lien securing Indebtedness provided such Lien also secures all Obligations (other than Obligations representing Subordinated Indebtedness or Non-Recourse Indebtedness) on a parity basis;

(vi)  Any Lien arising by reason of good faith deposits in connection with leases of real estate, bids or contracts (other than contracts for the payment of money), deposits by any member of the Combined Group to secure public or statutory obligations, or to secure, or in lieu of, surety, stay or appeal bonds, and deposits as security for the payment of taxes or assessments or other similar charges;

(vii)  Any Lien arising by reason of deposits with, or the giving of any form of security to, any governmental agency or any body created or approved by law or governmental regulation for any purpose at any time as required by law or governmental regulation as a condition to the transaction of any business or the exercise of any privilege or license, or to enable any member of the Combined Group to maintain self-insurance or to participate in any funds established to cover

-18-

any insurance risks or in connection with workers' compensation, unemployment insurance, pension or profit sharing plans or other similar social security plans, or to share in the privileges or benefits required for companies participating in such arrangements;

(viii)  Any Lien arising by reason of an Escrow Deposit;

(ix)  (A) Any Lien in favor of a trustee or the holder of a Note on the proceeds of Indebtedness or cash or investments deposited with such trustee and acquired with such proceeds prior to the application of such proceeds or cash or investments and (B) Liens in favor of a trustee, including the Master Trustee, to secure obligations to compensate, reimburse or indemnify such trustees;

(x)  Any Lien on moneys deposited by patients or others with any member of the Combined Group as security for or as prepayment for the cost of patient care;

(xi)  Any Lien on Property received by any member of the Combined Group through gifts, grants or bequests, such Lien being due to restrictions on such gifts, grants or bequests of property or the income thereon;

(xii)  Statutory rights of the United States of America by reason of federal funds made available under 42 U.S.C. §§ 291 et seq., and similar rights under other federal and state statutes;

(xiii)  Liens which otherwise satisfy the definition of Permitted Liens existing at the time of a Consolidation or Merger pursuant to Section 6.4 hereof, on the date of acquisition of any Property or at the time a Person becomes an Obligated Issuer pursuant to Section 3.1 hereof or a Restricted Affiliate pursuant to Section 3.3 hereof;

(xiv)  Certain specified Liens existing on the date of authentication and delivery of the Initial Obligation, as specified on Exhibit "A" attached hereto, provided that no such Lien (or the amount of Indebtedness secured thereby) may be increased, extended, renewed or modified to apply to any Property of any member of the Combined Group not subject to such Lien on such date, unless such Lien as so extended, renewed or modified otherwise qualifies as a Permitted Lien hereunder;

(xv)  A security interest in any funds or accounts established pursuant to the provisions of any Related Financing Documents;

(xvi)   Liens (whether by loan, lease or otherwise) in the form of purchase money security interests in Property financed or refinanced, directly or indirectly with the proceeds of Indebtedness secured thereby;

(xvii)   Liens securing any Indebtedness permitted hereunder, provided that the Master Trustee shall have received an Officer's Certificate from the Obligated Group Agent to the effect that not more than 15% of the Value of all Property of the Combined Group would be subject to a Lien (other than a Permitted Lien);

(xviii)   Liens on accounts receivable arising as a result of sale of such accounts receivable with recourse, provided that the principal amount of Indebtedness secured by any such Lien does not exceed the aggregate sales price of such accounts receivable received by the Obligated Issuer or Restricted Affiliate selling the same;

(xix)   options granted by any member of the Combined Group to others to purchase real property or other assets of such member; and

(xx)   deposits of cash or cash equivalents to secure obligations under letters of credit incurred in the ordinary course of business of any member of the Combined Group.

"Person" shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, a trust, an unincorporated organization, a governmental unit or an agency, political subdivision or instrumentality thereof or any other group or organization of individuals.

"Pledged Note" shall mean a promissory note executed by a Limited Obligor, as maker, in favor of an Obligated Issuer, as payee, evidencing a sum certain liability of such maker to such payee, which is assigned by such payee to the Master Trustee pursuant to Section 2.3 hereof.

"Pledged Shares" means 100% of the voting stock of any Restricted Affiliates which are stock corporations.

"Principal," when used to refer to the amount of any Obligation, shall mean (i) the principal amount of any Obligation that constitutes Indebtedness; (ii) with respect to an Indenture Guaranty, the principal amount guaranteed; (iii) with respect to an Interest Rate Swap Obligation, the "notional amount" of the Interest Rate Swap Obligation to the party to the swap transaction that is not an Obligated Issuer; (iv) with respect to a Credit Facility, the amount disbursed by the issuer of the Credit Facility and not reimbursed on the date the principal amount is determined; and (v) with respect to any other type of Obligation, the amount specified in the Supplemental Indenture creating such Obligation.

-20-

"Projected Debt Service Coverage Ratio" shall mean for any future period of time, the ratio determined by dividing projected Total Income Available for Debt Service for such period by Maximum Annual Debt Service of the Combined Group.

"Property" shall mean any and all rights, titles and interests in and to any and all property of the Obligated Issuers, whether real or personal, tangible or intangible, including cash, and wherever situated.

"Property, Plant and Equipment" shall mean all Facilities which are classified as property, plant and equipment under generally accepted accounting principles.

"Qualified Financial Institution" shall mean a bank, trust company, national banking association, insurance company or other financial services company whose unsecured long-term debt obligations (in the case of a bank, trust company, national bank- ing association or other financial services company) or whose claims paying abilities (in the case of an insurance company) are rated in any of the three highest rating categories (without reference to sub-categories) by Standard & Poor's Corporation or Moody's Investors Service, Inc.  For purposes hereof, the term "financial services company" shall include any investment banking firm or any affiliate or division thereof which may be legally authorized to enter into the transactions described in this Indenture pertaining, applicable or limited to a Qualified Financial Institution.

"Qualified Short-Term Investments" shall mean Investment Securities having a maturity of five years or less which are unrestricted or, if restricted, are permitted by the terms of such restriction to be used to retire Short-Term Indebtedness.

"Rating Agency" shall mean severally or collectively, if applicable (i) Standard & Poor's Corporation and any successor thereto, if it has assigned a rating to any Obligation issued and Outstanding hereunder or any Related Bonds issued and Outstanding pursuant to any Related Financing Documents, (ii) Moody's Inves- tors Service, Inc. and any successor thereto, if it has assigned a rating to any Obligation issued and Outstanding hereunder or any Related Bonds issued and Outstanding pursuant to any Related Financing Documents, and (iii) Fitch's Investors Service and any successor thereto, if it has assigned a rating to any Obligation issued and outstanding pursuant to any Related Financing Documents.  If any such Rating Agency shall no longer perform the functions of a securities rating service for whatever reason, the term "Rating Agency" shall thereafter be deemed to refer to the others, but if both of the others shall no longer perform the functions of a securities rating service for whatever reason, the term "Rating Agency" shall thereafter be deemed to refer to any other nationally recognized rating service or services as shall designated in writing by the Obligated Group Agent to the Mast

Trustee; provided that such designee shall not be unsatisfactory to the Master Trustee.

"Regulatory Body" shall mean any federal, state or local government, department, agency, authority or instrumentality and any other public or private organization, including accrediting bodies, having regulatory jurisdiction and authority over any Obligated Issuer or the Facilities or operations of any Obligated Issuer.

"Related Bond Indenture" shall mean any indenture, bond resolution or other comparable instrument pursuant to which a series of Related Bonds is issued.

"Related Bond Issuer" shall mean the Government Issuer of any issue of Related Bonds.

"Related Bonds" shall mean the revenue bonds, notes, other evidences of indebtedness or any other obligations (including the Certificates of each Series) issued by a Government Issuer pursuant to a single Related Bond Indenture, the proceeds of which are loaned or otherwise made available to an Obligated Issuer in consideration of the execution, authentication and delivery of a Note to or for the order of such Government Issuer.

"Related Bond Trustee" shall mean the trustee and its successors in the trust created under any Related Bond Indenture, and if there is no such trustee, shall mean the Related Bond Issuer.

"Related Financing Documents" shall mean:

(a)  in the case of any Note, (i) all documents, including any Related Bond Indenture, pursuant to which the proceeds of the Note are made available to an Obligated Issuer, the payment obligations evidenced by the Note are created and any security for the Note (if permitted under this Indenture) is granted, and (ii) all documents creating any additional payment or other obligations on the part of an Obligated Issuer which are executed in favor of the Holder in consideration of the Note proceeds being loaned or otherwise made available to the Obligated Issuer;

(b) in the case of any Indenture Guaranty, all documents creating the indebtedness being guaranteed pursuant to the Indenture Guaranty and providing for the loan or other disposition of the proceeds of the indebtedness, and all documents pursuant to which any security for the Indenture Guaranty (if permitted hereunder) is granted; and

(c)  in the case of Indebtedness other than Notes and Indenture Guaranties, all documents relating thereto which are of the same nature and for the same purpose as the documents described in clauses (a) and (b) above.

