(c)   to any Person provided that prior to the sale, lease or other disposition there is delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent certifying that Property transferred pursuant to this Section 6.3(c) in the then-current Fiscal Year by all Obligated Issuers and Restricted Affiliates does not exceed 10% of the Value of all Property of the Combined Group for the immediately preceding Fiscal Year;

(d)   to any Person provided that prior to the sale, lease or other disposition there is delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent, to the effect that immediately after the transfer in question, either (1) if one dollar of Additional Indebtedness were incurred, the Combined Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (2) such disposition will increase the Projected Debt Service Coverage Ratio in the Fiscal Year immediately following such disposition over what such ratio would have been in such Fiscal Year had such disposition not occurred;

(e)   as part of a merger, consolidation, sale or conveyance permitted by Section 6.4 (including any merger or consolidation with, or a sale or conveyance to another member of the Combined Group);

(f)   in the ordinary course of business;

(g)   to any Person in connection with an operating lease of Property to such Person;

(h)   upon fair and reasonable terms no less favorable than would be obtained in a comparable arm's-length transaction; or

(i)   to any Person if the transfer involves any Property received as restricted gifts, grants, bequests or other similar sums or the income thereon, to the extent that such sums may not be pledged or applied to the payment of any Debt Service Requirement or operating expenses generally as a result of restrictions or designations imposed by the donor or maker of the gift, grant, bequest or other sums in question.

Section 6.4.   Consolidation, Merger, Sale or Conveyance.

(a)   Each Obligated Issuer covenants that it will not merge or consolidate with any other Person not a member of the Combined Group or sell or convey all or substantially all of its assets or all or substantially all of its Property to any Person not a member of the Combined Group unless:

-54-

(i)  either it will be the surviving corporation, or the successor corporation (if other than an Obligated Issuer) shall be a Person organized and existing under the laws of the United States of America or a state thereof and such Person shall become an Obligated Issuer and expressly assume the due and punctual payment of the principal of and premium, if any, and interest on all Outstanding Obligations issued hereunder according to their tenor, and the due and punctual performance and observance of all the covenants and conditions of this Indenture, by a Supplemental Indenture satisfactory to the Master Trustee, executed and delivered to the Master Trustee by such Person;

(ii)  if all amounts due or to become due on any Outstanding Related Bonds which bear interest that is not includable in gross income for federal income tax purposes under the Code have not been fully paid to the holders thereof (or provision for such payment has not been made in such manner as will result in the defeasance of the Related Financing Documents), the Master Trustee shall have received an Opinion of Bond Counsel, in form and substance satisfactory to the Master Trustee, to the effect that under then-existing law the consummation of such merger, consolidation, sale or conveyance, whether or not contemplated on the date of the delivery of any such Related Bonds, would not, by itself, cause the interest payable on such Related Bonds to become includable in gross income for federal income tax purposes under the Code;

(iii)  there is delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent to the effect that immediately following such transaction, (A) either (1) no Event of Default would then exist nor, to such officer's knowledge, would there exist any event which, with the passage of time or the giving of notice or both, would or might become an Event of Default hereunder, or (2) such transaction will cure any Event of Default then in existence hereunder, and (B) either (1) if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the tests providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof (assuming for purposes of such Certificate that the Income Available for Debt Service and Indebtedness of such Person were Income Available for Debt Service and Indebtedness of an Obligated Issuer), or (2) by reason of such transaction, the Projected Debt Service Coverage Ratio for each of the two Fiscal Years following such release will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Years had such transaction not occurred; and

(iv) there is delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent to the effect that the fund balance of the Combined Group immediately after such merger, consolidation, sale or conveyance is not less than 90% of the fund balance of the Combined Group immediately preceding such merger, consolidation, sale or conveyance.

(b)   In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation and in the case of a merger or consolidation by an Obligated Issuer with a member of the Combined Group or the sale or conveyance of all or substantially all of an Obligated Issuer's assets or Property to a member of the Combined Group, such successor corporation shall succeed to and be substituted for its predecessor hereunder.

(c)   In case of any such consolidation, merger, sale or conveyance and in the case of a merger or consolidation by an Obligated Issuer with a member of the Combined Group or the sale or conveyance of all or substantially all of an Obligated Issuer's assets or Property to a member of the Combined Group, such changes in phraseology and form (but not in substance) may be made in Obligations thereafter to be issued as may be appropriate to reflect such consolidation, merger, sale or conveyance.

Section 6.5.   <u>Disposition of Restricted Affiliates.</u> No Obligated Group Member will:

(a)  permit any of its Restricted Affiliates to issue or sell any shares of stock of such Restricted Affiliate to any Person (other than members of the Combined Group and except for director's qualifying shares).

(b)   sell, transfer, or otherwise dispose of any shares of stock (except to members of the Combined Group) of any Restricted Affiliate or permit any of its Restricted Affiliates to sell, transfer, or otherwise dispose of (except to members of the Combined Group) any shares of stock of any other Restricted Affiliate, unless such transfer relates to the transfer of Pledges Shares hereunder, or unless (i) all shares of stock of such Restricted Affiliate owned by the members of the Combined Group are sold, transferred or disposed of, (ii) there is delivered to the Master Trustee, prior to such sale, transfer or disposition, an Officer's Certificate of the Obligated Group Agent that either (A) after giving effect to such disposition if one dollar of Additional Indebtedness were incurred, the Combined Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (B) the Projected Debt Service Coverage Ratio for each of the two Fiscal Years immediately following such disposition will be greater than the Projected Debt Service Coverage Ratio for



such Fiscal Years had such disposition not occurred and (iii) such sale, transfer or other disposition qualifies as a permitted disposition of Property under Section 6.3; or

(c) permit any of the Restricted Affiliates to consolidate with or merge into any other corporation or to transfer all or substantially all of its assets as an entirety to another Person, unless the successor formed by such consolidation or into which the Restricted Affiliate is merged or the Person which acquires by conveyance or transfer the assets of the Restricted Affiliate substantially as an entirety is a member of the Combined Group or, if such successor or the transferee is not a member of the Combined Group, there is delivered to the Master Trustee, prior to such consolidation, merger, sale or conveyance, (A) an Officer's Certificate of the Obligated Group Agent that either (i) after giving effect to such consolidation, merger or transfer if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (ii) the Projected Debt Service Coverage Ratio for each of the two Fiscal Years immediately following such consolidation, merger or transfer will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Years had such consolidation, merger or transfer not occurred and (B) that such consolidation, merger or transfer qualifies as a permitted disposition of Property under Section 6.3.

Section 6.6.  <u>Filing of Financial Statements, Certificate of No Default, Other Information.</u>  The Obligated Group Agent covenants that it will:

(a)  as soon as practicable but in no event later than 180 days after the end of each Fiscal Year, file, or cause to be filed, with the Master Trustee and, if such Persons are then providing a rating with respect to Obligations or any Related Bonds, with each Rating Agency, (i) a combined or consolidated revenue and expense statement of the Obligated Issuers and each other member of the Combined Group for such Fiscal Year, (ii) a combined or consolidated balance sheet presented on the basis described in (i) above as of the end of such Fiscal Year, (iii) a combined or consolidated statement of the cash flows of the Combined Group, each accompanied by the report of an Accountant to the effect that such financial statements present fairly the financial position of the Obligated Issuers and each other member of the Combined Group as of the end of such Fiscal Year and their results of operations for such Fiscal Year, and (iv) a written report setting forth any changes in the membership of the Obligated Group;

(b)  as soon as practicable but in no event later than 180 days after the end of each Fiscal Year, file with the Master Trustee, an Officer's Certificate of the Obligated Group Agent stating the Historical Debt Service Coverage Ratio for such Fiscal Year, stating the ratio determined by dividing the Total Income Available for Debt Service for such Fiscal Year by the Maximum Annual Debt Service for such Fiscal Year, stating that all insurance required by Article V hereof has been obtained and is in full force and effect, and stating whether or not to the best knowledge of the signers, any Obligated Issuer is in default in the performance of any covenant contained in this Indenture, and, if so, specifying each such default of which the signers may have knowledge;

(c)  if an Event of Default shall have occurred and be continuing, (i) file with the Master Trustee such other financial statements and information concerning its operations and financial affairs (or of any consolidated group of companies of which it is a member) as the Master Trustee may from time-to-time reasonably request, excluding specifically donor records, patient records and personnel records and (ii) provide access to its Property for the purpose of inspection by the Master Trustee during regular business hours or at such other times as the Master Trustee may reasonably request; and

(d)  within 60 days after its receipt thereof, file with the Master Trustee a copy of each report which any provision of this Indenture requires to be prepared by a Consultant or an Insurance Consultant.

Section 6.7.  <u>Rates and Charges</u>.  The Obligated Issuers agree that they will fix, charge and collect, or cause to be fixed, charged and collected, subject to applicable requirements or restrictions imposed by law, rates, fees and charges for the use of and for the services furnished or to be furnished by the Obligated Issuers which will be sufficient in each Fiscal Year (a) to produce Total Income Available for Debt Service equal to at least one hundred ten per centum (110%) of Maximum Annual Debt Service for such and any subsequent Fiscal Year, after deducting any interest to be paid from proceeds of any Indebtedness, and (b) together with any other moneys that shall be available to the Obligated Issuers, to enable the Obligated Issuers to discharge their obligations as they shall become due and payable for such and any subsequent Fiscal Year.

The Obligated Issuers further agree that, from time to time and as often as shall be necessary, they will revise, or cause to be revised, subject to applicable requirements or restrictions imposed by law, the rates, fees and charges as may be necessary or proper in order to comply with the requirements of the first paragraph of this Section.  The Obligated Issuers further agree that if in any Fiscal Year the Total Income Available for Debt Service shall be less than the amount required by

the first paragraph of this Section, they will immediately employ a Consultant to examine the rates, fees and charges of the Obligated Issuers and the methods of the operation of the Property and to make, within 90 days after being so retained, such recommendations as to rates, fees and charges as the Consultant believes are appropriate to enable the Obligated Issuers to produce the Total Income Available for Debt Service as are required by this Section.  If in the judgment of the Consultant it is not possible for the Obligated Issuers to meet the requirement that the Total Income Available for Debt Service shall be at least equal to one hundred ten per centum (110%) of Maximum Annual Debt Service for such Fiscal Year and any subsequent Fiscal Year the report of the Consultant shall so indicate and shall further indicate the projected ratio of Total Income Available for Debt Service to the Maximum Annual Debt Service anticipated if the recommendations of the Consultant are followed.   The recommendations of the Consultant shall be filed with the Master Trustee.

     The Obligated Issuers agree that promptly upon the receipt of such recommendations, subject to applicable require-ments or restrictions imposed by law, they shall revise their rates, fees and charges as shall be in conformity with such recommendations.  If the Obligated Issuers comply with the provisions of the second paragraph of this Section, they shall for the Fiscal Year in which such Consultant is employed and for the subsequent Fiscal Year, be excused from compliance with the requirements of the first paragraph of this Section with respect to the amount of Total Income Available for Debt Service, or if the report of the Consultant projects a ratio of Total Income Available for Debt Service to Maximum Annual Debt Service of less than one hundred ten per centum (110%) but at least one hundred per centum (100%), they shall be excused from compliance with the requirements of the first paragraph of this Section that the Total Income Available for Debt Service be equal to at least one hundred ten per centum (110%) of Maximum Annual Debt Service for such Fiscal Year and any subsequent Fiscal Year so long as such ratios shall equal or exceed that which is projected; but this paragraph shall not be construed as in any way excusing the Obligated Issuers or Restricted Affiliates from taking any action or performing any duty required under any other Section or be construed as constituting a waiver of any other Event of Default or be construed as excusing the Obligated Issuers or Restricted Affiliates from so fixing their rates, fees and charges which together with any other moneys that shall be available to the Combined Group shall be sufficient to enable the Combined Group to discharge their obligations as they shall become due and payable.

