Section 4.04.  <u>Assignment of Agreement</u>.  The Institution may assign its interest in this Agreement, in whole or in part, without the prior written consent of the Authority or the Trustee provided that in connection with any such assignment of this Agreement, in whole or in part, other than in the ordinary course of business, the Institution shall provide the Trustee with (i) an Officer's Certificate to the effect that such assignment will not result in any event of default, or event which, with the passage of time or the giving of notice or both would constitute such event of default under the Master Indenture and (ii) an opinion of Bond Counsel to the effect that such assignment is authorized or permitted under the terms of the Act and will not, by itself, result in the interest on the Series 1993 Certificates becoming includable in gross income for federal income tax purposes.  No such assignment shall relieve the Institution from its obligations hereunder or under the Promissory Note.

Section 4.05.  <u>Maintenance and Operation of Property</u>.  The Institution shall be responsible for operating the Project and maintaining the Project in good working order; provided, however, that nothing in this Section 4.05 shall require the Institution to operate or maintain the Project or any part thereof if it determines that it is not in its best interests to do so.

Section 4.06.  <u>Insurance</u>.  The Authority shall not have any obligation to keep or maintain or cause to be kept or maintained the Project or a portion thereof insured.  The Institution shall be responsible for maintaining, or causing to be kept and maintained, insurance in accordance with the provisions of Article V of the Master Indenture.

Section 4.07.  <u>Additions, Modifications and Improvements</u>.  The Institution may remodel, renovate, or improve all or any portion of the Project or any of its other properties or make additions, modifications or improvements thereon or thereto as it, in its discretion may deem desirable for its purposes and uses.

Section 4.08.  <u>Leases and Operating Contracts</u>.  The Institution may lease all or substantially all or any portion of the Project or any of its facilities or contract for the performance by others of all or substantially all of the operations or services at or in connection with the Project or any portion of its facilities provided that (i) no such lease or contract shall result in an event of default or an event which, with the lapse of time or the giving of notice would constitute such an event of default under the terms of the Master Indenture or (ii) adversely affect the exclusion of interest on the Series 1993 Certificates from gross income for federal income tax purposes.

Section 4.09. <u>Provision of Financial Statements</u>. The Institution hereby agrees that it will provide, upon receipt of written notice received by the Institution from any registered owner of Series 1993 Certificates in an outstanding principal amount of $1,000,000 or more, copies of any quarterly financial statements prepared by or on behalf of the Institution.

\*     \*     \*     \*     \*

## ARTICLE V

## LOAN PAYMENTS; ISSUANCE OF THE NOTE

Section 5.01. <u>Provision for Payment of Loan Payments.</u> The Institution shall provide for the repayment of the Loan by issuing to the Trustee, pursuant to the Master Indenture, the Promissory Note.

Section 5.02. <u>Credits for Payments under the Promissory Note.</u> The Institution shall receive credit for payments under the Promissory Note, in addition to any credits resulting from payment or prepayment from other sources as follows:

(a)  on the interest portion of its payments under the Promissory Note in an amount equal to the moneys on deposit in the Interest Account in the Sinking Fund which amounts are available to pay interest on the Series 1993 Certificates to the extent such interest amounts have not previously been credited against Loan Payments;

(b)  on the principal portion of its payments under the Promissory Note in an amount equal to the moneys on deposit in the Principal Account or Redemption Account of the Sinking Fund which amounts are available to pay principal of the Series 1993 Certificates to the extent such principal amounts have not previously been credited against payments under the Promissory Note;

(c)  on installments of principal and interest portions, respectively, of its payments under the Promissory Note, in an amount equal to the principal and interest of Series 1993 Certificates which have been called by the Trustee for redemption prior to maturity and for the redemption of which sufficient amounts are on deposit in the Redemption Account in the Sinking Fund to the extent such amounts have not previously been credited against such portions of payments under the Promissory Note, and interest on such Series 1993 Certificates from and after the Redemption Date. Such credits shall be made against principal and interest portions of payments under the Promissory Note which would be used, but for such call for redemption, to pay principal and interest of such Series 1993 Certificates when due at maturity or upon mandatory sinking fund redemption pursuant to Article III of the Indenture for the Series 1993 Certificates; and

(d)  on installments of principal and interest portions, respectively, of its payments under the Promissory Note, in an amount equal to the principal amount of Series 1993 Certificates acquired by the Institution and delivered to the Trustee for cancellation or purchased by the Trustee and cancelled, and interest on such Series 1993 Certificates from

-11-

and after the date interest thereon has been paid prior to cancellation.  Such credits shall be made against principal and interest portions of payments under the Promissory Note which would be used, but for such cancellation, to pay principal and interest on the Series 1993 Certificates when due, and with respect to mandatory sinking fund requirements for the Series 1993 Certificates so cancelled against principal installments which would be used to pay Series 1993 Certificates in order of such mandatory sinking fund requirements.

Section 5.03.  [Intentionally Omitted]

Section 5.04.  [Intentionally Omitted.]

Section 5.05.  Debt Service Reserve Fund.  The Institution agrees to maintain in the Debt Service Reserve Fund either moneys or investments (or a combination thereof) with a Value at least equal to the Reserve Requirement, or a Reserve Fund Letter of Credit as provided in Section 506 of the Indenture.  In the event that funds on deposit in the Debt Service Reserve Fund are applied by the Trustee to the payment of principal of or interest on the Series 1993 Certificates, the Institution shall pay to the Trustee on each succeeding interest payment date, for deposit in the Debt Service Reserve Fund, an amount such that the aggregate of such payments over a period of 24 months from the date such payment is made by the Trustee shall be sufficient to provide moneys or investments in the Debt Service Reserve Fund with a Value equal to the Reserve Requirement.  In the event that the Trustee shall notify the Institution that the Value of money and investments in the Debt Service Reserve Fund as of the most recent date of valuation is less than the Reserve Requirement, the Institution shall pay to the Trustee on the next succeeding interest payment date, for deposit in the Debt Service Reserve Fund, an amount such that the Value of the moneys or investments in the Debt Service Reserve Fund, after giving effect to such payment, will equal the Reserve Requirement.

Section 5.06.  Obligations Unconditional.  The Institution's obligations under this Agreement and the Promissory Note are continuing, unconditional and absolute, and are independent of and separate from any obligations of the Authority, and shall not be diminished or deferred for any reason whatsoever, irrespective of the doing of any act or the omission thereof by the Authority, or the Trustee, irrespective of the existence of any other circumstances which might otherwise constitute a legal or equitable defense or discharge of the obligations of the Institution hereunder, including without limitation (i) any matters of abatement, setoff, counterclaim, recoupment, defense or other right the Institution may have against the Authority or the Trustee, suppliers of any portion of the Project or anyone for any reason whatsoever; (ii) compliance with specifications, conditions, design, operation, disrepair or fitness for use of, or any damage to or loss or destruction of any portion of the

Project, or any interruption or cessation in the use or possession thereof by the Institution, for any reason whatsoever; (iii) any insolvency, bankruptcy, reorganization or similar proceedings by or against the Institution; or (iv) any failure of any supplier to deliver any portion of the Project for any reason whatsoever except as otherwise provided herein. The Institution hereby waives, to the extent permitted by applicable law, any and all rights which it may now have or which at any time hereafter may be conferred upon it, by statute or otherwise, to terminate, cancel, quit or surrender this Agreement except in accordance with the express terms hereof. Each Loan Payment made by the Institution shall be final, and the Institution will not seek to recover all or any part of such payment from the Authority or the Trustee for any reason whatsoever. The parties to this Agreement intend that the payments made pursuant to the Promissory Note shall be paid to the Trustee on behalf of the Authority without diminution of any kind.

*     *     *     *     *

ARTICLE VI

OPTION TO PREPAY

Section 6.01.  Prepayment of Loan Obligation and Promissory Note.  (a)  At the option of the Institution and after giving at least forty-five (45) days written notice by certified or registered mail to the Authority and the Trustee, the Institution may prepay all or a portion of its Loan Obligation (and the may prepay all or a portion of its Loan Obligation (and the Promissory Note) by paying to the Trustee the then applicable optional redemption price as applicable under Article III of the Indenture pertaining to the Series 1993 Certificates to which such prepayment applies or by paying to the Trustee an amount (or securities meeting the requirements of Article XI of the Indenture), sufficient to defease all or any portion of the Series 1993 Certificates under the provisions of Article XI of the Indenture or to redeem any certificates otherwise subject to redemption under the Indenture.  The Institution shall give the Trustee not less than forty-five (45) days notice of any such prepayment, and if any Series 1993 Certificates are to be called for redemption in connection therewith, instructions to the Trustee to call such Series 1993 Certificates for redemption.

(b)  Upon prepayment of the full amount of the Loan Obligation and the Promissory Note as provided for in this Section 6.01, this Agreement shall terminate, except for the obligations and covenants provided in Sections 4.02, 4.03 and 8.04 (which will continue in perpetuity) of this Agreement.

*    *    *    *    *

ARTICLE VII

ASSIGNMENT

Section 7.01.  Assignment by Authority or Trustee.  This
Agreement and the Promissory Note, including the right to receive
payments required to be made by the Institution hereunder and
under the Promissory Note, and to compel or otherwise enforce
performance by the Institution, may be assigned in whole or in
part to one or more assignees or subassignees by the Authority or
the Trustee at any time subsequent to its execution without the
necessity of obtaining the consent of the Institution.  The
Institution expressly acknowledges that all right, title and
interest of the Authority in and to this Agreement and the
Promissory Note (excluding the Authority's right to
indemnification, fees and expenses) has been assigned to the
Trustee, as security for the Series 1993 Certificates as provided
in the Indenture, and that if any Event of Default shall occur,
the Trustee shall be entitled to act hereunder in the place and
stead of the Authority (other than with respect to matters to
which the Authority is entitled to consent) and may sell or
otherwise realize value on the collateral held to secure payment
of the Series 1993 Certificates.