-22-

"Restricted Affiliate" shall mean any Affiliate of a member of the Combined Group that:

(a)  is either (i) a non-stock membership corporation of which one or more members of the Combined Group are the sole members, or (ii) a non-stock, non-membership corporation or a trust of which the sole beneficiaries or controlling Persons are one or more members of the Combined Group, or (iii) a stock corporation all of the outstanding shares of stock of which are owned by one or more members of the Combined Group, and

(b)  if such Affiliate is a non-stock corporation or a trust,

(i)  has the legal power, with approval of a majority of its Governing Body but without the consent of any other Person, to transfer to any Obligated Issuer (or to another Restricted Affiliate that possesses the power to transfer to any Obligated Issuer) money required for the payment of Indebtedness of any Obligated Issuer, and

(ii)  one or more members of the Combined Group have the sole right to elect or appoint and to remove, with or without cause, a majority of the members of the Governing Body thereof, and

(iii)  has the ability under applicable law and its organizational documents, with approval of a majority of the members of its Governing Body, to transfer all assets of such Affiliate remaining after payment of its debts to any Obligated Issuer or to another Restricted Affiliate whose remaining assets may be so transferred, provided that if such Affiliate is an organization described in Section 501(c)(3) of the Code, then for so long as the applicable Obligated Issuer is an organization described in Section 501(c)(3) of the Code, the organizational documents of such Affiliate and applicable law may (1) provide for the naming of another member of the Combined Group as a substitute beneficiary if the then current beneficiary ceases to be an organization described in Section 501(c)(3) of the Code and (2) prohibit transfers to organizations not described in Section 501(c)(3) of the Code, and

(c)  has satisfied (or a predecessor has satisfied) the requirements set forth in this Indenture for becoming a Restricted Affiliate and has not thereafter ceased to satisfy the requirements of clauses (a) and (b) above or satisfied the requirements set forth in this Indenture for ceasing to be a Restricted Affiliate, and

(d)  if such Affiliate is a stock corporation, takes such action as is reasonably required by the Master Trustee to perfect the security interest created by this Indenture in the Pledged Shares of such affiliate.

The fact that one or more specified elements described above is not satisfied shall not disqualify a Person as a Restricted Affiliate if, in the written opinion of Counsel to such Person delivered to the Master Trustee, substantially all of the indicia described above relating to the power to transfer Property of, and control, the applicable Affiliate of a member of the Combined Group, is vested in one or more members of the Combined Group.  Initially there are no Related Affiliates.

"Revenue Fund" shall mean the fund by that name created in Section 2.7 hereof.

"Short-Term Indebtedness" shall mean all indebtedness other than Long-Term Indebtedness reduced by the amount of Qualified Short-Term Investments.

"Subordinated Indebtedness" shall mean any promissory note, guaranty, lease, contractual agreement to pay money or other obligation of any Obligated Issuer which is expressly made subordinate and junior in right of payment of principal of, redemption premium, if any, and interest on, (a) all Obligations issued pursuant to this Indenture, and (b) all other obligations of the Obligated Group hereunder, on terms and conditions which substantially require that (i) no payment on account of principal of, redemption premium, if any, or interest on such Subordinated Indebtedness shall be made, nor shall any property or assets be applied to the purchase or other acquisition or retirement of such Subordinated Indebtedness, unless full payment of all amounts then due and payable upon maturity of Obligations issued under this Indenture have been made or duly provided for in accordance with the terms of such Obligations; (ii) no payment on account of principal of, redemption premium, if any, or interest on such Subordinated Indebtedness shall be made, nor shall any property or assets be applied to the purchase or other acquisition or retire-ment of such Subordinated Indebtedness if, at the time of such payment or application, or immediately after giving effect thereto, (1) there shall exist a default in the payment of the principal of, redemption premium, if any, or interest on any Obligations (whether at maturity or upon mandatory redemption), or (2) there shall have occurred an Event of Default with respect to any Obligations, as defined therein and in this Indenture, and such Event of Default shall not have been cured or waived or shall not have ceased to exist; and (iii) in the event that any Subordinated Indebtedness is declared or otherwise becomes due and payable because of the occurrence of an event of default with respect thereto, (1) the Holders at such time shall be entitled to receive payment in full thereon before the holders of the Subordinated Indebtedness shall be entitled to receive any payment on account of such Subordinated Indebtedness as a result of such

-24-

event of default or to foreclose or realize on any lien, and (2) no holder of Subordinated Indebtedness, or a trustee acting on such holder's behalf, shall be entitled to exercise any control over proceedings to enforce the terms and conditions of this Indenture except pursuant to any subordination rights.

"Supplemental Indenture" shall mean an indenture supplemental to, and authorized and executed pursuant to, the terms of this Indenture.

"Total Income Available for Debt Service" shall mean, as to any period, (a) the aggregate of Income Available for Debt Service of each member of the Combined Group for such period, determined in such a manner that no portion of Income Available for Debt Service of any member of the Combined Group is included more than once, plus (b) the Income Available For Debt Service of each Limited Obligor up to an amount equal to the amount of such Limited Obligor's Debt Service Requirement for such period with respect to the Indebtedness of such Limited Obligor guaranteed by a member of the Combined Group.

"Total Net Operating Revenues" shall mean, as to any period, the aggregate of Net Operating Revenues of each member of the Combined Group for such period, determined in such a manner that no portion of Net Operating Revenues of any member of the Combined Group is included more than once.

"Trust Estate" or "trust estate" shall have the meaning set forth in the granting and habendum clauses hereof.

"Value", when used in connection with any property, shall mean either (a) Book Value, or (b) at the election of the Obligated Group Agent evidenced by an Officer's Certificate delivered to the Master Trustee, the aggregate fair market value of such property, as reflected in the most recent written report of an appraiser selected by the Obligated Group Agent and, in the case of real property, who or which is a member of the American Institute of Real Estate Appraisers (MAI), delivered to the Master Trustee (which report shall be dated not more than three years prior to the date as of which value is to be calculated) (i) increased the cost of any property acquired, or decreased by the fair market value of any property disposed of, since the date of such report and (ii) increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such report to the date as of which value is to be calculated.

"Variable Rate Indebtedness" shall mean any portion of Indebtedness the interest rate on which fluctuates subsequent to the time of incurrence.

Section 1.2.  <u>Rules of Construction</u>.  References in this Indenture to any Article or Section shall be construed as referring to the Articles and Sections contained in this Indenture, unless otherwise stated.  The words "hereby", "herein", "hereof", "hereto", and "hereunder" and any compounds thereof shall be construed as referring to this Indenture generally and not merely to the particular Article, Section or subdivision in which they occur, unless otherwise required by the use or context.  Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Unless the use or context shall indicate otherwise, words importing the singular number shall include the plural and vice versa.

Section 1.3.  <u>Separability Clause.</u>  If any provision of this Indenture shall be held or be deemed to be, or shall in fact be, inoperative or unenforceable as applied to any particular case in any jurisdiction or jurisdictions, or in all jurisdictions or in all cases, such circumstance shall not have the effect of rendering the provision or provisions in question inoperative or unenforceable in any other jurisdiction or in any other case or circumstance or of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable.

Section 1.4.  <u>Accounting Principles.</u>  Where the character or amount of any asset or liability or item of income or expense is required to be determined or any consolidation, combination or other accounting computation is required to be made for the purposes of this Indenture or any agreement, document or certificate executed and delivered in connection with or pursuant to this Indenture, such determination or computation shall be done in accordance with generally accepted accounting principles in effect on (i) the date of the delivery of this Indenture, or (ii) at the election of the Obligated Group Agent, as specified in an Officer's Certificate delivered to the Master Trustee, the date such determination or computation is made for any purpose of this Indenture, such accounting principles, to the extent applicable, consistently applied; provided that intercompany balances and liabilities among the Obligated Issuers shall be disregarded and that the requirements set forth herein shall prevail, if inconsistent with generally accepted accounting principles.  In the event that the fiscal year of any Obligated Issuer ends on a date other than the last day of a Fiscal Year, the character or amount of any asset or liability or item of income or expense of such Obligated Issuer for its fiscal year ending within any Fiscal Year under consideration shall be deemed to be the character or amount of the appropriate asset or liability or item of income or expense for such Fiscal Year.  For purposes of calculating Total Income Available for Debt Service and Total Net Operating Revenues for any period, if any Obligated Issuer shall have become a member of the Combined Group during such period, such calculations shall be made assuming that such Obligated Issuer became a member of the Combined Group at the beginning of such period.