     The Combined Group may permit the rendering of service by, or the use of, the Property free of charge or at discounted or reduced rates (except as and incident to prepayment programs) to the extent necessary for retaining their eligibility for grants, loans, subsidies or payments from the United States of America or any instrumentality thereof or from the State of Georgia or any

-59-

instrumentality thereof, or in compliance with any recommendation for free or discounted services that may be made by a Consultant, or to such further extent as may be consistent with the public charitable or other valid business purposes of the Combined Group and shall not prevent the Combined Group from complying with the terms and provisions of this Indenture.

Section 6.8.  Validity of Instruments.  The Obligated Issuers are at the date of the execution and delivery of this Indenture, and will be so long as any Obligations are Outstanding hereunder, lawfully possessed of the Trust Estate; the Obligated Issuers have good right, full power and lawful authority to grant, bargain and assign, and to transfer in trust, convey and pledge the Trust Estate in the manner and form herein provided; and, the Obligated Issuers for so long as this Master Trust is in effect, will warrant and defend the title to the Trust Estate to the Master Trustee against the claims of all persons whomsoever.

## ARTICLE VII

### REMEDIES OF THE MASTER TRUSTEE AND
### HOLDERS IN EVENT OF DEFAULT

Section 7.1.    <u>Events of Default.</u>

(a)  The term "Event of Default", as used herein, shall mean the occurrence of any one or more of the following events:

(i)  if any Obligated Issuer shall fail to make any payment of principal, redemption price or interest when due under the terms of any Obligation and such failure continues to exist upon the expiration of any applicable grace period; or

(ii)  if any Obligated Issuer shall fail to observe or perform any covenant or agreement contained in this Indenture or any Related Financing Documents for any Obligations for a period of 30 days after written notice of such failure, requiring the same to be remedied, shall have been given by the Master Trustee to each of the Obligated Issuers; provided, however, that if such observance or performance requires work to be done, actions to be taken, or conditions to be remedied, which by their nature cannot reasonably be done, taken or remedied within such 30-day period, no Event of Default shall be deemed to have occurred or to exist if, and so long as, the defaulting Obligated Issuer shall commence such observance or performance within such 30-day period and shall diligently and continuously prosecute the same to completion; or

(iii)  if (a) any Obligated Issuer shall default in the payment of any Indebtedness (other than Obligations issued and Outstanding hereunder) the principal amount of which in the aggregate exceeds 5% of the Book Value of all Property of the Combined Group for the immediately preceding Fiscal Year, whether such Indebtedness now exists or shall hereafter be created, and any period of grace with respect thereto shall have expired, or (b) an event of default as defined in any Related Financing Documents under which any Indebtedness may be issued, secured or evidenced shall occur, which default in payment or event of default, in the case of either (a) or (b), shall result in such Indebtedness becoming or being declared due and payable prior to the date on which it would otherwise become due and payable; provided, however, that such default shall not constitute an Event of Default if within the time allowed for service of a responsive pleading in any proceeding to enforce payment of the Indebtedness under

the laws governing such proceeding (A) any of the Obligated Issuers commences proceedings to contest the existence or payment of such Indebtedness, and (B) in the absence of such contest, neither the pledge and security interest created under Section 2.3 of this Indenture nor any Property of the Combined Group will be materially impaired or subject to material loss or forfeiture; or

(iv)  if a decree or order by a court having jurisdiction shall have been entered adjudging any member of the Combined Group as bankrupt or insolvent, or approving as properly filed a petition seeking reorganization or arrangement of any Obligated Issuer under the United States Bankruptcy Code or any other similar applicable federal or state law, and such decree or order of a court having jurisdiction in the premises for the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of the Obligated Issuer or of its property, or for the winding-up or liquidation of its affairs, shall have been entered, and such decree or order shall have remained in force undischarged and unstayed for a period of 180 days;

(v)  if any member of the Combined Group shall institute proceedings to be adjudicated a voluntary bankrupt, or shall consent to the institution of a bankruptcy proceeding against it, or shall file a petition or answer or consent seeking reorganization or arrangement under the United States Bankruptcy Code or any other similar applicable federal or state law, or shall consent to the filing of any such petition, or shall consent to the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of it or of its Property, or shall make assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or corporate action shall be taken by any member of the Combined Group in furtherance of any of the aforesaid purposes; or

(vi) failure by the Obligated Issuers to deliver the Gross Revenues to the Master Trustee as required by Section 2.7 hereof.

Provided, however, that the references in clauses (iii), (iv) and (v) of this Section 7.1 to any member of the Combined Group who, at the time of such event, could have withdrawn from the Obligated Group under Section 3.2 hereof or been released as a Restricted Affiliate under Section 3.4 hereof.

The Master Trustee may, at any time that an Event of Default exists, (i) by prompt written notice to the depositories in which any funds in the Revenue Fund are deposited, direct that such funds be immediately transferred to the Master Trustee, and upon such receipt of such funds the same shall be held in trust by the Master Trustee and disposed of as provided in this Indenture, and (ii) by written notice to the Obligated Issuers direct that all subsequent deposits into the Revenue Fund be made with the Master Trustee as the depository thereof as provided in Section 2.7 hereof.  During the continuance of an Event of Default, all moneys received by the Master Trustee under this Indenture from the Obligated Issuers or from any other source shall be applied by the Master Trustee as set forth in Section 7.6 hereof.

(b)  Upon the occurrence of an Event of Default, then and in each and every such case, the Master Trustee may, by notice in writing to the Obligated Issuers, declare the principal of all (but not less than all) Outstanding Obligations to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, anything in this Indenture or in such Outstanding Obligations contained to the contrary notwithstanding; provided that the Master Trustee shall be required to make such a declaration (i) if an Event of Default has occurred under subsection (a)(i) above, (ii) if an Event of Default has occurred under subsection (a)(ii) above as a result of a default under the Related Financing Documents for any Obligations, if the Related Financing Documents permit the Holders of such Obligations to declare (or to request the Master Trustee to declare) such Obligations to be immediately due and payable and if the Master Trustee is requested to make such a declaration by the Holders of not less than 25% in aggregate principal amount of such Obligations then Outstanding or such greater percentage as may be required under the Related Financing Documents, or (iii) if the Master Trustee is requested to make such a declaration by the Holders of not less than 25% in aggregate principal amount of all Outstanding Obligations.  The acceleration of any Obligation hereunder shall not be dependent upon the acceleration of any Related Bonds.

(c)  Any declaration of acceleration pursuant to subsection (b) above shall be subject to the condition that if, at any time after the principal of all Outstanding Obligations shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided: (i) one or more Obligated Issuers shall deposit with the Master Trustee an aggregate sum sufficient to pay (A) all matured installments of interest upon all Outstanding Notes and the principal and premium, if any, of all such Outstanding Notes that shall have become due otherwise than by acceleration

(with interest on overdue installments of interest, to the extent permitted by law and on such principal and premium, if any, at the respective rates borne by such Notes to the date of such deposit) and any other amounts required to be paid pursuant to such Notes, (B) all amounts due under any each Indenture Guaranty other than by reason of acceleration, (C) all sums due under any Obligations other than Notes and Indenture Guaranties, other than by reason of acceleration, and (D) the expenses and fees of the Master Trustee; and (ii) any and all Events of Default under this Indenture, other than the nonpayment of principal of and accrued interest on Outstanding Obligations that shall have become due by acceleration, shall have been remedied, then and in every such case, the Master Trustee shall, if requested by the Holders of 25% in aggregate principal amount of all Obliga- tions then Outstanding, waive all Events of Default and rescind and annul such declaration and its consequences, but no such waiver or rescission and annulment shall extend to or affect any subsequent Event of Default.

Section 7.2.  <u>Payment of Obligations on Default.</u>  Upon the occurrence of an Event of Default as described in Section 7.1 hereof and upon demand of the Master Trustee, each Obligated Is- suer will pay to the Master Trustee, for the benefit of the Hold- ers of all Obligations then Outstanding, (a) the whole amount that then shall have become due and payable on all such Obligations for principal or interest, or both, and such other amounts as may be required to be paid on all such Obligations, with interest upon the overdue principal and installments of interest (to the extent permitted by law) at the respective rates of interest borne by such Obligations or as provided in the applicable Supplemental Indenture, and (b) such further amounts as shall be sufficient to cover the costs and expenses of collection, including a reasonable compensation to the Master Trustee, its agents, attorneys and counsel, and any expenses incurred by the Master Trustee other than as a result of its gross negligence or bad faith.

Section 7.3.  <u>Suit for Moneys Due.</u>  In case any Obligated Issuer shall fail forthwith to pay the amounts due under Section 7.2 hereof upon such demand, the Master Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered to institute any actions or proceedings at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against each Obligated Issuer, and collect in the manner provided by law out of the Property of the Obligated Group wherever situated the moneys adjudged or decreed to be payable. The Master Trustee, upon the bringing of any action or proceeding at law or in equity under this Section 7.3, as a matter of right, without notice and without giving bond to any Obligated Issuer, may, to the extent permitted by law, have a receiver appointed of all of the Property of the Obligated Group pending such action or proceeding, with such pow- ers as the court making such appointment shall confer.

-64-

Section 7.4.   <u>Proceedings in Bankruptcy.</u>   All funds on deposit with the Master Trustee shall be held for the benefit of the holders of the Obligations and shall not be subject to any claims by any member of the Combined Group.   In case there shall be pending proceedings for the bankruptcy or for the reorganization or arrangement of any Obligated Issuer under the United States Bankruptcy Code or any other applicable law, or in case a receiver or trustee shall have been appointed for its property, the Master Trustee, irrespective of whether the principal of Obligations of any series shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Master Trustee shall have made any demand pursuant to the provisions of Section 7.2 hereof, shall be entitled and empowered, by intervention in such proceedings or otherwise, to file and prove a claim or claims for the whole amount of principal, premium, if any, interest and any other amounts owing and unpaid in respect of Obligations of all series, and, in case of any judicial proceedings, to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Master Trustee and of the Holders of the Obligations allowed in such judicial proceedings relative to such member of the Obligated Group, its creditors or its property, and to collect and receive any moneys or other property payable or deliverable on any such claims, and to distribute the same after the deduction of its charges and expenses; and any receiver, assignee or trustee in bankruptcy or reorganization is hereby authorized by each of such Holders to make such payments to the Master Trustee, and, in the event that the Master Trustee shall consent to the making of such payments directly to such Holders, to pay to the Master Trustee any amount due it for compensation and expenses, including counsel fees incurred by it up to the date of such distribution.   To the extent that such payment of reasonable compensation, expenses and counsel fees out of the estate in any such proceedings shall be denied for any reason, payment of the same shall be secured by a first and prior lien on, and shall be paid out of, any and all distributions, dividends, moneys, securities and other property which the Holders of the Obligations may be entitled to receive in such proceedings, whether in liquidation or under any plan of reorganization or arrangement or otherwise.

Section 7.5.   <u>Suit by Master Trustee.</u>   All rights of action and rights to assert claims under any Obligation may be enforced by the Master Trustee without the possession of such Obligation on any trial or other proceedings instituted by the Master Trustee. In any proceedings brought by the Master Trustee (and also any proceedings involving the interpretation of any provision of this Indenture to which the Master Trustee shall be a party) the Master Trustee shall be held to represent all the Holders of Obligations, and it shall not be necessary to make any Holders of Obligations parties to such proceedings.