The Institution hereby consents to such assignment and agrees
to make the payments due under the Promissory Note directly to the
Trustee or its agent and agrees that, as to the Trustee, its
obligation to make the payments required by the Promissory Note
and to observe and perform all other covenants, conditions and
agreements hereunder shall be absolute and unconditional,
irrespective of any rights of set-off, recoupment or counterclaim
it might otherwise have against the Authority, the Trustee, or any
manufacturer or supplier of any portion of the Project.  Prior to
prepayment in full of the Promissory Note, the Institution will
not suspend or discontinue any such payment or fail to observe and
perform any of its other covenants, conditions and agreements
hereunder, and will not terminate this Agreement for any cause,
including without limitation failure of the Institution to
complete the acquisition, construction and installation of the
Project, failure of consideration, failure of title to any part or
all of the Project, or commercial frustration of purpose, or any
damage to or destruction or condemnation of all or any part of the
Project, or any change in the tax or other laws of the United
States of America, the State or any political subdivision thereof,
or any failure of the Authority to observe and perform any
covenants, conditions and agreements, whether express or implied,
or any duty, liability or obligation arising out of or in
connection with this Agreement or the Indenture.  The Institution
may, however, after giving to the Authority and the Trustee ten
(10) days notice of its intention to do so, at its own expense and
in its own name, or in the name of the Authority, prosecute or
defend any action or proceeding or take any other action involving
third persons which the Institution deems necessary or desirable

-15-

in order to secure or protect any of its rights hereunder. Upon receipt by the Authority of an indemnity or indemnities from the Institution satisfactory in all respects to the Authority, the Authority shall reasonably cooperate with the Institution and will take all reasonable and necessary action, at the Institution's sole cost and expense, to effect the substitution of the Institution for the Authority in any such action or proceeding if the Institution shall so request. The Institution hereby approves the Indenture and consents to said assignment and appointment.

*   *   *   *   *

ARTICLE VIII

LOAN DEFAULTS AND REMEDIES

Section 8.01. _Loan Defaults Defined._ If any of the following events occurs, it is hereby defined as and declared to be and to constitute a "Loan Default":

(a)  failure by the Institution to pay any Loan Payment or other payment required to be paid hereunder or under the Promissory Note on or before the date on which such Loan Payment is due and payable;

(b)  failure by the Institution to observe and perform any covenant, condition or agreement on its part to be observed or performed under this Agreement other than the failure referred to in Section 8.01(a) hereof for a period of thirty (30) days after written notice specifying such failure and requesting that it be remedied, is given to the Institution by the Authority or the Trustee, unless the Authority and the Trustee shall agree in writing to an extension of such time prior to its expiration; provided, however, that if the failure stated in the notice is correctable but cannot be corrected within the applicable period, no Loan Default shall be deemed to have occurred or to exist if, and so long as, in the Institution shall commence such observance or performance within such 30-day period and shall diligently and continuously prosecute the same to completion.  The Authority and the Trustee will not unreasonably withhold their consent to an extension of such time if corrective action is instituted by the Institution within the applicable period and diligently pursued until such failure is corrected;

(c)  the filing by the Institution of a petition seeking relief for itself under Title 11 of the United States Code, as now constituted or hereafter amended, or the filing by the Institution of an answer consenting to, admitting the material allegations of or otherwise not controverting, or the failure of the Institution to timely controvert, a petition filed against it seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or the filing of such petition or answer by the Institution or the failure of the Institution to timely controvert such a petition, with respect to relief under the provisions of any other now existing or future applicable bankruptcy, insolvency or other similar law of the United States of America or any state thereof;

(d)  the entry of an order for relief, which is not stayed, against the Institution under Title 11 of the United States Code, as now constituted or hereafter amended, or the entry of an order, judgment or decree by operation of law or

-17-

by a court having jurisdiction, which is not stayed, adjudging the Institution a bankrupt or insolvent under, or ordering relief against the Institution under, or approving as properly filed a petition seeking relief against the Institution under, the provisions of any other now existing or future applicable bankruptcy or insolvency or other similar law of the United States of America or any state thereof, or appointing a receiver, liquidator, assignee, sequestrator, trustee or custodian of the Institution or of all or any substantial portion of the property of the Institution, or ordering the reorganization, winding up or liquidation of the affairs of the Institution, or the expiration of sixty (60) days after the filing of any involuntary petition against the Institution seeking any of the relief specified in this Section without the petition being dismissed prior to that time;

(e)  an event of default shall occur under the Indenture; or

(f)  a default under the Master Indenture shall have occurred, which default is not cured or waived and extends beyond any period of grace with respect thereto.

The foregoing provision (b) of this Section 8.01 is subject to the following limitation: if by reason of _force majeure_, the Institution is unable in whole or in part to carry out the agreements on its part herein contained, the Institution shall not be deemed in default during the continuance of such inability. The term _"force majeure"_ as used herein shall mean, without limitation, the following: acts of God; strikes, lockouts or other industrial disturbances; acts of public enemies; orders or restraints of any kind of the government of the United States of America or of the State or any of their departments, agencies or officials, or any civil or military authority; insurrections; riots; landslides; earthquakes; fires; storms; droughts; floods; explosions; or breakage or accident to machinery, transmission pipes or canals.

Section 8.02.  _Notice of Default._  The Institution agrees to give the Trustee, the Master Trustee and the Authority, promptly upon its becoming aware of the existence thereof, written notice of (i) any action referred to in Section 8.01(c) or 8.01(d) filed by or against the Institution or (ii) the occurrence of any other event or condition which constitutes a Default or a Loan Default.

Section 8.03.  _Remedies._  Whenever any Loan Default shall have occurred and be continuing, the Authority and the Trustee shall, in addition to any other remedies provided herein or by law, have the right, at its or their option

-18-

without any further demand or notice, to take one or any combination of the following remedial steps:

> (a)  declare all amounts due under the Promissory Note to be immediately due and payable, and upon notice to the Institution the same shall become immediately due and payable without further notice or demand; or

> (b)  take whatever other action at law or in equity may appear necessary or desirable to collect the amounts then due and thereafter to become due hereunder or to enforce any other rights of the Trustee or the Authority hereunder or as the owner of an Obligation issued under the Master Indenture.

Section 8.04.  <u>Attorney's Fees and Other Expenses.</u>  The Institution on demand shall pay to the Authority or the Trustee the actual and reasonable fees and expenses of attorneys and other reasonable expenses incurred by either of them in connection with any Loan Default, including, without limitation, fees and expenses incurred in the collection of amounts due under the Promissory Note or any other sum due or the enforcement of performance of any other obligations of the Institution under this Agreement.

Section 8.05.  <u>Application of Moneys.</u>  Any moneys collected by the Authority or the Trustee pursuant to Section 8.03 hereof shall be applied (a) <u>first,</u> to pay any attorney's fees or other expenses owed by the Institution pursuant to Section 8.04 hereof, (b) <u>second,</u> to pay interest and penalties due on the Loan Obligation, (c) <u>third,</u> to pay principal due on the Loan Obligation, (d) <u>fourth,</u> to pay any other amounts due hereunder, and (e) <u>fifth,</u> to pay interest and principal on the Loan Obligation and other amounts payable hereunder but which are not due, as they become due (in the same order, as to amounts which come due simultaneously, as in (a) through (e) in this Section 8.05).

Section 8.06.  <u>No Remedy Exclusive; Waiver; Notice.</u>  No remedy herein conferred upon or reserved to the Authority or the Trustee is intended to be exclusive, and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or now or hereafter existing at law or in equity.  No delay or omission to exercise any right, remedy or power accruing upon any Default shall impair any such right, remedy or power or shall be construed to be a waiver thereof, but any such right, remedy or power may be exercised from time to time and as often as may be deemed expedient.  In order to entitle the Authority or the Trustee to exercise any remedy reserved to it or them in this Article VIII, neither the Trustee nor the Authority shall be required to give any notice, other than such notice as may be expressly required in this Article VIII.

*    *    *    *    *

ARTICLE IX

MISCELLANEOUS

Section 9.01. Notices. All notices, certificates or other communications hereunder shall be sufficiently given and shall be deemed given when hand delivered or mailed by registered or certified mail, postage prepaid, to the following parties at the following addresses:

Institution:        South Fulton Medical Center, Inc.
                    1170 Cleveland Avenue
                    East Point, Georgia  30344
                    Attention: President and Chief Executive
                               Officer

Authority:          Tri-City Hospital Authority
                    c/o South Fulton Medical Center
                    East Point, Georgia  30344
                    Attention: Chairman

Trustee and
Master
Trustee:            Bank South, N.A.
                    55 Marietta Street
                    Atlanta, Georgia  30303
                    Attention: Corporate Trust Department, MC47

Any of the parties may, by notice in writing given to the others, designate any further or different addresses to which subsequent notices, certificates or other communications shall be sent.

Section 9.02. Binding Effect. This Agreement shall inure to the benefit of and shall be binding upon the Authority and the Institution and their respective successors and assigns.

Section 9.03. Severability. If any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

Section 9.04. Amendments, Changes and Modifications. This Agreement may not be amended by the Authority and the Institution unless such amendment shall have been consented to in writing by the Trustee.

Section 9.05. Counterparts. This Agreement may be simultaneously executed in several counterparts, each of which shall be an original but all of which shall constitute but one and the same instrument.

-20-

Section 9.06.   <u>Applicable Law.</u>   This Agreement shall be governed by and construed in accordance with the laws of the State.

Section 9.07.   <u>Consents and Approvals.</u>   Whenever the written consent or approval of the Authority shall be required under the provisions of this Agreement, such consent or approval may be given by the Chairman or Vice-Chairman of the Authority unless otherwise provided by law or by rules or regulations of the Authority.

Section 9.08.   <u>Captions.</u>   The captions or headings in this Agreement are for convenience only and in no way define, limit or describe the scope or intent of any provisions or sections of this Agreement.

Section 9.09.   <u>No Pecuniary Liability of Authority.</u>   No provision, covenant, or agreement contained in this Agreement, or any obligation herein imposed upon the Authority, or the breach thereof, shall constitute an indebtedness or liability of the State or any political subdivision of the State or any public corporation or governmental agency existing under the laws thereof, including, without limitation, the Authority.  In making the agreements, provisions and covenants set forth in this Agreement, the Authority has not obligated itself except with respect to the application of the revenues, income and other property as derived herefrom, as hereinabove provided (other than the fees and expenses of the Authority and amounts derived from the indemnity provided pursuant to Section 4.03).

Section 9.10.   <u>Payments Due on Holidays.</u>   If the date for making any payment or the last date for performance of any act or the exercise of any right, as provided in this Agreement, shall be a legal holiday or a day on which banking institutions in the State are authorized by law to remain closed, such payments may be made or act performed or right exercised on the next succeeding day not a legal holiday or a day on which such banking institutions are authorized by law to remain closed with the same force and effect as if done on the nominal date provided in this Agreement.