Section 1.5.  **Officer's Certificates**.  Whenever the Obligated Group Agent is required or permitted to deliver an Officer's Certificate pursuant to the terms of this Indenture, the Obligated Group Agent shall, in making the required certifications, be entitled to (i) rely on Officer's Certificates obtained from the Obligated Issuers as to the existence or nonexistence of Events of Default and events which, with the passage of time or giving of notice or both, would or might become an Event of Default hereunder; (ii) determine compliance with any financial covenant or test set forth herein based on the audited financial statements of the Obligated Issuers or, if any Obligated Issuer does not furnish audited financial statements, based on financial statements of such Obligated Issuer that have been certified as being true and correct by the chief financial officer of such Obligated Issuer; and (iii) rely on the advice of an Accountant as to the determination of compliance with any financial covenant or test set forth herein.

## ARTICLE II

## MASTER INDENTURE OBLIGATIONS

Section 2.1. _Issuance of Obligations: Form and Terms Thereof._ Subject to the further conditions specified in Article IV, each Obligated Issuer shall be permitted to issue one or more series of Obligations hereunder on which all Obligated Issuers will be jointly and severally liable. The Obligations of each series shall be issued in substantially such forms as may be approved by the Obligated Issuer thereof and set forth in the Supplemental Indenture providing for the issuance thereof. The number and aggregate principal amount of Obligations shall not be limited, except as provided in any Supplemental Indenture. All Obligations shall be issued in fully registered form without coupons. Subject to the applicable provisions hereof, all Obligations shall be issued upon and contain such maturities, payment terms, interest rate provisions, redemption or prepayment features and other provisions as shall be set forth in the Supplemental Indenture providing for the issuance of such Obligations. All obligations of the Obligated Issuers with respect to Obligations issued under this Indenture shall be general obligations of the Obligated Issuers, equally and ratably secured on a parity basis hereunder and payable solely from the Trust Estate. The principal of and interest on the Obligations issued hereunder are secured by an assignment and pledge of the Trust Estate out of which the same are payable and are further secured by the lien of this Indenture.

Section 2.2. _Payment of Obligations._ The principal of, premium, if any, and interest on the Obligations shall be payable in any currency of the United States of America which, on the respective dates of payment thereof, is legal tender for the payment of public and private debts, and such principal, premium, if any, and interest shall be payable at the principal corporate trust office of the Master Trustee or, if an Obligated Issuer so elects, such payments shall be made directly by such Obligated Issuer, by check or draft or by wire transfer to such Holder, in either case delivered on or prior to the date on which such payment is due. In the case of all payments made directly to a Holder, the Obligated Issuer shall give notice of any such payment to the Master Trustee concurrently with the making thereof, specifying the amount paid and identifying the Obligation or Obligations with respect to which such payment was made by series, designation, number and Holder. Except with respect to Obligations directly paid, the Obligated Issuers agree to deposit with the Master Trustee on or prior to each due date of the principal of, premium, if any, or interest on any of the Obligations the sum becoming due, all in accordance with the specific terms for such payments which may from time to time be specified in Supplemental Indentures.

-28-



Section 2.3.  Cross-Guaranties.  (a)  For value
received, each Obligated Issuer, jointly and severally, hereby
unconditionally guarantees to the Holders of the Obligations and
to the Master Trustee the due and punctual payment of the
principal of and interest on the Obligations and all other amounts
due and payable under this Indenture and the Obligations when and
as the same shall become due and payable, whether at the stated
maturity or by declaration of acceleration, call for redemption or
otherwise, according to the terms of the Obligations; provided,
however, that the maximum aggregate liability of each Obligated
Issuer hereunder as of any date shall be its Maximum Guaranty Li-
ability as of such date.  The Obligations may from time-to-time
exceed the Maximum Guaranty Liability of any Obligated Issuer, and
may exceed the aggregate Maximum Guaranty Liability of all
Obligated Issuers, without impairing any Obligated Issuer's rights
and obligations under this Indenture.  The parties hereto intend
that in no event shall any Obligated Issuer's obligations under
its Cross Guarantee constitute or result in a violation of any
applicable fraudulent conveyance or similar law of any relevant
jurisdiction.  In the event that any Cross Guarantee would, but
for this sentence, constitute or result in such a violation, then
the liability of an Obligated Issuer under such Cross Guarantee
shall be reduced to the maximum amount permissible under the ap-
plicable fraudulent conveyance or similar law.  Subject to the
preceding limitation on liability, such Cross Guarantee
constitutes a guarantee of payment in full when due and not merely
a guarantee of collectibility.  In addition to the foregoing, each
Obligated Issuer shall cause, to the extent permitted by law, its
Restricted Affiliates to transfer to the Obligated Group such of
their property as shall be necessary to enable the Obligated Group
to meet all of its joint and several liability (determined without
regard to the aggregate Maximum Guaranty Liability of the
Obligated Issuers) in respect of all Outstanding Obligations, in
the maximum amount permissible under the applicable fraudulent
conveyance or similar laws.

(b)  Except as provided in paragraph (e) of this Section
2.3, the obligations of each Obligated Issuer hereunder shall be
as aforesaid absolute and unconditional, and shall not be
impaired, modified, released or limited by any occurrence or
condition whatsoever, including, without limitation, (i) any
compromise, settlement, release, waiver, renewal, extension,
indulgence or modification of, or any change in, any of the
obligations and liabilities of any Obligated Issuer contained in
the Obligations or this Indenture, (ii) any impairment, modifica-
tion, release or limitation of the liability of any other
Obligated Issuer or its estate, in bankruptcy, or any remedy or
the enforcement thereof, resulting from the operation of any
present or future provision of any applicable Bankruptcy Law, as
amended, or other statute or from the decision of any court, (iii)
the assertion or exercise by any Obligated Issuer or the Master
Trustee of any rights or remedies under any of the Obligations or
this Indenture or their delay in or failure to assert or exercise
any such rights or remedies, (iv) the assignment or the purported

-29-



assignment of any property as security for any of the Obligations, including all or any part of the rights of the Obligated Issuers under the Indenture, (v) the extension of the time for payment by any Obligated Issuer of any payments or other sums or any part thereof owing or payable under any of the terms and provisions of any of the Obligations or this Indenture or of the time for performance by any Obligated Issuer of any other obligations under or arising out of any such terms and provisions or the extension or the renewal of any thereof, (vi) the modification or amendment (whether material or otherwise) of any duty, agreement or obligation of any Obligated Issuer set forth in the Indenture, (vii) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar proceeding affecting any Obligated Issuer or any of their respective assets, or the disaffirmance of any Obligated Issuer's Cross Guarantee or the Obligations or this Indenture in any such proceeding, (viii) the release or discharge of any Obligated Issuer from the performance or observance of any agreement, covenant, term or condition contained in any of such instruments by operation of law, (ix) the unenforceability of any of the Obligations or this Indenture or any Obligated Issuer's Cross Guarantee or (x) any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

(c)   Each Obligated Issuer hereby (i) waives diligence, presentment, demand of payment, filing of claims with a court in the event of the merger, insolvency or bankruptcy of any other Obligated Issuer, any right to require a proceeding first against any other Obligated Issuer or to realize on any collateral, protest or notice with respect to the Obligations and all demands whatsoever, (ii) acknowledges that any agreement, instrument or document evidencing the Obligations may be transferred and that the benefit of its obligations hereunder shall extend to each holder of any agreement, instrument or document evidencing the Obligations without notice to them, and (iii) covenants that its Cross Guarantee will not be discharged except pursuant to paragraph (e) of this Section 2.3 or by complete performance of the Obligations or its Cross Guarantee.  Each Obligated Issuer further agrees that if at any time all or any part of any payment theretofore applied by any person to any Obligation is, or must be, rescinded or returned for any reason whatsoever, including, without limitation, the insolvency, bankruptcy or reorganization of any Obligated Issuer, such Obligation shall for the purposes of any Obligated Issuer's Cross Guarantee to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application, and such Obligated Issuer's Cross Guarantee shall continue to be effective or be reinstated, as the case may be, as to such Obligations as though such application had not been made.

(d)  Each Obligated Issuer shall be subrogated to all rights of the Holders of the Obligations and the Master Trustee against the other Obligated Issuers in respect of any amounts paid by said Obligated Issuer pursuant to the provisions of this Indenture; provided, however, that no Obligated Issuer shall be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all Obligations shall have been paid in full or discharged.