Section 7.6.  **Application of Moneys Collected.**  Any amounts collected by the Master Trustee pursuant to Sections 7.1, 7.2, 7.3 and 7.4 hereof and, except as otherwise provided herein, all money and Investment Securities on deposit in any funds which the Master Trustee may establish hereunder from time to time shall be applied for the equal and ratable benefit of the Holders of Obligations in the following order at the date or dates fixed by the Master Trustee for the distribution of such moneys, upon presentation of such Obligations, and stamping thereon the payment, if only partially paid, and upon surrender thereof if fully paid:

(a)  to the payment of costs and expenses of collection, including fees of Counsel and reasonable compensation to the Master Trustee; and, thereafter,

(b)  whether or not the principal of all Outstanding Obligations shall have become or have been declared due and payable, to Holders of the Outstanding Obligations for amounts due and unpaid on the Obligations, ratably, without preference or priority of any kind, according to the amounts due and payable on the Obligations; provided that for the purpose of determining the unpaid amount of any Obligation, there shall be deducted the amount, if any, which has been realized by the Holder by exercise of its rights as a secured party with respect to any Liens permitted pursuant to Section 6.2, or any amount on deposit in any fund established pursuant to any Related Financing Documents for such Obligations (other than amounts consisting of payments of principal and interest previously made and credited against the payments due under such Obligations) as of the date of payment by the Master Trustee pursuant to this subsection (b), all as certified to the Master Trustee by the Holder; and

(c)  to the payment of the remainder, if any, to the Obligated Group Agent, its successors or assigns, or to whomsoever may be lawfully entitled to receive the same, or as a court of competent jurisdiction may direct.

Section 7.7.  **Actions by Holders.**

(a)  No Holder of an Obligation shall have any right by virtue of or by availing of any provision of this Indenture to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or for the appointment of a receiver or trustee, or any other remedy hereunder, unless (i) the Holders of not less than 25% in aggregate principal amount of Obligations then Outstanding shall have made written request upon the Master Trustee to institute such action, suit or proceeding in its own name as Master Trustee hereunder and shall have offered to the Master Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities which may be incurred

-66-

therein or thereby, and (ii) the Master Trustee, for 30 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding and no direction inconsistent with such written request shall have been given to the Master Trustee pursuant to Section 7.8 hereof; it being understood and intended, and being expressly covenanted by the Holder of an Obligation and the Master Trustee, that no one or more Holders of Obligations shall have any right in any manner whatever by virtue of or by availing of any provision of this Indenture to affect, disturb or prejudice the rights of any other Holder of an Obligation or to obtain or seek to obtain priority over or preference to any other such Holder, or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Obligations. For the protection and enforcement of the provisions of this Section 7.7, each and every Holder of an Obligation and the Master Trustee shall be entitled to such relief as can be given either at law or in equity.

(b)   The Holder of an Obligation instituting a suit, action or proceeding in compliance with the provisions of this Section 7.7 shall be entitled in such suit, action or proceeding to such amounts as shall be sufficient to cover the costs and expenses of collection, including to the extent permitted by applicable law, a reasonable compensation to its Counsel.

(c)   Notwithstanding any other provision of this Indenture, the right of a Holder of an Obligation to receive payment of the principal of and interest on any Obligation and any other amounts payable thereunder, on or after the respective due dates expressed in such Obligation, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder, provided that any moneys collected through the exercise of rights and remedies of any Holder against any Obligated Issuer pursuant to the Related Financing Documents for an Obligation (other than rights and remedies relating to Liens granted pursuant to Section 6.2 hereof or to funds and accounts established under such Related Financing Documents) shall be paid over to the Master Trustee or, with the consent of the Holder, collected directly by the Master Trustee.

Section 7.8.  **Direction of Proceedings by Holders.**  The Holders of a majority in aggregate principal amount of Obligations then Outstanding shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Master Trustee, or exercising any trust or power conferred on the Master Trustee; provided, however, that, subject to Section 8.2 hereof, the Master Trustee shall have the right to decline to follow any such direction if the Master Trustee, being advised by



Counsel, determines that the action so directed may not lawfully be taken, or if the Master Trustee in good faith shall, by a responsible officer or officers of the Master Trustee, determine that the proceedings so directed would be illegal or involve it in personal liability, and provided further that nothing in this Indenture shall impair the right of the Master Trustee in its discretion to take any action deemed proper by the Master Trustee and which is not inconsistent with such direction by the Holders.

Section 7.9. <u>Delay or Omission of Master Trustee.</u> No delay or omission of the Master Trustee, or of any Holder of an Obligation, to exercise any right or power accruing upon an Event of Default, occurring and continuing as aforesaid, shall impair any such right or power, or shall be construed to be a waiver of any such Event of Default or an acquiescence therein, nor shall the action of the Master Trustee or of the Holders of Obligations in case of any Event of Default, or in case of any Event of Default and subsequent waiver of such Event of Default, affect or impair the rights of the Master Trustee or of such Holders in respect of any subsequent Event of Default or impair any right resulting therefrom; and every power and remedy given by this Indenture to the Master Trustee or to such Holders may be exercised from time to time and as often as may be deemed expedient by it or by them.

Section 7.10. <u>Remedies Cumulative.</u> No remedy herein conferred upon or reserved to the Master Trustee or the Holders of Obligations entitled to the benefits hereof is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute; and the employment of any remedy hereunder, or otherwise, shall not prevent the concurrent employment of any other appropriate remedy or remedies. In the pursuit of any such remedies the Master Trustee shall have and be vested with the rights of a secured creditor under the Georgia Uniform Commercial Code (or similar laws of other jurisdictions as applicable) with respect to moneys collected by the Master Trustee pursuant to any provision hereof, and shall have the power to foreclose any Lien which may be granted to it as Master Trustee pursuant to Article VI hereof, all to the extent permitted by law.

Section 7.11. <u>Notice of Default.</u> The Master Trustee shall, immediately upon an Event of Default described in Section 7.1(a)(i) hereof, and within 10 days after the occurrence of any other Event of Default known to the Trustee, mail to all Holders of Obligations, as the names and addresses of such Holders appear upon the books maintained by the Master Trustee, notice of such Event of Default, unless such Event of Default shall have been cured before the giving of such notice; provided that, except in the case of an Event of Default specified in subsection 7.1(a)(i) hereof, the Master Trustee shall be protected in withholding such notice if and so long as the Master Trustee in good faith determines that the withholding of such notice is in the interest

of the Holders of the Obligations.  For purposes of this
Indenture, matters shall not be considered to be known to the
Master Trustee unless an officer of its corporate trust department
located at its principal corporate trust office has actual
knowledge thereof.

ARTICLE VIII

CONCERNING THE MASTER TRUSTEE

Section 8.1.   <u>Duties and Liabilities of Master Trustee</u>

(a)   The Master Trustee, prior to the occurrence of an Event of Default and after the curing or waiving of all Events of Default which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture.   In case an Event of Default has occurred (which has not been cured or waived) the Master Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(b)   No provision of this Indenture shall be construed to relieve the Master Trustee from liability for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct; provided, however, that:

(i)   the Master Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers of the Master Trustee, unless it shall be proved that the Master Trustee was grossly negligent in ascertaining the pertinent facts (other than facts which the Master Trustee is not required to investigate pursuant to Sections 8.2 and 8.6 hereof); and

(ii)   the Master Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in aggregate principal amount of Obligations then Outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Master Trustee, or exercising any trust or power conferred upon the Master Trustee, under this Indenture.

(c).  None of the provisions contained in this Indenture shall require the Master Trustee to expend or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers.



Section 8.2. <u>Reliance on Documents, Etc.</u> Except as otherwise provided in Section 8.1(a) hereof:

(a) The Master Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, note, bond, debenture or other paper or document (including any statement by or on behalf of any Holder relating to the amount of principal outstanding or interest due on any Obligation) believed by it to be genuine and to have been signed or presented by the proper party or parties. Any action taken by the Master Trustee pursuant to this Indenture on the request or authority or consent of any Holder shall be conclusive and binding on all future Holders of the same Certificates and on Obligations issued in exchange therefor or in place thereof.

(b) Any request, direction, order or demand of any Obligated Issuer mentioned herein shall be sufficiently evidenced by an Officer's Certificate (unless other evidence in respect thereof is herein specifically prescribed); and any resolution of the Governing Body of any Obligated Issuer may be evidenced to the Master Trustee by a copy thereof certified by the Secretary or an Assistant Secretary of such Obligated Issuer.

(c) The Master Trustee may consult with Counsel and the advice of such Counsel shall be full and complete authorization and protection and the Master Trustee shall be relieved of liability to the Holders of Obligations and to the Obligated Issuers in respect of any action taken, suffered or omitted by it hereunder in good faith and in accordance with such advice.

(d) Prior to the occurrence of an Event of Default hereunder and after the curing of all Events of Default, the Master Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, note, bond, debenture, or other paper or document, unless requested in writing to do so by the Holders of a majority in aggregate principal amount of Obligations then Outstanding; provided, however, that if the payment within a reasonable time to the Master Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Master Trustee, not reasonably assured to the Master Trustee by the security afforded to it by the terms of this Indenture, the Master Trustee may require indemnity, reasonably satisfactory to the Master Trustee, with respect to such additional compensation as the Master Trustee may require for complying with such request and against such costs, expenses (including, without limitation, fees of Counsel) or liabilities as a condition to so proceeding. The

-71-

reasonable expense of every such examination shall be paid by the members of the Obligated Group or, if paid by the Master Trustee, shall be repaid by the members of the Obligated Group upon demand.

(e)  The Master Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys.

(f)  The Master Trustee shall be under no responsibility for the approval by it in good faith of any expert or other skilled person for any of the purposes expressed in this Indenture.

Section 8.3.  <u>Responsibility for Recitals, Validity of Indenture, Proceeds of Notes.</u>  The recitals contained in this Indenture and in the Obligations (other than the certificate of authentication on such Obligations) shall be taken as the state-ments of the Obligated Issuers, and the Master Trustee assumes no responsibility for the correctness of the same.  The Master Trustee makes no representations as to the validity or sufficiency of this Indenture or the liens or security created hereby or of the Obligations.  The Master Trustee shall not be accountable for the use or application by any Obligated Issuer of any of the Notes or of the proceeds of such Obligations, or for the use or applica-tion of any moneys paid over by the Master Trustee in accordance with any provision of this Indenture, or for use or application of any moneys received by any paying agent other than the Master Trustee.

Section 8.4.  <u>Master Trustee May Own Notes.</u>  The Master Trustee, in its individual or any other capacity, may become the owner or pledgee of Obligations with the same rights it would have if it were not Master Trustee hereunder.  Any provision to the contrary herein notwithstanding, no provision of this Indenture shall prohibit the Master Trustee from serving as trustee under any Related Financing Documents or from maintaining a banking relationship with any Obligated Issuer; provided that if the Master Trustee determines that any such service as trustee or such relationship is in conflict with its duties under this Indenture, it shall eliminate the conflict or resign as Master Trustee.

Section 8.5.  <u>Compensation and Expenses of Master Trustee.</u>  Each Obligated Issuer shall pay, and shall be jointly and severally liable to pay, to the Master Trustee from time to time, and the Master Trustee shall be entitled to, reasonable compensation, and each Obligated Issuer shall pay, and shall be jointly and severally liable to pay, or reimburse the Master Trustee upon its request for all reasonable expenses, disburse-ments and advances incurred or made by the Master Trustee in con-nection with the acceptance or administration of its trusts under this Indenture (including the reasonable compensation and the expenses and disbursements of its counsel and of all persons not regularly in its employ) except any such expense, disbursement or

advance as may arise from its gross negligence or wilful misconduct. Each Obligated Issuer shall indemnify, defend and shall be jointly and severally liable to indemnify, the Master Trustee and its officers, directors, employees and agents for, and to hold them harmless against, any loss, liability or expense (including, without limitation, a reasonable compensation to its counsel through all investigations, suits and appeals) incurred without gross negligence or wilful misconduct on the part of the Master Trustee and arising out of or in connection with the acceptance or administration of such trusts, including the costs and expenses of defending itself against any claim of liability in the premises. The respective joint and several obligations of each Obligated Issuer under this Section 8.5 to compensate the Master Trustee, to pay or reimburse the Master Trustee for expenses, disbursements and advances and to indemnify, defend and hold harmless the Master Trustee shall survive the satisfaction and discharge of this Indenture and the resignation, removal and succession of the Master Trustee. As security for the payment of all such obligations, the Master Trustee shall have an express first and prior lien on any moneys and Investment Securities on deposit in any funds which the Master Trustee may establish hereunder from time to time.