Section 9.11.   <u>Certificateholders' Benefit: Right of Others To Perform the Institution's Covenants.</u>   All covenants, agreements and representations on the part of the Institution and the Authority, as set forth in this Agreement, are hereby declared to be for the benefit of the registered owners from time to time of the Series 1993 Certificates, the Trustee, and the indemnified parties listed in Section 4.03 hereof to the extent expressly provided herein, each and all of whom are intended to be third-party beneficiaries of this Agreement. The Institution covenants and agrees to do all things within its power in order to comply with and to enable the Authority to comply with all requirements and to fulfill and to enable the Authority to fulfill all covenants of the Indenture.

-21-

If the Institution shall fail to make any payment or perform any act required to be performed hereunder, then and in each such case the Authority or the Trustee may (but shall not be obligated to) remedy such default for the account of the Institution and make advances for that purpose. No such performance or advance shall operate to refinance the obligations of the Institution and any sums so advanced by the Authority or the Trustee shall be immediately due from the Institution to the party advancing the same (who may immediately take any action available at law or in equity to enforce repayment of the same) and shall bear interest at the rate of interest on the final maturity of the Series 1993 Certificates from the date of the advance until repaid. The Authority or the Trustee shall have the right to enter the Medical Center in order to effectuate the purposes of this Section.

Section 9.12. <u>Reliance by Authority</u>. Anything in this Agreement to the contrary notwithstanding, the Institution agrees that the Authority may rely conclusively on the truth and accuracy of any certificate, opinion, notice, representation or instrument made or provided by the Institution in order to establish the existence of any fact or statement of affairs solely within the knowledge of the Institution, and which is required to be noticed, represented or certified by the Authority hereunder or in connection with any filings, representations or certifications required to be made by the Authority in connection with the issuance and delivery of the Series 1993 Certificates.

Section 9.13. <u>Disclaimer of Representations</u>. The Authority makes no representation as to the financial position or business condition of the Institution and does not represent or warrant as to any of the statements, materials (financial or otherwise), representations or certifications furnished or to be made and furnished by the Institution in connection with the sale of the Series 1993 Certificates, or as to the correctness, completeness or accuracy of such statements.

IN WITNESS WHEREOF, the Authority has executed this Agreement with its seal hereunto affixed and attested by its duly authorized officers and the Institution has caused this Agreement to be executed in its corporate name with its corporate seal hereunto affixed and attested by its duly authorized officers, all as of the date first above written.

TRI-CITY HOSPITAL AUTHORITY

(SEAL)

Attest:                                      By: _____

                                             Title: Chairman

By: _____

    Title: Secretary

-23-

<u>EXHIBIT A</u>

DESCRIPTION OF PROJECT

The Project consists of certain future capital improvements to and equipment purchases for the Medical Center not requiring regulatory approval through the year 1995.  The Institution's administrative staff has planned and approved the following equipment purchases and capital improvements which it expects to finance with the portion of the proceeds of the Series 1993 Certificates deposited to the Construction Fund, including investment earnings thereon:

| <u>Year</u> | <u>Description</u> | Estimated <u>  Cost  </u> |
|------|-------------|----------------|
| 1993/94 | Upgrade Central Corridor | $   630,000 |
| 1993/94 | Rehabilitation Unit Expansion | 490,000 |
| 1993/94 | Upgrade Patient Room Decor | 275,000 |
| 1993/94 | Other Facility Renovations | 1,000,000 |
| 1993/94 | Nuclear Medicine Camera | 450,000 |
| 1993/94 | Radiology Information System | 400,000 |
| 1993/94 | Patient Beds | 110,000 |
| 1994/95 | Corridor Renovation - 2nd and 3rd floors | 1,000,000 |
| 1994/95 | Patient Rooms - Remodeling | 500,000 |
| 1994/95 | Nursery Expansion | 400,000 |
| 1994/95 | Labor and Delivery Expansion | 500,000 |
| 1994/95 | Operating Room Renovation and Expansion | 470,000 |
|  | TOTAL | $6,225,000 |

In addition, approximately $11,000,000 of the proceeds of the Series 1993 Certificates will be used by the Institution to repay a loan made March 2, 1992 by First Union National Bank of Georgia, Atlanta, Georgia, to the Institution, the proceeds of which were used to reimburse itself for routine capital expenditures made by the Institution since July 1, 1988 from its own internally generated funds.

A-1



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

## PROMISSORY NOTE

THIS NOTE HAS NOT BEEN REGISTERED UNDER
(I) THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED,
(II) THE GEORGIA SECURITIES ACT OF 1973, AS AMENDED, OR
(III) UNDER ANY OTHER STATE SECURITIES LAW


THIS NOTE IS NON-TRANSFERABLE EXCEPT AS WILL BE REQUIRED TO
EFFECT ANY TRANSFER TO ANY SUCCESSOR TRUSTEE, UNDER THE TRUST
INDENTURE DATED AS OF NOVEMBER 1, 1993, BETWEEN TRI-CITY
HOSPITAL AUTHORITY AND TRUSTEE, AS TRUSTEE, AS IT MAY BE
SUPPLEMENTED HEREAFTER.

No. 1993                                          $39,140,000


KNOW ALL MEN BY THESE PRESENTS that SOUTH FULTON MEDICAL
CENTER, INC., a Georgia nonprofit corporation (the "Institution"),
for value received hereby acknowledges itself obligated to, and
promises to pay to Bank South, N.A., as trustee, or its assignee,
the principal sum of $39,140,000 and to pay interest and
redemption premium (if any) thereon as follows:

(a)  on or before January 20, 1994, and on or before the
20th day of each month thereafter, an amount equal to
one-sixth (1/6th) of the interest which is due and payable on
the "Series 1993 Certificates" (as hereinafter defined) on
the next succeeding July 1 or January 1 (each an "interest
payment date"), as the case may be;

(b)  (i) on or before January 20, 1994, and on or before
the 20th day of each month thereafter to and including
June 20, 1994, an amount equal to one-sixth (1/6th) of the
principal which is due and payable on the Series 1993
Certificates on July 1, 1994, and (ii) on or before July 20,
1994, and on or before the 20th day of each month thereafter,
an amount equal to one-twelfth (1/12th) of the principal, if
any, which is due and payable on the Series 1993 Certificates
on the next succeeding July 1;

(c)  (i)  on or before the 20th day of the 12th month
prior to the date on which the first of the mandatory sinking
fund requirements relating to the Series 1993 Certificates
becomes due as provided in Section 303 of the Trust Indenture
hereinafter referred to and continuing on or before the 20th
day of each month thereafter, an amount equal to one-twelfth

[-1-]

IN WITNESS WHEREOF, the Institution has caused this Note to be executed and attested in its name under seal by its duly authorized officers this 22nd day of December, 1993.

(SEAL)                              SOUTH FULTON MEDICAL CENTER, INC.


ATTEST:                            By: _____
                                       Title:


By: _____
    Title:

## CERTIFICATE OF AUTHENTICATION

The undersigned Master Trustee hereby certifies that this Note No. 1993 is one of the Obligations described in the within mentioned Master Trust Indenture.

Date of Authentication: 12-22-93

BANK SOUTH, N.A., as Master Trustee

By: _Bronwyn B. Fowlkes_
    **Authorized Officer**

<u>EXHIBIT A</u>

[FORM OF PROMISSORY NOTE]

THIS NOTE HAS NOT BEEN REGISTERED UNDER
(I) THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED,
(II) THE GEORGIA SECURITIES ACT OF 1973, AS AMENDED, OR
(III) UNDER ANY OTHER STATE SECURITIES LAW


THIS NOTE IS NON-TRANSFERABLE EXCEPT AS WILL BE REQUIRED TO
EFFECT ANY TRANSFER TO ANY SUCCESSOR TRUSTEE, UNDER THE TRUST
INDENTURE DATED AS OF NOVEMBER 1, 1993, BETWEEN TRI-CITY
HOSPITAL AUTHORITY AND TRUSTEE, AS TRUSTEE, AS IT MAY BE
SUPPLEMENTED HEREAFTER.

No. 1993                                              $39,140,000


    KNOW ALL MEN BY THESE PRESENTS that SOUTH FULTON MEDICAL
CENTER, INC., a Georgia nonprofit corporation (the "Institution"),
for value received hereby acknowledges itself obligated to, and
promises to pay to Bank South, N.A., as trustee, or its assignee,
the principal sum of $39,140,000 and to pay interest and
redemption premium (if any) thereon as follows:

        (a)  on or before January 20, 1994, and on or before the
    20th day of each month thereafter, an amount equal to
    one-sixth (1/6th) of the interest which is due and payable on
    the "Series 1993 Certificates" (as hereinafter defined) on
    the next succeeding July 1 or January 1 (each an "interest
    payment date"), as the case may be;

        (b)  (i) on or before January 20, 1994, and on or before
    the 20th day of each month thereafter to and including
    June 20, 1994, an amount equal to one-sixth (1/6th) of the
    principal which is due and payable on the Series 1993
    Certificates on July 1, 1994, and (ii) on or before July 20,
    1994, and on or before the 20th day of each month thereafter,
    an amount equal to one-twelfth (1/12th) of the principal, if
    any, which is due and payable on the Series 1993 Certificates
    on the next succeeding July 1;

        (c)  (i)  on or before the 20th day of the 12th month
    prior to the date on which the first of the mandatory sinking
    fund requirements relating to the Series 1993 Certificates
    becomes due as provided in Section 303 of the Trust Indenture
    hereinafter referred to and continuing on or before the 20th
    day of each month thereafter, an amount equal to one-twelfth
    of the mandatory sinking fund redemption requirement relating
    to the Series 1993 Certificates next coming due, and (ii) on

A-1

or before the due date therefor, any amount which may from time to time be required to enable the Trustee to pay the principal, redemption premium (if any) and interest on the Series 1993 Certificates as and when the Series 1993 Certificates are called for redemption or become due because of the acceleration of the Series 1993 Certificates pursuant to such Trust Indenture; and

(d)   on or before the due date therefor, any amount which may from time to time be required to be deposited into the Debt Service Reserve Fund created in the Trust Indenture pursuant to Section 5.05 of the Loan Agreement hereinafter referred to which amount shall be equal to the pro rata portion of the Reserve Requirement allocable to the Series 1993 Certificates.

Principal hereof, interest hereon and any applicable redemption premium, are payable in any coin or currency of the United States of America which on the payment date is legal tender for the payment of public and private debts.