(e)  If any person which shall have been an Obligated Issuer shall cease to be an Obligated Issuer, thereupon, without any further act, such person shall cease to be a "Cross Guarantor" hereunder, and its obligations hereunder as "Cross Guarantor" shall be terminated and released; provided, however, that the foregoing provision of this paragraph (e) shall be inapplicable (i) if such person shall cease to be an Obligated Issuer as a result of a transaction which is prohibited by the terms of this Indenture or (ii) if, at the time that such person would otherwise have been released under this paragraph (e), there shall have occurred and be continuing a default in the payment of principal or interest on any Obligation (in which event this clause (ii) shall cease to apply to such person at such time as such default shall be cured).

(f)  In the event that any Obligated Issuer shall make (or be called upon to make) a payment under its Cross Guarantee (such Obligated Issuer being referred to herein as the "Funding Party"), each of the other Obligated Issuers (each, a "Contributor") shall contribute to the Funding Party such Contributor's pro rata share of the amount of such payment.  For this purpose, each Contributor's "pro rata share" with respect to a payment means the ratio of (i) such Contributor's Maximum Guaranty Liability as of such date (without giving effect to such Contributor's right to receive or obligation to make any contribution hereunder) to (ii) the aggregate Maximum Guaranty Liability of all Obligated Issuers (without giving effect to any Obligated Issuer's right to receive or obligation to make any contribution hereunder), determined as of the date such payment is made (or to be made).  The failure of a Contributor to discharge its obligations under this paragraph (f) shall not affect the obligations of any Obligated Issuer under its Cross Guarantee.  The obligations under this paragraph (f) shall be unaffected by any of the events described in Section 2.3(b) or any comparable events pertaining to the Funding Party, its Cross Guarantee, or the undertakings in this paragraph (f).

Section 2.4.  Execution and Authentication of Obligations.  All Obligations shall be executed for and on behalf of an Obligated Group Member by its Chief Financial Officer or such other officer designated in writing by, or in the manner specified in, a resolution of the Governing Body of such Obligated Group Member.  All Obligations shall also require the written joinder thereto and execution thereof by the Obligated Group Agent and shall be executed for and on behalf of the Obligated Group Agent



by its Chief Financial Officer or such other officer designated in writing by, or in the manner specified in, a resolution of the Governing Body of the Obligated Group Agent.  The signatures, or facsimiles thereof, of such officers may be mechanically or photographically reproduced on the Obligations.  If any officer whose signature appears on any Obligation ceases to be such officer before delivery thereof, such signature shall remain valid and sufficient for all purposes as if such officer had remained in office until such delivery.  Each Obligation shall be manually authenticated by an authorized officer or employee of the Master Trustee, without which authentication no Obligation shall be valid or entitled to the benefits hereof.

The Master Trustee's certificate of authentication shall be substantially in the following form:

<u>TRUSTEE'S AUTHENTICATION CERTIFICATE</u>

The undersigned Master Trustee hereby certifies that this [Note/Indenture Guaranty/description of other Obligation] No. ____ is one of the Obligations described in the within-mentioned Master Trust Indenture.

BANK SOUTH, N.A.,
as Master Trustee

By_____
        Authorized Signature

Section 2.5.  <u>Registration, Transfer and Exchange</u>.  (a) Registration books relating to Obligations of the Obligated Group shall be maintained at the principal corporate trust office of the Master Trustee.  Such books shall contain (i) the names and addresses of all Holders of Obligations and (ii) any other information which may be necessary for the proper discharge of the Master Trustee's duties hereunder in respect of such Obligations.

(b)  The Obligations of any series may be registered as transferred or exchanged in the manner specified in the Supplemental Indenture providing for the issuance thereof.  No registration of transfer or exchange made in any other manner shall be valid for any purpose hereunder.  Unless otherwise specified in the Supplemental Indenture providing for the issuance of the Obligations to be transferred or exchanged, the Obligated Issuer of such Obligations shall pay all costs relating to such registration of transfer or exchange, except for taxes or governmental charges related thereto, which shall be paid by the Holder requesting the registration of transfer or exchange.

Section 2.6.  **Mutilated, Destroye**
**ligations**.  (a)  If any Obligation is mut
estroyed, the Holder thereof shall be ent.
substitute Obligation only as follows:

(i)  in the case of a lost, stole
tion, the Holder shall provide notice
Obligated Group Agent, or to the Maste
reasonable time after the Holder recei

(ii)  in the case of a lost, stole
tion, the Holder shall request the iss
Obligation before the Obligated Group .
of the transfer of the original Oblige
purchaser for value without notice;

(iii)  in all cases, the Holder sha
against any and all claims arising ou
related to the issuance of substitute
this Section satisfactory to the Mast
Obligated Group Agent;

(iv)  in the case of a mutilate: O
shall surrender the Obligation to the
cancellation; and

(v)  in the case of a lost, stole
tion, the Holder shall provide evidenc
Master Trustee and to the Obligated Gr
ownership of the affected Obligation a
destruction thereof.

on compliance with the foregoing, a new (.
d denomination, executed by the applicabl
e Obligated Group Agent, shall be authent
ustee and delivered to the Holder, all an
lder to whom the substitute Obligation is
twithstanding the foregoing, the Master I
quired to authenticate and deliver any su
on which has been called for redemption c
about to mature and, in any such case, t
on price then due or becoming due shall b
istee in accordance with the terms of the
len or destroyed Obligation without sub.

(b)  Every substituted Obligation issu
tion 2.6 shall constitute an additional
the Obligated Group, whether or not the
e been destroyed, lost or stolen shall b
e by anyone, and shall be entitled to al
enture equally and proportionately with
igations duly issued hereunder unless th
e been destroyed, lost or stolen shall b
e by a bona fide purchaser for value wi

**Lost or Stolen**
ated, lost, stolen or
ed to the issuance of

or destroyed Obliga-
the loss to the
Trustee, within a
s notice of the loss;

or destroyed Obliga-
nce of a substitute
ent receives notice
on to a bona fide

. provide indemnity
of or otherwise
oligations pursuant to
Trustee and to the

ligation, the Holder
ister Trustee for

or destroyed Obliga-
, satisfactory to the
up Agent, of the
d the loss, theft or

ligation of like tenor
Obligated Issuer and
cated by the Master
the expense of the
delivered.
ustee shall not be
stitute for an Obliga-
which has matured or
e principal or redemp-
paid by the Master
mutilated, lost,
itution therefor.

d pursuant to this
ontractual obligation
bligation alleged to
at any time enforce-
the benefits of this
ny and all other
Obligation alleged to
at any time enforce-
out notice. In the

-33-

event the Obligation alleged to have been destroyed, lost or stolen shall be enforceable by anyone, the Obligated Group may recover the substitute Obligation and any payments of principal and interest made thereunder from the Holder to whom it was issued or from anyone taking under the Holder except a bona fide purchaser for value without notice.

(c)   All Obligations shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Obligations, and shall preclude any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments, investments or other securities without their surrender.

Section 2.7.   <u>Establishment of Funds and Investment of Fund Money</u>.   There is hereby created and established a special separate trust fund of the Obligated Issuers to be known and designated as the "South Fulton Medical Center, Inc. Revenue Fund" (herein defined and referred to as the "Revenue Fund"), which shall be held in trust by one or more banking institution or institutions designated from time to time as depositary by the Obligated Group Agent.   The Obligated Issuers shall cause each such banking institution to enter into a written depositary agreement, which shall be satisfactory in form and substance to the Master Trustee, pursuant to which each such banking institution shall agree to hold any and all Gross Revenues from time to time on deposit with such banking institution as assets of a trust for the Holders of the Obligations and to transfer such Gross Revenues to the Master Trustee upon receipt from the Master Trustee of a notice stating that delivery of such Gross Revenues is required pursuant to Section 7.1 or as otherwise provided in the second paragraph of this Section.

In order further to secure the timely making of the payment of the Outstanding Obligations, the Obligated Issuers agree that they shall deposit daily, so far as practicable, all of the Gross Revenues into the Revenue Fund.   Unless on the date on which any account payment is due and payable on Outstanding Obligations, there shall have been paid to the Master Trustee for deposit in the appropriate funds established under this Indenture moneys sufficient for the payment in full of all payments due and payable on such due date, the Gross Revenues shall be delivered on such due date to the Master Trustee by the transfer thereof by such banking institution or institutions as shall then be serving as depositary or depositaries of the Revenue Fund to the credit of the Master Trustee until the total of the Gross Revenues delivered to the Master Trustee for such month shall equal the total amount of such payments, at which time such banking institution or institutions may suspend the further delivery of the Gross Revenues until the next date upon which any payment on Outstanding Obligations is due and not paid in which event the Gross Revenues shall be again delivered to the Master Trustee as aforesaid.   This paragraph

-34-

shall constitute all necessary authority to such banking
institutions to make such transfers.  On any day that the banking
institution or institutions described in this paragraph are not
obliged by the provisions of this paragraph to deliver Gross
Revenues to the Master Trustee because of a failure to make pay-
ments on Outstanding Obligations which are due and payable, the
Obligated Issuers shall have full authority to withdraw funds from
the Revenue Fund and to expend such funds for any lawful purpose.