Section 8.6.   <u>Officer's Certificate as Evidence, Etc.</u>

(a)  Except as otherwise provided in Section 8.1(a) hereof, whenever in the administration of the provisions of this Indenture the Master Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by an Officer's Certificate delivered to the Master Trustee. In the absence of bad faith on the part of the Master Trustee, any such Officer's Certificate shall be full ratification of any action taken, suffered or omitted by the Master Trustee under the provisions of this Indenture upon the faith thereof, and the Master Trustee shall not be obligated to make any investigation into the facts stated therein.

(b)  The permissive right of the Master Trustee to do things enumerated in this Indenture shall not be construed as a duty and the Master Trustee shall not be answerable other than for its gross negligence or wilful misconduct.

(c)  The Master Trustee shall not be personally liable for any debts contracted or for damages to persons or to personal property injured or damaged, or for salaries or nonfulfillment of contracts during any period in which it may be in the possession of or managing the real and tangible personal property as in this Indenture provided, provided it is acting at the time with due regard for the standard

-73-

provided in Section 8.1 hereof, which shall be fully ap-
plicable to Master Trustee and its actions or failure to act
while in possession of or managing such real or personal
property.

(d)  The Master Trustee shall not be required to give
any bond or surety in respect of the execution of the said
trusts and powers or otherwise in respect of the premises.

(e)  Notwithstanding anything contained elsewhere in
this Indenture, the Master Trustee shall have the right, but
shall not be required, to demand, in respect of the
authentication of any Obligations, the withdrawal of any
cash, the release of any property, or any reasonable action
whatsoever within the purview of this Indenture, any show-
ings, certificates, opinions, appraisals or other informa-
tion, or corporate action or evidence thereof, in addition to
that by the terms hereof required as a condition of such ac-
tion by the Master Trustee deemed desirable for the purpose
of establishing the right of the Obligated Group to the
authentication of any Obligations, the withdrawal of any
cash, the release of any property, or the taking of any other
action by the Master Trustee.

(f)  All monies received by the Master Trustee shall,
until used or applied or invested as herein provided, be held
in trust for the purposes for which they were received but
need not be segregated from other funds except to the extent
required herein or by law.  The Master Trustee shall not be
under any liability for interest on any moneys received
hereunder except such as may be agreed upon.

(g)  Prior to the occurrence of an Event of Default
hereunder, the Master Trustee is authorized to respond in
writing to all written inquiries from Holders and persons
identifying themselves as prospective Holders for information
concerning the status of funds and accounts held under this
Indenture and for other information concerning the Members of
the Obligated Group and the Obligations and similar matters
otherwise within the knowledge of the Master Trustee, and the
Master Trustee shall not be liable to any Holder or any
Member by reason of its disclosures of such information to
only those requesting it.

Section 8.7.  Resignation, Removal and Succession of
Master Trustee.  The Master Trustee may resign at any time without
cause by giving at least 30 days prior written notice to the
Obligated Group Agent and by publishing notice of such resignation
in such newspapers as may be specified in any Supplemental
Indentures and by mailing notice of such resignation to each
Holder of an Obligation then Outstanding, as the names and ad-
dresses of such Holders appear on the registers maintained by the
Master Trustee, such resignation to be effective upon the ac-
ceptance of such Master Trusteeship by a successor.  In addition,

-74-

the Master Trustee may be removed (a) with cause at the direction
of the Holders of not less than 66-2/3% in aggregate principal
amount of Obligations then Outstanding, delivered to the Obligated
Group and the Master Trustee, or (b) for any reason at the direc-
tion of the Obligated Group Agent if no Event of Default then ex-
ists hereunder, such direction to be evidenced by an Officer's
Certificate from a designated representative of the Obligated
Group Agent delivered to the Master Trustee, any such removal to
be effective upon the acceptance of the Master Trusteeship by a
successor.  The Master Trustee shall promptly give notice of any
removal pursuant to the previous sentence in writing to each
Holder of an Obligation then Outstanding as provided above.  In
the case of the resignation or removal of the Master Trustee, a
successor Master Trustee may be appointed by the Obligated Group
as evidenced by an Officer's Certificate from a designated
representative of the Obligated Group Agent designating the suc-
cessor, unless an Event of Default exists hereunder.  If an Event
of Default exists hereunder or if the Obligated Group otherwise
fails to appoint a successor within 30 days after any notice of
resignation or direction to remove the Master Trustee is given, a
successor may be appointed at the direction of the Holders of not
less than 66-2/3% in aggregate principal amount of Obligations
then Outstanding.  If a successor Master Trustee shall not have
been appointed within 45 days after such notice of resignation or
removal, the Master Trustee, the Obligated Group Agent or any
Holder of an Obligation then Outstanding may apply to any court of
competent jurisdiction to appoint a successor to act until such
time, if any, as a successor shall have been appointed as above
provided.  The successor so appointed by such court shall im-
mediately and without further act be superseded by any successor
appointed as above provided.

     Section 8.8.  <u>Acceptance by Successor Master Trustee</u>.
Any successor Master Trustee, however appointed, shall execute and
deliver to its predecessor and to the members of the Obligated
Group an instrument accepting such appointment, and thereupon such
successor, without further act, shall become vested with all the
estates, properties, rights, powers and duties of its predecessor
hereunder in the trusts under this Indenture applicable to it with
like effect as if originally named the Master Trustee; but,
nevertheless, upon the written request of such successor Master
Trustee, its predecessor shall execute and deliver an instrument
transferring to such successor Master Trustee, upon the trusts
herein expressed applicable to it, all the estates, properties,
rights and powers of such predecessor under this Indenture, and
such predecessor shall duly assign, transfer, deliver and pay over
to such successor Master Trustee all moneys or other property then
held by such predecessor under this Indenture.

     Section 8.9.  <u>Qualifications of Successor Master
Trustee</u>.  Any successor Master Trustee, however appointed, shall
be a bank or trust company having together with its Affiliates a
combined capital and surplus on a consolidated basis of at least
$75,000,000, if there be such an institution willing, able and

legally qualified to perform the duties of the Master Trustee
hereunder upon reasonable or customary terms.  For purposes of
this text, the most recent Report of Condition of the proposed
successor Master Trustee may be used to determine such combined
capital and surplus.

Section 8.10.  Successor by Merger.  Any corporation
into which the Master Trustee may be merged or converted or with
which it may be consolidated, or any corporation resulting from
any merger, conversion or consolidation to which the Master
Trustee shall be a party, or any corporation to which
substantially all the business of the Master Trustee may be
transferred, shall, subject to the terms of Section 8.9 hereof, be
the Master Trustee under this Indenture without further act.

Section 8.11.  Co-Master Trustees.

(a)  At any time, for the purpose of meeting the legal
requirements of any applicable jurisdiction, the Master
Trustee shall have power to appoint one or more Persons not
unsatisfactory to the Obligated Group Agent to act as
Co-Master Trustee under this Indenture, with such powers as
may be provided in the instrument of appointment and to vest
in such Person or Persons any property, title, right or power
deemed necessary or desirable, subject to the provisions of
this Section 8.11.

(b)  Each Co-Master Trustee shall, to the extent
permitted by applicable law, be appointed subject to the
following terms:

(i)  The rights, powers, duties and obligations
conferred or imposed upon any such Co-Master Trustee
shall not be greater than those conferred or imposed
upon the Master Trustee, and such rights and powers
shall be exercisable only jointly with the Master
Trustee, except to the extent that, under any law of any
jurisdiction in which any particular act or acts are to
be performed, the Master Trustee shall be incompetent or
unqualified to perform such act or acts, in which event
such rights and powers shall be exercised by such
Co-Master Trustee subject to the provisions of
subsection (b)(iv) of this Section 8.11

(ii)  The Master Trustee may at any time, by an
instrument in writing executed by it, accept the
resignation of or remove any Co-Master Trustee appointed
under this Section 8.11.

(iii)  No Co-Master Trustee under this Indenture
shall be liable by reason of any act or omission of the
Master Trustee or any other Co-Master Trustee appointed
under this Indenture.

-76-

(iv)  No power given to such Co-Master Trustee shall be separately exercised hereunder by such Co-Master Trustee except with the consent in writing of the Master Trustee, anything herein contained to the contrary notwithstanding.



## ARTICLE IX

## SUPPLEMENTS AND AMENDMENTS

Section 9.1.  <u>Supplemental Indentures without Consent of Holders.</u>

(a)  Each Obligated Issuer, when authorized by a resolution of its Governing Body, and the Master Trustee, may from time to time and at any time enter into a Supplemental Indenture for one or more of the following purposes:

(i)  to provide for the issuance of any Obligations hereunder;

(ii)  to evidence the addition of an Obligated Issuer or the succession of another corporation to any Obligated Issuer, or successive successions, and the assumption by the new Obligated Issuer or successor corporation of the covenants, agreements and obligations of an Obligated Issuer under this Indenture;

(iii)  to add to the covenants of any Obligated Issuer such further covenants, restrictions or conditions as its Governing Body and the Master Trustee shall consider to be for the protection of the Holders of Obligations issued hereunder, and to make the occurrence, or the occurrence and continuance, of a default in any of such additional covenants, restrictions or conditions an Event of Default permitting the enforcement of all or any of the several remedies provided in this Indenture as herein set forth; provided, however, that in respect of any such additional covenant, restriction or condition, such Supplemental Indenture may provide for a particular period of grace after default (which period may be shorter or longer than that allowed in the case of other defaults) or may provide for an immediate enforcement upon such default or may limit the remedies available to the Master Trustee upon such default;

(iv)  to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any Supplemental Indenture, or to make such other provisions in regard to matters or questions arising under this Indenture or any Supplemental Indenture and shall not impair the security of this Indenture or adversely affect the interests of the Holders of any particular Obligations or series of Obligations issued hereunder;

(v)  to modify or supplement this Indenture in such manner as may be necessary or appropriate to qualify this Indenture under the Trust Indenture Act of 1939, as amended, or under any similar federal statute hereafter enacted, including provisions whereby the Master Trustee accepts such powers, duties, conditions and restrictions hereunder and each Obligated Issuer undertakes such covenants, conditions or restrictions additional to those contained in this Indenture as would be necessary or appropriate so to qualify this Indenture;

(vi)  to provide for the establishment of funds and accounts hereunder and for the proper administration of and transfers of moneys between any such funds and accounts, provided that, except as otherwise provided in Article XI hereof, all such funds and accounts shall be established for the equal and ratable benefit of the Holders of all Outstanding Obligations;

(vii)  to permit the issuance of additional forms of Obligations, provided that such Obligations are equally and ratably secured with all other Obligations issued hereunder (except as otherwise provided herein);

(viii)  to reflect a change in applicable law;

(ix)  to modify, amend, change or remove any covenant, agreement, term or provision of this Indenture (other than a modification of the type described in Section 9.2 hereof requiring the unanimous written consent of the Holders) provided that either of the following conditions is satisfied prior to the effective date of such Supplemental Indenture: (1) if at the time of the proposed amendment the Obligations or any series of Related Bonds are rated by one or more Rating Agencies, written notice of the substance of such proposed amendment is given to such Rating Agencies by the Obligated Group Agent and the Obligated Group Agent provides evidence satisfactory to the Master Trustee that the ratings on the Obligations or any series of Related Bonds will not be lowered or withdrawn by such Rating Agencies as a result of such proposed amendment; or (2) a Consultant's report is delivered to the Master Trustee prior to the date such amendment is to take effect, to the effect that the proposed amendment is consistent with then current industry standards for comparable institutions and demonstrating either that (A) the Projected Debt Service Coverage Ratio for the full Fiscal Year immediately after the effective date of such proposed amendment is not less than 1.20, assuming the maximum implementation (or such lower implementation certified to the Master Trustee by the Obligated Group Agent as being a reasonable basis for assumption) by the Obligated Group of the proposed amendment; or (B) if the

proposed amendment is to a provision of this Indenture
that contains a quantitative restriction or covenant,
the average of the Projected Debt Service Coverage Ratio
for the two full Fiscal Years immediately after the
effective date of such proposed amendment or supplement
will be greater than the average of the Debt Service
Coverage Ratio for such period had the proposed
amendment not been implemented assuming the maximum
implementation (or such lower implementation certified
to the Master Trustee by the Obligated Group Agent as
being a reasonable basis for assumption) of the proposed
amendment; or (C) (I) the average of the Projected Debt
Service Coverage Ratios for the two full Fiscal Years
immediately after the effective date of such proposed
amendment will not be less than 1.10, and (II) the
average of the Projected Debt Service Coverage Ratios
for the two full Fiscal Years immediately after the
effective date of such proposed amendment will not be
more than 35% lower than the average of the Debt Service
Coverage Ratios had the proposed amendment not been
implemented, assuming with respect to the projections
made under (I) and (II) the maximum implementation (or
such lower implementation certified to the Master
Trustee by the Obligated Group Agent as being a
reasonable basis for assumption) of the proposed
amendment if the proposed amendment is to a provision of
this Indenture that contains a quantitative restriction
or covenant; and

    (x)  to amend the provisions set forth in Sections
12.10 hereof relating to the elections of a successor
Obligated Group Agent.