This Note is issued pursuant to the Master Trust Indenture, dated as of November 1, 1993, as supplemented by the First Supplemental Master Trust Indenture, dated as of November 1, 1993 (as supplemented, the "Master Indenture"), between and among the Institution, South Fulton Medical Center, Inc., South Fulton Medical Arts Center, Inc., South Atlanta Diagnostic Cardiology, Inc., South Fulton Health Care Center, Inc. and Georgia International Health Alliance, Inc. (collectively, the "Initial Obligated Group") and Bank South, N.A., as master trustee (the "Master Trustee"), for the purpose of evidencing and securing the obligations of the Institution under the Loan Agreement, dated as of November 1, 1993 (the "Loan Agreement"), between Tri-City Hospital Authority (the "Authority") and the Institution.   The Loan Agreement provides for the loan by the Authority to the Institution of the proceeds of the issuance and sale of revenue anticipation certificates of the Authority in the aggregate principal amount of $39,140,000, designated "Tri-City Hospital Authority Revenue Certificates, Series 1993" (the "Series 1993 Certificates").   The Series 1993 Certificates are being issued under and pursuant to the Constitution and laws of the State of Georgia, and particularly the Georgia Hospital Authorities Law (O.C.G.A. Section 31-7-70, et seq.), as amended, and the Trust Indenture, dated as of November 1, 1993 (the "Indenture"), between the Authority and Bank South, N.A., as trustee (the "Trustee"), to provide funds to (i) finance the cost of the acquisition by the Institution of the Medical Center (as defined in the Indenture) from the Authority, (ii) finance the costs of acquiring, constructing and installing certain additions, improvements and renovations to the Medical Center, and the cost of reimbursing the Institution for the cost of certain improvements heretofore made by the Institution to the Medical Center, (iii) fund the Debt Service Reserve Fund (as defined in the Indenture) in an amount equal to the Reserve Requirement (as defined in the Indenture) and

A-2

(iv) pay all or a portion of the cost of issuing the Series 1993 Certificates.

Certain capitalized words and terms used in this Note and not defined herein shall have the respective meanings given such words and terms in the Master Indenture and the Indenture.

Notwithstanding any schedule of payments to be made on this Note set forth herein, the Institution agrees to make payments upon this Note at the times and in the amounts equal to all amounts to be paid on the Series 1993 Certificates from time to time Outstanding under the Indenture as the same shall become due, whether at maturity, upon redemption, by declaration of acceleration or otherwise.

The Institution shall receive credit for payment on this Note, in addition to any credits resulting from payment or prepayment from other sources, as provided in Section 5.02 of the Loan Agreement.

This Note is subject to prepayment as provided in the Loan Agreement.

The principal hereof, premium, if any, and interest hereon shall be payable in immediately available funds by depositing the same with the registered owner hereof at or prior to the opening of business on the date the same shall become due and payable or the next succeeding business day if such date is a day on which banking institutions in the State of Georgia or in the city in which the principal corporate trust office of the Trustee is located are authorized by law to remain closed.

Any payment due hereon which shall not be paid when due shall bear interest at the lesser of the highest rate of interest borne on any Series 1993 Certificate or the highest rate permitted by law from the date such payment is due until the payment is made.

Upon the occurrence of certain "Events of Default" (as defined in the Master Indenture), the principal of this Note then Outstanding may be declared, and thereupon shall become, due and payable as provided in the Master Indenture.  The occurrence of a "Loan Default" pursuant to the Loan Agreement will constitute an Event of Default pursuant to the Master Indenture.

This Note may only be registered as transferred to a successor trustee under the Indenture.  Such registration of transfer shall be without charge to the holder hereof, and any taxes or other governmental charges required to be paid with respect to the same shall be paid by the Institution.  Upon any such registration of transfer, the Institution shall execute and deliver in exchange for this Note a new registered Note, registered in the name of the transferee.

This Note is issuable only as a registered note without coupons in the principal amount equal to the principal amount of Series 1993 Certificates Outstanding.  Notwithstanding any provisions of the Master Indenture to the contrary, this Note shall not be subject to exchange for a Note or Notes bearing coupons or for Notes of any other denomination.

Ownership of this Note shall be registered on the register to be maintained for that purpose at the Principal Office of the Master Trustee.  Prior to the due presentment hereof for registration of transfer, the Institution may deem and treat the person in whose name this Note is registered as the absolute owner hereof for all purposes and the Institution shall not be affected by any notice to the contrary.  Payment of either principal or interest on this Note shall be made only as provided in the Loan Agreement to or upon the order of the Trustee, or if subsequently transferred, to the registered holder hereof.  All payments made to the Trustee or any such registered owner hereof shall be valid, and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for moneys payable on this Note.

No covenant or agreement contained in this Note shall be deemed to be a covenant or agreement of any officer, agent or employee of the Institution in his individual capacity, and no officer, agent or employee of the Institution shall be liable personally on this Note or be subject to any personal liability or accountability by reason of the issuance of this Note.

This Note shall not be entitled to any benefit under the Master Indenture, or be valid or become obligatory for any purpose, until this Note shall have been authenticated by execution by the Master Trustee of the Certificate of Authentication inscribed hereon.

The Institution hereby waives demand, protest, notice of demand, protest and nonpayment and any other notice, required by law relative hereto, except to the extent as otherwise may be provided for in the Loan Agreement or the Master Indenture.

The Institution agrees, in the event that this Note or any portion hereof is collected by law or through an attorney at law, to pay all reasonable costs of collection, including, without limitation, reasonable attorney's fees, to the extent actually incurred.

A-4

IN WITNESS WHEREOF, the Institution has caused this Note to be executed and attested in its name under seal by its duly authorized officers this 22nd day of December, 1993.


(SEAL)                           SOUTH FULTON MEDICAL CENTER, INC.


ATTEST:                   By:_____
                               Title:


By:_____
      Title:

A-5

## CERTIFICATE OF AUTHENTICATION

The undersigned Master Trustee hereby certifies that this Note No. 1993 is one of the Obligations described in the within mentioned Master Trust Indenture.

Date of Authentication:

BANK SOUTH, N.A., as Master Trustee

By:_____
         Authorized Officer

A-6



# EXHIBIT / ATTACHMENT

## 5

(To be scanned in place of tab)

EXHIBIT 0

pursuant to the Uniform Commercial Code (For Filing Officer Only)

| Debtor(s) (Last Name First) and address(es) | 2 Secured Party(ies) and address(es) | File Number: |
|---|---|---|
| TRI-CITY HOSPITAL AUTHORITY | BANK SOUTH, N.A. | Time: |
| South Fulton Medical Center | 55 Marietta Street | Date: 803383 |
| 840 Cleveland Avenue | Atlanta, Georgia 30303 | County, Georgia, Office of |
| East Point, Georgia 30344 | GEORGIA FULTON COUNTY | Clerk of Superior Court. |
| | | 3 Maturity date (if any): 7-1-2016 |

| Assignee of Secured Party (if any): | 89 DEC 22 PM 1:00 | |
|---|---|---|
| (Name and address) | | |

Check box and complete where applicable:

☐ Crops are covered. Index in real estate records. Land described in block 4.

☐ Fixtures are covered. Index in real estate records. Land described in block 4.

☐ is the record (owner) (lessee) of the land involved.

☐ Products are also covered.

No. of additional sheets presented: **1**

4. This financing statement covers the following types (or items) of property.

See Attached.

Proceeds of the above described property include, without limitation and to the extent not described above, the following types of property acquired with cash proceeds: accounts, chattel paper, general intangibles, documents, inventory, equipment, fixtures, farm products and consumer goods.

| TRI-CITY HOSPITAL AUTHORITY | BANK SOUTH, N.A. |
|---|---|
| _(signature)_, Chairman | By: _(signature)_, Vice President |
| Signature(s) of Debtor(s) | Signature(s) of Secured Party(ies) |

FILE COPY - SECURED PARTY (2)

Uniform Commercial Code—Form may be ordered from Ivan Allen Company, Box 1712, Atlanta 1, Georgia

## ATTACHMENT "A" TO FINANCING STATEMENT

DEBTOR:                   TRI-CITY HOSPITAL AUTHORITY
                               Attention: Chairman
                               c/o South Fulton Medical Center
                               1170 Cleveland Avenue
                               East Point, Georgia 30344

SECURED PARTY:         BANK SOUTH, N.A., as Trustee
                               Attention: Corporate Trust Department, MC47
                               55 Marietta Street
                               Atlanta, Georgia  30303

(4)  This Financing Statement covers the following types (or items) of property:  all right, title and interest of the Debtor in, to and under:

      (a)  the Loan Agreement (except certain notice, indemnification and reimbursement rights reserved by the Debtor), dated as of November 1, 1993 (the "Agreement"), between the Debtor, as lender, and South Fulton Medical Center, Inc., a Georgia nonprofit corporation (the "Borrower"), as borrower;

      (b)  the promissory note of the Borrower denominated as the "1993 Master Note," dated December 22, 1993, executed by the Borrower and payable to the Secured Party (the "Note"), including all payments to be made thereunder; and

      (c)  all moneys and securities held by the Secured Party in any and all of the funds and accounts created in the Trust Indenture, dated as of November 1, 1993 (the "Indenture"), between the Debtor and the Secured Party, relating to $39,140,000 in original aggregate principal amount of Tri-City Hospital Authority Revenue Certificates, Series 1993; and

The final maturity date of the indebtedness which is the subject of this financing statement is July 1, 2016.

FINANCING STATEMENT is presented to a filing officer h          Pursuant to the Uniform Commercial Code.

| 1. Debtor(s) Name and Mailing Address: | 2. Secured Party(ies) Name and Address: | 3.   For Filing Officer Only) |
|---|---|---|
| South Fulton Medical Arts Center, Inc.<br>1170 Cleveland Avenue<br>East Point, Georgia 30344 | Bank South, N.A.<br>55 Marietta Street<br>Atlanta, Georgia 30303 | File Number:<br>Time:<br>Date:   803384<br>County, Georgia<br>Office of Clerk, Superior Court |

Name(s) of Secured Party(ies), if any, Name and Address:

GEORGIA, FULTON CO.
FILED AND RECORDED

93 DEC 22 PM

CLERK, SUPERIOR COURT

This Financing Statement covers the following types (or items) of property. (NOTE:

See Attached.

If applicable box is checked below, this financing statement is to be indexed in the real estate records as described in Item 6a.

☐ The crops listed herein are growing or to be grown on the real estate described herein.

☐ The goods listed herein are or are to become fixtures on the real estate described herein.

☐ The minerals or the like listed herein (including oil and gas) or accounts will be financed at the wellhead or minehead of the well or mine located on the real estate described herein.

The record owner or lessee of the real estate is

6a. Describe real estate applicable to item 6, if any:

☐ Check if products of the collateral are also covered.