The Master Trustee shall apply the Gross Revenues in the
Revenue Fund in the same manner as the payments on the Outstanding
Obligations are to be applied.

Unless the Depository is, or Depositaries are, required
to deliver the Gross Revenues held in the Revenue Fund to the
Master Trustee pursuant to the second paragraph of this Section
2.7, all money held at any time in any fund established hereunder
shall, upon written request and direction of the Obligated Group
Agent, be invested in Investment Securities.  Any money received
by the Master Trustee pursuant to the second paragraph of this
Section 2.7 following a failure by the Obligated Issuers to make
any payment on any Outstanding Obligation when due and payable
shall be invested by the Master Trustee, without need of any
further authorization or direction only in Government Obligations
having maturities not in excess of 90 days, unless the Master
Trustee is otherwise directed by Holders in the manner provided in
Section 7.8 hereof.  The Master Trustee shall not be liable or
responsible for any loss resulting from any such investment.

Section 2.8.  <u>Supplemental Indenture Creating an Obliga-
tion.</u>  Any Obligated Issuer and the Master Trustee may from time
to time enter into a Supplemental Indenture in order to create an
obligation issued hereunder.  Such Supplemental Indenture shall,
(a) with respect to Obligations created thereby, set forth the
date thereof, and the date or dates on which principal of and
premium, if any, and interest on such Obligations shall be pay-
able, and (b) provide for the form of such Obligations and shall
contain such other terms and provisions as shall not be
inconsistent with the provisions hereof.

Section 2.9.  <u>Conditions to Issuance of Obligations
Hereunder.</u>  Simultaneously with or prior to the execution,
authentication and delivery of Obligations pursuant to this
Indenture:

(a)  all requirements and conditions to the issuance of
such Obligations, if any, set forth herein and in the
Supplemental Indenture shall have been complied with and
satisfied, as evidenced by an opinion of Counsel to the
applicable Obligated Issuer to that effect delivered to the
Master Trustee;

(b)   the applicable Obligated Issuer or the Obligated Group Agent shall have delivered to the Master Trustee such opinions, certificates, proceedings, instruments and other documents as the Master Trustee or the Related Bond Issuer, if any, may reasonably request;

(c)   the requirements of Article IV with respect to the incurrence of Additional Indebtedness shall have been satisfied if such Obligations constitute Indebtedness; provided, however, that such requirements shall be deemed to have been satisfied with respect to the 1993 Master Note;

(d) each Supplemental Indenture shall specify the purpose or purposes for which such Obligations are being issued, which may be any purpose within the corporate power of the applicable Obligated Issuer; and

(e)   the Obligated Group Agent shall have delivered to the Master Trustee an opinion of Counsel to the effect that registration of such Obligations under the Securities Act of 1933, as amended, and qualification of this Indenture or the Supplemental Indenture under the Trust Indenture Act of 1939, as amended, are not required, or, if such registration or qualification is required, that the members of the Obligated Group have complied with all applicable provisions of said Acts; provided, however, that such requirements shall be deemed to have been satisfied with respect to the 1993 Master Note.



## ARTICLE III

### MEMBERSHIP IN AND WITHDRAWAL
### FROM THE OBLIGATED GROUP;
### DESIGNATION AND RELEASE OF RESTRICTED AFFILIATES

Section 3.1. <u>Conditions for Membership</u>. A Person (other than a Person who is already a member of the Obligated Group) may become an Obligated Issuer only upon the following conditions:

(a) such Person shall execute and deliver to the Master Trustee an appropriate instrument, satisfactory to the Obligated Group Agent, containing (i) the agreement of such Person to become an Obligated Issuer under this Indenture and thereby to become subject to compliance with all provisions of this Indenture pertaining to an Obligated Issuer, including the performance and observance of all covenants and obligations of an Obligated Issuer hereunder; (ii) the agreement of such Person to consult with each other member of the Obligated Group prior to incurring any Obligations; and (iii) such other restrictions on the ability of such Person to incur Obligations as shall be imposed by the Obligated Group;

(b) the Master Trustee shall have received an Officer's Certificate from the Obligated Group Agent to the effect that the Obligated Group Agent consents to such Person becoming an Obligated Issuer;

(c) the Master Trustee shall have received an opinion of Counsel to such proposed Obligated Issuer to the effect that (i) the conditions contained herein relating to such Person's membership in the Obligated Group have been satisfied; (ii) under then existing law, such Person becoming an Obligated Issuer will not subject any Obligation to the registration provisions of the Securities Act of 1933, as amended, or that any such Obligation has been so registered if registration is required or the qualification of this Indenture pursuant to the Trust Indenture Act of 1939, as amended, or that this Indenture has been so qualified if qualification is required; and (iii) that the instrument described in subparagraph (a) above has been duly authorized, executed and delivered by such Person and constitutes a legal, valid and binding agreement of such Person, enforceable in accordance with its terms, subject only to and limited by the then existing law relating to bankruptcy and insolvency and other standard and customary legal exceptions;

(d) if all amounts due or to become due on any Outstanding Related Bond which bears interest that is not includable in gross income under the Code has not been paid to the holder thereof (or provision for such payment has not been made in such manner as to have resulted in the

defeasance of the Related Financing Documents), the Master
Trustee shall have received an Opinion of Bond Counsel to the
effect that under then existing law such Person becoming an
Obligated Issuer would not, by itself, cause the interest
payable on such Related Bond to become includable in gross
income for federal income tax purposes under the Code;

     (e)   there is delivered to the Master Trustee (i) either
(1) an Officer's Certificate of the Obligated Group Agent to
the effect that no Event of Default then exists hereunder,
nor to such officer's knowledge, does there then exist any
event which, with the passage of time or giving of notice or
both, would become an Event of Default hereunder, or (2) an
Officer's Certificate of the Obligated Group Agent to the
effect that such Person becoming a member of the Obligated
Group will cure any Event of Default then in existence
hereunder, and (ii) either (1) an Officer's Certificate of
the Obligated Group Agent to the effect that if one dollar of
Additional Indebtedness were incurred immediately following
such Person's admission, the Combined Group would meet the
test providing for the incurrence of Long-Term Indebtedness
pursuant to Section 4.2(a)(i) or (ii) hereof (assuming, for
purposes of such certificate that the Income Available for
Debt Service and Indebtedness of such Person were Income
Available for Debt Service and Indebtedness of an Obligated
Issuer), or (2) a Consultant's report to the effect that by
reason of such membership, the Projected Debt Service
Coverage Ratio for each of the two Fiscal Years following
such entry into the Obligated Group will be greater than the
Projected Debt Service Coverage Ratio for such Fiscal Years
had such entry into the Obligated Group not occurred; and

     (f)   there is delivered to the Master Trustee an
Officer's Certificate of the Obligated Group Agent to the
effect that the addition of such Obligated Issuer to the
Obligated Group will not result in the fund balance of the
Combined Group immediately after such addition being less
than 90% of the fund balance of the Combined Group
immediately prior to such addition.

     Section 3.2.  <u>Withdrawal From the Obligated Group</u>.
(a) No Obligated Issuer may withdraw from the Obligated Group
unless:

     (i)  If the Obligated Issuer is other than the
Obligated Group Agent, the Obligated Group Agent
consents to the withdrawal;

     (ii)  If all amounts due on any Outstanding Related
Bond which bears interest that is not includable in
gross income under the Code have not been paid to the
holder thereof (or provision for such payments has not
been made in such manner as to have resulted in the
defeasance of the Related Financing Documents), the

-38-

Master Trustee shall have received an Opinion of Bond Counsel, in form and substance satisfactory to the Master Trustee, to the effect that under then existing law such issuer's withdrawal from the Obligated Group would not, by itself, cause the interest payable on such Related Bond to become includable in gross income for federal income tax purposes under the Code;

(iii)  The Master Trustee shall have received either (1) an Officer's Certificate from the Obligated Group Agent to the effect that either (A) after giving effect to such withdrawal, if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (B) such Person's withdrawal from the Obligated Group will cure any Event of Default then in existence hereunder, or (2) a report of a Consultant to the effect that either (x) by reason of such withdrawal, the Projected Debt Service Coverage Ratio for each of the two Fiscal Years immediately following withdrawal of such Obligated Issuer from the Obligated Group will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Year had such withdrawal not occurred, or (y) the Historical Debt Service Coverage Ratio for the most recent Fiscal Year for which consolidated or combined financial statements reported upon by an independent certified public accountant are available would not, if such withdrawal had occurred at the beginning of such period, be reduced to less than 1.50;

(iv)  The Master Trustee shall have received an Officer's Certificate from the Obligated Group Agent to the effect that, immediately after the withdrawal of such Person from the Obligated Group, no Event of Default would then exist hereunder, nor to such officer's knowledge, would there then exist any event which, with the passage of time or giving of notice or both, would become an Event of Default; and

(v)  The Obligated Group Agent shall have received an opinion of Counsel to such Person to the effect that following such Person's withdrawal from the Obligated Group, no member of the Obligated Group will have any liability for the payment of any indebtedness of such Person.