    (b)  The Master Trustee is hereby authorized to join
with each Obligated Issuer in the execution of any such
Supplemental Indenture, to make any further appropriate
agreements and stipulations which may be therein contained
and to accept the conveyance, transfer, mortgage, pledge or
assignment of any property thereunder, but the Master Trustee
shall not be obligated to enter into any such Supplemental
Indenture that affects the Master Trustee's rights, duties,
indemnities  or immunities under this Indenture or otherwise
or which in the sole judgment of the Master Trustee might
expose it to greater liability.

    (c)  Any Supplemental Indenture authorized by the provi-
sions of this Section 9.1 may, without the consent of or
notice to the Holders of then Outstanding Obligations issued
hereunder, be executed by each Obligated Issuer and the
Master Trustee.

Section 9.2.   <u>Modification of Indenture with Consent of Holders.</u>

(a)   With the consent of the Holders of not less than a majority in aggregate principal amount of Obligations then Outstanding, each Obligated Issuer, when authorized by its Governing Body, and the Master Trustee, may from time to time and at any time enter into a Supplemental Indenture hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any Supplemental Indenture or of modifying in any manner the rights of the Holders of Obligations; provided, however, that (i) without the consent of the Holders of all Obligations whose Obligations are proposed to be modified, no such supplemental indenture shall effect a change in the times, amounts or currency of payment of the principal of, premium, if any, or interest on any Obligation or a reduction in the principal amount or redemption price of any Obligation or the rate of interest thereon or permit the preference or priority of any Obligation over any other Obligation, and (ii) without the consent of the Holders of all Obligations then Outstanding, no such supplemental indenture shall reduce the aforesaid percentage or affected class of Obligations, the Holders of which are required to consent to any such Supplemental Indenture.

(b)   Upon the request of each Obligated Issuer, accompanied by a copy of a resolution of its Governing Body, and upon the filing with the Master Trustee of evidence of the consent of Holders as aforesaid, the Master Trustee shall join with each Obligated Issuer in the execution of such Supplemental Indenture unless such Supplemental Indenture affects the Master Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Master Trustee may, in its discretion, but shall not be obligated to, enter into such Supplemental Indenture.

(c)   It shall not be necessary for the consent of the Holders under this Section 9.2 to approve the particular form of any proposed Supplemental Indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Section 9.3.   <u>Effect of Supplemental Indenture.</u>

(a)   Upon the execution of any Supplemental Indenture pursuant to the provisions of this Article IX, this Indenture shall, with respect to each series of Obligations issued hereunder, be and be deemed to be modified and amended in accordance therewith and the respective rights, limitation of rights, obligations, duties and immunities under this Indenture of the Master Trustee, each Obligated Issuer and the Holders of Obligations issued hereunder shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all



the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture.

(b)  The Master Trustee, subject to the provisions of Sections 9.1 and 9.2 hereof, may receive and rely on an opinion of Counsel as conclusive evidence that any such supplemental indenture complies with the provisions of this Article IX.

Section 9.4.  <u>Obligations May Bear Notation of Changes.</u> Obligations authenticated and delivered after the execution of any Supplemental Indenture pursuant to the provisions of this Article IX may bear a notation in form approved by the Master Trustee as to any matter provided for in such Supplemental Indenture.  If the Obligated Issuer of any Obligations then Outstanding or the Master Trustee shall so determine, new Obligations so modified as to conform, in the opinion of the Master Trustee and the Governing Body of such Obligated Issuer, to any modification of this Indenture contained in any such Supplemental Indenture may be executed by such Obligated Issuer, authenticated by the Master Trustee and delivered in exchange for Obligations of the same series then Outstanding.

## ARTICLE X

### IMMUNITY OF INCORPORATORS, MEMBERS, OFFICERS AND MEMBERS OF GOVERNING BODY

Section 10.1.  <u>Incorporators, Members, Officers and Members of the Governing Body Exempt from Individual Liability.</u> No recourse under or upon any obligation, covenant or agreement of this Indenture, or of any Obligations issued hereunder, or for any claim based thereon or otherwise in respect thereof, shall be had against any incorporator, member, officer or member of the Governing Body, as such, past, present or future, of any Obligated Issuer or of any successor corporation, either directly or through such Obligated Issuer, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise; it being expressly understood that this Indenture and the Obligations issued hereunder are solely corporate obligations, and that no personal liability whatever shall attach to, or is or shall be incurred by, the incorporators, members, officers or members of the Governing Body, as such, of any Obligated Issuer or any successor corporation, or any of them, because of the creation of the Indebtedness hereby authorized, or under or by reason of the obligations, covenants or agreements contained in this Indenture or in any Obligations issued hereunder or implied therefrom; and that any and all such personal liability of every name and nature, either at common law or in equity or by constitution or statute, of, and any and all such rights and claims against, every such incorporator, member, officer or trustee, as such, because of the creation of the indebtedness hereby authorized, or under or by reason of the obligations, covenants or agreements contained in this Indenture or in any Obligations issued hereunder or implied therefrom are hereby expressly waived and released as a condition of, and as consideration for, the execution of this Indenture and the issuance of such Obligations.

ARTICLE XI

SATISFACTION AND DISCHARGE OF INDENTURE;
RELEASE OF OBLIGATED ISSUERS;
UNCLAIMED MONEYS

Section 11.1. <u>Satisfaction and Discharge of Indenture</u>.
If the Master Trustee receives: (a) an amount which is (i) in the
form of (A) cash, or (B) Government Obligations, and (ii) in a
principal amount sufficient, together with the interest thereon
and any funds on deposit hereunder and available for such purpose,
but without the need for any further reinvestment, to provide for
the payment of the principal of and premium, if any, and interest
on all Outstanding Obligations to and including the maturity date
or prior redemption or prepayment date thereof; (b) irrevocable
instructions to redeem all Obligations to be redeemed prior to
maturity and to notify the Holders of each such redemption; and
(c) an amount sufficient to pay or provide for the payment of all
other sums payable hereunder by the Obligated Issuers or any
thereof, including fees and expenses of the Master Trustee, then
this Indenture shall cease to be of further effect, and the Master
Trustee, on demand of the Obligated Group Agent, and at the cost
and expense of the Obligated Issuers or any one thereof, shall
execute all such instruments acknowledging satisfaction of and
discharging this Indenture as may be requested by the Obligated
Group Agent.

In like manner, the Obligated Issuer of any particular
Obligation may provide for the payment thereof (or of a portion
thereof) at or prior to maturity and the Obligation (or portion
thereof) so provided for shall thereupon cease to be Outstanding
hereunder.

In lieu of the foregoing, the Obligated Issuer of any
particular Obligation may deliver to the Holder thereof the amount
required under the Related Financing Documents to provide for the
payment of the principal, premium, if any, and interest due or to
become due in respect of such Obligation and such Obligation
shall, upon surrender to the Master Trustee for cancellation, no
longer be deemed Outstanding hereunder.

In the case of any Obligations issued to secure bonds,
notes or other similar obligations issued by or on behalf of an
Obligated Issuer, such Obligations shall be deemed Outstanding
hereunder, notwithstanding compliance with the foregoing, unless
and until the bonds, notes or other obligations secured thereby
are no longer deemed Outstanding under the Related Financing
Documents pursuant to which they were issued.

Section 11.2. <u>Application of Funds Deposited for Pay-
ment of Obligations</u>. All moneys deposited with the Master Trustee
pursuant to Section 11.1 hereof shall be held in trust and applied
by it to the payment to the Holders of the Obligations for the

-84-

payment or redemption of which such moneys have been deposited with the Master Trustee, of all sums due and to become due thereon for principal and interest and any other amounts.

Section 11.3.  <u>Repayment of Moneys Held by Master Trustee</u>.  Any moneys deposited with the Master Trustee for the payment of the principal of or interest on Obligations and not applied but remaining unclaimed by the Holders of such Obligations for four (4) years after the date upon which such payment shall have become due, shall, to the extent permitted by applicable law, be repaid to the Obligated Group Agent by the Master Trustee on demand; and, upon such repayment, the Holder of any of such Obligations entitled to receive such payment shall look only to the Obligated Issuers for the payment thereof; provided that, before being required to make any such repayment, the Master Trustee may notify the Holders of such unpaid Obligations that said moneys have not been so applied and that after a date named therein any unclaimed balance of said moneys then remaining will be returned to the Obligated Group Agent. Any such notice shall be given in such manner as may be specified in the applicable Supplemental Indenture and the cost thereof shall be paid by the Obligated Group.

ARTICLE XII

MISCELLANEOUS PROVISIONS

Section 12.1. <u>Successors and Assigns of Obligated Issuers Bound by Indenture</u>. All the covenants, stipulations, promises and agreements in this Indenture contained by or on behalf of any Obligated Issuer or the Master Trustee shall inure to the benefit of and shall bind their respective successors and assigns, whether so expressed or not.

Section 12.2. <u>Official Acts by Successor Corporation</u>. Any act or proceeding by any provision of this Indenture authorized or required to be done or performed by any board, committee or officer of any Obligated Issuer shall and may be done and performed with like force and effect by the like board, committee or officer of any corporation that shall at the time be the lawful sole successor of the Obligated Issuer.

Section 12.3. <u>Notice or Demand Served by Mail</u>. With respect to each series of Obligations, unless otherwise expressly specified or permitted by the terms of this Indenture or the applicable Supplemental Indenture, all notices shall be in writing, mailed by first-class mail, postage prepaid, and (i) if to the Obligated Group Agent, addressed to it at c/o South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344, with copies of each such notice addressed to: South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344, Attention: President and Chief Executive Officer; South Fulton Medical Center Foundation, Inc., c/o South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344; South Fulton Medical Arts Center, Inc., c/o South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344; South Atlanta Diagnostic Cardiology, Inc., c/o South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344; South Fulton Health Care Center, Inc., c/o South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344; and Georgia International Health Alliance, Inc., c/o South Fulton Medical Center, Inc., 1170 Cleveland Avenue, East Point, Georgia 30344; (ii) if to the Master Trustee, addressed to it at Attention: Corporate Trust Department, MC47, 55 Marietta Street, Atlanta, Georgia 30303, and (iii) if to any Holder of any Obligation identified in the registration books kept by the Master Trustee, addressed to such Holder at the address set forth in such registration books; or to such other address or additional addresses as the Obligated Group Agent, any Obligated Issuer or the Master Trustee shall from time to time designate by notice in writing. If required to be given by the Obligated Group Agent, any Obligated Issuer, the Master Trustee or any Holder to any of the other of them, such notice shall be deemed given and such requirement satisfied if such notice is mailed by first-class mail, postage prepaid, addressed as provided above.



Section 12.4.  <u>Governing Law</u>.  This Indenture, any Supplemental Indenture and the Notes issued hereunder shall be deemed to be contracts made under the laws of the State of Georgia (without regard to the conflict of laws principles thereto), and for all purposes shall be construed in accordance with the laws of said State.