This Statement is signed by the Secured Party instead of the Debtor to perfect a security interest in collateral (check where applicable, otherwise Debtor is required to sign and Secured Party is not required to sign)

☐ already subject to a security interest in another jurisdiction when it was brought into this State or when the debtor's location was changed to this State, or

☐ which is proceeds of the original collateral described above in which a security interest was perfected, or

☐ as to which the filing has lapsed, or

☐ acquired after a change of name, identity or corporate structure of debtor.

**IMPORTANT - COMPLETE THIS BOX**
Maturity Date   None

SOUTH FULTON MEDICAL ARTS CENTER, INC.

(Use whichever signature line is applicable)

Signature(s) of Debtor(s)          President          Signature(s) of Secured Party(ies)

FILE COPY-SECURED PARTY (IES)

## ATTACHMENT "A" TO FINANCING STATEMENT

DEBTORS:                SOUTH FULTON MEDICAL ARTS CENTER, INC.
                        Attention: President & Chief Executive Officer
                        c/o South Fulton Medical Center
                        1170 Cleveland Avenue
                        East Point, Georgia 30344


SECURED PARTY:          BANK SOUTH, N.A., as Master Trustee
                        Attention: Corporate Trust Department, MC47
                        55 Marietta Street
                        Atlanta, Georgia  30303

(4)  This Financing Statement covers the following types (or
     items) of property:  all right, title and interest of the
     Debtor in:

          (a)  all Gross Revenues (as hereinafter defined)
     and Pledged Shares (as hereinafter defined); and

          (b)  all moneys and securities held by the Secured
     Party in any and all of the funds and accounts created
     under the Master Trust Indenture, dated as of
     November 1, 1993 (the "Master Indenture"), between the
     Debtor, South Fulton Medical Center, Inc., South Fulton
     Medical Center Foundation, Inc., South Atlanta
     Diagnostic Cardiology, Inc., South Fulton Health Care
     Center, Inc. and Georgia International Health Alliance,
     Inc. (collectively, the "Debtors"), and the Secured
     Party, as Master Trustee.

          "Gross Revenues", as used herein, means all revenues,
     income, receipts, accounts receivable and money derived from
     the operation of the Property (as defined in the Master
     Indenture) or from the performance of management services,
     regardless of where such management services are performed,
     received in any period by the Debtors, including, but without
     limiting the generality of the foregoing, (a) proceeds
     derived from (i) insurance, except to the extent the use
     thereof is otherwise specifically required by any agreement
     or indenture, (ii) accounts receivable, (iii) securities and
     other investments, (iv) inventory and other tangible and
     intangible property, (v) hospital expense reimbursement or
     medical expense reimbursement for hospital functions or
     insurance programs or agreements, (vi) condemnation awards
     except to the extent that the use thereof is otherwise
     specifically required by any agreement or indenture, and
     (vii) contract and other rights and assets now or hereafter
     owned or held or possessed by or on behalf of the Debtors;
     (b) amounts earned on amounts deposited into the funds and
     accounts created under any Depositary Agreement (as defined
     in the Master Indenture) and (c) the revenues of any
     surviving, resulting or transferee entity provided for in the

Master Indenture; <u>provided</u>, however, there shall not be included in Gross Revenues (A) the proceeds of borrowing and interest earned or investment earnings thereon if and to the extent such interest or investment earnings is required to be excluded by the terms of the borrowing, (B) revenues, income, receipts and money received by any Debtor as agent for and on behalf of someone other than any Debtor and (C) donor restricted gifts, grants, bequests, donations or contributions to the Debtors for use in connection with the Property to the extent restricted by the donor thereof.

"Pledged Shares" shall mean 100% of the voting stock of any Restricted Affiliate (as defined in the Master Indenture) of any Debtor which is a stock corporation.

This FINANCING STATEMENT is presented to a filing off / filing pursuant to the Uniform Commercial Code.

Debtor(s) Name and Mailing Address:
South Fulton Medical Center, Inc.
1170 Cleveland Avenue
East Point, Georgia 30344

Secured Party(ies) Name and Address:
Bank South, N.A.
55 Marietta Street
Atlanta, Georgia 30303

For Filing Officer Only:
File Number:
Time:
Date:
**803385**
Office of Clerk, Superior Court
_____ County, Georgia

GEORGIA, FULTON COUNTY
FILED AND RECORDED

91 DEC 23  PM 1:00

JUNIUS ROY
CLERK, SUPERIOR COURT

Assignee of Secured Party(ies), if any, Name and Address:

This Financing Statement covers the following types (or items) of property (if collateral is crops, fixtures, minerals or the like, complete Item 5; proceeds derived from cash proceeds must be specifically described below.)

See Attached.

☐ an applicable box is checked below, this financing statement is to be indexed in the real estate records as described in Item 6a:
☐ The crops listed herein are growing or to be grown on the real estate described herein.
☐ The goods listed herein are or are to become fixtures on the real estate described herein.
☐ The minerals or the like listed herein (including oil and gas) or accounts will be financed at the wellhead or minehead of the well or mine located on the real estate described herein.

The record owner or lessee of the real estate is

6a.  Describe real estate applicable to Item 5, if any:

☐ Check if products of the collateral are also covered.

This Statement is signed by the Secured Party instead of the Debtor to perfect a security interest in collateral (check where applicable, otherwise Debtor is required to sign and Secured Party is not required to sign)
☐ already subject to a security interest in another jurisdiction when it was brought into this State or when the debtor's location was changed to this State, or
☐ which is proceeds of the original collateral described above in which a security interest was perfected, or
☐ as to which the filing has lapsed, or
☐ acquired after a change of name, identity or corporate structure of debtor.

IMPORTANT - COMPLETE THIS BOX
Maturity Date _____ None
If none state so

SOUTH FULTON MEDICAL CENTER, INC.

_____ , President          By _____
Signature(s) of Debtor(s)                     Signature(s) of Secured Party(ies)

**3** FILE COPY-SECURED PARTY(IES)

5-6

ATTACHMENT "A" TO FINANCING STATEMENT

DEBTORS:                SOUTH FULTON MEDICAL CENTER, INC.
                        Attention: President & Chief Executive Officer
                        c/o South Fulton Medical Center
                        1170 Cleveland Avenue
                        East Point, Georgia 30344

SECURED PARTY:          BANK SOUTH, N.A., as Master Trustee
                        Attention: Corporate Trust Department, MC47
                        55 Marietta Street
                        Atlanta, Georgia  30303

(4)  This Financing Statement covers the following types (or
     items) of property:  all right, title and interest of the
     Debtor in:

              (a)  all Gross Revenues (as hereinafter defined)
         and Pledged Shares (as hereinafter defined); and

              (b)  all moneys and securities held by the Secured
         Party in any and all of the funds and accounts created
         under the Master Trust Indenture, dated as of
         November 1, 1993 (the "Master Indenture"), between the
         Debtor, South Fulton Medical Center Foundation, Inc.,
         South Fulton Medical Arts Center, Inc., South Atlanta
         Diagnostic Cardiology, Inc., South Fulton Health Care
         Center, Inc. and Georgia International Health Alliance,
         Inc. (collectively, the "Debtors"), and the Secured
         Party, as Master Trustee.

         "Gross Revenues", as used herein, means all revenues,
    income, receipts, accounts receivable and money derived from
    the operation of the Property (as defined in the Master
    Indenture) or from the performance of management services,
    regardless of where such management services are performed,
    received in any period by the Debtors, including, but without
    limiting the generality of the foregoing, (a) proceeds
    derived from (i) insurance, except to the extent the use
    thereof is otherwise specifically required by any agreement
    or indenture, (ii) accounts receivable, (iii) securities and
    other investments, (iv) inventory and other tangible and
    intangible property, (v) hospital expense reimbursement or
    medical expense reimbursement for hospital functions or
    insurance programs or agreements, (vi) condemnation awards
    except to the extent that the use thereof is otherwise
    specifically required by any agreement or indenture, and
    (vii) contract and other rights and assets now or hereafter
    owned or held or possessed by or on behalf of the Debtors;
    (b) amounts earned on amounts deposited into the funds and
    accounts created under any Depositary Agreement (as defined
    in the Master Indenture) and (c) the revenues of any
    surviving, resulting or transferee entity provided for in the

Master Indenture; provided, however, there shall not be
included in Gross Revenues (A) the proceeds of borrowing and
interest earned or investment earnings thereon if and to the
extent such interest or investment earnings is required to be
excluded by the terms of the borrowing, (B) revenues, income,
receipts and money received by any Debtor as agent for and on
behalf of someone other than any Debtor and (C) donor
restricted gifts, grants, bequests, donations or
contributions to the Debtors for use in connection with the
Property to the extent restricted by the donor thereof.

     "Pledged Shares" shall mean 100% of the voting stock of
any Restricted Affiliate (as defined in the Master Indenture)
of any Debtor which is a stock corporation.

South Fulton Medical Center
Foundation, Inc.
770 Cleveland Avenue
East Point, Georgia 30344

South, N.W.
Marietta Street
Atlanta, Georgia 30344

GEORGIA FULTON COUNTY
FILED AND RECORDED

93 DEC 22 PH 1:00

CLERK, SUPERIOR COURT

803386

**See Attached.**

The record owner or lessee of the real estate is

Describe real estate applicable to Item 5, if any:

IMPORTANT- COMPLETE THIS BOX
Maturity Date _____ None
If none state so

SOUTH FULTON MEDICAL CENTER FOUNDATION, INC.

_____ , President

By _____

FILE COPY-SECURED PARTY(IES)

5-9

## ATTACHMENT "A" TO FINANCING STATEMENT

DEBTORS:             SOUTH FULTON MEDICAL CENTER FOUNDATION, INC.
                        Attention: President & Chief Executive Officer
                        c/o South Fulton Medical Center
                        1170 Cleveland Avenue
                        East Point, Georgia 30344

SECURED PARTY:       BANK SOUTH, N.A., as Master Trustee
                        Attention: Corporate Trust Department, MC47
                        55 Marietta Street
                        Atlanta, Georgia  30303

(4)   This Financing Statement covers the following types (or items) of property:  all right, title and interest of the Debtor in:

          (a)  all Gross Revenues (as hereinafter defined) and Pledged Shares (as hereinafter defined); and

          (b)  all moneys and securities held by the Secured Party in any and all of the funds and accounts created under the Master Trust Indenture, dated as of November 1, 1993 (the "Master Indenture"), between the Debtor, South Fulton Medical Center, Inc., South Fulton Medical Arts Center, Inc., South Atlanta Diagnostic Cardiology, Inc., South Fulton Health Care Center, Inc. and Georgia International Health Alliance, Inc. (collectively, the "Debtors"), and the Secured Party, as Master Trustee.