(b)  Upon compliance with the conditions contained in subsection (a), the Master Trustee shall execute any documents reasonably requested by the withdrawing Obligated Issuer to evidence the termination of such Issuer's obligations hereunder, under any Supplemental Indenture and under all Obligations.

Section 3.3. <u>Conditions for Designation of Restricted Affiliates</u>. The Members of the Obligated Group have agreed that they will cause each Restricted Affiliate to comply with certain covenants and obligations as if such Restricted Affiliate were a Member of the Obligated Group. Any Affiliate of an Obligated Issuer that satisfies the definition of "Restricted Affiliate" will become a Restricted Affiliate upon delivery to the Master Trustee of the following documents:

(a) An Officer's Certificate from the Obligated Group Agent to the effect that the Obligated Group Agent consents to such Person becoming a Restricted Affiliate;

(b) A written undertaking for the benefit of the Master Trustee duly authorized and executed by such Affiliate evidencing the agreement of such Affiliate (i) to observe and perform the obligations that the Obligated Group has covenanted to cause Restricted Affiliates to observe and perform hereunder, and (ii) subject to any applicable legal restrictions relating to dispositions of assets by organizations described in Section 501(c)(3) of the Code, that upon the liquidation or dissolution of such Affiliate, all remaining assets thereof shall be transferred to an Obligated Issuer, a specified Obligated Issuer, or another Restricted Affiliate;

(c) Evidence of appropriate action of the Governing Body of such Affiliate authorizing such undertaking;

(d) An Opinion of Counsel to such Affiliate to the effect that the conditions contained herein relating to designation of a Restricted Affiliate have been satisfied and that the instrument described in subparagraph (b) above has been duly authorized, executed and delivered by such Person and constitutes a legal, valid and binding agreement of such Person, enforceable in accordance with its terms, subject only to and limited by the then existing law relating to bankruptcy and insolvency and other standard and customary legal exceptions;

(e) An Officer's Certificate of the Obligated Group Agent to the effect that (i) either (1) no Event of Default then exists hereunder, nor to such officer's knowledge, does there then exist any event which, with the passage of time or giving of notice or both, would become an Event of Default hereunder, or (2) such Person becoming a Restricted Affiliate will cure any Event of Default then in existence hereunder, and (ii) either (1) if one dollar of Additional Indebtedness were incurred immediately following the designation of such Affiliate, the Combined Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (2) by reason of such status, the Projected Debt Service Coverage Ratio for each of the two Fiscal Years following such designation as a

Restricted Affiliate will be greater than the Projected Debt
Service Coverage Ratio for such Fiscal Years had such
designation of such Person as a Restricted Affiliate not
occurred; and

        (f) There is delivered to the Master Trustee an
Officer's Certificate of the Obligated Group Agent to the
effect that the addition of such Restricted Affiliate to the
Combined Group will not result in the fund balance of the
Combined Group immediately after such addition being less
than 90% of the fund balance of the Combined Group
immediately prior to such addition.

        Section 3.4.    Release of Restricted Affiliates.
Any Person shall be released from its obligations and status
as a Restricted Affiliate only upon the following conditions:

        (a)  The Master Trustee shall have received an Officer's
Certificate from the Obligated Group Agent consenting to the
release of such Person from its status as a Restricted Af-
filiate and certifying that either (i) if one dollar of Ad-
ditional Indebtedness were incurred after giving effect to
such release, the Obligated Group would meet the test provid-
ing for the incurrence of Long-Term Indebtedness pursuant to
Section 4.2(a)(i) or (ii) hereof, or (ii) such release will
cure any Event of Default then in existence hereunder, or
(iii) by reason of such release, either (A) the Projected
Debt Service Coverage Ratio for each of the two Fiscal Years
following such release will be greater than the Projected
Debt Service Coverage Ratio for such Fiscal Years had such
release not occurred or (B) the Historical Debt Service
Coverage Ratio for the most recent Fiscal Year for which
consolidated or combined financial statements reported upon
by an independent certified public accountant are available
would not, if such withdrawal had occurred at the beginning
of such period, be reduced to less than 1.50; and

        (b)  The Master Trustee receives an Officer's
Certificate of the Person requesting such release stating
that all conditions precedent provided for under this
Indenture relating to the release of such Person as a
Restricted Affiliate have been complied with and that, were
such Person released as a Restricted Affiliate on the date of
such Officer's Certificate, no Event of Default would then
exist hereunder, nor to such officer's knowledge, would there
then exist any event which with the passage of time or giving
of notice, or both, would become an Event of Default.

        Upon compliance with the conditions contained in subsec-
tions (a) and (b), the Master Trustee shall execute any documents
reasonably requested by the released Person to evidence the
termination of such Person's status as a Restricted Affiliate
hereunder, and, if applicable, shall return any Pledged Shares of

-41-

such Restricted Affiliate held by the Master Trustee to the owner thereof free and clear of the lien of this Indenture.

## ARTICLE IV

### LIMITATIONS ON INCURRENCE OF
### ADDITIONAL INDEBTEDNESS

Section 4.1.  <u>Short-Term Indebtedness.</u>  Each Obligated Issuer agrees that it will not incur, nor permit any of its Restricted Affiliates to incur, any Additional Indebtedness constituting Short-Term Indebtedness unless, immediately after the incurrence of such Short-Term Indebtedness,

(a)  (i)  the principal amount of all Short-Term Indebtedness of the Combined Group then Outstanding does not exceed 20% of the Total Net Operating Revenues for the most recent Fiscal Year for which consolidated or combined financial statements reported upon by an independent certified public Accountant are available, or

(ii)  any such Short-Term Indebtedness could be incurred under the tests set forth in Section 4.2 hereof treating such Short-Term Indebtedness as Long-Term Indebtedness, and

(b)  For a period of not fewer than 20 consecutive days within each Fiscal Year commencing July 1, 1994, the Combined Group shall reduce the aggregate principal amount of all Outstanding Short-Term Indebtedness described in (a)(i) above to 0.

Section 4.2.  <u>Long-Term Indebtedness.</u>  Each Obligated Issuer agrees that it will not incur, nor permit any of its Restricted Affiliates to incur, any Additional Indebtedness constituting Long-Term Indebtedness unless such Long-Term Indebtedness consists of one or more of the following:

(a)  Long-Term Indebtedness of any member of the Combined Group, if prior to the incurrence thereof, there is delivered to the Master Trustee:

(i)  an Officer's Certificate of the Obligated Group Agent certifying that the Historical Pro Forma Debt Service Coverage Ratio for the two most recent Fiscal Years preceding the delivery of such Officer's Certificate for which consolidated or combined financial statements reported upon by an independent certified public Accountant are available, was not less than 1.35; or

(ii)  (A) an Officer's Certificate of the Obligated Group Agent certifying that the Historical Debt Service Coverage Ratio for the two most recent Fiscal Years preceding the delivery of such Officer's Certificate for which consolidated or combined financial statements

-43-

reported upon by an independent certified public Accountant are available, was not less than 1.25, and (B) a Consultant's report (or, in lieu thereof, an Officer's Certificate of the Obligated Group Agent if the Projected Debt Coverage Ratio described in this subsection (B) is 1.75 or greater) to the effect that the Projected Debt Service Coverage Ratio, taking the proposed Additional Indebtedness into account, (x) in the case of Additional Indebtedness (other than a Guaranty) to finance capital improvements, for each of the two Fiscal Years succeeding the date on which such capital improvements are expected to be in operation, or (Y) in the case of Long-Term Indebtedness not financing capital improvements or in the case of a Guaranty, for each of the two Fiscal Years succeeding the date on which the Indebtedness or Guaranty is incurred, is not less than 1.35.

The requirements of (a)(ii)(A) and (B) above will be deemed satisfied if (i) a Consultant's report filed with the Master Trustee states that applicable laws or regulations have practically prevented or will practically prevent the achievement of such debt service coverage ratios, (ii) the Combined Group has generated Total Income Available for Debt Service in an amount which, in the opinion of such Consultant, the Combined Group could reasonably have generated given such laws and regulations during the period affected thereby, and (iii) the Historical Debt Service Coverage Ratio and Projected Debt Service Coverage Ratio referred to in clauses (A) and (B) of paragraph a(ii) of this Section are each at least 1.0.