Section 12.5.  <u>Legal Holidays</u>.  Except to the extent a Supplemental Indenture or Obligation provides otherwise, in any case where the date on which any principal, premium, interest or other payment is required to be paid shall be on a day on which banking institutions at the place of payment are authorized by law to remain closed, then payment of such amounts need not be made on such date but may be made on the next succeeding day which is not a day on which banking institutions at such place of payment are authorized by law to remain closed, with the same force and effect as if made on the date otherwise due and, in the case of such payment, no interest shall accrue for the period from and after such date.

Section 12.6.  <u>Benefits of Provisions of Indenture and Obligations</u>.  Nothing in this Indenture or in the Obligations issued hereunder, expressed or implied, shall give or be construed to give any Person other than each Obligated Issuer, the Master Trustee and the Holders of Obligations, any legal or equitable right, remedy or claim under or in respect of this Indenture, or under any covenant, condition and provision herein contained; all its covenants, conditions and provisions being for the sole benefit of each Obligated Issuer, the Master Trustee and of the Holders of such Obligations.

Section 12.7.  <u>Execution in Counterparts</u>.  This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 12.8.  <u>Effective Date</u>.  This Indenture shall become effective as of the day and year first written above upon execution hereof by the Institution and the Master Trustee.

Section 12.9.  <u>Headings For Convenience Only</u>.  The Table of Contents and the headings of the several sections hereof are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 12.10.  <u>Obligated Group Agent</u>.  The Institution shall be the initial Obligated Group Agent.  The term "Obligated Group Agent" shall mean the Institution or the successor thereto as Obligated Group Agent.  Any Person, whether or not a member of the Combined Group, may serve as Obligated Group Agent.  The Obligated Group Agent may resign and be discharged of the duties of Obligated Group Agent by written resignation filed with the Master Trustee and sent to each member of the Combined Group.

Such resignation shall take effect upon the appointment of a successor Obligated Group Agent.  If the Obligated Group Agent is a member of the Obligated Group, the Obligated Group Agent's withdrawal from the Obligated Group will constitute notice of the Obligated Group Agent's resignation from such position.  As soon as practicable following the provision by any Obligated Group Agent of notice of its intention to resign from such position, the members of the Obligated Group shall elect a new Obligated Group Agent pursuant to the following procedure: (a) each member of the Obligated Group shall submit to the Master Trustee a nomination for a successor Obligated Group Agent; (b) such nomination shall be in the form of a certified resolution of such member's Governing Body; (c) the Master Trustee will accord each such nomination a number of votes equal to the principal amount of Obligations issued by the member submitting the nomination, according to the Master Trustee's records; (d) the nominee receiving a majority of the votes so cast shall become the successor Obligated Group Agent; (e) if no nominee receives a majority of the votes so cast, the Master Trustee shall provide written notice to each member of the Obligated Group setting forth the two nominees who received the most votes and requesting that the members submit ballots in the form of a certified resolution of their respective Governing Bodies in favor of one of such nominees; (f) the balloting shall be repeated until one of the nominees receives a majority of the votes cast; and (g) in the event no nominee receives a majority of the votes cast after the fourth round of balloting, the then-incumbent Obligated Group Agent shall remain as such until a member of the Obligated Group nominates a successor, at which time balloting shall commence in accordance with the procedures described above.

Section 12.11.  Notice to Rating Agencies.  The Obligated Group Agent shall provide, within 60 days of the date of occurrence, written notice to each Rating Agency maintaining a public rating on any obligation or obligations issued pursuant to any Related Financing Document of the following events:

(a)  Any change in membership of the Obligated Group;

(b)  Any Additional Indebtedness incurred by an Obligated Issuer in excess of 5% of Net Operating Revenues;

(c)  Any interest rate swap or similar arrangement entered into by an Obligated Issuer with a notional amount in excess of 5% of Net Operating Revenues.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed and their respective corporate seals to be hereunto affixed and attested by persons thereunto duly authorized, as of the day and year first written above.

[SEAL]                          SOUTH FULTON MEDICAL CENTER, INC.

Attest:

*C. L. Ratterree*
Title: *Secretary*

By: _____
Title: *President*

SOUTH FULTON MEDICAL CENTER
FOUNDATION, INC.

By: _____
    Title: President

SOUTH FULTON MEDICAL ARTS CENTER, INC.

By: _____

Title: _President_

SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC.

By: _____

Title: President

SOUTH FULTON HEALTH CARE, CENTER, INC.

By: _____

Title: President

GEORGIA INTERNATIONAL HEALTH ALLIANCE
INC.

By: _____

Title: _____

[SEAL]

Attest:

Title: ASSISTANT VICE PRESIDENT

BANK SOUTH, N.A., as
Master Trustee

By:

Title:   VICE PRESIDENT

-95-

EXHIBIT A
to
Master Indenture

PERMITTED LIENS

1.    Security Deed, dated 9-8-87, in favor of First
Union National Bank of Georgia, recorded in Deed
Book 11053, Page 247, as amended 10-28-88, recorded
in Deed Book 12051, Page 287 and related Assignment
of Lessor's Interest in Leases, recorded in Deed
Book 11053, Page 277, as amended at Deed Book
12051, Page 287 and related U.C.C. Financing
Statement 682284 -- Fulton County, Georgia Records.

[EXHIBIT 2A]

---

FIRST SUPPLEMENTAL MASTER TRUST INDENTURE

Between and Among

SOUTH FULTON MEDICAL CENTER, INC.

SOUTH FULTON MEDICAL CENTER FOUNDATION, INC.

SOUTH FULTON MEDICAL ARTS CENTER, INC.

SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC.

SOUTH FULTON HEALTH CARE CENTER, INC.

GEORGIA INTERNATIONAL HEALTH ALLIANCE, INC.

The Persons Becoming Obligated Issuers

And

BANK SOUTH, N.A.

as Master Trustee

Dated as of November 1, 1993

Relating to 1993 Master Note in the principal amount of
$39,140,000 Tri-City Hospital Authority
Revenue Certificates, Series 1993

---

This instrument was prepared by:

King & Spalding
191 Peachtree Street
Atlanta, Georgia 30303-1763

FIRST SUPPLEMENTAL MASTER TRUST INDENTURE


          This FIRST SUPPLEMENTAL MASTER TRUST INDENTURE dated as
of November 1, 1993 (the "First Supplemental Indenture"), between
and among SOUTH FULTON MEDICAL CENTER, INC., a Georgia nonprofit
corporation (the "Institution"), SOUTH FULTON MEDICAL CENTER
FOUNDATION, INC., a Georgia nonprofit corporation ("SFMCF"), SOUTH
FULTON MEDICAL ARTS CENTER, INC., a Georgia nonprofit corporation
("SFMAC"), SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC., a Georgia
nonprofit corporation ("SADC"), SOUTH FULTON HEALTH CARE CENTER,
INC., a Georgia nonprofit corporation ("SFHCC"), and GEORGIA
INTERNATIONAL HEALTH ALLIANCE, INC., a Georgia nonprofit
corporation ("GIHA"), as members of the Initial Obligated Group
(the "Initial Obligated Group"), and BANK SOUTH, N.A., Atlanta,
Georgia, as master trustee, a national banking association (the
"Master Trustee");


               W I T N E S S E T H:

          WHEREAS, the parties hereto have heretofore entered into
a Master Trust Indenture, dated as of November 1, 1993 (the
"Original Master Indenture") which provides for the issuance
thereunder of Obligations and provides that the Master Trustee
shall enter into an indenture supplemental to the Original Master
Indenture in connection therewith; and

          WHEREAS, the Institution has requested that Tri-City
Hospital Authority (the "Authority") issue its $39,140,000 in
aggregate principal amount Tri-City Hospital Authority Revenue
Certificates, Series 1993 (the "Series 1993 Certificates"), for
the purpose of (i) financing the cost of the acquisition by the
Institution of the Medical Center (as defined in the Bond
Indenture hereinafter referred to) from the Authority, (ii)
financing the cost of certain additions, improvements and
renovations to the Medical Center and the cost of reimbursing the
Institution for the cost of certain improvements to the Medical
Center heretofore made by the Institution, (iii) funding the Debt
Service Reserve Fund (as defined in the Bond Indenture) in an
amount equal to the Reserve Requirement (as defined in the Bond
Indenture), and (iv) paying all or a portion of the cost of
issuing the Series 1993 Certificates, and the Authority and the
Institution propose to enter into a Loan Agreement, dated as of
November 1, 1993 (the "Agreement"), under the terms of which the
Authority will agree to issue the Series 1993 Certificates and
loan the proceeds of the Series 1993 Certificates to the
Institution for such purposes; and

          WHEREAS, the Series 1993 Certificates are being issued
by the Authority pursuant to the terms of a Trust Indenture, dated
as of November 1, 1993 (the "Bond Indenture"), between the
Authority and Bank South, N.A., as trustee (the "Bond Trustee");
and

[-1-]

WHEREAS, in order to evidence the obligation to repay such loan, the Institution has agreed in the Agreement to execute and deliver to the Bond Trustee the 1993 Master Note (the "Promissory Note") issued under and pursuant to the Original Master Indenture, as supplemented by this First Supplemental Indenture and as the same may be further supplemented by certain other supplemental indentures; and

WHEREAS, all acts and things necessary to make the Promissory Note, when authenticated and issued as in the Original Master Indenture and this First Supplemental Indenture provided, the valid, binding and legal obligation of the Institution, and to constitute the Original Master Indenture and this First Supplemental Indenture as a valid, binding and legal instrument for the security of the Promissory Note, have been done and performed, and the creation, execution and delivery of this First Supplemental Indenture and the creation, execution and issuance of the Promissory Note, subject to the terms of the Original Master Indenture and this First Supplemental Indenture have in all respects been duly authorized;

NOW, THEREFORE, THIS FIRST SUPPLEMENTAL INDENTURE WITNESSETH:

That in order to secure the payment of the principal of and interest on the Promissory Note according to its tenor and effect, and the performance of all of the covenants and conditions contained in the Original Master Indenture, this First Supplemental Indenture or in the Promissory Note, and for the purpose, among others, of further securing the performance and observance of all of the covenants and conditions contained in the Original Master Indenture, the members of the Initial Obligated Group, for and in consideration of the premises and of the purchase and acceptance by the owner thereof of the Promissory Note and of the sum of $1.00 duly paid by the Master Trustee to the members of the Initial Obligated Group, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has executed and delivered this First Supplemental Indenture, and the Institution, the other members of the Initial Obligated Group and the Master Trustee DO HEREBY COVENANT AND AGREE with each other and with the registered owner from time to time of the Promissory Note as follows:

## ARTICLE I

### DEFINITIONS

Section 1.1.   Definitions.  All capitalized terms and words used in this First Supplemental Indenture and not otherwise defined herein shall have the meanings set forth, respectively, in Section 1.1 of the Master Indenture or Section 101 of the Bond

Indenture unless the context or use clearly indicates another or different meaning or intent.

## ARTICLE II

### THE PROMISSORY NOTE

Section 2.1.   Authorization of Promissory Note; Purpose. There is hereby authorized to be issued by the Institution pursuant to the provisions of this First Supplemental Indenture and under the provisions of the Original Master Indenture a promissory note of the Institution to be designated as the "1993 Master Note" (the "Promissory Note").  This First Supplemental Indenture is being executed and delivered for the purpose of authorizing the Promissory Note, and the Promissory Note is being issued for the purpose of evidencing a portion of the Institution's obligation to repay the Loan made pursuant to the Agreement.  The total principal amount of Obligations that may be Outstanding at any time under this First Supplemental Indenture is hereby expressly limited to $39,140,000.