     "Gross Revenues", as used herein, means all revenues, income, receipts, accounts receivable and money derived from the operation of the Property (as defined in the Master Indenture) or from the performance of management services, regardless of where such management services are performed, received in any period by the Debtors, including, but without limiting the generality of the foregoing, (a) proceeds derived from (i) insurance, except to the extent the use thereof is otherwise specifically required by any agreement or indenture, (ii) accounts receivable, (iii) securities and other investments, (iv) inventory and other tangible and intangible property, (v) hospital expense reimbursement or medical expense reimbursement for hospital functions or insurance programs or agreements, (vi) condemnation awards except to the extent that the use thereof is otherwise specifically required by any agreement or indenture, and (vii) contract and other rights and assets now or hereafter owned or held or possessed by or on behalf of the Debtors; (b) amounts earned on amounts deposited into the funds and accounts created under any Depositary Agreement (as defined in the Master Indenture) and (c) the revenues of any surviving, resulting or transferee entity provided for in the

Master Indenture; _provided_, however, there shall not be included in Gross Revenues (A) the proceeds of borrowing and interest earned or investment earnings thereon if and to the extent such interest or investment earnings is required to be excluded by the terms of the borrowing, (B) revenues, income, receipts and money received by any Debtor as agent for and on behalf of someone other than any Debtor and (C) donor restricted gifts, grants, bequests, donations or contributions to the Debtors for use in connection with the Property to the extent restricted by the donor thereof.

"Pledged Shares" shall mean 100% of the voting stock of any Restricted Affiliate (as defined in the Master Indenture) of any Debtor which is a stock corporation.

FINANCING STATEMENT

| | | Filing Officer Only |
|---|---|---|
| Debtor Name and Mailing Address: | Secured Party(ies) Name and Address: | File Number: **803387** |

Debtor Name and Mailing Address:

South Atlanta Diagnostic Cardiology, Inc.
770 Cleveland Avenue
East Point, Georgia 30344

Secured Party(ies) Name and Address:

Bank South, N.A.
55 Marietta Street
Atlanta, Georgia 30303

GEORGIA, FULTON COUNTY
FILED AND RECORDED

93 DEC 22 PM 4:00

JANITA ?
CLERK, SUPERIOR COURT

This Financing Statement covers the following types (or items) of property:

See Attached.

☐ Check if products of the collateral are also covered.

SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC.

_____    , President    By _____
Signature(s) of Debtor(s)                    Signature(s) of Secured Party(ies)

**FILE COPY-SECURED PARTY(IES)**

## ATTACHMENT "A" TO FINANCING STATEMENT

DEBTORS:                SOUTH ATLANTA DIAGNOSTIC CARDIOLOGY, INC.
                        Attention: President & Chief Executive Officer
                        c/o South Fulton Medical Center
                        1170 Cleveland Avenue
                        East Point, Georgia 30344

SECURED PARTY:          BANK SOUTH, N.A., as Master Trustee
                        Attention: Corporate Trust Department, MC47
                        55 Marietta Street
                        Atlanta, Georgia  30303

(4)   This Financing Statement covers the following types (or
      items) of property:  all right, title and interest of the
      Debtor in:

              (a)  all Gross Revenues (as hereinafter defined)
         and Pledged Shares (as hereinafter defined); and

              (b)  all moneys and securities held by the Secured
         Party in any and all of the funds and accounts created
         under the Master Trust Indenture, dated as of
         November 1, 1993 (the "Master Indenture"), between the
         Debtor, South Fulton Medical Center, Inc., South Fulton
         Medical Center Foundation, Inc., South Fulton Medical
         Arts Center, Inc., South Fulton Health Care Center, Inc.
         and Georgia International Health Alliance, Inc.
         (collectively, the "Debtors"), and the Secured Party, as
         Master Trustee.

         "Gross Revenues", as used herein, means all revenues,
    income, receipts, accounts receivable and money derived from
    the operation of the Property (as defined in the Master
    Indenture) or from the performance of management services,
    regardless of where such management services are performed,
    received in any period by the Debtors, including, but without
    limiting the generality of the foregoing, (a) proceeds
    derived from (i) insurance, except to the extent the use
    thereof is otherwise specifically required by any agreement
    or indenture, (ii) accounts receivable, (iii) securities and
    other investments, (iv) inventory and other tangible and
    intangible property, (v) hospital expense reimbursement or
    medical expense reimbursement for hospital functions or
    insurance programs or agreements, (vi) condemnation awards
    except to the extent that the use thereof is otherwise
    specifically required by any agreement or indenture, and
    (vii) contract and other rights and assets now or hereafter
    owned or held or possessed by or on behalf of the Debtors;
    (b) amounts earned on amounts deposited into the funds and
    accounts created under any Depositary Agreement (as defined
    in the Master Indenture) and (c) the revenues of any
    surviving, resulting or transferee entity provided for in the

Master Indenture; _provided_, however, there shall not be included in Gross Revenues (A) the proceeds of borrowing and interest earned or investment earnings thereon if and to the extent such interest or investment earnings is required to be excluded by the terms of the borrowing, (B) revenues, income, receipts and money received by any Debtor as agent for and on behalf of someone other than any Debtor and (C) donor restricted gifts, grants, bequests, donations or contributions to the Debtors for use in connection with the Property to the extent restricted by the donor thereof.

"Pledged Shares" shall mean 100% of the voting stock of any Restricted Affiliate (as defined in the Master Indenture) of any Debtor which is a stock corporation.

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

Debtor(s) Name and Mailing Address:

South Fulton Health Care Center, Inc.
500 Cleveland Avenue
East Point, Georgia 30344

Assignee of Secured Party(ies), if any, Name and Address:

Secured Party(ies) Name and Address:

Bank South, N.A.
55 Marietta Street
Atlanta, Georgia 30303

For Filing Officer (Date, Time, Number, and Filing Office):

**803388**

GEORGIA, FULTON COUNTY
FILED AND RECORDED

93 DEC 22 PM 00

CLERK, SUPERIOR COURT

CLERK, SUPERIOR COURT

This Financing Statement covers the following types (or items) of property:

See Attached.

SOUTH FULTON HEALTH CARE CENTER, INC.

_(signature)_
Signature(s) of Debtor(s)

President

By _(signature)_
Signature(s) of Secured Party(ies)

FILE COPY-SECURED PARTY(IES)

# ATTACHMENT "A" TO FINANCING STATEMENT

DEBTORS:                    SOUTH FULTON HEALTH CARE CENTER, INC.
                           Attention: President & Chief Executive Officer
                           c/o South Fulton Medical Center
                           1170 Cleveland Avenue
                           East Point, Georgia 30344

SECURED PARTY:             BANK SOUTH, N.A., as Master Trustee
                           Attention: Corporate Trust Department, MC47
                           55 Marietta Street
                           Atlanta, Georgia  30303

(4)   This Financing Statement covers the following types (or
      items) of property: all right, title and interest of the
      Debtor in:

            (a)  all Gross Revenues (as hereinafter defined)
      and Pledged Shares (as hereinafter defined); and

            (b)  all moneys and securities held by the Secured
      Party in any and all of the funds and accounts created
      under the Master Trust Indenture, dated as of
      November 1, 1993 (the "Master Indenture"), between the
      Debtor, South Fulton Medical Center, Inc., South Fulton
      Medical Center Foundation, Inc., South Fulton Medical
      Arts Center, Inc., South Atlanta Diagnostic Cardiology,
      Inc. and Georgia International Health Alliance, Inc.
      (collectively, the "Debtors"), and the Secured Party, as
      Master Trustee.

      "Gross Revenues", as used herein, means all revenues,
income, receipts, accounts receivable and money derived from
the operation of the Property (as defined in the Master
Indenture) or from the performance of management services,
regardless of where such management services are performed,
received in any period by the Debtors, including, but without
limiting the generality of the foregoing, (a) proceeds
derived from (i) insurance, except to the extent the use
thereof is otherwise specifically required by any agreement
or indenture, (ii) accounts receivable, (iii) securities and
other investments, (iv) inventory and other tangible and
intangible property, (v) hospital expense reimbursement or
medical expense reimbursement for hospital functions or
insurance programs or agreements, (vi) condemnation awards
except to the extent that the use thereof is otherwise
specifically required by any agreement or indenture, and
(vii) contract and other rights and assets now or hereafter
owned or held or possessed by or on behalf of the Debtors;
(b) amounts earned on amounts deposited into the funds and
accounts created under any Depositary Agreement (as defined
in the Master Indenture) and (c) the revenues of any
surviving, resulting or transferee entity provided for in the

Master Indenture; *provided*, however, there shall not be included in Gross Revenues (A) the proceeds of borrowing and interest earned or investment earnings thereon if and to the extent such interest or investment earnings is required to be excluded by the terms of the borrowing, (B) revenues, income, receipts and money received by any Debtor as agent for and on behalf of someone other than any Debtor and (C) donor restricted gifts, grants, bequests, donations or contributions to the Debtors for use in connection with the Property to the extent restricted by the donor thereof.

"Pledged Shares" shall mean 100% of the voting stock of any Restricted Affiliate (as defined in the Master Indenture) of any Debtor which is a stock corporation.

_____ STATEMENT is presented for filing _____

Bank South, N.A.
55 Marietta Street
Atlanta, Georgia 30303

_____ (For Filing Officer Only)

803389

Office of Clerk, Superior Court

See Attached.

IMPORTANT - COMPLETE THIS BOX

CCSTR INTERNATIONAL HEALTH ALLIANCE, INC.

President

FILE COPY-SECURED PARTY (IES)

## ATTACHMENT "A" TO FINANCING STATEMENT

DEBTORS:                GEORGIA INTERNATIONAL HEALTH ALLIANCE, INC.
                        Attention: President & Chief Executive Officer
                        c/o South Fulton Medical Center
                        1170 Cleveland Avenue
                        East Point, Georgia 30344

SECURED PARTY:          BANK SOUTH, N.A., as Master Trustee
                        Attention: Corporate Trust Department, MC47
                        55 Marietta Street
                        Atlanta, Georgia  30303

(4)   This Financing Statement covers the following types (or
      items) of property:  all right, title and interest of the
      Debtor in:

              (a)  all Gross Revenues (as hereinafter defined)
         and Pledged Shares (as hereinafter defined); and

              (b)  all moneys and securities held by the Secured
         Party in any and all of the funds and accounts created
         under the Master Trust Indenture, dated as of
         November 1, 1993 (the "Master Indenture"), between the
         Debtor, South Fulton Medical Center, Inc., South Fulton
         Medical Center Foundation, Inc., South Fulton Medical
         Arts Center, Inc., South Atlanta Diagnostic Cardiology,
         Inc. and South Fulton Health Care Center, Inc.
         (collectively, the "Debtors"), and the Secured Party, as
         Master Trustee.