(b)   Completion Indebtedness of any member of the Combined Group without limit if there is delivered to the Master Trustee: (i) an Officer's Certificate of the applicable member of the Combined Group stating that at the time the original Long-Term Indebtedness for the property to be completed was incurred, such Combined Group member had reason to believe that the proceeds of such Long-Term Indebtedness, together with other moneys then expected to be available, would provide sufficient moneys for the completion of such property; (ii) a statement of an Architect or an expert (or a vendor, in the case of equipment) setting forth the amount estimated to be needed to complete the property; and (iii) an Officer's Certificate of such member of the Combined Group, stating that the proceeds of such Completion Indebtedness to be applied to the completion of the property, together with a reasonable estimate of investment income to be earned on such proceeds and the amount of moneys, if any, committed to such completion by such Combined Group member or through enumerated bank loans (including letters or lines of credit) or through federal or state grants, will be in an amount not less than the amount set forth in the statement of an Architect or other expert referred to in (ii).

-44-

(c)  Commitment Indebtedness of any member of the Combined Group or any Guaranty of any Commitment Indebtedness of any member of the Obligated Group without limit.

(d)  Long-Term Indebtedness of any member of the Combined Group incurred for the purpose of refunding, repurchasing or refinancing (whether in advance or otherwise) any Outstanding Long-Term Indebtedness so long as the maximum annual debt service required for any Fiscal Year on such indebtedness shall not be more than 110% of the maximum annual debt service on the indebtedness being refunded.

(e)  The conversion without limit of Long-Term Indebtedness of any member of the Combined Group that is convertible from one interest or payment mode to another interest or payment mode (e.g., weekly to monthly or to a fixed rate) from one mode to another pursuant to the terms of the documentation authorizing such Long-Term Indebtedness.

(f)  Subordinated Indebtedness without limit of any member of the Combined Group or Non-Recourse Indebtedness without limit of any member of the Combined Group.

(g)  Indebtedness incurred in connection with a sale of accounts receivable with recourse by any member of the Combined Group consisting of an obligation to repurchase all or a portion of such accounts receivable upon certain conditions, provided that the principal amount of such Indebtedness permitted hereby shall not exceed 35% of the aggregate Value of such accounts receivable based upon the Values shown in the most recent audited financial statements of the Combined Group.

(h)  Long-Term Indebtedness of any member of the Combined Group (including capitalized lease obligations), the principal amount of such Long-Term Indebtedness at the time incurred, together with the aggregate principal amount of all other Long-Term Indebtedness of the Combined Group then Outstanding, does not exceed 15% of the Total Net Operating Revenues for the most recent Fiscal Year for which consolidated or combined financial statements reported upon by an independent certified public accountant are available; and (ii) that such Long-Term Indebtedness, together with Short-Term Indebtedness not described in Section 4.1(a)(ii), does not exceed 25% of the Total Net Operating Revenues for the most recent Fiscal Year for which consolidated or combined financial statements reported upon by an independent certified public accountant are available.

(i)  The 1993 Master Note.



Section 4.3.   <u>Guaranties; Limited Obligors.</u>

(a)   Each Obligated Issuer agrees that it will not enter into, or become liable in respect of, or permit any Restricted Affiliate to enter into, or become liable in respect of, any Guaranty dated after the date of this Indenture unless the principal amount of the indebtedness being guaranteed could then be incurred as Long-Term Indebtedness under Section 4.2, taking into account the assumptions as to calculating the aggregate annual principal and interest payments on, and the principal amount of, the indebtedness being guaranteed, contained in subsection (b) of this Section.

(b)   In the case of Guaranties of indebtedness that would, if such indebtedness were incurred by a member of the Combined Group, constitute Long-Term Indebtedness, the aggregate annual principal and interest payments on, and the principal amount of, the Guaranty shall be deemed to be equal to 20% of the principal and interest payments which would be payable on the indebtedness being guaranteed as if such indebtedness were Long-Term Indebtedness of the Guarantor. If at any time the Guaranty becomes due and payable, the aggregate annual principal and interest payments on, and the principal amount of, the Guaranty shall, for purposes of this subsection (b), be deemed to equal 100% of the principal and interest payable on, and the principal amount of, the indebtedness being guaranteed for the Fiscal Year in which payment is made and for the next succeeding Fiscal Year.

(c)   Any Person will become a Limited Obligor upon delivery to the Master Trustee of the following:

(i)   an Officer's Certificate from the Obligated Group Agent to the effect that the Obligated Group Agent consents to such Person becoming a Limited Obligor;

(ii)   an opinion of Counsel to the effect that the Pledged Note (1) has been duly authorized, executed and delivered by the Limited Obligor and (2) constitutes the legal, valid and binding obligation of the Limited Obligor, enforceable in accordance with its terms, subject only to and limited by the then existing law relating to bankruptcy and insolvency and other customary and standard legal exceptions, and an opinion of Counsel to the applicable Obligated Issuer to the effect that the Pledged Note has been validly assigned by the applicable Obligated Issuer to the Master Trustee; and

(iii)   the duly executed Pledged Note made by such Person.

(d)  Any Person shall be released from its obligations and status as a Limited Obligor only upon the following conditions:

(i)  the Master Trustee shall have received an Officer's Certificate from the Obligated Group Agent consenting to the release of such Person from its status as a Limited Obligor and certifying that immediately after the release of such Person, no Event of Default would then exist hereunder, nor to such officer's knowledge, would there then exist any event which, with the passage of time or giving of notice or both, would or might become an Event of Default; and

(ii)  the Master Trustee shall have received an Officer's Certificate from the Obligated Group Agent to the effect that either (1) after giving effect to such release, if one dollar of Additional Indebtedness were incurred, the Combined Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (2) by reason of such release, the Projected Debt Service Coverage Ratio for each of the two Fiscal Years immediately following such release will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Years had such release not occurred, or (3) such Person has become a member of the Combined Group.

Upon compliance with the conditions contained in subparagraph (i) and (ii) above, the Master Trustee shall surrender the Pledged Note to the released Person, duly marked "cancelled" and shall execute such other documents reasonably requested by such Person to evidence the termination of such Person's status as a Limited Obligor.

Section 4.4.  <u>Debt Service on Balloon Indebtedness and Variable Rate Indebtedness</u>.  For purposes of the covenants and computations required or permitted pursuant to this Indenture, it shall be assumed, at the discretion of the Obligated Group Agent, that (a) the interest rate on Variable Rate Indebtedness is equal to the greater of (x) the current Bond Index or (y) the average of the Bond Index for the twelve calendar months next preceding the date of determination, and (b) the principal of Balloon Indebtedness is amortized

(i)  in the case of Balloon Indebtedness (A) containing no stated maturity date or (B) having a stated maturity date with a provision for the automatic extension thereof unless written notice of nonextension is given to the applicable Obligated Issuer prior to the stated maturity date thereof (after taking into account any previous extensions thereof), from the date of calculation thereof over a term of twenty-five (25)

-47-



years with level annual debt service payments at an assumed interest rate equal to the Bond Index; or

(ii)  in the case of Balloon Indebtedness having a stated maturity date and a sinking fund providing for the payment thereof, during the term to the maturity thereof by deposits made to a sinking fund therefor pursuant to the terms of such Balloon Indebtedness or in accordance with a sinking fund schedule established by resolution of the Governing Body of the applicable Obligated Issuer adopted at or subsequent to the time of incurrence of such Balloon Indebtedness, as certified in an Officer's Certificate, provided that, at the time of such calculation, all deposits required to have been made prior to such date shall have been made; or

(iii)  in the case of Balloon Indebtedness having a stated maturity date and no provision for the automatic extension thereof as described in subsection (i) above, the principal of Balloon Indebtedness is due and payable on the specified due date or due dates thereof; or

(iv)  with respect to Balloon Indebtedness for which there exists a Credit Facility, the principal of such Balloon Indebtedness is due and payable in the amounts and at the times specified in the Credit Facility.