Section 2.2.   Terms and Form of Promissory Note.  The Promissory Note shall be dated the date of issuance and delivery thereof and shall be issued in fully registered form as a single note in the denomination of $39,140,000, in substantially the form attached hereto as Exhibit "A", with such additional identifying information, changes, insertions or omissions as may be approved by the officers of the Institution executing and delivering the Promissory Note, which approval shall be conclusively evidenced by the execution and delivery of such Promissory Note.  The Promissory Note shall be registered in the name of the Bond Trustee, as assignee of the Authority under the Bond Indenture, and shall be executed and delivered by the Institution in the manner provided in the Original Master Indenture and authenticated by the Master Trustee and delivered to the Bond Trustee simultaneously with the issuance and delivery of the Series 1993 Certificates and the Loan of the proceeds thereof to the Institution pursuant to the Agreement.  The Promissory Note shall be payable, mature, bear interest, and be subject to prepayment as provided in the form thereof attached as Exhibit "A".  The Institution intends that the Promissory Note shall constitute an Obligation issued pursuant to Article II of the Original Master Indenture.

Section 2.3.   Registration of Transfer and Exchange. The Promissory Note may only be issued in the principal amount equal to the outstanding principal amount of the Series 1993 Certificates and may not be exchanged for Obligations in any other principal amount.  The Promissory Note may not be registered as transferred, except to a successor trustee of the Bond Trustee or in the case of the appointment of a co-Bond Trustee, to the Bond Trustee and such co-Bond Trustee.

-3-

Section 2.4.   <u>Payments to Correspond to Payments on Series 1993 Certificates</u>.   Notwithstanding any schedule of payments to be made on the Promissory Note as set forth herein or therein, the Obligated Group shall make payments on the Promissory Note at the times and in amounts sufficient to provide for the payment when due of principal, redemption premium (if any) and interest on the Series 1993 Certificates as may be outstanding from time to time under the Bond Indenture, whether at maturity, upon redemption, by declaration of acceleration or otherwise.

## ARTICLE III

## <u>MISCELLANEOUS</u>

Section 3.1.   <u>Original Master Indenture, First Supplemental Indenture as One Document</u>.   The Original Master Indenture, as supplemented by this First Supplemental Indenture and as the same may hereafter be supplemented by certain other supplemental indentures, is in all respects ratified and confirmed, and the Original Master Indenture and this First Supplemental Indenture and other supplemental indentures thereto shall be read, taken and construed as one and the same instrument.

Section 3.2.   <u>Responsibility of Trustee</u>.   The Master Trustee assumes no responsibility for or in respect of the validity or sufficiency of this First Supplemental Indenture or the due execution hereof by the members of the Initial Obligated Group or for or in respect of the recitals and statements contained herein; and all of the provisions contained in the Master Trust Indenture with respect to the rights, privileges, immunities, powers and duties of the Master Trustee shall be applicable in respect of this First Supplemental Indenture and the Promissory Note issued hereunder as fully and with like effect as if set forth herein.

Section 3.3.   <u>References</u>.   All references herein or in the Original Master Indenture to any Article, Section or provision of the Master Indenture shall be deemed to refer to such Article, Section or provision as hereby supplemented, unless in any case, the use or context otherwise requires.

Section 3.4.   <u>Counterparts</u>.   This First Supplemental Indenture may be simultaneously executed in several counterparts, each of which shall be an original but all of which shall constitute but one and the same instrument.

Section 3.5.   <u>Captions</u>.   The captions or headings in this First Supplemental Indenture are for convenience of reference only and in no way define, limit or describe the scope or intent of any provisions or sections of this First Supplemental Indenture.

Section 3.6.  <u>Governing Law</u>.  The effect and meaning of this First Supplemental Indenture and the rights of all parties hereunder shall be governed by and construed in accordance with the laws of the State of Georgia (without regard to the conflict of laws principle thereof).

Section 3.7.  <u>Effective Date and Term</u>.  This First Supplemental Indenture shall become effective upon the execution and delivery hereof by the Institution, the other members of the Obligated Group and the Master Trustee, and shall continue in full force and effect until payment in full of the Promissory Note.

IN WITNESS WHEREOF, the Institution, South Fulton Medical Center Foundation, Inc., South Fulton Medical Arts Center, Inc., South Atlanta Diagnostic Cardiology, Inc., South Fulton Health Care Center, Inc., and Georgia International Health Alliance, Inc. have caused these presents to be executed in their respective name and behalf and sealed and attested by their duly authorized officers, and to evidence its acceptance of the trust hereby created, the Master Trustee has caused these presents to be executed, sealed and attested in its name and behalf by its duly authorized officers, all as of the date first above written.

SOUTH FULTON MEDICAL CENTER, INC.

By: _____

Title: President

-6-

SOUTH FULTON MEDICAL CENTER
FOUNDATION, INC.

By: _____

Title: President

SOUTH FULTON MEDICAL ARTS CENTER, INC.

By: _____

Title: *President*

SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY,
INC.

By: _____

Title: President

SOUTH FULTON HEALTH CARE CENTER,
INC.

By: _____
Title: President

GEORGIA INTERNATIONAL HEALTH
ALLIANCE, INC.

By: _____

Title: _President_

BANK SOUTH, N.A., as Master
Trustee

By: _Bronwyn C. Fowlkes_____
Title:     VICE PRESIDENT

(SEAL)

Attest:

_Hilary C. Payne_____
Title: / ASSISTANT VICE PRESIDENT

-12-



# EXHIBIT / ATTACHMENT

## 3

(To be scanned in place of tab)

LOAN AGREEMENT

Between

TRI-CITY HOSPITAL AUTHORITY

and

SOUTH FULTON MEDICAL CENTER, INC.

Dated as of November 1, 1993

Relating to

TRI-CITY HOSPITAL AUTHORITY
REVENUE CERTIFICATES,
SERIES 1993

THIS LOAN AGREEMENT AND AN EXECUTED NOTE REFERRED TO HEREIN HAVE BEEN ASSIGNED TO, AND ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF, BANK SOUTH, N.A., AS BOND TRUSTEE UNDER A TRUST INDENTURE DATED AS OF NOVEMBER 1, 1993 FROM TRI-CITY HOSPITAL AUTHORITY, AND AS AMENDED OR FURTHER SUPPLEMENTED FROM TIME TO TIME.  INFORMATION CONCERNING SUCH SECURITY INTEREST MAY BE OBTAINED FROM THE BOND TRUSTEE AT ITS PRINCIPAL CORPORATE TRUST OFFICE IN ATLANTA, GEORGIA.

# LOAN AGREEMENT

## TABLE OF CONTENTS

| Description | | Page |
|---|---|---|
| **ARTICLE I** | DEFINITIONS | |
| Section 1.01 | Incorporation of Definitions........... | 3 |
| Section 1.02 | Certain Rules of Interpretation........ | 3 |
| **ARTICLE II** | REPRESENTATIONS AND WARRANTIES OF INSTITUTION | |
| Section 2.01 | Representations and Warranties......... | 4 |
| **ARTICLE III** | FINANCING OF THE PROJECT; TERM | |
| Section 3.01 | Issuance of the Series 1993 Certificates...................... | 5 |
| Section 3.02 | Use of Series 1993 Certificate Proceeds in Construction Fund.......... | 5 |
| Section 3.03 | Assignment of Authority's Rights....... | 5 |
| Section 3.04 | Loan Term ............................ | 6 |
| **ARTICLE IV** | COVENANTS OF THE INSTITUTION | |
| Section 4.01 | Master Indenture Covenants............ | 7 |
| Section 4.02 | Covenants Relating to the Tax Status of the Series 1993 Certificates........................... | 7 |
| Section 4.03 | Indemnity............................. | 7 |
| Section 4.04 | Assignment of Agreement............... | 9 |
| Section 4.05 | Maintenance and Operation of Property............................... | 9 |
| Section 4.06 | Insurance............................. | 9 |
| Section 4.07 | Additions, Modifications and Improvements.......................... | 9 |
| Section 4.08 | Leases and Operating Contracts......... | 9 |
| Section 4.09 | Provision of Financial Statements...... | 10 |
| **ARTICLE V** | LOAN PAYMENTS; ISSUANCE OF THE NOTE | |
| Section 5.01 | Provision for Payment of Loan Payments......................... | 11 |
| Section 5.02 | Credits for Payments under the Promissory Note....................... | 11 |
| Section 5.03 | [Intentionally Omitted]................ | 12 |
| Section 5.04 | [Intentionally Omitted]................ | 12 |
| Section 5.05 | Debt Service Reserve Fund............. | 12 |
| Section 5.06 | Obligations Unconditional............. | 12 |

ARTICLE VI                OPTION TO PREPAY

     Section 6.01         Prepayment of Loan Obligation
                          and Promissory Note.................... 14

ARTICLE VII               ASSIGNMENT BY AUTHORITY OR TRUSTEE

     Section 7.01         Assignment by Authority or
                          Trustee................................ 15

ARTICLE VIII              LOAN DEFAULTS AND REMEDIES

     Section 8.01         Loan Defaults Defined.................. 17
     Section 8.02         Notice of Default...................... 18
     Section 8.03         Remedies............................... 18
     Section 8.04         Attorney's Fees and Other
                          Expenses............................... 19
     Section 8.05         Application of Moneys.................. 19
     Section 8.06         No Remedy Exclusive; Waiver;
                          Notice................................. 19

ARTICLE IX                MISCELLANEOUS

     Section 9.01         Notices................................ 20
     Section 9.02         Binding Effect......................... 20
     Section 9.03         Severability........................... 20
     Section 9.04         Amendments, Changes and
                          Modifications.......................... 20
     Section 9.05         Counterparts........................... 20
     Section 9.06         Applicable Law......................... 21
     Section 9.07         Consents and Approvals................. 21
     Section 9.08         Captions............................... 21
     Section 9.09         No Pecuniary Liability of
                          Authority.............................. 21
     Section 9.10         Payments Due on Holidays............... 21
     Section 9.11         Certificateholders' Benefit; Right
                          of Others To Perform the
                          Institution's Covenants................ 21
     Section 9.12         Reliance by Authority.................. 22
     Section 9.13         Disclaimer of Representations.......... 22

EXECUTION.................................................... 22


EXHIBIT A                 DESCRIPTION OF PROJECT................. A-1

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Agreement"), dated as of November 1, 1993, between TRI-CITY HOSPITAL AUTHORITY (the "Authority"), a public body corporate and politic organized and existing under the laws of the State of Georgia pursuant to the Georgia Hospital Authorities Law (O.C.G.A. Section 31-7-70, et seq.) (the "Act") and activated pursuant to a joint resolution of the governing bodies of the Cities of College Park, East Point and Hapeville adopted on October 7, 1958, and the SOUTH FULTON MEDICAL CENTER, INC. (the "Institution"), a nonprofit corporation organized and existing under the laws of the State of Georgia;

## W I T N E S S E T H:

WHEREAS, the Authority is organized and existing under the Hospital Authorities law of the State of Georgia (O.C.G.A. § 31-7-70 et seq., as amended) and activated pursuant to a joint resolution of the governing bodies of the Cities of College Park, East Point and Hapeville adopted on October 7, 1958; and

WHEREAS, the Authority is authorized by law to borrow money, to issue revenue anticipation certificates, to secure the payment of such revenue anticipation certificates by loan agreements, mortgages, security agreements, contracts or other instruments and to make such agreements with the purchasers or holders of such revenue anticipation certificates or with others in connection with any such revenue anticipation certificates, whether issued or to be issued, as the Authority shall deem advisable; and

WHEREAS, the Authority owns a medical center located in Fulton County, Georgia, known as "South Fulton Medical Center" (the "Medical Center"), which is currently leased to the Institution pursuant to a Lease Agreement, dated as of July 1, 1989 (the "Lease"), between the Authority and the Institution; and

WHEREAS, the Institution desires to purchase the Medical Center from the Authority and to make certain additions, improvements and renovations thereto; and

WHEREAS, the Institution has requested that the Authority issue its revenue anticipation certificates for the purpose of (i) financing the cost of the acquisition by the Institution of the Medical Center from the Authority, (ii) financing the cost of certain additions, improvements and renovations to the Medical Center and the cost of reimbursing the Institution for the cost of certain improvements to the Medical Center heretofore made by the Institution (collectively, the "Project"), (iii) funding the Debt Service Reserve Fund (as defined in the Indenture hereinafter referred to) in an amount equal to the Reserve Requirement (as defined in the Indenture), and (iv) paying all or a portion of the cost of issuing such certificates; and