              "Gross Revenues", as used herein, means all revenues,
         income, receipts, accounts receivable and money derived from
         the operation of the Property (as defined in the Master
         Indenture) or from the performance of management services,
         regardless of where such management services are performed,
         received in any period by the Debtors, including, but without
         limiting the generality of the foregoing, (a) proceeds
         derived from (i) insurance, except to the extent the use
         thereof is otherwise specifically required by any agreement
         or indenture, (ii) accounts receivable, (iii) securities and
         other investments, (iv) inventory and other tangible and
         intangible property, (v) hospital expense reimbursement or
         medical expense reimbursement for hospital functions or
         insurance programs or agreements, (vi) condemnation awards
         except to the extent that the use thereof is otherwise
         specifically required by any agreement or indenture, and
         (vii) contract and other rights and assets now or hereafter
         owned or held or possessed by or on behalf of the Debtors;
         (b) amounts earned on amounts deposited into the funds and
         accounts created under any Depositary Agreement (as defined
         in the Master Indenture) and (c) the revenues of any
         surviving, resulting or transferee entity provided for in the

Master Indenture; <u>provided</u>, however, there shall not be included in Gross Revenues (A) the proceeds of borrowing and interest earned or investment earnings thereon if and to the extent such interest or investment earnings is required to be excluded by the terms of the borrowing, (B) revenues, income, receipts and money received by any Debtor as agent for and on behalf of someone other than any Debtor and (C) donor restricted gifts, grants, bequests, donations or contributions to the Debtors for use in connection with the Property to the extent restricted by the donor thereof.

"Pledged Shares" shall mean 100% of the voting stock of any Restricted Affiliate (as defined in the Master Indenture) of any Debtor which is a stock corporation.



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

EXHIBIT 6



May 12, 2000

Corporate Trust Services
550 South Hope Street, Suite 500
Los Angeles, CA 90071

## NOTICE OF EVENT OF DEFAULT

Notice to Holders of:

**Tri-City Hospital Authority, Georgia
Revenue Certificates, Series 1993 (the "Bonds")
Cusip Numbers*: 895402 FF7, FG5, FH3, FJ9, FR1**

**Note: If you are a nominee or a depository and not a beneficial holder, please forward copies of this notice immediately to your clients who are beneficial holders.**

Reference is made to the (i) Master Trust Indenture dated as of November 1, 1993, as supplemented (the "Master Indenture") between South Fulton Medical Center, Inc., South Fulton Medical Center Foundation, Inc., South Fulton Medical Arts Center, Inc., South Atlanta Diagnostic Cardiology, Inc., South Fulton Health Care Center, Inc. and Georgia International Health Alliance, Inc. (the "Obligated Issuers") and U.S. Bank Trust National Association, as successor trustee (the "Master Trustee") and the (ii) Trust Indenture dated as of November 1, 1993 (the "Trust Indenture") between Tri-City Hospital Authority and U.S. Bank Trust National Association, as successor trustee (the "Certificate Trustee") pursuant to which the above referenced Certificates (the "Certificates") were issued. The Master Trustee and Certificate Trustee are collectively herein referred to as the Trustee.

The Trustee hereby advises you that an Event of Default has occurred as defined and referenced in the Master Indenture and the Trust Indenture, respectively. On April 26, 2000, the Obligated Issuers filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division. Their five separate bankruptcy cases (the "Bankruptcy Cases") were consolidated for procedural purposes and are being jointly administered by the Bankruptcy Court.

On May 3, 2000, the Obligated Issuers filed an adversary proceeding in the Bankruptcy Court against the Trustee requesting, among other things, that the Bankruptcy Court enter judgment to remove the security interest in the Gross Revenues (as defined in the Master Indenture) pledged by the Obligated Issuers to secure the Bonds. The effect of this action would be to classify the Bonds as unsecured obligations of the Obligated Issuers. This action was as a result of the alleged expiration of the financing statements covering the Gross Revenues. The Trustee intends to vigorously challenge that proceeding.

On May 8, 2000, the Trustee was appointed to the single Official Committee of Unsecured Creditors serving in the Bankruptcy Cases. The other committee members include trade creditors and other creditors of the Obligated Issuers.

As part of the Bankruptcy proceedings the Trustee will file a Proof-of-Claim on behalf of the debt owed to Bondholders.  Individual Bondholders need not take any actions in that regard. There is currently $33,510,000 in principal amount of Bonds outstanding and the Trustee is holding $4,896,766. in cash collateral under the terms of the Indenture.  Ultimate recovery to the Bondholders is unclear; therefore no payment of interest and principal due on July 1, 2000 is anticipated on being paid.

The Trustee will continue to monitor the situation and notify you of further developments as they occur.  Holders with questions concerning this Notice should be directed to U.S. Bank National Association, Corporate Trust Department, 550 South Hope Street, Suite 500, Los Angeles, CA 90071, Attention: Keith R. Marshall, Vice President.  The telephone number for a Bondholders Service Representative is (612) 973-5840.

Please note that the Trustee may conclude that a specific response to particular inquiries from individual holders is not consistent with equal and full dissemination of information to all holders.  Holders should not rely on the Trustee as their sole source of information.  The Trustee makes no recommendations and gives no investment advice herein or as to the Certificates generally.

U.S. Bank National Association, as Trustee

* The Trustee shall not be held responsible for the selection or use of the Cusip number, nor is any representation made as to its correctness indicated in the notice.  It is solely for convenience of the holders.



# EXHIBIT / ATTACHMENT

## 7

(To be scanned in place of tab)

O

EXHIBIT 7

Comptroller of the Currency
Administrator of National Banks

Midwestern District Office
2345 Grand Boulevard, Suite 700
Kansas City, MO 64108

May 17, 2000

**Conditional Approval #397**
**June 2000**

Mr. Mark D. Hartzell
180 E. Fifth Street
St. Paul, MN 55101

Re:     Application to Establish an Operating Subsidiary
U.S. Bank National Association (USBank)
Minneapolis, MN
2000-MW-08-020

Application for preliminary charter approval
U.S. Bank Trust National Association, Wilmington, DE (USTrust)
2000-MW-01-008

Residency Waiver for U.S. Bank Trust National Association
2000-MW-12-045

Dear Mr. Hartzell:

The Comptroller of the Currency (OCC) has reviewed your application to establish a new
national trust bank, which will engage solely in fiduciary activities, with the title of U.S. Bank
Trust National Association.  On this date, after a thorough evaluation of all data available to the
OCC, we found that your proposal met the requirements for preliminary conditional approval.
Your requests for the establishment of an operating subsidiary by U.S. Bank National
Association is also approved, as well as your residency waiver request for the new bank.

This approval is granted based on a thorough review of all information available, including the
representations and commitments made in the application and by the proposed bank's
representatives.  We also made our decision to grant preliminary conditional approval with the
understanding that the proposed national bank will apply for membership in the Federal Reserve
System and will not be FDIC-insured.

This approval is subject to the condition that the bank shall provide the OCC's Deputy
Comptroller for Large Banks Timothy Long at least thirty (30) days prior notice of any
significant deviations or changes from the proposed operating plan during the first three years of
operation.  This condition is enforceable under 12 USC 1818.

Mr. Mark D. Hartzell
Control #2000-MW-08-020, 2000-MW-01-008 and 2000-MW-12-045
Page Two

Please refer to the "Corporate Organization" booklet (enclosed) in the Comptroller's Corporate Manual for the instructions on organizing your bank. The booklet contains all of the steps you must take to receive your charter. As detailed in the booklet, you may establish the corporate existence of and begin organizing the bank as soon as you adopt and forward acceptable Articles of Association and the Organization Certificate to this office. As a "body corporate" or legal entity, you may begin taking those steps necessary for obtaining final approval, but you may not begin the business of banking until you fulfill all requirements for a bank in organization and you are granted final approval by the OCC. **Please contact Analysis Specialist Judith Bollig at (816) 556-1860 if you have questions about the in-organization phase.**

Enclosed are standard requirements that must be met before the bank will be allowed to commence business. Management must ensure that the applicable policies and procedures are established and adopted by the board of directors before the bank begins operation. Applicable standard requirements also must be satisfied before the bank will be allowed to commence business.

The OCC poses no objection to Diane L. Thormodsgard serving as Chairperson of the Board and Chief Executive Officer. All other executive officers are subject to the OCC's prior review and clearance.

The OCC poses no objection to Diane L. Thormodsgard, Teresa Caspary, Dennis M. Egan, Terry L. McRoberts and Mark D. Harzell serving as directors. All other directors are subject to the OCC's prior review and clearance.

You are also reminded that for a period of two years after the bank has opened for business, the OCC must review and have no objection to any new executive officer or director prior to that person assuming such position.

The OCC also granted your waiver request of the residency requirements of 12 USC 72 for the majority of the board of directors of U.S. Bank Trust National Association. This waiver is granted based upon a review of all available information, including the filing and the bank's representation that this waiver will not affect the board's responsibility to direct the bank's operations in a safe, sound, and legal manner. Please understand that the OCC reserves the right to withdraw or modify this waiver and, at its discretion, to request additional information at any time in the future.

The OCC will send to you under separate cover an appropriate set of OCC handbooks, manuals, issuances, and selected other publications.

Mr. Mark D. Hartzell
Control #2000-MW-08-020, 2000-MW-01-008 and 2000-MW-12-045
Page Three

You should direct any questions concerning this preliminary conditional approval to National
Bank Examiner Jill K. Kennard at (816) 556-1860.

Sincerely,

**-signed-**

Ellen Tanner Shepherd
Licensing Manager

Enclosures
  Standard Requirements
  Minimum Policies and Procedures



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE

NOV 29 2001

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

U.S. BANK TRUST NATIONAL ASSOCIATION, *
as successor trustee,                   *
                                        *
            Plaintiff,                  *
                                        *
v.                                      *
                                        *
SOUTHTRUST BANK AND                     *
RELIANCE TRUST COMPANY,                 *
                                        *
            Defendants.                 *

CIVIL ACTION FILE

NO. 2001CV42591

## ANSWER OF RELIANCE TRUST COMPANY

NOW COMES Defendant Reliance Trust Company ("Reliance") and answers the Complaint in this action, as follows:

### FIRST DEFENSE

The Complaint, and each and every Count thereof, fails to state a claim against Reliance upon which relief may be granted.