## ARTICLE V

### INSURANCE; DAMAGE TO OR DESTRUCTION
### OR TAKING OF PROPERTY

Section 5.1.   Required Insurance Coverage.   Each
Obligated Issuer agrees that, except as provided in Section 5.2
hereof, it will maintain, or cause to be maintained, and will
require each of its Restricted Affiliates to maintain or cause to
be maintained, insurance covering such risks and in such amount
and with such deductibles as, in its reasonable judgment, is
adequate to protect it and its Property and operations, including
(to the extent that such Obligated Issuer or Restricted Affiliate
is a health care institution) professional liability or medical
malpractice insurance.   The Obligated Group Agent shall retain an
Insurance Consultant who shall prepare and file with the Master
Trustee (as soon as practicable but in no event later than five
months after the end of the applicable third Fiscal Year) a report
on the adequacy of such insurance once every three years.   Each
Obligated Issuer, respectively, agrees that it will follow, and
will require each of its Restricted Affiliates to follow, any
recommendations of the Insurance Consultant to the extent feasible
in the opinion of the Obligated Group Agent.   With respect to
(A) property, plant and equipment coverages, the Combined Group,
or any member thereof, may maintain deductibles with respect to
the coverages required in an amount not greater than the greater
of (i) $5,000,000 or (ii) five percent of the value of the
property, plant and equipment insured, and (B) medical liability
and malpractice insurance or general liability insurance, the
Combined Group, or any member thereof, may maintain deductibles
with respect to the coverages required in an amount not greater
than $1,000,000.

Section 5.2.   Self-Insurance.   In lieu of maintaining
the insurance policies required by Section 5.1, the Combined Group
or any member thereof may self-insure any of the required cover-
ages (or a portion thereof), other than coverages with respect to
property, plant and equipment, provided the Master Trustee
receives (as soon as practicable but in no event later than five
months after the end of each Fiscal Year) a report of an Insurance
Consultant to the effect that such self-insurance is consistent
with proper management and insurance practices.   If any member of
the Combined Group elects to self-insure in lieu of maintaining
medical liability and malpractice insurance, a report of an Insur-
ance Consultant shall be filed with the Master Trustee annually
stating that such Insurance Consultant has reviewed the
self-insurance program and that the self-insured Combined Group
Member has available the estimated amount required for the payment
of claims and associated claims expenses with respect to such Fis-
cal Year.

Section 5.3.   <u>Recovery of Insurance Proceeds.</u>   In the event of damage to or destruction of all or any part of the Property of the Combined Group with a Value in excess of five percent (5%) of the Value of all Property of the Combined Group, the affected Combined Group member or the Obligated Group Agent shall exercise its best efforts to recover any applicable insurance and cause such proceeds to be paid to the Obligated Group Agent.   From such proceeds, the Obligated Group Agent shall provide for the payment or reimbursement of reasonable expenses of obtaining the recovery.   The Obligated Group Agent shall then give notice to the Master Trustee of such expenses and of the amount of the remaining proceeds (herein called the "Net Proceeds").

Section 5.4.   <u>Use of Net Proceeds.</u>   Subject to the provisions of any Related Financing Document pertaining to a Permitted Lien, the affected Combined Group member shall apply the Net Proceeds for any lawful corporate purpose as such Combined Group member determines, if the Obligated Group Agent shall first have delivered to the Master Trustee an Officer's Certificate stating that the Projected Debt Service Coverage Ratio for each of the next two full succeeding Fiscal Years immediately following the date of such certificate(s), taking into account such damage or destruction and the proposed use of the Net Proceeds, is at least 1.25.   If the Obligated Group Agent is unable to deliver the foregoing Officer's Certificate, the affected Combined Group member shall apply the Net Proceeds, or so much thereof as may be needed, to the repair, replacement, restoration or reconstruction of the affected Property or, at the option of the applicable Combined Group member, to any other capital project of equivalent value and utility, to the acquisition of any Property or to the repayment in whole or in part of any Outstanding Obligations in such order of maturity or maturities or proportions as the Obligated Group Agent shall determine.

Section 5.5.   <u>Balance of Net Proceeds.</u>   Any Net Proceeds remaining after compliance by the affected Combined Group member and the Obligated Group Agent with Section 5.4 shall be transferred by the Obligated Group Agent to the Master Trustee and applied to the redemption or defeasance of the Outstanding Obligations in such order of maturity or maturities or proportions as the Obligated Group Agent shall determine.

Section 5.6.   <u>Eminent Domain.</u>   In the event of a taking by eminent domain of all or any part of the Property of the Combined Group with a Value in excess of five percent (5%) of the Value of all Property of the Combined Group, the affected Combined Group member or the Obligated Group Agent shall exercise its best efforts to recover any applicable proceeds and cause such proceeds to be paid to the Obligated Group Agent.   The Obligated Group Agent shall make appropriate deductions from such proceeds as in the case of insurance proceeds and shall give notice to the Master Trustee of such deductions and of the amount of the remaining proceeds (also, "Net Proceeds").   The Net Proceeds shall be

applied in the same manner as insurance proceeds are applied pursuant to Sections 5.4 and 5.5 hereof.



## ARTICLE VI

### GENERAL COVENANTS OF EACH
### OBLIGATED ISSUER

Section 6.1.  <u>Covenants as to Corporate Existence,</u>
<u>Maintenance of Properties, Etc.</u>  Each Obligated Issuer hereby
covenants (and will cause each of its Restricted Affiliates to
comply with the following covenants):

(a)  Except as otherwise expressly provided herein, to
preserve its corporate or other separate legal existence and
to be qualified to do business and conduct its affairs in
each jurisdiction where its ownership of Property or the
conduct of its business or affairs requires such qualifica-
tion;

(b)  At all times to cause its Property to be
maintained, preserved and kept in good repair, working order
and condition, ordinary wear and tear excepted, and all need-
ful and proper repairs, renewals and replacements thereof to
be made; provided, however, that nothing contained in this
subsection (b) shall be construed (i) to prevent it from
ceasing to operate any portion of its Property, or (ii) to
obligate it to retain, preserve, repair, renew or replace any
Property, rights, privileges or licenses no longer used or,
in the judgment of its Governing Body, useful in the conduct
of its business;

(c)  To do all things reasonably necessary to conduct
its affairs and to carry on its business and operations in
such manner as to comply with any and all applicable laws of
the United States and the several states thereof and to duly
observe and conform to all valid orders, regulations or
requirements of any governmental authority relative to the
conduct of its business and the ownership of its Property;
provided, nevertheless, that nothing herein contained shall
require it to comply with, observe and conform to any such
law, order, regulation or requirement of any governmental
authority so long as the validity thereof or the applicabil-
ity thereof to it shall be contested in good faith; provided,
however, that it need not comply with this Section 6.1(c) if
and to the extent that its Governing Body shall have
determined, as evidenced by an Officer's Certificate, that
such compliance is not in its best interests and that lack of
such compliance would not materially impair its ability to
pay its Indebtedness when due;

(d)  To pay promptly all lawful taxes, governmental
charges and assessments at any time levied or assessed upon
or against it or its Property; provided, however, that it
shall have the right to contest in good faith any such taxes,
charges or assessments or the collection of any such sums and
pending such contest may delay or defer payment thereof;

-52-

(e)  To comply at all times with all material terms, covenants and provisions of any material Liens at such time existing upon its Property or any part thereof or securing any of its Indebtedness; provided, however, that it need not comply with this Section 6.1(e) if and to the extent that its Governing Body shall have determined, as evidenced by an Officer's Certificate, that such compliance is not in its best interests and that lack of such compliance would not materially impair the pledge of Gross Revenues or its ability to pay its Indebtedness when due; and

(f)  To procure and maintain all necessary and material licenses and permits and to maintain accreditation of its health care facilities and operations (other than those of a type for which accreditation is not available) by a recognized accrediting body, when and as available, and its status as a provider of health care services eligible for reimbursement under the Medicare, Medicaid, Blue Cross and comparable programs, including future governmental programs; provided, however, that it need not comply with this Section 6.1(f) if and to the extent that its Governing Body shall have determined, as evidenced by an Officer's Certificate, that such compliance is not in its best interests and that lack of such compliance would not materially impair its ability to pay its Indebtedness when due.

Section 6.2.  <u>Limitations on Creation of Liens.</u>  Each Obligated Issuer agrees that it will not, and will not permit any of its Restricted Affiliates to, create or suffer to be created or exist any Lien upon the Trust Estate or upon any Property including, without limitation, all proceeds thereof, whether cash or non-cash, now owned or hereafter acquired by it, other than Permitted Liens.

Section 6.3.  <u>Sale, Lease or Other Disposition of Property.</u>  Each Obligated Issuer agrees that it will not, nor will it permit any of its Restricted Affiliates to, sell, lease or otherwise dispose of any Property, except for transactions resulting in Permitted Liens and sales, leases or other dispositions of Property which qualify under one or more of the following:

(a)  to another member of the Combined Group;

(b)  to any Person if in the judgment of the officer executing such certificate, such Property has become, or within the next succeeding 12 calendar months is reasonably expected to become, inadequate, obsolete, worn out, unsuitable, unprofitable, undesirable or unnecessary and the sale, lease, removal or other disposition thereof will not impair the structural soundness, efficiency or economic value of the remaining Property;