WHEREAS, the Authority has determined that issuing its revenue anticipation certificates for the purpose of financing the acquisition of the Medical Center, the acquisition, construction, installation and equipping of the Project, funding the Debt Service Reserve Fund and paying all or a portion of the costs of issuing such certificates will further the public purposes for which the Authority was created; and

WHEREAS, the Authority has determined that the most feasible means of accomplishing the foregoing purposes is to issue its revenue anticipation certificates, designated "Tri-City Hospital Authority Revenue Certificates, Series 1993" (the "Series 1993 Certificates"), in the aggregate principal amount of $39,140,000; and

WHEREAS, the Series 1993 Certificates will be issued pursuant to a Trust Indenture, dated as of November 1, 1993 (the "Indenture"), between the Authority and Bank South, N.A., as trustee (the "Trustee"); and

WHEREAS, the proceeds of the Series 1993 Certificates will be loaned to the Institution pursuant to this Agreement; and

WHEREAS, in order to provide for the repayment of the Loan made pursuant to this Agreement, the Institution will execute and deliver to the Trustee, as assignee of the Authority, its 1993 Master Note, dated the date of authentication of the Series 1993 Certificates (the "Promissory Note"), which Promissory Note will be issued under and pursuant to the Master Trust Indenture, dated as of November 1, 1993 (the "Original Master Indenture"), between and among the Institution and the other members of the Initial Obligated Group (as defined therein), and Bank South, N.A., as master trustee (the "Master Trustee"), as supplemented by a First Supplemental Master Trust Indenture, dated as of November 1, 1993 (the "First Supplemental Indenture"), between and among the Initial Obligated Group and the Master Trustee (the Original Master Indenture, as supplemented by the First Supplemental Indenture, the "Master Indenture"); and

WHEREAS, the Series 1993 Certificates shall be secured by the pledge by the Authority to the Trustee of the Trust Estate (as defined in the Indenture), including the payments to be paid by the Institution pursuant to the Promissory Note;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto DO HEREBY AGREE as follows:

ARTICLE I

DEFINITIONS

Section 1.01.  Incorporation of Definitions.  Any capitalized term used herein and defined in Section 1.01 of the Indenture shall have the meaning specified in Section 1.01 of the Indenture unless the context or use of such term clearly indicates another or different meaning or intent.

Section 1.02.  Certain Rules of Interpretation.  Except where the context or use otherwise requires, words importing the singular number shall include the plural number and vice versa, and the masculine, the feminine and the neuter shall include all genders.

Reference to an Article number or a Section number shall be construed to be a reference to the designated Article number or Section number of this Agreement unless the context or use clearly indicates another or different meaning or intent.

*    *    *    *    *

ARTICLE II

REPRESENTATIONS AND WARRANTIES OF INSTITUTION

Section 2.01.  Representations and Warranties.  The Institution represents and warrants for the benefit of the Authority, the Trustee and the owners of the Series 1993 Certificates as follows:

(a)  The Institution has been duly incorporated and is validly existing as a domestic nonprofit corporation in good standing under the laws of the State, and has all requisite power and authority and all necessary licenses and permits to own, lease and operate its properties, to carry on its activities as now conducted and as presently proposed to be conducted, to enter into this Agreement, the First Supplemental Indenture and the Promissory Note, and to carry out and consummate all transactions contemplated by this Agreement, the First Supplemental Indenture and the Promissory Note.

(b)  The execution and delivery of this Agreement, the First Supplemental Indenture and the Promissory Note, and the performance by the Institution of its obligations under this Agreement, the First Supplemental Indenture and the Promissory Note, have been duly and effectively authorized by all necessary corporate action on the part of the Institution, including the adoption of an appropriate approving resolution of its governing board, and do not and will not conflict with or result in any breach of any of the material terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any material lien, charge or encumbrance upon any property or assets of the Institution pursuant to any indenture, loan agreement or other agreement or instrument (other than the Master Indenture, this Agreement and the Promissory Note) or of any material corporate restriction to which the Institution is a party or by which the Institution, its properties or operations may be bound, and such action will not result in any material violation of the provisions of the articles of incorporation or by-laws or similar incorporating or governing documents of the Institution or any material laws, ordinances, governmental rules or regulations or court or other governmental orders to which the Institution, its properties or operations is subject.

(c)  This Agreement, the First Supplemental Indenture and the Promissory Note have been duly authorized, executed and delivered by the Institution and are legal, valid and binding obligations of the Institution.

*     *     *     *     *

ARTICLE III

FINANCING OF THE PROJECT; TERM

Section 3.01.  Issuance of the Series 1993 Certificates.  The Authority hereby undertakes to issue the Series 1993 Certificates in accordance with the Indenture.  Upon the issuance and delivery thereof, an amount equal to the aggregate principal amount of the Series 1993 Certificates shall be loaned to the Institution by disbursing the proceeds of the sale of such Series 1993 Certificates in accordance with the provisions of the Indenture. Moneys deposited in the Construction Fund may be disbursed therefrom to pay Costs of the Project pursuant to a written order from the Institution to the Trustee as provided in Section 402 of the Indenture.

(b)  Unless and until so disbursed, moneys in the Construction Fund and other moneys or investments in any Fund established under the Indenture shall be trust funds pledged to and held solely for the security and benefit of the owners of the Series 1993 Certificates, subject to the provisions hereof and of the Indenture permitting the investment or use of such moneys.

Section 3.02.  Use of Series 1993 Certificate Proceeds in Construction Fund.  The Institution will direct the Trustee to apply the proceeds of the Series 1993 Certificates held in the Construction Fund solely for the financing or refinancing of, or to reimburse the Institution for, the Costs of the Project; provided, however, that with the consent of the Authority, the Institution may amend the description of the Project attached as Exhibit A or provide for additions to or deletions from such description of the Project (consistent with the terms of this Agreement and Indenture) after the date hereof, if the Institution deems it to be in the interest of the Institution to acquire, construct or install (or not to acquire, construct or install) any portion of the Project or if the Cost of the Project proves to be more or less than the anticipated cost thereof.  Prior to any amendment of the description of the Project attached as Exhibit A, the Institution shall deliver to the Trustee and the Authority an opinion of Bond Counsel to the effect that the revised Project can be financed under the Act and that such amendment, by itself, would not cause interest on the Series 1993 Certificates to be includable in gross income for purposes of federal income taxation.  Nothing in this Section shall restrict the investment or use of the moneys in the Construction Fund as provided in the Indenture.

Section 3.03.  Assignment of Authority's Rights.  As a source of payment for the Series 1993 Certificates, the Authority pursuant to the Indenture, will assign to the Trustee pursuant to the Indenture all the Authority's rights in this Agreement (except the Authority's rights to payment or indemnity under Section 4.03 hereof).

-5-

Section 3.04.  <u>Loan Term.</u>  The Institution's obligations under this Agreement shall commence on the date of the execution and delivery hereof and shall terminate after payment in full of the Loan and all other amounts due under this Agreement or the Promissory Note; provided, however, that the covenants and obligations provided in Sections 4.02, 4.03 and 8.04 shall survive the termination of this Agreement and the payment in full of the amounts due hereunder and under the Promissory Note.

*     *     *     *     *

ARTICLE IV

COVENANTS OF THE INSTITUTION

Section 4.01.  Master Indenture Covenants.  The Institution
shall perform its covenants under the Master Indenture or any
successor agreement thereto while the Master Indenture or any
successor agreement is in effect.

Section 4.02.  Covenants Relating to the Tax Status of the
Series 1993 Certificates.  The Institution covenants that it will
not take (or fail to take) any action or permit (or fail to
permit) any action to be taken in its behalf, or cause or permit
any circumstance within its control to arise or continue, if such
action or circumstance, or its reasonable expectation on the date
of issuance of the Series 1993 Certificates, would cause the
interest on the Series 1993 Certificates to be includable in the
gross income of owners thereof for federal income tax purposes.

(b)  Without limiting the foregoing, the Institution
covenants that, notwithstanding any other provision of this
Agreement or any other instrument, it will neither make nor cause
to be made, or permit any investment or other use of the proceeds
of the Loan or any property or investment property financed or
refinanced thereby which use would cause any of the Series 1993
Certificates to be an "arbitrage bond" under Section 148(a) of the
Code, and that it will comply with the requirements of such
Section, including, without limitation, the requirement to make
arbitrage rebate payments pursuant to Section 148(f) of the Code
to the extent required therein.

Section 4.03.  Indemnity.  (a) The Institution releases the
Authority from, agrees that the Authority and the Trustee shall
not be liable for, and agrees to indemnify, defend and hold the
Authority and the Trustee harmless against, any loss or damage to
property or any injury to or death of any person that may be
occasioned by any cause whatsoever pertaining to facilities
financed or refinanced by the Series 1993 Certificates or the use
thereof.  The Institution shall indemnify and hold harmless the
Authority and the Trustee from and against all causes of action,
legal or equitable, arising by reason of any act of the
Institution or the failure of the Institution or any of its agents
or employees to fulfill any duty toward the Authority or the
Trustee or toward the public or toward any person or persons
whomsoever the Institution or the Authority or the Trustee may owe
in connection with the facilities financed or refinanced by the
Series 1993 Certificates.  The Institution further agrees to
indemnify, defend and hold the Authority and the Trustee harmless
against any claim arising out of or in connection with contracts
for the construction of the Project or the purchase of material or
supplies for the Project, whether such claims are made by a party
to such contracts, by a seller of material or supplies, by the
Institution, by any state, federal or local government, or any
agency or instrumentality thereof, for payment of any sum,

-7-

including but not limited to any taxes, or by any third party.
The Institution shall at its own cost and expense defend any such
actions which may be brought against the Authority or the Trustee
as aforementioned, whether or not such actions have any basis in
law or in fact, and shall pay all amounts which may be recovered
therein against the Authority or the Trustee.  For the purposes of
this Section 4.03, "Authority" and "Trustee" shall mean the
Authority and the Trustee, their Board members, officers,
directors, agents, servants, assignees and employees.  The
Institution agrees to indemnify and hold harmless the Authority
and the Trustee against any and all losses, claims, damages,
expenses (including reasonable counsel fees) and liabilities
arising from, in connection with, or as a result of the issuance
of the Series 1993 Certificates, the execution and delivery of
this Agreement, the Master Indenture and all related documents
(including the Promissory Note) or the performance and observance
by or on behalf of the Institution of those things on the part of
the Institution agreed to be performed or observed hereunder and
thereunder.

      (b) If any action shall be brought against the Authority or
the Trustee in respect of which indemnity may be sought under the
foregoing provisions of this Section 4.03 against the Institution,
the Authority or the Trustee, as the case may be, shall promptly
notify the Institution in writing, and the Institution shall
assume the defense thereof, including the employment of counsel
and the payment of all expenses.  In any such action, the
Authority and the Trustee shall have the right to employ separate
counsel, but the fees and expenses of such counsel shall be at the
expense of the Authority or the Trustee, as the case may be,
unless the Institution and the Authority or the Trustee shall have
mutually agreed to the employment of such counsel to represent
both the Institution and the Authority or the Trustee; provided,
however, that the Authority or the Trustee shall be entitled to
employ separate counsel and the fees and expenses of such counsel
shall be paid by the Institution if the Authority or the Trustee
believes in good faith that there are defenses available to the
Institution which are not available to them or vice versa.  The
Institution shall not be liable for any settlement of such action
effected without its written consent, but if settled with the
written consent of the Institution or if there shall be a final
judgement for the plaintiff in any action, the Institution agrees
to indemnify and hold harmless the Authority and the Trustee from
and against any loss or liability by reason of such settlement or
judgment.  The obligations of the Institution under this Section
4.03 shall survive the termination of this Agreement.

      (c)  Nothing contained in this Section 4.03 shall be
construed to provide for indemnification of, or payment of
expenses to, the Authority or Trustee as a result of the
Authority's or the Trustee's negligence, willful misconduct or bad
faith.