### SECOND DEFENSE

Pursuant to Section 8.1(a) of the Master Trust Indenture between South Fulton Medical Center, Inc., et al. and Bank South, N.A. as original Master Trustee dated as of November 1, 1993 (the "Master Indenture"), the Master Trustee undertook to perform "only" such duties as are "specifically set forth in this Indenture." The Master Indenture does not contain a specific undertaking by the Master Trustee to be responsible for filing UCC-3 continuation statements.

## THIRD DEFENSE

Plaintiff failed to mitigate the alleged damages which are the subject of the Complaint.

## FOURTH DEFENSE

Plaintiff's negligence bars any recovery against Reliance.

## FIFTH DEFENSE

The alleged damages complained of were caused by the intervening or superceding negligence of the Plaintiff.

## SIXTH DEFENSE

Plaintiff lacks the standing to prosecute the claims which it has attempted to assert in the Complaint.

## SEVENTH DEFENSE

The claims which Plaintiff has attempted to assert are subject to binding arbitration rather than litigation in this Court.

## EIGHTH DEFENSE

Plaintiff is estopped from bringing the claims which it has attempted to assert against Reliance.

## NINTH DEFENSE

Responding to the enumerated averments of the Complaint, Reliance shows as follows:

1.

Reliance is without knowledge or information sufficient to enable it to admit or deny the averments contained in Paragraph 1 of the Complaint.

2.

Reliance admits the averments contained in Paragraph 2 of the Complaint

3.

Reliance admits the averments contained in Paragraph 3 of the Complaint, except that the address of its Registered Agent is 3384 Peachtree Road, Suite 900, Atlanta, Georgia 30326.

4.

Reliance admits the averments contained in Paragraph 4 of the Complaint.

5.

Reliance admits the averments contained in Paragraph 5 of the Complaint.

6.

Reliance admits the averments contained in Paragraph 6 of the Complaint.

7.

Reliance admits the averments contained in Paragraph 7 of the Complaint.

8.

Reliance admits the averments contained in Paragraph 8 of the Complaint.

9.

Responding to Paragraph 9 of the Complaint, Reliance admits that, pursuant to an agreement with the Original Trustee, Reliance serviced corporate trust accounts for which the Original Trustee served as Trustee, including the Bond Indenture and the Master Indenture. Reliance denies the remaining averments of Paragraph 9 of the Complaint, and specifically denies that it was the "agent" of the Original Trustee and specifically denies that it assumed any fiduciary responsibility under the Bond Indenture or the Master Indenture.

10.

Reliance admits the averments contained in the first two sentences of Paragraph 10 of the Complaint, except that Reliance is without knowledge or information sufficient to enable it to admit or deny the accuracy of the dates set forth in said sentences.  Responding to the third sentence of Paragraph 10 of the Complaint, Reliance admits that it serviced corporate trust accounts for which SouthTrust served as Trustee, including the Bond Indenture and the Master Indenture.  Reliance denies the remaining averments of Paragraph 10 of the Complaint, and specifically denies that it was the "agent" of SouthTrust and denies that it assumed any fiduciary responsibility under the Bond Indenture or the Master Indenture.

11.

Reliance admits the averments contained in the second sentence of Paragraph 11 of the Complaint, with the exception of the phrase "therefore, the 1993 financing statements lapsed," which is a legal conclusion which requires no response.  The remainder of Paragraph 11 of the Complaint is a legal conclusion which requires no response.

- 4 -

12.

Responding to the averments contained in Paragraph 12 of the Complaint, Reliance admits that its relationship with SouthTrust until March 16, 1999 was as described in Paragraph 10 of this Answer.   Reliance denies the remaining averments contained in Paragraph 12 of the Complaint.  Further responding to Paragraph 12 of the Complaint, Reliance shows that, prior to December 22, 1998, Plaintiff's affiliate U.S. Bank National Association ("U.S. Bank") conducted due diligence with respect to its purchase of Reliance's corporate trust services business, from which U.S. Bank learned, or should have learned, that (a) no UCC-3's had been filed with respect to the Collateral, and (b) neither SouthTrust nor Reliance had a duty under the Master Indenture to file UCC-3 continuation statements with respect to the Collateral.

13.

Reliance is without knowledge or information sufficient to enable it to admit or deny the averments contained in Paragraph 13 of the Complaint.

14.

Reliance admits the averments contained in Paragraph 14 of the Complaint.

15.

Reliance admits the averments contained in Paragraph 15 of the Complaint.

16.

Reliance admits the averments contained in Paragraph 16 of the Complaint.

17.

Reliance admits the averments contained in Paragraph 17 of the Complaint.

18.

Reliance admits the averments contained in Paragraph 18 of the Complaint.

19.

Reliance is without knowledge or information sufficient to enable it to admit or deny the averments contained in Paragraph 19 of the Complaint.

20.

Reliance is without knowledge or information sufficient to enable it to admit or deny the averments contained in Paragraph 20 of the Complaint.

## **COUNT I**

21.

Reliance incorporates by reference, as if fully restated herein, its responses to paragraphs 1 through 20.

22.

Reliance denies the averments contained in Paragraph 22 of the Complaint.

23.

Reliance denies the averments contained in Paragraph 23 of the Complaint.

24.

Reliance denies the averments contained in Paragraph 24 of the Complaint.

## COUNT II

### 25.

Reliance incorporates by reference, as if fully restated herein, its responses to paragraphs 1 through 24.

### 26.

Reliance denies the averments contained in Paragraph 26 of the Complaint.

### 27.

Paragraph 27 of the Complaint sets forth a hypothetical statement of fact and legal conclusions and requires no response.

### 28.

Reliance denies the averments contained in Paragraph 28 of the Complaint.

### 29.

Reliance denies the averments contained in Paragraph 29 of the Complaint.

## COUNT III

### 30.

Reliance incorporates by reference, as if fully restated herein, its responses to paragraphs 1 through 29.

### 31.

Reliance denies the averments contained in Paragraph 31 of the Complaint.

32.

Reliance denies the averments contained in Paragraph 32 of the Complaint.

33.

Reliance denies all other averments of the Complaint as to which no other responses have been set forth herein.

**WHEREFORE**, having fully answered, Reliance demands that it be dismissed from the action and that all costs be cast upon the Plaintiff.

This _29th_ day of November 2001.

JEFFREY W. KELLEY
Georgia State Bar No. 412296
CHRISTOPHER E. REEVES
Georgia State Bar No. 598205

POWELL, GOLDSTEIN FRAZER & MURPHY LLP
Sixteenth Floor
191 Peachtree Street, N.E.
Atlanta, Georgia 30303

(404)572-6600

Counsel for Reliance Trust Company

::ODMA\PCDOCS\ATL\532576\1

- 8 -

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel of record in the foregoing matter with

a copy of Answer of Reliance Trust Company by depositing a copy of same in the United States

Mail in a properly addressed envelope with adequate postage thereon as follows:

Katherine A. Constantine, Esq.
Patrick J. McLaughlin, Esq.
Dorsey & Whitney LLP
Pillsbury Center South
220 South Sixth Street
Minneapolis, Minnesota 55402

Teresa Wynn Rosenborough, Esq.
Kelly J. Baker, Esq.
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309

Joseph S. Bird III, Esq.
Bradley Arant Rose & White LLP
2001 Park Place
Suite 1400
Birmingham, Alabama 35203

Nancy Haynes Baughan, Esq.
Parker, Hudson, Rainer & Dobbs
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303

This _29th_ day of November 2001.

JEFFREY W. KELLEY
Georgia State Bar No. 412296

POWELL, GOLDSTEIN FRAZER & MURPHY LLP
Sixteenth Floor
191 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404)572-6600

Counsel for Reliance Trust Company

::ODMA\PCDOCS\ATL\526330\1

ORIGINAL **United States District Court**

Northern —————— DISTRICT OF ——— Georgia

Gray Murray, Sam Ramsey, and Kenneth Henson,
Individually and as representatives of a Class of
Certificate Holders of Tri-City Hopsital Authoirty
Revenue Certificates,

**V.**

U.S. Bank Trust National Association, and
SouthTrust Bank (f/k/a SouthTrust Bank, N.A.)

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**1 02-CV-1244**

TO: (Name and address of defendant)

U.S Bank Trust National Association
300 East Delaware Ave.
8th Floor
Wilmington, Delaware 19809-1518

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Richard L. Brittain
Wendell R. Bird, P.C.
Jonathan T. McCants
BIRD & ASSOCIATES, P.C.
1150 Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326

an answer to the complaint which is herewith served upon you, within _____ twenty (20) _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of
time after service.

LUTHER D. THOMAS

MAY   8 2002

CLERK

DATE

(BY) DEPUTY CLERK

ORIGINAL

# United States District Court

Northern _____ **DISTRICT OF** _____ Georgia

Gray Murray, Sam Ramsey, and Kenneth Henson,
Individually and as Representatives of a Class of
Certificate Holders of Tri-City Hospital Authority
Revenue Certificates,

**V.**

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

**1** 02-CV-1244

U.S. Bank Trust National Association, and
SouthTrust Bank (f/k/a SouthTrust Bank, N.A.)

TO: (Name and address of defendant)

SouthTrust Bank (f/k/a Southtrust Bank, N.A.)
Mary Ellen Franklin, Registered Agent
600 West Peachtree St., 21st Floor
Atlanta, Georgia 30308

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Richard L. Brittain
Wendell R. Bird, P.C.
Jonathan T. McCants
BIRD & ASSOCIATES, P.C.
1150 Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326

an answer to the complaint which is herewith served upon you, within _____ twenty (20) _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

MAY   8 2002

CLERK

DATE

(BY) DEPUTY CLERK

# United States District Court

Northern ———— DISTRICT OF ———— Georgia

Gray Murray, Sam Ramsey, and Kenneth Henson,
Individually and as representatives of a Class of
Certificate Holders of Tri-City Hopsital Authoirty
Revenue Certificates,       V.

### SUMMONS IN A CIVIL CASE

CASE NUMBER:

## 1 02-CV-1244

U.S. Bank Trust National Association, and
SouthTrust Bank (f/k/a SouthTrust Bank, N.A.)

TO: (Name and address of defendant)

U.S Bank Trust National Association
4th Floor, 180 East Fifth Street
St. Paul, Minnesota 55101

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Richard L. Brittain
Wendell R. Bird, P.C.
Jonathan T. McCants
BIRD & ASSOCIATES, P.C.
1150 Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326

an answer to the complaint which is herewith served upon you, within _____ twenty (20) _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

MAY   8 2002

CLERK

DATE

(BY) DEPUTY CLERK